UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENIZ BOLBOL, et al.,<br><br>        Plaintiffs,<br><br>    v.<br><br>ROWELL RANCH RODEO, INC., et al.,<br><br>        Defendants. | Case No. 23-cv-01652-VC<br><br>**ORDER DENYING MOTION FOR TEMPORARY RESTRAINING ORDER**<br><br>Re: Dkt. No. 28 |

      The motion for a temporary restraining order is denied. This order assumes the reader's familiarity with the facts of the case, the relevant law, and the discussion held at the motion hearing.

      While the plaintiffs have shown a likelihood of success on their claim that the defendants (or at least Rowell Ranch) interfered with their free speech rights last year, they have not shown that they are likely to be prevented from meaningfully expressing themselves this year. The emergency motion relies exclusively on evidence from last year's events. While this is not nothing, the plaintiffs themselves have suggested that what happened last year was anomalous—they assert that until last year they regularly demonstrated at the rodeo without any issues. *See, e.g.*, Dkt. No. 28-1 at 6–7. Yet the motion contained no forward-looking evidence, such as representations from the defendants about what the plaintiffs might expect should they attempt to exercise their speech rights in the same manner this year. Indeed, at the hearing, it became apparent that neither the plaintiffs nor their lawyers even attempted to communicate with the defendants about the upcoming rodeo and what sort of treatment they might expect.

      The Court therefore ordered the defendants to file sworn declarations explaining in detail

what the plaintiffs should expect at this year's rodeo. Those declarations suggest that the defendants are not likely to interfere with the plaintiffs' speech rights this weekend. The Park District's declaration explains that its rangers will not even be at the rodeo and will therefore have "no interaction with protesters who may come to the rodeo event." Dkt. No. 40 at 1. To the extent any allegedly unlawful behavior is reported to the rangers, the rangers have been instructed simply to report it to local law enforcement. Dkt. No. 40 at 2. For its own part, the Sheriff's Office has declared that, while it "will have deputies performing law enforcement duties at the site of the [] Rodeo," each deputy will be instructed not to impede the demonstrators' lawful exercise of their speech rights. Dkt. No. 41 at 2.

      For its part, Rowell Ranch declares that it has designated a second free speech zone fifteen to twenty feet from the ticket booth closest to the pedestrian entrance to the arena, around where the plaintiffs typically demonstrate. Rowell Ranch further declares that "[d]emonstrators are *not* limited to the Free Speech Area to hand out their leaflets or engage the attendees" and that its employees "have *not* been instructed to call any law enforcement department simply because a demonstrator is not demonstrating in a Free Speech Area." Dkt. No. 43 at 2 (emphasis added). According to Rowell Ranch, the cordoned off free speech areas are intended to limit only where the demonstrators may set up tables, tents, or umbrella stands. Dkt. No. 43 at 1–2. The reason for this, Rowell Ranch declares, is to avoid blocking the roadway intended for emergency vehicle traffic. Dkt. No. 43 at 2. Rowell Ranch explains that, while pedestrians have access to the same roadway and may walk on it or across it, it wishes to keep the roadway free of temporary structures, which are less easily or quickly moved out of the way in the event of an emergency. Dkt. No. 39 at 2. As best the Court can discern on this last-minute, emergency posture, this is a sufficiently tailored restriction geared towards a sufficiently important government interest, and so it likely passes constitutional muster. *See Cuviello v. City of Oakland*, 434 F. App'x 615, 616–17 (9th Cir. 2011) (holding that ten-foot buffer zone from entrance to circus intended to avoid congestion did not violate the plaintiffs' speech rights).

      In light of the defendants' declarations and the absence of contrary evidence in the

plaintiffs' motion, the plaintiffs have not shown they are likely to succeed on a speech claim based on this year's rodeo. They have therefore also failed to show a likelihood of irreparable harm.

Also weighing heavily against the plaintiffs is the fact that this is an emergency of their own making. The plaintiffs' motion states they have had "longstanding plans" to attend this year's rodeo. Dkt. No. 28-1 at 18. Indeed, it appears they have known for a year that they would be returning to the rodeo this coming weekend. But instead of filing a motion for a preliminary injunction well in advance, the plaintiffs sat on their rights. They filed their underlying complaint in this case on April 6, 2023, and then they waited even longer to move for an emergency restraining order, springing it on the parties and on this Court a mere ten days before the event (which is scheduled to begin today, May 19). And as noted above, the plaintiffs apparently made no effort to communicate with the defendants in advance of filing their "emergency" motion.

While this conduct would be troublesome in any case, it is especially problematic when a court is being asked to assess weighty constitutional claims whose adjudication would benefit from deliberation and possibly an evidentiary hearing. What's more, the plaintiffs have levied their claims against no less than three sets of both public and private defendants, further complicating matters and counseling in favor of careful deliberation. The plaintiffs do not have a right to a temporary restraining order. Relief of this sort is a matter of equity and discretion. Parties seeking this relief have a responsibility to tee up their claims in a timely and responsible fashion. When plaintiffs, intentionally or through gross neglect, sit on their rights only to spring an application for a temporary restraining order on their opponents at the eleventh hour, they risk limiting themselves to recovery of retrospective relief for any violation that occurs. This is so even if the rights the plaintiffs choose to sit on are constitutional in nature. Given the conduct of the plaintiffs in this case, even if they had shown a likelihood that their free speech rights would be infringed this weekend, the Court would likely deny their emergency application for the sole reason that the emergency was created by their own delay.

**IT IS SO ORDERED.**

Dated: May 19, 2023

_____

VINCE CHHABRIA
United States District Judge