1 Jessica L. Blome (Cal. Bar No. 314898)
Lily A. Rivo (Cal. Bar No. 242688)
2 GREENFIRE LAW, PC
3 2748 Adeline Street, Suite A
Berkeley, CA 94703
4 Ph/Fx: (510) 900-9502
Email: jblome@greenfirelaw.com
5          lrivo@greenfirelaw.com

6 *Attorneys for Plaintiff Deniz Bolbol*

7
JOSEPH P. CUVIELLO
8 205 De Anza Blvd., #125
San Mateo, CA 94402
9 Telephone: (650) 315-3776
Email: pcuvie@gmail.com
10

11 *Plaintiff in Pro Se*

12                **UNITED STATES DISTRICT COURT**

13              **NORTHERN DISTRICT OF CALIFORNIA**

14

15 JOSEPH P. CUVIELLO and DENIZ         Case No. 3:23-cv-01652-VC
   BOLBOL, individually,
16                                      **PLAINTIFFS' NOTICE OF MOTION**
17          Plaintiffs                  **AND JOINT MOTION FOR PARTIAL**
                                        **SUMMARY JUDGMENT**
18        v.
                                        **Filed concurrently with:**
19 ROWELL RANCH RODEO, INC., et al.,    **1. Statement of Undisputed, Material Facts**
                                        **2. Appendix of Evidence**
20        Defendants                    **3. Declaration of Joseph P. Cuviello**
                                        **4. Declaration of Deniz Bolbol**
21                                      **5. Declaration of Jessica L. Blome**
                                        **6. Declaration of Robyn Newkirk; and**
22                                      **6. Declaration of Michael Sage**
23
                                          Date:       August 15, 2024
24                                        Time:       10:00 a.m.
                                          Judge:      Hon. Vince Chhabria
25                                        Courtroom:   5 – 17th Floor
26

27

28
                                    - 1 -

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE. NOTICE that on _____, 2024, at 10:00 a.m., in Courtroom 5 of the above-entitled court, at 450 Golden Gate Avenue, San Francisco, California, Plaintiffs Joseph P. Cuviello and Deniz Bolbol will and hereby do jointly move the Court for an order granting partial summary judgment under Federal Rule of Civil Procedure 56.

The grounds for this relief are that the undisputed facts demonstrate Plaintiffs are entitled to judgment on their first, second, third, fourth, and fifth causes of action. Plaintiffs support this motion with the accompanying memorandum of points and authorities, the concurrently filed statement of undisputed facts, appendix of evidence, all records, documents, and papers in the Court's file, and the following declarations with attached exhibits: Joseph P. Cuviello, Deniz L. Bolbol, Jessica L. Blome, Robyn Newkirk, and Michael Sage.

Respectfully submitted,

DATED: June 3, 2024,           */s/ Jessica L. Blome*
                               Jessica Blome
                               Lily R. Rivo
                               GREENFIRE LAW, PC
                               *Attorney for Plaintiff Deniz Bolbol*

DATED: June 3, 2024,           */s/ Joseph P. Cuviello*
                               JOSEPH P. CUVIELLO
                               Lily R. Rivo
                               *Plaintiff in Pro Se*

1

**Table of Contents**

2

I.     Introduction ........................................................................................................ - 6 -

3

II.    Standard of Review ........................................................................................... - 7 -

III.   Argument ......................................................................................................... - 7 -

4

         A.     Plaintiffs have a constitutionally protected right to pass out leaflets and protest at the

5

               Rodeo Park. .................................................................................................. - 7 -

6

         B.     Defendant HARD's time, manner, and place restriction on free expression at the

               Rodeo Park is unconstitutional. ................................................................... - 9 -

7

               1.     Defendant HARD admits it has no idea why it requires a Free Speech Area,

                      therefore its restriction requiring a Free Speech Area serves no government

8

                      interest. .......................................................................................... - 11 -

9

               2.     Defendant HARD's free speech restriction is not narrowly tailored to serve a

                      conceivable government interest ................................................... - 14 -

10

               3.     If enforced, Defendant HARD's restriction provides no alternative channels for

11

                      communication ............................................................................. - 15 -

12

         C.     Defendants tried to and did threaten, intimidate, and coerce Plaintiffs, as they

               exercised their constitutional right to free speech, in violation of Civil Code, section

13

               52.1 .............................................................................................................. - 17 -

14

         D.     Defendant Rowell Ranch violated Plaintiffs' rights under California Civil Code,

               section 51.7. .................................................................................................. - 23 -

15

               1.     Animal rights is a qualifying political affiliation under Section 51.7 .......... - 24 -

16

               2.     Defendant Rowell Ranch's use of violence against Plaintiffs was motivated to

                      suppress Plaintiffs' speech by animus toward their animal rights activism in

17

                      violation of Section 51.7 .............................................................. - 24 -

18

               3.     Defendant Rowell Ranch made an intentionally false report to law enforcement

                      in reckless disregard for the truth in violation of Section 51.7 .................... - 26 -

19

               4.     Defendant Rowell Ranch used violence against Plaintiff Cuviello, because of

                      his political affiliation, by ramming his electric utility vehicle into him in

20

                      violation of Section 51.7 .............................................................. - 26 -

21

         E.     Defendant Rowell Ranch is liable for assault and battery against Plaintiffs. ....... - 28 -

22

               1.     Defendant Rowell Ranch committed assault and battery against Plaintiff

                      Bolbol. .......................................................................................... - 28 -

23

               2.     Defendant Rowell Ranch committed assault with a deadly weapon and battery

24

                      against Plaintiff Cuviello. ............................................................. - 29 -

25

               3.     Mr. Ferris and Mr. Houts acted within the scope of their agency and Rowell

                      Ranch is liable. ............................................................................. - 30 -

26

IV.   Conclusion .................................................................................................... **- 30 -**

27

28

Plaintiffs' Notice of Motion and JOINT Motion for Partial Summary Judgment (3:23-cv-01652-VC)

1

**Table of Authorities**

2

**Cases**

3

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986) ................................................................ - 8 -
*Animal Legal Def. Fund v. Wasden*, 878 F.3d 1184 (9th Cir. 2018) .......................................... - 25 -

4

*Ashcraft v. King,* 228 Cal. App. 3d 604 (1991) ...........................................................- 29 -, - 30 -
*Austin B. v. Escondido Union School Dist.*, 149 Cal. App. 4th 860 (2007) ............ - 18 -, - 24 -, - 25 -

5

*Bay Area Peace Navy v. United States,* 914 F.2d 1224 (9th Cir. 1990) ...................................... - 17 -
*Beeman v. Anthem Prescription Management, LLC*, 58 Cal. 4th 329 (2013) .............................. - 9 -

6

*Berger v. City of Seattle,* 569 F.3d 1029 (9th Cir. 2009) ................................................... - 14, 16 -

7

*Black Lives Matter- Stockton Chapter v. San Joaquin Cty Sheriff's Office*, 398 F. Supp. 3d 660
(E.D. Cal. 2019) ...................................................................................................................... - 19 -

8

*Caldwell v. Farley*, 134 Cal. App. 2d 84 (1955)........................................................................ - 31 -

9

*Campbell v. Feld Entertainment, Inc.,* 75 F. Supp. 3d 1193 (N.D. Cal. 2014) ............- 20 -, 24, - 23 -
*Carreras v. City of Anaheim,* 768 F.2d 1039 (9th Cir. 1985) ..................................................... - 9 -

10

*Celotex Corp. v. Catrett,* 477 U.S. 317 (1986) ........................................................................... - 8 -
*City of Pomona v. SQM North America Corp.,* 750 F.3d 1036 (9th Cir. 2014) .......................... - 8 -

11

*Clicks Billiards Inc. v Sixshooters Inc.,* 251 F.3d 1252 (9th Cir. 2001) .................................... - 8 -
*Cole v. Doe*, 387 F. Supp. 2d 1084 (N.D. Cal. 2005) ............................................................... - 19 -

12

*Comite de Jornaleros v. City of Redondo Beach,* 657 F.3d 936 (9th Cir. 2011) ................... - 10, 15 -
*Cornell v. City and County of San Francisco,* 17 Cal. App. 5th 766 (2017) ............................. - 19 -

13

*Cuviello v. City & County of San Francisco,* 940 F. Supp. 2d 1071 (N.D. Cal. 2013) ............... - 19 -

14

*Cuviello v. City of Vallejo,* 944 F.3d 816 (9th Cir. 2019) ................................................... - 9, 10 -
*Edenfeld v. Fane,* 507 U.S. 761 (1993) ..................................................................................... - 14 -

15

*Ennis v. City of Daly City*, 756 F. Supp. 2d 1170 (2010) .......................................................... - 25 -
*Fashion Valley Mall, LLC v. National Labor Relations Bd*, 42 Cal. 4th 850 (2007) .................. - 10 -

16

*Fluharty v. Fluharty*, 59 Cal. App. 4th 484 (1997).................................................................... - 30 -
*Foti v. Menlo Park*, 146 F.3d 629 (9th Cir. 1998)..................................................................... - 16 -

17

*Fresno Motors, LLC v. Mercedes Benz, LLC*, 771 F.3d 1119 (9th Cir. 2014) .............................. - 8 -

18

*Gerawan Farming, Inc. v. Lyons*, 24 Cal. 4th 468 (2000) .......................................................... - 9 -
*Gertz v. Robert Welch, Inc*., 418 U.S. 323 (1974) ..................................................................... - 27 -

19

*Grossman v. City of Portland,* 33 F. 3d 1200 (9th Cir. 1994) ............................................- 10 -, - 15 -
*Hague v. C.I.O.*, 307 U.S. 496 (1939) ........................................................................................ - 9 -

20

*Heffron v. Intl. Soc. For Krishna Consciousness,* 452 U.S. 640 (1981)..................................... - 13 -

21

*Herbert v. Lando*, 441 U.S. 153 (1979) .................................................................................... - 27 -
*In re Hoffman,* 67 Cal.2d 845 (1967) ......................................................................................... - 9 -

22

*In re MS*, 10 Cal. 4th 698 (1995) ............................................................................................. - 24 -

23

*International Society for Krishna Consciousness of California, Inc. v. City of Los Angeles*,
48 Cal. 4th 446 (2010) ............................................................................................................ - 9 -

24

*Kaplan v. Mamelak*, 162 Cal. App. 4th 637 (2008) ................................................................. - 29 -
*Kuba v. 1-A Agric, Ass'n*, 387 F.3d 850 (9th Cir. 2004) ................................................... - passim -

25

*Lim v. City of Long Beach*, 217 F.3d 1050 (9th Cir. 2000) .............................................. - 10, 12 -
*Matshushita Elec. Indus. Co., LTD. V. Zenith Radio Corp.,* 474 U.S. 574 (1986) ...................... - 8 -

26

*McCue v. S. Fork Union Elem. Sch*., 766 F. Supp. 2d 1003 (E.D. Cal. 2011) ............................ - 22 -
*Milk Wagon Drivers v. Meadowmoor Dairies, Inc*., 312 U.S. 287 (1941)................................. - 23 -

27

*Park Management Corp. v. In Defense of Animals*, 36 Cal. App. 5th 649 (2019) .................. - 9, 10 -

28

*Parks v. City of Columbus*, 395 F. 3d 643 (6th Cir. 2005) ........................................................ - 16 -

- 4 -

*People v. Aledamat*, 8 Cal. 5th 1 (2019) ................................................................- 29 -, - 31 -

*Plotnik v. Meihaus*, 208 Cal. App. 4th 1590 (2012) .......................................................... - 29 -

*Presbyterian Camp & Conference Centers, Inc. v. Superior Court*, 12 Cal. 5th 493 (2021)....... - 31 -

*Rains v. Superior Court,* 150 Cal. App. 3d 933 (1984) .................................................... - 30 -

*Ralphs Grocery Company v. United Food and Commercial Workers Union LOCAL 8,*
    55 Cal. 4th 1083 (2012) ........................................................................... - 17, 18 -

*Richardson v. City of Antioch*, 722 F. Supp. 2d 1133 (N.D. Cal. 2010).......................... - 19, 22 -

*Ruelas v. Cty of Alameda*, 519 F. Supp. 3d 636 (N.D. Cal. 2021).......................................- 19 -

*So v. Shin*, 212 Cal. App 652 (2013)..................................................................- 29 -, - 30 -

*St. Amant v. Thompson*, 390 U.S. 727 (1968)................................................................. - 27 -

*The People  v. Lashley,* 1 Cal. App. 4th 938 (1991) ..................................................- 20 -, - 23 -

*Thompson v. W. States Med. Ctr.*, 535 U.S. 357 (2002) ...................................................- 15 -

*United States v. Baugh,* 187 F.3d 1037 (9th Cir 1999)....................................................- 17 -

*Van Nusy Publ'g Co. v Thousand Oaks,* 5 Cal. 3d 817 (1971).......................................- 17 -

*Venegas v. County of Los Angeles*, 32 Cal. 4th 820 (2004)............................................- 18 -

*Ward v. Rock Against Racism,* 491 U.S. 781 (1989) ..............................................- 10, 15 -

*Weinberg v. City of Chicago,* 310 F.3d 1029 (7th Cir. 2002)...........................................- 12 -

## Statutes

Cal. Civ. Code, § 43 .........................................................................................passim

Cal. Civ. Code, § 52.1 ......................................................................................passim

Cal. Civ. Code, § 2338....................................................................................... - 31 -

Cal. Civ. Code, § 51.7 ......................................................................................passim

Cal. Penal Code, § 422.6.................................................................................... - 23 -

Cal. Code Civ. Proc., § 526 ................................................................................ - 2 -

## Rules

Federal Rule of Civil Procedure 56 ..................................................................- 2 -, - 8 -

## Constitutional Provisions

Cal. Const., Art. 1, § 2 ...................................................................................... - 22 -

Plaintiffs' Notice of Motion and JOINT Motion for Partial Summary Judgment (3:23-cv-01652-VC)

1

**Memorandum of Points and Authorities**

2

## I.      Introduction

3      Plaintiffs challenge Defendants' harassment, intimidation, and intentional interference with

4 their constitutional right to peacefully demonstrate at Rowell Ranch Rodeo Park (Rodeo Park) in

5 Castro Valley, California over the course of three days from May 20, 2022, to May 22, 2022. Dkt.

6 54. As animal rights activists with a long history of peaceful demonstration, Plaintiffs educate

7 patrons attending events where animals are abused and mistreated for entertainment. Plaintiffs'

8 Statement of Undisputed, Material Facts in Support of Plaintiffs' Joint Motion for Partial Summary

9 Judgment (PSF) ¶ 1. To that end, Plaintiffs Joseph P. Cuviello and Deniz Bolbol have organized and

10 attended demonstrations against rodeo events at the Rodeo Park on multiple occasions to peacefully

11 pass out leaflets and protest the rodeo with banners and signs. PSF ¶ 3. During the rodeo event

12 giving rise to this action, beginning on May 20, 2022, Plaintiffs situated themselves near the front

13 and back entrances of the rodeo event, without blocking entry or exit. *Id.* Defendants, including

14 state actors, government entities, and private individuals, worked together to thwart and deter

15 Plaintiffs' peaceful activity through threats of arrest, physical assault and battery, and continuing

16 intimidation that interfered with Plaintiffs' ability to exercise their free speech rights.

17      No material facts are in dispute because Plaintiffs and Defendant Alameda County Sheriff's

18 Office (ACSO) video-recorded Plaintiffs' demonstration at the Rodeo Park, capturing on tape each

19 of Defendants' violations of their protected free speech rights. The Court should enter summary

20 judgment for Plaintiffs that Defendants intentionally attempted to interfere with and did interfere

21 with Plaintiffs' constitutional right to demonstrate at the Rodeo Park during rodeo events in

22 violation of California Civil Code, sections 52.1, 51.7, and 43 and Article I, section 2(a) of the

23 California Constitution.[1]

24

25

26

27

28

---

[1] Plaintiffs do not seek summary judgment on their sixth cause of action, alleging a violation of 42 U.S.C., Section 1983 at this time.

1

2      **II.      Standard of Review**

3      A party is "entitled" to summary judgment "if the movant shows that there is no genuine

4      dispute as to any material fact, and the movant is entitled to judgment as a matter of law." Fed. R.

5      Civ. Proc. 56(a). The moving party must "establish[h] the absence of a genuine dispute of material

6      fact." *City of Pomona v. SQM North America Corp.,* 750 F.3d 1036, 1049 (9th Cir. 2014) (citing

7      *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986)). Material facts are those that affect the outcome

8      of the proceedings. *Fresno Motors, LLC v. Mercedes Benz, LLC*, 771 F.3d 1119, 1125 (9th Cir.

9      2014). Importantly, a dispute is deemed "genuine" only if "a reasonable trier of fact could resolve

10     the issue in the non-movant's favor." *Id.* (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248

11     (1986))*.* When evaluating the merits of a motion for summary judgment, "[t]he court must view the

12     evidence in the light most favorable to the nonmovant and draw all reasonable inferences in the

13     nonmovant's favor." *City of Pomona,* 750 F.3d. at 1049-1050 (citing *Clicks Billiards Inc. v*

14     *Sixshooters Inc.,* 251 F.3d 1252,1257 (9th Cir. 2001)). "Where the record taken as a whole could

15     not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial."

16     *City of Pomona,* 750 F.3d. at 1049-1050, (citing *Matshushita Elec. Indus. Co., LTD. V. Zenith*

17     *Radio Corp.,* 474 U.S. 574, 587 (1986) (cleaned up)). Because the Plaintiffs and Defendant

18     Alameda County video recorded their interactions, the material facts are not in dispute.

19     **III.     Argument**

20        **A.      Plaintiffs have a constitutionally protected right to pass out leaflets and
          protest at the Rodeo Park.**

21     To determine whether Defendants, pursuant to Civil Code section 52.1, violated or

22     attempted to violate Plaintiffs' constitutionally protected free speech rights by threats, intimidation

23     or coercion, Plaintiffs must first establish the parameters of their free speech rights. Under the

24     California Constitution, "Every person may freely speak, write, and publish his or her sentiments on

25     all subjects, being responsible for the abuse of this right." Cal. Const. Art. I, § 2(a). This critical

26     constitutional protection is known as the Liberty of Speech Clause of the California Constitution,

27     which further provides, "[a] law may not restrain or abridge liberty of speech or press." *Id.* The

28     Liberty of Speech Clause is more protective than the First Amendment of the U.S. Constitution in

that, in California, free speech "cannot be prohibited solely because the property involved is not maintained primarily as a forum for such activities." *Carreras v. City of Anaheim,* 768 F.2d 1039, 1044 (9th Cir. 1985). Because the California Constitution offers "more expansive protection than the federal constitution," the Court must address Plaintiffs' state constitutional claims "in order to avoid unnecessary consideration of the federal constitutional claims." *Cuviello v. City of Vallejo*, 944 F.3d 816, 826 (9th Cir. 2019).

The concept of a "public forum" in the body of constitutional law is shorthand for "the proposition that . . . government cannot regulate speech-related conduct in certain places except in narrow ways shown to be necessary to service significant governmental interests . . . even if the regulation challenged as invalid leaves would-be speakers or paraders with ample alternatives for communicating their views." *Carreras,* 768 F.2d at 1044 (citations omitted). Although the United States Constitution's First Amendment protects public speech "with greatest force in a traditional public forum," the California Constitution "provides such protection to *any public speech* that is not 'basically incompatible with the normal activity of a particular place at a particular time,'" regardless of who owns or operates the place. *Cuviello,* 944 F.3d at 826 (*citing Kuba v. 1-A Agric, Ass'n*, 387 F.3d 850, 857 (9th Cir. 2004) (hereinafter "*Kuba*"). "Unlike the First Amendment, California's free speech clause specifies a right to freedom of speech explicitly and not merely by implication … and expressly embrace[s] all subjects." *Beeman v. Anthem Prescription Management, LLC*, 58 Cal. 4th 329, 341 (2013) (*citing Gerawan Farming, Inc. v. Lyons*, 24 Cal. 4th 468, 491-493 (2000).

Under both the State and Federal Constitutions, however, "[i]t is well established that public areas such as streets and parks are public forums for free expression." *International Society for Krishna Consciousness of California, Inc. v. City of Los Angeles*, 48 Cal. 4th 446, 454-455 (2010)(*citing Hague v. C.I.O.*, 307 U.S. 496, 515-516 (1939)). A park is a "quintessential type of public forum." *Park Management Corp. v. In Defense of Animals*, 36 Cal. App. 5th 649, 661 (2019) (*quoting In re Hoffman,* 67 Cal.2d 845, 849 (1967)). Accordingly, parking lots associated with public entertainment venues, like a rodeo arena, are generally considered public fora. *Kuba,* 387

1    F.3d at 857-58 (9th Cir. 2004) ("We hold that protest activity is not inherently incompatible with

2    the activity to which the parking lots and walkways outside the Cow Palace are dedicated…those

3    areas are therefore public fora for purposes of California Liberty of Speech Clause analysis.").

4         The Rodeo Park is a public forum. The Hayward Area Recreation District (HARD), a public

5    entity, operates the Rodeo Park. PSF ¶ 6. Defendant Rowell Ranch acknowledges that the Rodeo

6    Park is public property, and that groups have the right to leaflet or post signs. *Id.* at ¶¶ 11, 13. Free

7    speech is indisputably compatible with the use of the Rodeo Park, and Plaintiffs are entitled to

8    exercise their free speech rights in this public forum. PSF ¶¶ 6, 11. Plaintiffs have a constitutionally

9    protected right to pass out leaflets and protest at the Rodeo Park.

10        **B.      Defendant HARD's time, manner, and place restriction on free**
          **expression at the Rodeo Park is unconstitutional.**

11

12        "Expressive activity" in a public forum "may be restricted by reasonable 'time, place, and

13   manner' restrictions" in certain circumstances. *Park Management Corp. v. In Defense Of Animals*,

14   36 Cal. App. 5th 649, 666 (2019) (*citing Fashion Valley Mall, LLC v. National Labor Relations Bd*,

15   42 Cal. 4th 850, 870 (2007)). Time, place, and manner restrictions may be imposed if (1) the

16   restrictions "are justified without reference to the content of the regulated speech," (2) "are

17   narrowly tailored to serve a significant governmental interest," and (3) "leave open ample

18   alternative channels for communication of the information." *Comite de Jornaleros v. City of*

19   *Redondo Beach*, 657 F.3d 936, 945 (9th Cir. 2011) (*citing Ward v. Rock Against Racism,* 491 U.S.

20   781, 791 (1989)). If the government fails to satisfy "any single prong of this test," the time, place,

21   and manner restriction is invalid. *Kuba* 387 F.3d at 858, (*citing Grossman v. City of Portland,* 33 F.

22   3d 1200, 1205 (9th Cir. 1994)). "Traditionally and logically, . . . the party seeking to restrict

23   protected speech has the burden of justifying that restriction." *Id*., (*citing Lim v. City of Long Beach*,

24   217 F.3d 1050, 1054 (9th Cir. 2000)).[2]

25

26

27

28   [2] "The standard for evaluating a reasonable time, place, and manner restriction is the same under California and federal
     law." *Cuviello,* 944 F. 3d at 827.

Plaintiffs' Notice of Motion and JOINT Motion for Partial Summary Judgment (3:23-cv-01652-VC)

1    Defendant HARD's "Rowell Ranch Rodeo Policy, Fees and Guidelines," requires a lessee to

2    include a "marked location for public speech" during Rodeo Park events, as part of the "Conditions

3    of Use." PSF ¶ 7. Notably, the "Conditions of Use" does not require the lessee to restrict

4    demonstrators to the area or prohibit demonstrators from demonstrating outside the area. *Id.* This

5    location was designated by Defendant HARD and selected by Defendants Rowell Ranch and

6    HARD as set forth in HARD's Emergency Action Plan for Rowell Ranch Rodeo, 2022. PSF ¶ 9. To

7    comply with its lease obligation, Defendant Rowell Ranch set up a "Free Speech Area" at the

8    Rodeo Park for the rodeo event that took place from May 20-22, 2022. *Id.* Defendant Rowell Ranch

9    positioned the Free Speech Area in an approximately ten-by-five feet section of the field behind the

10   Rodeo Park's front entrance gate, underneath a tree canopy, and just to the right of the access road

11   patrons would use to enter the Rodeo Park. PSF ¶ 12. The area was marked by tape and a small sign

12   that read "Free Speech Area." *Id.* The parties generally agree that the following image depicts the

13   location, but not the size, of the Free Speech Area, as it related to the Rodeo Park vehicle entrance,

14   parking lots, and rodeo event entrance on May 20 and 21, 2022:



PSF ¶ 12; Blome Decl. ¶ 15,  Exh. 35.

Plaintiffs' Notice of Motion and JOINT Motion for Partial Summary Judgment (3:23-cv-01652-VC)

1    Notably, Defendant Rowell Ranch positioned the Free Speech Area in a peripheral location,

2  far from where rodeo patrons would be walking, nearly 100 yards from the rodeo event entrance.

3  PSF ¶ 12. In so doing, Defendant ensured rodeo patrons would drive past the Free Speech Area on

4  their way into the upper and lower parking lots, exit their vehicles, and then walk into the rodeo

5  entrance. PSF ¶¶ 10, 12. If Defendant Rowell Ranch had succeeded in forcing Plaintiffs to relocate

6  to the Free Speech Area, Plaintiffs could not have accessed rodeo patrons. PSF ¶ 12.

7    Turning to the three standards for evaluating a time, place, and manner restriction, HARD's

8  Free Speech Area requirement appears content-neutral on its face. PSF ¶ 9; *see also Kuba,* 387 F.3d

9  at 858 (holding that animal rights activists who were leafletting at Cow Palace could not be

10  constitutionally restricted to a "free speech zone" positioned in a "peripheral area")). Plaintiffs,

11  therefore, turn to the second and third prongs of the time, manner, place test.

12       **1.  Defendant HARD admits it has no idea why it requires a Free Speech
             Area, therefore its restriction requiring a Free Speech Area serves no
13           government interest.**

14    To meet the "significant government interest" prong of the time, place, manner test, the

15  government must do more than invoke an interest; it must show that the proposed expressive

16  activity endangers those interests. *Kuba,* 387 F.3d at 859 (citing *Weinberg v. City of Chicago,* 310

17  F.3d 1029, 1038 (7th Cir. 2002)); *see also Lim,* 217 F.3d at 1054. Defendants cannot meet their

18  burden of demonstrating a significant interest in restricting free speech activity to the Free Speech

19  Area because Defendant HARD has failed to identify any reason, much less a government interest,

20  in restricting Plaintiffs' free speech to the Free Speech Area. Indeed, Plaintiffs asked HARD in

21  discovery why it required a "marked location for public speech" as part of its lease requirements for

22  the Rodeo Park. PSF ¶ 10. HARD responded, "It is unknown the reasons HARD required a marked

23  location for public speech." *Id*. As HARD failed to advance a justification of any sort, the restriction

24  serves no government interest, rendering the interest "insignificant" under the time, place, and

25  manner test. *Kuba,* 387 F.3d at 863 (holding policy does not "sufficiently match" the interest of

26  preventing congestion and is not narrowly tailored to serve the government interest).

27

28

Plaintiffs' Notice of Motion and JOINT Motion for Partial Summary Judgment (3:23-cv-01652-VC)

1       Notably, the only reason Defendant Rowell Ranch gave when asked why they set up the

2   Free Speech Area was because Defendant HARD requires it. PSF ¶ 7. Since HARD had no reason

3   for the requirement, that should be the end of the analysis. However, Defendant Rowell Ranch

4   President Russell Fields filed a court-ordered affidavit in connection with its defense of Plaintiffs'

5   request for a temporary restraining order early in this litigation in which he attempted to advance

6   the Rodeo's interest in maintaining a "Free Speech Area" at the Rodeo Park. PSF ¶ 13. In his

7   declaration, President Fields testified, "The intent of [s]etting up the Free Speech Areas was to keep

8   the roadways clear from anyone setting up camp on them," as the roadways "must be kept free for

9   emergency vehicles to gain access to and from the rodeo." *Id.* President Fields clarified in a

10   supplemental declaration that, "as long as no one sets up camp on the roadway and impedes

11   emergency vehicle traffic *there has not been* and should not be a problem." *Id.* (emphasis added).

12       The U.S. Supreme Court and the Ninth Circuit recognize that the government may have an

13   interest in pedestrian and traffic safety, including preventing congestion in a public forum. *See, e.g.,*

14   *Heffron v. Intl. Soc. For Krishna Consciousness,* 452 U.S. 640, 651-52 (1981); *Kuba,* 387 F.3d at

15   858. This interest may support a valid restriction on speech in a public forum, provided the

16   government shows the proposed communicative activity actually endangers those interests at the

17   event space. *Kuba,* 387 F.3d at 859.  In *Kuba,* the Ninth Circuit considered whether a free speech

18   policy "which relegates communication activity to three small, fairly peripheral areas" could be

19   constitutionally related to any government interest in pedestrian or traffic safety at all. *Id.* at 858.

20   The Ninth Circuit concluded that the government wholly "failed to meet its burden of proving that

21   demonstrators handing out leaflets and carrying signs on the parking lots and walkways outside

22   [Cow Palace] would cause the congestion and danger to safety the government alleged." *Id.* at 859.

23   Importantly, the Ninth Circuit further directed that judicial analysis of claimed government interests

24   must consider the government's actual experience at an event space. *Id.* at 860 (finding no record of

25   harm or safety concerns in supposedly congested areas where the government expected a handful of

26   protestors and the interest in congestion and safety issues was therefore questionable).

27

28

1    Like the defendants in *Kuba,* Defendants Rowell Ranch and HARD have no evidence that

2    demonstrators have ever interfered with emergency vehicle access, nor that they did so during the

3    May protests at the Rodeo Park. Access vehicles, including a large truck, easily moved in and out of

4    the roadways during Plaintiffs' peaceful protests, as can be seen in video footage from the event.

5    PSF ¶ 31. In fact, in his declaration, Rowell Ranch President Fields admitted that the roadway

6    Plaintiffs use for their free speech activities is also used by patrons of the rodeo "walking from their

7    cars to the gate," and that "[i]n years past protestors have handed out pamphlets on the roadway"

8    without incident. PSF ¶ 13. President Fields also testified that protestors have shown up the past ten

9    years, they did not use the "designated Free Speech Area," and "there was never any issue or

10   complaint regarding any interaction between the protestors and attendees of the rodeo or with the

11   Rowell Ranch Rodeo Inc. personnel." *Id.*

12   Plaintiffs, moreover, have never "set up camp" at the rodeo, so President Fields's alternative

13   justification for restricting Plaintiffs to the Free Speech Area is also based on harms that are not

14   real. This alleged purpose for the restriction is also irrelevant, as Defendant HARD's free speech

15   restriction does not direct its lessees to restrict demonstrators from setting up camps in the roadway.

16   PSF ¶¶ 8, 10. Rather, Defendant HARD's unconstitutional restriction broadly requires a "marked

17   location" for public speech during rodeo events, a restriction that fails under even a scintilla of

18   constitutional scrutiny. PSF ¶¶ 8, 10. The harms identified by Defendant Rowell Ranch as

19   justification for restricting Plaintiffs to the Free Speech Area belie the actual experience of the event

20   space. *Berger v. City of Seattle,* 569 F.3d 1029, 1049 (9th Cir. 2009) (*citing Edenfeld v. Fane*, 507

21   U.S. 761, 770-71 (1993) ("a governmental body seeking to sustain a restriction . . . must

22   demonstrate that the harms it recites are real"); *see also Kuba,* 387 F.3d at 859.

23   Defendant HARD cannot meet the requirement of asserting a legitimate interest in its free

24   speech restriction based on the actual experience at the Rodeo Park. Defendant Rowell Ranch

25   admits it has never had an incident involving demonstrators at the Rodeo Park, thus tacitly

26   admitting it also has no real—let alone significant—interest in restricting demonstrators to a

27   designated free speech area. PSF ¶ 13. Like *Kuba*, there is a "void" in the record supporting

28

Plaintiffs' Notice of Motion and JOINT Motion for Partial Summary Judgment (3:23-cv-01652-VC)

1    Defendants' alleged claim that Plaintiffs' peaceful protest and act of handing out leaflets contributes

2    to safety or congestion issues. As such, Defendants cannot satisfy the significant governmental

3    interest prong of a time, place, and manner restriction test, which alone invalidates the requirement

4    for a "marked location for public speech." *Kuba* at 387 F.3d at 858 ("The failure to satisfy any

5    single prong of this test invalidates the requirement.") (*citing Grossman v. City of Portland,* 33 F.

6    3d 1200, 1205 (9th Cir. 1994)). Accordingly, Defendant HARD's restriction requiring lessees of the

7    Rodeo Park to establish the Free Speech Area is unconstitutional and must be struck down.

8               **2.   Defendant HARD's free speech restriction is not narrowly tailored to
                     serve a conceivable government interest.**

9

10          Even if the Court disagrees with Plaintiffs and determines that Defendant HARD's free

11   speech restriction serves a significant government interest, then the Court should strike down the

12   restriction because it is not "narrowly tailored to serve the government's legitimate, content-neutral

13   interests" *Comite de Jornaleros,* 657 F.3d at 947, (*citing Ward* 491 U.S. at 798)). "Although

14   [Defendants] need not necessarily employ the *least*-restrictive alternative, [they] may not select an

15   option that unnecessarily imposes significant burdens on First Amendment-protected speech." *Id.*

16   "If the First Amendment means anything, it means that regulating speech must be a last—not first—

17   resort." *Comite de Jornaleros*, 657 F.3d at 950 (*citing Thompson v. W. States Med. Ctr.*, 535 U.S.

18   357, 373 (2002)). In other words, any restriction on speech activity must "focus on the source of the

19   evils [it] seeks to eliminate . . . and eliminate them without at the same time banning or significantly

20   restricting a substantial quantity of speech that does not create the same evils." *Id.* (*citing Ward* 491

21   U.S. at 799 n. 7)).

22          Again, at the outset, because Defendant HARD failed to advance *any* interest in restricting

23   Plaintiffs' speech, i.e. a source of "evil" it sought to "eliminate," there is no need to analyze whether

24   HARD's free speech restriction is narrowly tailored to serve a significant interest. *Comite de*

25   *Jornaleros,* 657 F.3d at 950. Absent a stated justification, HARD's restriction could never be

26   considered "narrowly tailored to serve the government's legitimate, content-neutral interests." *Id.* at

27   947, (*citing Ward* 491 U.S. at 798)); *see Parks v. City of Columbus*, 395 F. 3d 643, 645 (6th Cir.

28

Plaintiffs' Notice of Motion and JOINT Motion for Partial Summary Judgment (3:23-cv-01652-VC)

2005) (as the City offered no interest to explain why it prohibited Parks' free speech activity in a public forum, the court need not reach the narrow tailoring analysis of the second prong of the test).

Additionally, since Defendant Rowell Ranch admits Plaintiffs' free speech activities were not intended to be restricted to the Free Speech Area and because the facts show Plaintiffs did not in any way threaten its stated interest in keeping the roadway clear, the narrow tailoring analysis of the second prong should also be unnecessary with regards to Defendant Rowell Ranch's stated interest. PSF ¶ 11. Because Defendant Rowell Ranch admits there was no significant interest between restricting Plaintiffs' speech activities and keeping the roadway clear, any restriction on Plaintiffs' activities cannot be considered "narrowly tailored to serve a significant governmental interest." *Comite de Jornaleros*, 657 F.3d at 945.

If Defendant Rowell Ranch's traffic safety interest provided justification to restrict Plaintiffs to a marked location for public speech, then the Court would have to analyze whether that restriction, "burden[ed] substantially more speech than is necessary to further the government's legitimate interests." *Comite de Jornaleros,* 657 F.3d at 948. However, because the uncontroverted facts demonstrate that Plaintiffs' speech activities did not threaten a legitimate government interest, any restriction on Plaintiffs' speech activities could not logically be considered necessary to further a legitimate government interest. And an unnecessary restriction would obviously burden more speech than necessary. It would seem, in the absence of a significant government interest, the only reason for Defendants' attempt to restrict Plaintiffs' speech activities would be a disagreement with the content of Plaintiffs' message. *Foti v. Menlo Park,* 146 F.3d 629, 636 (9th Cir. 1998).

### 3.  If enforced, Defendant HARD's restriction provides no alternative channels for communication.

As detailed above, since there is no significant interest in restricting Plaintiffs to a designated location for public speech at the Rodeo Park, the court need not evaluate whether Defendant HARD's restriction is narrowly tailored to promote those interests. *Berger,* 569 F.3d at 1045. Similarly, this Court need not reach the third prong of the time, place, and manner test which requires analysis of whether the restriction leaves open "ample alternative channels" for

Plaintiffs' Notice of Motion and JOINT Motion for Partial Summary Judgment (3:23-cv-01652-VC)

1    communication. *Id.* Indeed, as the *Kuba* Court stated, "Because the Policy fails the 'narrow

2    tailoring' requirement of our analysis, we need not address whether ample alternative channels for

3    communication exist." *Id.* at 863. However, should the Court disagree with Plaintiffs, the facts

4    indicate Defendant HARD's restriction does not provide for alternative channels of communication.

5            Defendant HARD's restriction requiring a specific, closed-off area for public speech does

6    not leave open any means of expression through Plaintiffs' preferred methods of engaging Rowell

7    Ranch patrons, making eye contact, passing out leaflets, and generally sharing their message of

8    education concerning animal welfare and advocacy. *Ralphs Grocery Company v. United Food and*

9    *Commercial Workers Union LOCAL 8*, 55 Cal. 4th 1083, 1102 (2012). It is well established that an

10   alternative is not "ample" if the restriction fails to permit the speaker to reach their intended

11   audience. *United States v. Baugh*, 187 F.3d 1037, 1042 (9th Cir 1999) (quoting *Bay Area Peace*

12   *Navy v. United States*, 914 F.2d 1224, 1229 (9th Cir. 1990). Communicating effectively is central to

13   free speech as the "right is worthless in the absence of a meaningful method of its expression." *Van*

14   *Nusy Publ'g Co. v Thousand Oaks*, 5 Cal. 3d 817, 821 (1971). While there is no special protection

15   for a particular form of expression, certain forms, including "normal conversation and leafletting on

16   a public sidewalk" are more closely associated with the transmission of ideas. *Id.* at 488.

17           The Rodeo Park's Free Speech Area is located far away from the entrance to the Rodeo

18   Park's arena, restricts demonstrators from accessing patrons as they walk on public pathways within

19   the Rodeo Park, and deprives Plaintiffs of access to the front and back entrance of the Rodeo Park's

20   arena altogether. PSF ¶ 12. This is an extreme restriction, even though Plaintiffs' peaceful

21   demonstration consists of holding signs and banners during while passing out flyers and calmly

22   speaking with patrons. PSF ¶¶ 1, 3, 5. Plaintiffs do not chant or yell to gain attention. PSF ¶ 5.

23           Defendant HARD's restriction requiring lessees to restrict protesters to a "marked location

24   for public speech" does not leave room for Plaintiffs to leaflet Rodeo Park patrons at the front or

25   back entrance of the park arena, and many patrons cannot view Plaintiffs' signs or banners from the

26   Free Speech Area. PSF ¶¶ 9, 12. Indeed, Defendant HARD's restriction provides no such alternative

27   channels of communication at all.

28

1    Defendants have no legitimate justification under the time, place, and manner test for

2    broadly restricting protestors to the Free Speech Area or for prohibiting them from exercising their

3    right to one-on-one communication at the entrances to the Rodeo Park's arena—the "most effective

4    point of persuasion." *Ralphs Grocery Company,* 55 Cal. 4th at 1102. However, should the Court

5    determine that Defendant HARD's restriction can be applied constitutionally in some

6    circumstances, the Court should strike down the restriction as unconstitutional as applied to free-

7    roaming demonstrators—like Plaintiffs—engaged in leafletting and banner and poster-holding

8    activity near the entrances to the Rodeo Park. In either event, Defendant HARD's restriction

9    requiring lessees of the Rodeo Park to establish a Free Speech Area is an unconstitutional restriction

10   on free speech and must be struck down.

11   **C.    Defendants tried to and did threaten, intimidate, and coerce Plaintiffs, as
             they exercised their constitutional right to free speech, in violation of Civil
12           Code, section 52.1.**

13   California Civil Code, section 52.1, known as the Tom Bane Civil Rights Act, authorizes

14   suit against anyone who, by threats, intimidation, or coercion interferes or attempts to interfere with

15   the exercise or enjoyment of rights secured by the constitutions or laws of the state or the United

16   States. Cal. Civ. Code, § 52.1. The statute provides relief, "to protect the peaceable exercise or

17   enjoyment of the right or rights secured, including appropriate equitable and declaratory relief to

18   eliminate a pattern or practice of conduct." Cal. Civ. Code, § 52.1, subd. (b)-(c). In essence, a

19   Section 52.1 claim requires a showing that the defendant, "by the specified improper means of

20   threats, intimidation, or coercion, tried to or did prevent the plaintiff from doing something he or

21   she had the right to do under the law or to force the plaintiff to do something that he or she was not

22   required to do under the law." *Austin B. v. Escondido Union School Dist.*, 149 Cal. App. 4th 860,

23   883 (2007) (internal citations omitted). The word "interferes" means violates. *Id.* There is no

24   requirement to prove animus or intent; a defendant is liable if they interfered with the plaintiff's

25   constitutional rights. *Austin B.*, 1149 Cal. App. 4th at 883 (citing *Venegas v. County of Los Angeles*,

26   32 Cal. 4th 820, 841-843 (2004).

27

28

1    To prevail on a Bane Act claim, Plaintiffs must show two things: (1) Defendants attempted

2    to, or did, interfere with their statutory or constitutional rights; and (2) the attempted, or actual,

3    interference was accompanied by threats, intimidation, or coercion. Cal. Civ. Code, § 52.1(b); *See*

4    *also Cornell v. City and County of San Francisco,* 17 Cal. App. 5th 766, 791 (2017). "Threat of

5    arrest suffices to demonstrate 'threats, intimidation, or coercion' under the Bane Act." *Cuviello v.*

6    *City & County of San Francisco*, 940 F. Supp. 2d 1071, 1102 (N.D. Cal. 2013) (finding a Bane Act

7    claim adequately pled when plaintiffs alleged defendants threatened them with arrest if they

8    protested) (citing *Cole v. Doe*, 387 F. Supp. 2d 1084, 1103-04 (N.D. Cal. 2005)). The threat of

9    arrest by law enforcement can constitute "coercion" under the Bane Act. *Black Lives Matter-*

10   *Stockton Chapter v. San Joaquin Cty Sheriff's Office*, 398 F. Supp. 3d 660, 680 (E.D. Cal. 2019)

11   (citing *Cole*, 387 F. Supp. 2d at 1084). Indeed, "much of what law enforcement officers do in

12   settings that test the limits of their authority is 'inherently coercive.'" *Cornell,* 17 Cal. App. 5th at

13   800.

14   When analyzing "intimidation" under Section 52.1, courts ask whether a reasonable person

15   would have been intimidated by defendants' actions and perceived a threat of violence. *Richardson*

16   *v. City of Antioch*, 722 F. Supp. 2d 1133, 1147 (N.D. Cal. 2010). In keeping with this definition of

17   intimidation, "continuing coercive behavior" may support a finding of liability under Section 52.1

18   when it indicates that a reasonable person may have been intimidated in context. *Richardson*, 722 F.

19   Supp. 2d at 1147-8 (granting summary adjudication for plaintiffs on Bane Act claim as police

20   officers' illegal entry and arrest were made with attendant continuing coercive behavior); *see also*

21   *Ruelas v. Cty of Alameda,* 519 F. Supp. 3d 636, 662 (N.D. Cal. 2021) (holding plaintiffs sufficiently

22   stated cause of action for Bane Act claim where reasonable person would have been intimidated by

23   threats of solitary confinement for refusal to work).

24   As explained above, Plaintiffs have a constitutionally protected right to protest at the Rodeo

25   Park under the California Constitution. In addition, Plaintiffs have a right to be free from bodily

26   restraint or harm under California Civil Code, section 43, which provides: "Besides the

27

28

Plaintiffs' Notice of Motion and JOINT Motion for Partial Summary Judgment (3:23-cv-01652-VC)

personal rights mentioned or recognized in the Government Code, every person has, subject to the qualifications and restrictions provided by law, the right of protection from bodily restraint or harm, from personal insult, from defamation, and from injury to his personal relations." Civ. Code, § 43; "[T]he phrase 'right of protection from bodily restraint or harm' refers simply to an individual's right to be free from physical attack or the threat thereof." *The People  v. Lashley,* 1 Cal. App. 4th 938, 951 (1991); *see also Campbell v. Feld Entertainment, Inc.,* 75 F. Supp. 3d 1193, 1216 (N.D. Cal. 2014) (wherein the court allowed the plaintiff to proceed on the theory Section 43 may serve as predicate for a Bane Act liability). Defendants, therefore, violated Section 52.1 when they acted against Plaintiffs at the Rodeo Park on May 20 and May 21, 2022, as detailed below.

**Defendants ACSO and HARD against Plaintiffs Bolbol and Cuviello**. On May 20, 2022, Defendants Deputy Mayfield and Hart, working in concert, expressed clear intention to arrest Plaintiffs Bolbol and Cuviello through their actions and words, including by informing Plaintiffs they "could be arrested" if they did not move their demonstration to the "Free Speech Area." Defendants Mayfield and Hart attempted—by threat, intimidation, or coercion—to interfere with and prevent Plaintiffs from exercising their free speech rights in violation of Section 52.1. PSF ¶¶ 18-27. Indeed, Defendant Deputy Mayfield, a law enforcement officer with Defendant ACSO, initially informed Plaintiffs they had the right to peacefully demonstrate and could remain at their location if they "keep it peaceful." PSF ¶ 19.

Shortly after, however, despite Plaintiffs' peaceful expression, Defendant Deputy Mayfield returned, this time with Defendant Hart from HARD, and re-approached Plaintiffs, demanding they move to the designated Free Speech Area, far from the pedestrian entrance. *Id.* at ¶ 20. Defendant HARD requested the Sheriff's Deputies instruct Plaintiffs to relocate to the Free Speech Area. PSF ¶ 20. Defendant Hart held a map of the designated area and as he stood confronting Plaintiffs and their colleagues, he informed them, "You're going to have to leave," "You don't have too much of a choice," to move to the designated area, and "failure to do so will not be good." PSF ¶¶ 20-21.

Based on Defendant Deputy Mayfield and Defendant Hart's actions and words, Plaintiff Cuviello feared arrest and directly asked ASCO Defendant Deputy Mayfield, in full uniform beside

Plaintiffs' Notice of Motion and JOINT Motion for Partial Summary Judgment (3:23-cv-01652-VC)

1  Defendant Hart, if Mayfield would arrest Plaintiffs if they did not comply with the request. PSF ¶

2  22. In response, Defendant Deputy Mayfield stated, "You could be arrested" and maintained that

3  arrest was a "possibility." *Id.* Defendant Hart proceeded to individually ask Plaintiffs and each of

4  their colleagues if they refused to leave, insisting they "were not in the designated area." PSF ¶ 24.

5     The threat of arrest felt real to Plaintiffs and to fellow protestors Robyn Newkirk and Mr.

6  Sage. PSF ¶¶ 25-26. Mr. Sage asserted that it felt that Defendant Deputy Mayfield and Hart spoke

7  with one voice, repeating the same messages that they needed to move to the "free speech zone."

8  PSF ¶ 25. Ms. Newkirk stated that "the threat of arrest felt real" and that she had the impression

9  Defendant HARD's Hart was law enforcement "based on the way he was acting." *Id.*

10     Despite feeling intimidated and fearing arrest by these law enforcement individuals working

11 together, Plaintiffs refused to move and asked Defendant Deputy Mayfield to call his watch

12 commander. PSF ¶ 22. Plaintiff Cuviello anticipated, based on his experience peacefully protesting,

13 that a conversation with Defendant Deputy Mayfield's watch commander would result in

14 Defendants Deputy Mayfield and Hart ceasing their threats and intimidation because a watch

15 commander is experienced in ensuring protection of First Amendment rights during peaceful

16 protests. PSF ¶ 25. Fellow protestors Ms. Newkirk and Mr. Sage also did not leave the area as they

17 understood that they were not disobeying the law. *Id.* at ¶ 25.

18     After enduring Defendants' verbal threat of arrest, Plaintiff Bolbol turned to see Rowell

19 Ranch Public Safety Coordinator Gary Houts touching and harassing her colleague, Mr. Sage, as he

20 held a sign stating, "Are You Man Enough to be Kind to Animals." PSF ¶ 29. Mr. Sage told

21 Plaintiff Bolbol that Mr. Houts came up and was pushing him. *Id.* Upset by this interaction, Plaintiff

22 Bolbol informed Mr. Houts this touching and interference was unacceptable. *Id.*

23     Soon after, Defendant Deputy Mayfield re-approached Plaintiff Bolbol and fellow

24 demonstrator Michael Sage as they stood by the back entrance to the Rodeo Park and accused them

25 of blocking the pathway. PSF ¶ 30. At the time, the pathway surrounding Plaintiff Bolbol was clear,

26 and neither she nor Mr. Sage were blocking "ingress," "egress," or the walkway. *Id.* ¶¶ 30-31.

27 Defendant Deputy Mayfield blocked Plaintiff Bolbol's sign with his body as she attempted to move

28

1  away from his body to gain visibility of her sign. PSF ¶ 34 .Mr. Sage felt harassed by Defendant

2  Deputy Mayfield and that the harassment interfered with his exercising free speech. PSF ¶ 30.

3      **Defendant Rowell Ranch against Plaintiff Bolbol**.  In the context of Section 52.1, a threat

4  is actionable when it reasonably tends to produce fear in the victim, and the person against whom

5  the threats are directed reasonably fears that because of the speech, violence will be committed.

6  *McCue v. S. Fork Union Elem. Sch*., 766 F. Supp. 2d 1003, 1011 (E.D. Cal. 2011) (no reasonable

7  person would perceive a refusal to keep a minor in a nut-free environment as a threat of violence).

8  On May 21, 2022, Defendant Rowell Ranch representative George Ferris violated Section 52.1

9  when he physically blocked Plaintiff Bolbol from entering the back parking lot to the Rodeo Park.

10  He intentionally interfered with and prevented Plaintiff Bolbol—by threat, intimidation, or

11  coercion—from exercising her free speech right to one-on-one communication with patrons

12  entering the Rodeo Park arena at the back entrance. PSF ¶ 35.

13      Mr. Ferris tried to and did physically and verbally threaten and intimidate Plaintiff Bolbol as

14  she arrived at the Rodeo Park, carrying a rolled up large yellow banner and wearing a sign over her

15  shoulders stating, "They Buck from the Pain caused by Bucking Straps" with an image of a bull

16  bucking. PSF ¶ 35. As Plaintiff Bolbol attempted to walk through the upper parking lot entrance Mr.

17  Ferris physically blocked her from entering the lot by throwing his body in front of her, pressing

18  against her, and repeatedly yelling at her that she could not enter. *Id.* Eventually, Plaintiff Bolbol

19  escaped Mr. Ferris's unwanted physical assault and managed to get around his body, calling for

20  Plaintiff Cuviello to come help her. *Id.* Plaintiff Bolbol's distress and fear is palpable and obvious in

21  video footage taken by Plaintiffs that day. *Id.*

22      A reasonable person would have been intimidated and perceived a threat of violence from

23  Mr. Ferris's physical imposition and his persistent, coercive conduct. PSF ¶ 35; *see Richardson,* 722

24  F. Supp. 2d at 1147. By pushing his body against Plaintiff Bolbol, continually stepping into her

25  path, and restricting her access to the Rodeo Park, Mr. Ferris tried to and did interfere with Plaintiff

26  Bolbol's constitutionally protected free speech right, by threat, intimidation, and coercion. Cal. Civ.

27  Code, § 52.1; Cal. Const., Art. 1, § 2. In addition, there can be no doubt that, Rowell Ranch,

28

through Mr. Ferris' physical contact with Plaintiff Bolbol, interfered with Plaintiff Bolbol's

statutory right to be free from bodily restraint or harm under Civil Code, section 43; "[T]he phrase

'right of protection from bodily restraint or harm' refers simply to an individual's right to be free

from physical attack or the threat thereof." *The People  v. Lashley,* 1 Cal. App. 4th at 951.

**Defendant Rowell Ranch against Plaintiff Cuviello**.  On May 21, 2022, Defendant Rowell

Ranch Public Safety Coordinator Gary Houts purposefully rammed his electric utility vehicle into

Plaintiff Cuviello as Plaintiff was engaged in free speech activity, in an attempt—by threat,

intimidation, or coercion—to interfere with and stop Plaintiff's free speech activity. PSF ¶  37. At

the time, Plaintiff held a banner which stated, "Not Fun for the Animals." PSF ¶ 36. Mr. Houts's

direct physical attack on Plaintiff was a form of intimidation and coercion meant to interfere with

Plaintiff Cuviello's exercise of his free speech right and the attack carried a threat of future

violence. *See Milk Wagon Drivers v. Meadowmoor Dairies, Inc*., 312 U.S. 287, 294 (1941) ("acts of

violence" can be used for "intimidation" purposes and "could not help but have the effect of

intimidating [] persons… to believe that non-compliance would possibly be followed by acts of an

unlawful character"); *see also* Cal. Penal Code, § 422.6 (violence can be used to intimidate). Mr.

Houts's conduct interfered with Plaintiff Cuviello's rights as he was engaged in peaceful

demonstration. Plaintiff felt threatened and intimidated and, being hit by a vehicle directly

interfered with his ability to exercise his free speech rights. *See* Cal. Civ. Code, § 52.1; PSF ¶ 37.

By striking Plaintiff Cuviello with a golf cart, Mr. Houts also used the threat and

intimidation of violence to interfere, or attempt to interfere, with Plaintiff Cuviello's right to be free

from bodily restraint or harm under California Civil Code, section 43. "[T]he phrase 'right of

protection from bodily restraint or harm' refers simply to an individual's right to be free from

physical attack or the threat thereof." *The People  v. Lashley,* 1 Cal. App. 4th 938, 951 (1991); *see*

*also Campbell v. Feld Entertainment, Inc*., 75 F. Supp. 3d 1193, 1216 (N.D. Cal. 2014) (holding

that plaintiff may proceed on the theory Section 43 may serve as predicate for a Bane Act liability).

Plaintiff feared that Mr. Houts's blatant use of violence without repercussion also constituted a

threat of a future physical attack. Before striking Plaintiff Cuviello, fellow protestors stated rodeo

Plaintiffs' Notice of Motion and JOINT Motion for Partial Summary Judgment (3:23-cv-01652-VC)

1    personnel repeatedly drove golf carts close to them, making them feel their message and point of

2    view at the Rodeo Park was not welcome. PSF ¶ 38. The thought that Plaintiff could be the victim

3    of more physical attacks while continuing to demonstrate through May 22, 2022, and subsequently

4    in 2023, was a motivating factor for Plaintiff to file this lawsuit. PSF ¶ 39.

5         Any reasonable person would have interpreted Defendants' conduct and purposeful

6    encounters with Plaintiffs as threats to his or her personal safety or as threats of arrest.

7         **D.    Defendant Rowell Ranch violated Plaintiffs' rights under California
          Civil Code, section 51.7.**

8

9         The Ralph Civil Rights Act of 1976, codified in California Civil Code, section 51.7,

10   provides that all persons in the state "have the right to be free from any violence, or intimidation by

11   threat of violence, committed against their person or property because of political affiliation." Cal.

12   Civ. Code, § 51.7(b)(1).[3] "Intimidation by threat of violence" includes, but is not limited to,

13   "making or threatening to make a claim or report to a peace officer or law enforcement agency that

14   falsely alleges that another person has engaged in unlawful activity or in an activity that requires

15   law enforcement intervention, knowing that the claim or report is false, or with reckless disregard

16   for the truth or falsity of the claim or report." *Id.* at § 51.7 (b)(2).

17        To prevail on their Ralph Civil Rights Act claims, Plaintiffs must show that: "(1) Defendants

18   committed or threatened violent acts against Plaintiffs; (2) Defendants were motivated by their

19   perception of Plaintiffs' political affiliation; (3) Plaintiffs were harmed; and (4) Defendants'

20   conduct was a substantial factor in causing Plaintiffs harm." *Campbell v. Feld Entertainment, Inc*.,

21   75 F. Supp. 3d 1193, 1205 (2014) (citations and quotations omitted); *see also Austin B.,* 149 Cal.

22   App. 4th at 880-881. The term "because of" in Section 51.7 means the defendant's "bias motivation

23   must be a cause in fact of the offense, whether or not other causes also exist." *In re MS*, 10 Cal. 4th

24   698, 719 (1995). The offense does not have to be "committed exclusively or even mainly because of

25   the prohibited bias," but the bias cannot be "so infinitesimal or so theoretical that it cannot properly

26   be regarded as a *substantial factor* in bringing about the particular result." *Id*. at 719-720.

27   _____

28

### 1.   Animal rights is a qualifying political affiliation under Section 51.7.

Plaintiffs are animal rights activists. PSF ¶ 1. This District of Northern California has already determined that Plaintiffs' beliefs in animal rights, including that non-human animals have a right to a life free from suffering, is a political position and affiliation for the purposes of Civil Code, section 51.7. *See Ennis v. City of Daly City*, 756 F. Supp. 2d 1170, 1178 (2010) (concluding that animal-rights activism was sufficient "political affiliation" under Section 51.7); *Austin B.,* 149 Cal. App. 4th at 881 (citing CACI instructions for Section 51.7 stating the "motivating reason" for the defendant's conduct must be perception of the plaintiff's disability); PSF ¶ 1 (Plaintiffs were animal rights activists and animal rights advocacy is a political position). No party disputes this fact. Moreover, there is no doubt that Defendants knew Plaintiffs were animal rights activists. PSF ¶ 15 (upon arrival, Plaintiffs displayed a banner and held animal rights signs). Defendants acted to deprive Plaintiffs of their constitutional right to free speech out of animus, as detailed below.

### 2.   Defendant Rowell Ranch's use of violence against Plaintiffs was motivated to suppress Plaintiffs' speech by animus toward their animal rights activism in violation of Section 51.7.

To establish that Defendant Rowell Ranch's motivation to suppress Plaintiffs' speech was based on Plaintiffs' political affiliation, Plaintiffs must identify facts "supporting an inference" that Defendant's attack was based on their affiliation with "animal-rights activism" or on Defendant's perception of Plaintiffs' affiliation. *Ennis v. City of Daly City*, 756 F. Supp. 2d 1170, 1178 (2010); *see Austin B. v. Escondido Union School Dist.*, 149 Cal. App. 4th 860, 881 (2007) (granting a nonsuit where disabled children failed to show defendant committed the alleged violent actions "because he was biased against or had an animus against disabled children.") *Id.*

Animus toward animal-rights activism, including speech, is well-documented. *Animal Legal Def. Fund v. Wasden*, 878 F.3d 1184, 1199 (9th Cir. 2018) (applying searching scrutiny to a state law criminalizing whistleblower activity by employees of agricultural facilities in Idaho based on evidence that the state legislature passed the provision in part to punish animal rights journalists and activists, a political affiliation (though not a protected class)). At the Rodeo Park, Defendants' motivation to interfere with Plaintiffs' protected free speech activity was based on a desire to

Plaintiffs' Notice of Motion and JOINT Motion for Partial Summary Judgment (3:23-cv-01652-VC)

1    suppress Plaintiffs' clearly conveyed animal rights messages, which Plaintiffs presented through

2    signs and banners, and through offering leaflets with their message.

3         Defendant Rowell Ranch's Public Safety Coordinator Gary Houts began harassing Plaintiffs

4    soon after he approached them on May 20, 2022, the first day of Plaintiffs' demonstrations at the

5    Rodeo Park. PSF ¶¶ 13-15. Mr. Houts initially approached Plaintiffs only after they erected a large

6    yellow banner reading "Not Fun for the Animals." PSF ¶ 15. At the time, Plaintiff Cuviello was

7    wearing a sign across his body, "Bulls are not mean and wild, they are docile," with a photo of a

8    large bull, while Plaintiff Bolbol's sign stated, "They Buck from Pain Caused by Bucking Straps,"

9    with a photo of a bucking bull. *Id.* Upon contact, Mr. Houts stated to Plaintiffs, "If you want to do

10   this, we have an area set up for you up there. The Free Speech Area is up there not here." PSF ¶ 16.

11   Mr. Houts understood Plaintiffs were expressing a political stance with their signs and banner and

12   wanted to move them to the Free Speech Area. PSF ¶¶ 11, 16

13        When Plaintiffs told Mr. Houts to call the police if he had a problem, he tried to pull down

14   Plaintiffs' banner. PSF ¶ 16. Plaintiffs told him not to touch them and to call the police if he had a

15   problem. *Id.* Mr. Houts then told Plaintiffs he could block their banner and proceeded to stand in

16   front of Plaintiffs' banner to obstruct people's view of the banner's message. *Id.* Mr. Houts insisted,

17   "You're not in the area you need to be," and "I can block you." *Id.*. Mr. Houts then told Plaintiffs

18   they did not understand what they are saying [about animals used in the rodeo], they were spreading

19   lies and the photos on their signs were altered. *Id.*

20        A short time later, Mr. Houts proceeded to stand in front of Plaintiffs' colleague Mike Sage

21   as he held a sign and handed out leaflets. PSF ¶ 29. Mr. Sage told Plaintiff Bolbol that Mr. Houts

22   had pushed him. *Id.* Plaintiffs and their colleagues did not witness Mr. Houts or any other Rowell

23   Ranch volunteers treating patrons similarly – rather they politely greeted and welcomed patrons,

24   often hugging persons they knew. PSF ¶¶ 18 (Defendant Mayfield hugged a rodeo representative),

25   38 (rodeo staff hostile and did not like  messages about animal cruelty).

26

27

28

Plaintiffs' Notice of Motion and JOINT Motion for Partial Summary Judgment (3:23-cv-01652-VC)

1    At all times, Defendant Rowell Ranch's Public Safety Coordinator Gary Houts's actions

2 toward Plaintiffs were substantially motivated by his understanding and perception that Plaintiffs

3 are animal rights activists.

### 3.   Defendant Rowell Ranch made an intentionally false report to law enforcement in reckless disregard for the truth in violation of Section 51.7.

6    On May 20, 2022, Rowell Ranch Public Safety Coordinator Gary Houts called the police

7 and intentionally falsely reported that Plaintiffs were blocking the parking lot and the entrance in

8 violation of Civil Code, section. 51.7(b)(2). PSF ¶¶ 16, 17. On his phone call with law enforcement,

9 Mr. Houts said, "[Plaintiffs] are protesting, and they're blocking the parking lot, they're blocking

10 access." PSF ¶ 17. The Dispatcher asked if they had signs, and Mr. Houts replied, "Yes they do,

11 they're blocking the entrance." *Id.* Plaintiffs told Mr. Houts to stop lying. *Id.* The video evidence is

12 clear that Plaintiffs never blocked the parking lot, the entrance, nor access to the Rodeo Park on any

13 of the days they were protesting. *Id.* Mr. Houts was standing in front of Plaintiffs when he called

14 law enforcement and could plainly see Plaintiffs were not blocking the parking lot, entrance, or

15 access road. *Id.* Mr. Houts knowingly made a false report to law enforcement based on his animus

16 for Plaintiffs' political affiliation as animal rights activists, violating Plaintiffs' rights under Civil

17 Code, section 51.7.[4]

### 4.   Defendant Rowell Ranch used violence against Plaintiff Cuviello, because of his political affiliation, by ramming his electric utility vehicle into him in violation of Section 51.7.

20    On May 21, 2022, Plaintiff Cuviello was standing behind an electric utility vehicle parked

21 near a tree at the back entrance. PSF ¶ 36. Along with another activist, Plaintiff Cuviello was

---

[4] Mr. Houts also made the report with reckless disregard for the truth of the report, a further violation of Section 51.7(b)(2). Reckless disregard for the truth is shown by "subjective awareness of probable falsity," established if Mr. Houts had "obvious reasons to doubt the…accuracy of his report." *Herbert v. Lando*, 441 U.S. 153, 156-157 (1979) (*citing Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 335 n. 6 (1974) and *St. Amant v. Thompson*, 390 U.S. 727, 732 (1968), respectively). The fact that Mr. Houts was standing in front of Plaintiffs and could clearly see they were not blocking is an "obvious reason" for him to doubt the accuracy of his report.

1   holding a banner that read, "Not Fun For The Animals." *Id.* Because there was a breeze, the breeze

2   would blow Plaintiff's cloth banner causing it to occasionally touch an electric utility vehicle near

3   where Plaintiff stood. *Id.* Rowell Ranch Public Safety Coordinator Gary Houts, who had harassed

4   Plaintiff Cuviello the night before and unable to stop Plaintiff from exercising his free speech,

5   approached Plaintiff and told him not to allow the cloth banner to touch his electric utility vehicle.

6   *Id.* Without any objection, Plaintiff Cuviello complied with Mr. Houts's request and took a few

7   steps away from the vehicle. *Id.* Mr. Houts then told Plaintiff he had to move and climbed into the

8   electric utility vehicle which was facing away from Plaintiff. PSF ¶ 37. Mr. Houts could have easily

9   driven the vehicle forward to leave; there was no reason Plaintiff needed to move. *Id.* A woman told

10  Plaintiff he had to move so Mr. Houts could move his vehicle. *Id.* As Plaintiff explained to the

11  woman that Mr. Houts could drive forward, Mr. Houts accelerated his vehicle in reverse and

12  rammed it into Plaintiff Cuviello. *Id.* Plaintiff got angry and told Mr. Houts that he had just

13  assaulted him with a deadly weapon. *Id.* Mr. Houts smiled and replied, "I asked you to move." *Id.*

14          The evidence shows Mr. Houts rammed Plaintiff because of his political affiliation and that

15  Mr. Houts' bias was a "substantial factor," if not the only factor, guiding his conduct. It is clear Mr.

16  Houts was aware of Plaintiff's political affiliation as he had harassed Plaintiff the night before,

17  based on Plaintiff's political position. PSF ¶¶ 15-17. Mr. Houts also lied to law enforcement to get

18  law enforcement to force Plaintiff to demonstrate in the Free Speech Area. PSF ¶ 17. When that

19  attempt failed, Mr. Houts can be seen lamenting that failure in a group with Defendants Hart and

20  Mayfield. PSF ¶ 32. Mr. Houts looked visibly disappointed when Defendant Mayfield stated that

21  Plaintiffs need not demonstrate in the Free Speech Area, lamenting, "I'm not blaming you all." *Id.*

22          Additionally, as he struck Plaintiff Cuviello, Plaintiff was holding an animal rights banner

23  and Mr. Houts had just told Plaintiff to not let it touch his vehicle. PSF ¶ 36. It is undisputable Mr.

24  Houts acted towards Plaintiff solely based on his animus for Plaintiff's political position. Because

25  Mr. Houts could have easily driven forward, there was simply no other reason to ram Plaintiff other

26  than the animus Mr. Houts had openly expressed since his first encounter with Plaintiff the night

27  before. As Mr. Houts couldn't restrict Plaintiff through legal means, he deployed illegal means.

28

Plaintiffs' Notice of Motion and JOINT Motion for Partial Summary Judgment (3:23-cv-01652-VC)

No party could dispute that ramming into a person with an electric utility vehicle constitutes violence. Defendant Rowell Ranch violated Plaintiff Cuviello's rights under Civil Code, section 51.7 when its public safety coordinator struck him out of animus for Plaintiff's political affiliation.

### E.  Defendant Rowell Ranch is liable for assault and battery against Plaintiffs.

A cause of action for assault is proven by the following elements: (1) defendant acted with intent to cause harmful or offensive contact, or threatened to touch plaintiff in a harmful or offensive manner; (2) plaintiff reasonably believed she was about to be touched in a harmful or offensive manner or it reasonably appeared to plaintiff that defendant was about to carry out the threat; (3) plaintiff did not consent to defendant's conduct; (4) plaintiff was harmed; and, (5) defendant's conduct was a substantial factor in causing plaintiff's harm. *So v. Shin*, 212 Cal. App 652, 668-669 (2013) (citing Judicial Council of California Civil Jury Instructions ("CACI") No. 1301 (2005) and *Plotnik v. Meihaus*, 208 Cal. App. 4th 1590, 1603-1604 (2012)). Assault with a deadly weapon includes assault with "any object, instrument, or weapon which is used in such a manner as to be capable of producing and likely to produce, death or great bodily injury." *People v. Aledamat*, 8 Cal. 5th 1, 6 (2019).

Battery is demonstrated by the following elements: (1) defendant touched plaintiff, or caused plaintiff to be touched, with the intent to harm or offend plaintiff; (2) plaintiff did not consent to the touching; (3) plaintiff was harmed or offended by defendant's conduct; and (4) a reasonable person in plaintiff's position would have been offended by the touching." *So,* 212 Cal. App. at 669 (citing CACI No. 1300 (2004) and *Kaplan v. Mamelak*, 162 Cal. App. 4th 637, 645 (2008)). A harmful contact, intentionally done, is the essence of a battery. *Ashcraft v. King,* 228 Cal. App. 3d 604, 612 (1991).

### 1.  Defendant Rowell Ranch committed assault and battery against Plaintiff Bolbol.

On May 21, 2023, as Plaintiff was holding her protest sign and entering the Rodeo Park through the back entrance, Mr. Ferris stepped in front of her and told her, "you need tickets," and physically blocked her from entering the back parking lot by repeatedly stepping in front of her,

1   reaching his arm and torso in front of her body, saying "stop it, go!" and pushing his body into her.

2   PSF ¶ 35. Mr. Ferris intended to cause this contact; as Plaintiff Bolbol tried to walk around him, he

3   moved his body in front of her and continued to step in front of her and push his body against her to

4   block her. *Id*. Plaintiff Bolbol reasonably believed she would be touched in an offensive way, which

5   is why she attempted to move around Mr. Ferris. *Id.* Plaintiff Bolbol did not consent to Mr. Ferris

6   touching her and she repeatedly yelled for him to stop touching her. *Id*. As she called out to Plaintiff

7   Cuviello, Mr. Ferris shouted, "You're touching me" and continued to press his body her. *Id.* The

8   facts show that Mr. Ferris committed assault against Plaintiff Bolbol.

9       Mr. Ferris also committed battery against Plaintiff Bolbol when he acted with intent to touch

10  Plaintiff Bolbol in an offensive manner without Plaintiff's consent. *So,* 212 Cal. App. at 669. At the

11  time of pushing his body into Plaintiff Bolbol, Mr. Ferris understood that Plaintiff did not consent

12  because she yelled, "Stop it!" repeatedly. *See Fluharty v. Fluharty*, 59 Cal. App. 4th 484, 499

13  (1997) (citing *Ashcraft*, 228 Cal. App. 3d at 611(contact is unlawful when unconsented to)).

14  Plaintiff Bolbol was expressly offended by the touching, as demonstrated by her shouting at him to

15  stop while attempting to walk around him. PSF ¶ 22. A reasonable person would have been

16  offended by Mr. Ferris's touching because it was unwelcome and prevented physical movement.

17  *See Rains v. Superior Court,* 150 Cal. App. 3d 933, 938 (1984) (holding a battery is a violation of

18  an individual's interest in freedom from intentional, offensive unconsented contacts with a person).

19  Accordingly, Mr. Ferris committed assault and battery against Plaintiff Bolbol.

20          **2.  Defendant Rowell Ranch committed assault with a deadly weapon
            and battery against Plaintiff Cuviello.**

21

22      On May 21, 2022, Rowell Ranch Public Safety Coordinator Gary Houts intended to and did

23  cause harmful and offensive touching against Plaintiff Cuviello when he rammed his electric utility

24  vehicle into Plaintiff. PSF ¶ 31. Mr. Houts, familiar with Plaintiff Cuviello due to their interactions

25  the day prior, intentionally rammed his electric utility vehicle directly into Plaintiff. PSF ¶ 37. In

26  fact, there was ample room to move the vehicle forward without backing up into Plaintiff Cuviello.

27  *Id.* Plaintiff Cuviello did not consent to this touching and was expressly offended by the touching,

28

Plaintiffs' Notice of Motion and JOINT Motion for Partial Summary Judgment (3:23-cv-01652-VC)

1    as evident by his yelling out. *Id.* A reasonable person would have been offended by this touching,

2    being run into by an accelerating vehicle at close range. Mr. Houts's action was willful, wonton and

3    reckless, and could have resulted in serious injury. Because Mr. Houts touched Plaintiff Cuviello

4    with a motor vehicle "in such a manner as to be capable of producing and likely to produce, death

5    or great bodily injury," he committed assault and battery with a deadly weapon against Plaintiff

6    Cuviello. *People v. Aledamat*, 8 Cal. 5th at 6.

7            **3.   Mr. Ferris and Mr. Houts acted within the scope of their agency and
                     Rowell Ranch is liable.**

8

9            Respondeat superior is a form of vicarious liability reflected in California statutory and

10   common law that holds an employer vicariously liable for torts committed by an employee, within

11   the scope of employment. *Presbyterian Camp & Conference Centers, Inc. v. Superior Court*, 12

12   Cal. 5th 493, 502 (2021); Cal. Civ. Code, § 2338. Principals are responsible to third parties for

13   wrongful acts committed by their agents in the "transaction of the business of the agency." Cal. Civ.

14   Code, § 2338. Typically, these acts are part of the business the agent is employed to do. *Caldwell v.*

15   *Farley*, 134 Cal. App. 2d 84, 88 (1955) (union worker's assault within scope of employment).

16           Defendant Rowell Ranch volunteer George Ferris and Public Safety Coordinator Gary Houts

17   are agents under the supervision and control of principal Defendant Rowell Ranch, President

18   Russell Fields and Site Boss Brian Morrison. PSF ¶¶ 15, 35; Cal. Civ. Code, § 2338. Both Mr.

19   Ferris and Mr. Houts acted against Plaintiffs while transacting the business of Defendant Rowell

20   Ranch at the Rodeo Park. PSF ¶¶ 15, 25. *See Caldwell,* 134 Cal. App. at 88 (the scope of

21   employment includes assessing whether the agent was occupied with the principal's business).

22           Mr. Ferris and Mr. Houts directly deprived Plaintiffs of their rights and as such, their

23   employer, Rowell Ranch is vicariously liable. Plaintiffs are entitled to exemplary damages against

24   Defendant Rowell Ranch for the conduct of Mr. Ferris and Mr. Houts, as each defendant committed

25   assault and battery against Plaintiff Bolbol and Plaintiff Cuviello, respectively.

26           **IV.    Conclusion**

27           For the foregoing reasons Plaintiffs respectfully request that this Court grant Plaintiffs' Joint

28   Motion for Partial Summary Judgment on their first, second, third, fourth, and fifth causes of action.

Plaintiffs' Notice of Motion and JOINT Motion for Partial Summary Judgment (3:23-cv-01652-VC)

1

2                                              Respectfully submitted,

3

4    DATED: June 3, 2024                       */s/ Jessica L. Blome*
                                               Jessica Blome
5                                              Lily R. Rivo
                                               GREENFIRE LAW, PC
6                                              *Attorney for Plaintiff Deniz Bolbol*

7    DATED: June 3, 2024                       *Joseph P. Cuviello*
                                               JOSEPH P. CUVIELLO
8                                              *Plaintiff In Pro Se*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiffs' Notice of Motion and JOINT Motion for Partial Summary Judgment (3:23-cv-01652-VC)