Jessica L. Blome (State Bar No. 314898)
Lily A. Rivo (State Bar No. 242688)
GREENFIRE LAW, PC
2748 Adeline Street, Suite A
Berkeley, CA 94703
Ph/Fx: (510) 900-9502
Email: jblome@greenfirelaw.com
   lrivo@greenfirelaw.com

*Attorneys for Plaintiff Deniz Bolbol*

JOSEPH P. CUVIELLO
205 De Anza Blvd., #125
San Mateo, CA 94402
Telephone: (650) 315-3776
Email: pcuvie@gmail.com

*Plaintiff in Pro Se*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH P. CUVIELLO and DENIZ BOLBOL, individually,<br><br>     PLAINTIFFS.<br><br>  v.<br><br>ROWELL RANCH RODEO, INC.; HAYWARD AREA RECREATION AND PARK DISTRICT; HAYWARD AREA RECREATION AND PARK DISTRICT PUBLIC SAFETY MANAGER/RANGER KEVIN HART; ALAMEDA COUNTY SHERIFF'S OFFICE; ALAMEDA COUNTY DEPUTY SHERIFF JOSHUA MAYFIELD; and DOES 1 and 2, in their individual and official capacities, jointly and severally,<br><br>     DEFENDANTS. | Case No. 3:23-cv-01652-VC<br><br>**DECLARATION OF JOSEPH P. CUVIELLO IN SUPPORT OF PLAINTIFFS' JOINT MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date:   August 15, 2024<br>Time:   10:00 a.m.<br>Judge:   Hon. Vince Chhabria<br>Courtroom: 5 – 17th Floor |

I, Joseph Cuviello, declare as follows:

  1.  I am a Plaintiff in the above-captioned case.

2. I have personal knowledge of the facts declared herein and will competently testify to them if called upon to do so. I am submitting this declaration in support of Plaintiffs' Motion for Summary Judgment.

3. I have been an advocate for animal rights since 1986, and am a co-founder of the grassroots group, "Humanity through Education," a 501(c)3 organization.

4. My speech and association focuses on the abuse and mistreatment of animals by circuses, rodeos, and other "entertainment" entities, which is of great public concern locally, nationally, and internationally.

5. During my years of animal rights activism I have been falsely arrested and had my free speech rights violated by threats of arrest from law enforcement officers on numerous occasions and had to file a number of lawsuits over the years to have my rights upheld and protected, including *Bolbol, et al., v. Ringling,* Case No. 5:04-cv-00082; *Cuviello, et al., v. City of Oakland, et al,* Case No. C06-05517; *Cuviello, et al., v. City of Stockton, et al,* Case No.: 2:07-cv-01625; *Cuviello, et al., v. City of Oakland, et al,* Case No. 3:09-cv-02955; *Cuviello, et al., v. Cal Expo, et al,* Case No. 2:11-cv-02456; *Cuviello, et al., v. State of Nevada, et al,* Case No. 3:12-cv-00529; *Cuviello, et al., v. City and County of San Francisco, et al,* Case No. 12-cv-03034; and *Cuviello, v. City of Vallejo, et al,* Case No. 2:16-cv-02584.

6. As an Animal Rights activist I consider Animal Rights a political issue and animal rights advocacy a political position, as governmental bodies often consider legislation regarding animal rights' issues. A true and correct copy of documents characterizing animal rights as a political position, including an August 9, 2022, Alameda County Board of Supervisors recommendation regarding an ordinance amending the Alameda County Ordinance Code to prohibit certain rodeo activity, and a San Jose Mercury news article referencing this ordinance, *Ban on wild cow milking – plus spurs and bucking straps – could threaten Alameda County's rodeos,* August 14, 2022 is attached as **Exhibit 18** (000020 – 000027). The Mercury News article characterizes the Alameda County Board hearing as pitting "animal-rights groups against lifelong Alameda County ranchers."

7.	I have sought and will continue to seek out opportunities to demonstrate at events that abuse and mistreat animals, like Rowell Ranch Rodeo.

8.	I have demonstrated against Rowell Ranch Rodeo for many years and plan to continue to demonstrate at Rowell Ranch Rodeo Park ("Rodeo Park") in the future. I demonstrated at Rodeo Park intermittently from 1988 to 2002. In 2018 and 2019, prior to our planned demonstrations against the Rowell Ranch Rodeo, I contacted, via email, HARD General Manager Paul McCreary to ensure our free speech rights would be upheld and protected during our demonstrations. Although we were told about an established free speech area, we didn't utilize it and instead stood near the entrance where we have always stood. There were no issues with the Alameda County Sheriff's Office regarding our free speech activities during these two years. True and correct copies of my 2018 and 2019 email communications with Mr. McCreary are attached as **Exhibits 19** (000028 – 000039), collectively.

9.	While demonstrating, we hold signs and banners, and I approach and offer people leaflets with a calm voice, respectful demeanor, and make direct eye contact. I also ask that any attendees associated with Humanity Through Education do the same at demonstrations. My almost 40 years of experience with organizing and attending demonstrations is that one-on-one communication is the most effective means of communicating your message, including through leaflets.

10.	In my experience, the most successful point of persuasion at an event like Rowell Ranch Rodeo is at, or near, the pedestrian entrance. However, I do not block the entrances or exits, nor do I interfere with patrons' and event staff's ability to enter or exit the venues.

11.	I put a lot of time, energy, and money into organizing demonstrations and preparing signs, leaflets, and banners in advance of my demonstrations, with the hope of changing hearts and minds. When I have to interact with authorities threatening me with arrest for peacefully exercising my constitutional free speech rights it is emotionally and mentally stressful, as it takes my focus off of my education efforts and places me in an uncertain position not knowing whether I will be able to effectively educate patrons. It is also emotionally and

mentally stressful to have to deal with harassment and violence from venue employees who target me because they do not like my animal rights message.

12. From May 20 through May 22, 2022, my wife, Deniz Bolbol (co-Plaintiff in the above-captioned case), and I organized and attended demonstrations against Rowell Ranch Rodeo at the Rodeo Park in Castro Valley, California.

13. While demonstrating on May 20th, 2022, I held a sign that had a large photo of a man petting a bull that read, "Bulls Are Not Mean & Wild; They Are Docile." A true and correct copy of a photo of the sign is attached as **Exhibit 14** (000014).

14. On my initial approach to the event on May 20, 2022, together with my wife and co-Plaintiff Deniz Bolbol, I noticed the event had partitioned off an area near the vehicle entrance with a sign that read "Free Speech Area." Because this area was far from the pedestrian entrance, I knew this location would not be an effective option to communicate our message. We would not have been able to communicate with patrons one-on-one, or pass them fliers, and our banners and signs would not have been visible to them. A true and correct copy of a video I recorded on May 20, 2022, showing the location of the "Free Speech Area" is attached as **Exhibit 6** (000006) (timestamp 0:32).[1]

15. This peripheral location is far from the pedestrian entrance to the rodeo and it would not be possible to pass out leaflets or engage in conversation with rodeo patrons from the Free Speech Area.

16. Plaintiff Bolbol and I proceeded to where we have always demonstrated, near the pedestrian entrance, an area traversed by all patrons who enter at this entrance and where we were initially confronted by Defendants. During this time, we held a banner which stated, "Not Fun for the Animals."

17. At the pedestrian entrance to the Rodeo Park, a Rowell Ranch Rodeo employee, Doe Defendant 1, later identified by Rowell Ranch Rodeo as Public Safety Coordinator Gary

---

[1] Exhibits nos. 6-11 are video exhibits formerly filed with the Court in Dkt. 28-4, May 8, 2023 as Exhibits to Joseph P. Cuviello Declaration ISO Plaintiff's Motion for a Temporary Restraining Order. These exhibits may contain the former heading, ie "Exhibit D – Cuviello Dec – Pt 1."

Houts, told me and Plaintiff Bolbol to move to the "Free Speech Area," tried to grab my banner and stood in front of the banner to block our message regarding animal welfare. I told Mr. Houts it he had a problem he should call the police. Insisting that Plaintiffs were not in the right area, he also told us we didn't understand what we were saying [about animals used in the rodeo], we were spreading lies and the photos on our signs were altered. None of what he said was true but he made clear his disdain for us and our message. Mr. Houts then called the police and lied to them by stating that we were blocking the parking lot and entrance. At no point did we block the entrance or interfere with ingress and egress. We told Mr. Hout to stop lying. A true and correct copy of a video I recorded on May 20, 2022, showing this interaction is attached as **Exhibit 7** (000007).  *See* Exh. 7 (Mr. Houts phone call to Alameda County Sheriff's Office (timestamp 3:00 – 3:48)).

18. When the Alameda County Sheriff's Office (ASCO) deputies arrived approximately five minutes later, after speaking with rodeo representatives the officers came over to speak with us. The officers acknowledged our efforts were protected free speech and told us that we could remain at our current location to demonstrate. Defendant Deputy Mayfield told us about the free speech area and said if we choose to not use it to just "keep it peaceful."

19. Soon after, around 6:20 p.m., I was approached by both Defendant Kevin Hart, the Hayward Area Recreation and Park District (HARD) Public Safety Manager, and Defendant Deputy Mayfield, who were working in concert. While I was exercising my free speech rights they threatened me with arrest if I did not move to the "Free Speech Area." A true and correct copy of a video I recorded on May 20, 2022, depicting these events is attached as **Exhibit 8** (000008).

20. During my interaction with Defendant Hart, Defendant Deputy Mayfield stood beside him in uniform. Defendant Hart showed us a map of the free speech area and told us "failure" to move to the area "will not be good" and I asked him what will happen if we don't move and he said "You'll just have to figure that out when it happens" and that he had no "responsibility to tell [me]." Exh. 8 (timestamp  0:11-0:31).

21. At this point I directly asked Defendant Deputy Mayfield if he would arrest us if we did not move to the Free Speech Area, and he said, "You could be arrested." Exh. 8 (timestamp 0:31- 0:35). Because Defendant Mayfield was now threatening me with arrest, after just telling me our demonstration was fine outside the free speech area, and because I did not want to be arrested, I asked him to let me know ahead of time if he was going to arrest me so I could leave.

22. Defendant Mayfield told me he's not required to tell me whether or not he would arrest me and reiterated I "could be arrested," it was a "possibility." I told him he needed to call his watch commander, because my experience is that watch commanders are more reasonable than on-site officers who are personally involved in the interaction. Exh. 8 (timestamp 0:44).

23. Defendant Deputy Mayfield then made a call on his cellphone, which I believed was to his watch commander, while Defendant Hart continued to harass us by telling us we did not have a right to be on the property and that there was a "designated area." He added, "You don't have too much of a choice." Exh. 8 (timestamp 1:30- 1:32). Defendant Hart then proceeded to ask each demonstrator if they were refusing to leave, and each of them said they would not leave. *Id.* (timestamp 2:05 – 2:20). I was fearing I could be arrested but decided to wait and see what Defendant Mayfield's watch commander would say.

24. After a short time, Defendant Deputy Mayfield got off his phone and spoke with Defendant Hart, the other Sheriff officers, and a woman who appeared to be affiliated with the Rowell Ranch Rodeo. At this point I knew Defendant Mayfield did not get the okay to arrest us. Moments later, Defendant Deputy Mayfield returned to our group and stated we must stand off the walkway, and I told him we were not blocking anyone. A true and correct copy of a video I recorded on May 20, 2022, depicting these events is attached **Exhibit 9** (000009). *See* Exh. 9 (timestamp 0:02-1:05).

25. Defendants Deputy Mayfield and Rowell Ranch Rodeo representatives intermittently harassed the protesters about using the walkway to pass out leaflets. I, and my colleagues, proceeded to demonstrate near the front entrance, standing in the walkway and

leafleting patrons as they passed without interference or incident. At no time did we block access to the entrance, and in fact, access vehicles, including a large truck, easily moved in and out of the roadways. A true and correct copy of a video I recorded on May 20, 2022, depicting events that occurred, including showing our position in relation to the entrance, while I was demonstrating at Rowell Ranch Rodeo is attached as **Exhibit 10** (000010).

26. During my interaction with Defendant Hart and Defendant Deputy Mayfield I felt intimidated by their threat of arrest which I believed was a tactic they were using to coerce me into giving up my free speech right to demonstrate outside the free speech area. My fear of being arrested was based on verbal threats, including, but not limited to, Defendant Hart stating, "You don't have too much of a choice," to move to the designated "Free Speech Area" and "failure to do so will not be good," and Defendant Deputy Mayfield telling me I "could be arrested" and that it was a "possibility" if I didn't move to the free speech area.

27. My fear of being arrested was also based on my two contradictory interactions with Defendant Mayfield; the first when he told us to stay peaceful if we choose to not use the free speech area and the second when he told me I could be arrested if I didn't move to the free speech area. Based on my years of experience with law enforcement I understood Defendants Hart and Deputy Mayfield threat of arrest was an effort to intimidate and coerce us to give up our right to free speech near the entrance.

28. As patron numbers at the front entrance reduced, we moved to the back entrance to demonstrate and pass out leaflets. At the back entrance, Plaintiff Bolbol and Mr. Sage stood near the entrance holding signs and leafleting, I stood about 30 feet from the entrance, near a tree, holding a sign and leafleting near a banner being held by two other demonstrators. At this point, Defendant Deputy Mayfield approached Plaintiff Bolbol and based on his earlier harassment of the demonstrators at the front entrance, I video monitored his actions. A true and correct copy of a video I recorded on May 20, 2022, depicting events that occurred while I was demonstrating at Rowell Ranch Rodeo is attached as **Exhibit 11** (000011).

29. I could see Defendant Deputy Mayfield was harassing Plaintiff Bolbol and blocking her sign from view with his body, even though Plaintiff Bolbol was not blocking any ingress or egress. *See* Exh. 11 (timestamp 0:10-1:00).

30. Defendant Deputy Mayfield then came and told me he didn't want the demonstrators blocking the bathroom and I told him no one was blocking the bathroom, and it was freely accessible. I videotaped patrons using the bathrooms while he was harassing Plaintiff Bolbol. *See* Exh. 11. He told me that people had to divert around the activists, and I told him, "That's free speech. So what if people have to walk around them, they also have to walk around patrons who are standing there. It's not against the law for people to have to walk around someone engaged in free speech, the caselaw makes that clear." Exh. 11 (timestamp 1:00-3:23). Defendant Deputy Mayfield's continued unfounded complaints about the demonstrators indicated to me a clear bias against us.

31. The next day, May 21, 2022, Plaintiff Bolbol and I returned to the Rodeo Park to demonstrate against Rowell Ranch Rodeo and I held a banner that read "Not Fun For The Animals." A true and correct copy of a photo depicting me holding the "Not Fun For The Animals" banner at the Rodeo Park on May 21, 2022, is attached as **Exhibit 15** (000015).

32. As we entered the parking lot, Doe Defendant 2, later identified by Rowell Ranch Rodeo as volunteer George Ferris told me I needed a ticket and attempted to block me from entering the back parking lot. Plaintiff Bolbol told him to not touch me, at which point he stepped in front of Plaintiff Bolbol and proceeded to block her from entering the back parking lot by physically stepping in front of her, pushing against her and shouting at her that she needed a ticket and to get "out." As Plaintiff Bolbol tried to walk around him he repeatedly stepped in front of her and pushed his body into her, despite her repeated pleas for him to stop touching her. A true and correct copy of a video I recorded on May 21, 2022, depicting these events that occurred while I was demonstrating against Rowell Ranch Rodeo is attached as **Exhibit 12** (000012).

33. At the back entrance Plaintiff Bolbol held a sign and leafleted near the pedestrian entrance, and I held a yellow banner that read "Not Fun For The Animals" a short distance from the pedestrian entrance. I saw Mr. Houts, Defendant Rowell Ranch's Public Safety Coordinator, standing in front of Plaintiff Bolbol. As she would move away from him, so that her sign would be visible to oncoming patrons, Mr. Houts would again move in front of her. Based on my, and my colleagues' interaction with Mr. Houts the night before when he expressed animus for our message, expressed a willingness to physically grab and block our banner, attempted and failed to restrict our free speech activities by lying to law enforcement, and pushed my colleague Mike Sage, I had concerns about him and video monitored his actions when he was in close proximity to me or other demonstrators. A true and correct copy of a video I recorded on May 21, 2022, depicting these events that occurred while I was demonstrating against Rowell Ranch Rodeo at the Rodeo Park is attached as **Exhibit 13** (000013).

34. While holding my yellow cloth, "Not Fun for the Animals" banner near the back entrance, I was standing behind an electric utility vehicle parked near a tree. The breeze would occasionally cause the cloth banner to touch the back of the vehicle. Mr. Houts told me not to allow the banner to touch his electric utility vehicle. Because the cloth wasn't doing any harm to the vehicle I thought Mr. Houts was simply being petty in an attempt to exercise some control over my free speech activities because he failed in his attempt to restrict my rights the night before. Nevertheless, without objection I stepped away from the vehicle. *See* Exh. 13.

35. Shortly thereafter despite that the vehicle was headed away from me, there was ample room for Mr. Houts to easily drive the vehicle forward and I wasn't blocking Mr. Houts from moving his vehicle - Mr. Houts told me to move as he got into his electric utility vehicle. Exh. 13 (timestamp 0:43). At no time did I block Mr. Houts from driving off in his vehicle.

36. Nevertheless, at this point an unidentified woman who appeared to work with Mr. Houts told me I had to move; while I was explaining to her Mr. Houts could drive forward Mr. Houts looked over his shoulder as he sat in the vehicle' driver seat and intentionally accelerated his vehicle backwards and rammed it into me. When I yelled at him for assaulting me

he just smiled and said, "I asked you to move." Exh. 13 (timestamp 0:57 -1:10). Mr. Houts's conduct directly interfered with my ability to exercise my free speech rights.

37. For the remainder of the 2022 rodeo protests I was concerned Mr. Houts or other rodeo representatives might use violence against me or my colleagues and, so, I remained vigilant about where he was in relation to the demonstrators. One of my primary reasons for filing this lawsuit was fear that if Mr. Houts was not held accountable for his actions, he, and possibly other rodeo agents, would feel emboldened to use violence against me and my colleagues in the future.

38. For context, after a July 8, 1995, demonstration at the Bill Pickett Invitation Rodeo event at the Rodeo Park where I watched my colleague get kneed in the stomach by a rodeo employee for refusing to move the demonstration efforts away from the entrance, Defendant HARD President of the Board of Directors, Douglas F. Morrisson, wrote a letter to Bill Pickett Invitational Rodeo President Lu Vason informing Mr. Vason that the Rodeo Park is public property where free speech activity such as distributing leaflets or posting signs is a right. A true and correct copy of this letter dated July 21, 1995, is attached as **Exhibit 20** (000040).

39. The leaflets that we distribute at Rowell Ranch Rodeo communicate our message, including advocating against the abuse and mistreatment of animals at rodeos. A true and correct copy of a leaflet that I provide to rodeo patrons is attached as **Exhibit 21** (000041).

40. At the end of our demonstrations at the Rodeo Park we usually take a group photograph of all the protestors. A true and correct copy of photographs taken of me at the Rodeo Park from May 20 to May 22, 2022, is attached as **Exhibit 17** (000017 – 000019).

I make this declaration under penalty of perjury under the laws of the United States of America, executed this 3rd day of June, 2024 in Belmont, California.

*/s/ Joseph P. Cuviello*
Joseph P. Cuviello