1   William B. Rowell, Bar No. 178587
Thiele R. Dunaway, Bar No. 130953
2   Marc Brainich, Bar No. 191034
Michele C. Kirrane, Bar No. 215448
3   **FENNEMORE WENDEL**
1111 Broadway, 24th Floor
4   Oakland, CA  94607
Tel: (510) 834-6600 / Fax: (510) 834-1928
5   browell@fennemorelaw.com
rdunaway@fennemorelaw.com
6   mbrainich@fennemorelaw.com
mkirrane@fennemorelaw.com
7

8   Attorneys for Defendants
County of Alameda and Alameda County Deputy
9   Sheriff Joshua Mayfield

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH P. CUVIELLO and DENIZ BOLBOL, individually,<br><br>            Plaintiffs,<br><br>v.<br><br>ROWELL RANCH RODEO, INC.; HAYWARD AREA RECREATION AND PARK DISTRICT; HAYWARD AREA RECREATION AND PARK DISTRICT PUBLIC SAFETY MANAGER/RANGER KEVIN HART; ALAMEDA COUNTY SHERIFF'S OFFICE; ALAMEDA COUNTY DEPUTY SHERIFF JOSHUA MAYFIELD; and DOES 1 and 2, in their individual and official capacities, jointly and severally,<br><br>            Defendants. | Case No. 3:23-cv-01652-VC<br><br>**NOTICE OF CROSS-MOTION AND CROSS-MOTION OF DEFENDANTS COUNTY OF ALAMEDA AND DEPUTY SHERIFF JOSHUA MAYFIELD FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT; CONSOLIDATED MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND IN SUPPORT OF DEFENDANTS' CROSS-MOTION**<br><br>Judge:     Hon. Vince Chhabria<br>Date:      August 15, 2024<br>Time:     10:00 a.m.<br>Courtroom: 4 – 17th Floor<br><br>Action Filed:   April 6, 2023<br>Trial Date:    October 21, 2024 |

1

**NOTICE OF CROSS-MOTION AND CROSS-MOTION**

2          PLEASE TAKE NOTICE that on August 15, 2024, at 10:00 a.m., or as soon thereafter as

3    this matter may be heard in Courtroom 4, 17th Floor, of the above-entitled Court, located at 450

4    Golden Gate Avenue, San Francisco, California 94102, defendants  County of Alameda

5    ("County") and Alameda County Deputy Sheriff Joshua Mayfield ("Dep. Mayfield") (collectively

6    "Defendants" or "County Defendants") will and hereby do move this Court pursuant to Rule 56

7    of the Federal Rules of Civil Procedure for an order granting summary judgment or in the

8    alternative partial summary judgment in favor of these Defendants on the third, fifth and sixth

9    claims for relief in the Second Verified Amended Complaint For Injunctive And Declaratory

10   Relief And Damages (ECF No. 54) ("Complaint") filed by Plaintiffs Joseph P. Cuviello and

11   Deniz Bobol in the above-captioned action.

12          This motion is made on the grounds that there is no genuine issue as to any material fact

13   and that the County Defendants are entitled to judgment as a matter of law, because there is no

14   evidence that the County Defendants violated Plaintiffs' free speech rights, including their rights

15   under Article I, section 2 of the California Constitution and under the First Amendment of the

16   United States Constitution, in violation of Civil Code section 52.1 and 42 U.S.C. § 1983.

17          In the alternative, Defendants move for partial summary judgment on the following issues:

18          (1)  there is no evidence that Plaintiffs suffered actual compensatory damages, so they are

19   limited to a recovery of the $4,000 statutory minimum damages if a violation of the Bane Act

20   (Cal. Civ. Code §52.1) is found;

21          (2)   Neither Plaintiff may recover a civil penalty of $25,000 if a violation of the Bane Act

22   (Cal. Civ. Code §52.1) is found;

23          (3)  Plaintiffs may not recover treble damages against these Defendants;

24          (4)  Neither the County nor Dep. Mayfield are liable for punitive damages sought by

25   Plaintiffs; and

26          (5)  Plaintiff Joseph P. Cuviello is not entitled to recover attorney's fees against these

27   Defendants;

28          (6)  Plaintiffs are not entitled to injunctive relief.

1         This motion is based upon this notice of cross-motion and cross-motion, the

2    accompanying memorandum of points and authorities, the declarations of Marc Brainich,

3    Deputies Joshua Mayfield, Christian Campbell, and Mateusz Laszuk, and any reply papers, and

4    upon all pleadings, records and papers on file herein, as well as on such other oral and

5    documentary evidence and argument as may be presented at the hearing of this motion.

# TABLE OF CONTENTS

**Page**

NOTICE OF CROSS-MOTION AND CROSS-MOTION ................................................................ 2

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................ 1

I.      INTRODUCTION ................................................................................................................ 1

II.     FACTUAL AND PROCEDURAL BACKGROUND ......................................................... 2

        A.      Summary Of Facts ................................................................................................... 2

                1.      Mayfield's First Interaction With Plaintiffs .............................................. 2

                2.      Mayfield's Next Interaction With Plaintiffs .............................................. 3

                3.      Mayfield's Third and Last Interaction With Plaintiffs .............................. 6

        B.      Procedural Background ............................................................................................ 7

III.    PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO THE
        COUNTY DEFENDANTS SHOULD BE DENIED ......................................................... 8

        A.      Standard of Review ................................................................................................. 8

        B.      Plaintiffs' Improper Statement Of Undisputed Materials Facts Violates
                Local Rule 56-2(a), And Should Be Disregarded In Its Entirety ........................... 8

        C.      The County Defendants Did Not Violate Plaintiffs' Free Speech Rights In
                Violation Of The Bane Act Or Article I, Section 2 Of The California
                Constitution ............................................................................................................. 9

                1.      First Amendment Rights And Limitations .................................................. 9

                2.      The Evidence Does Not Show A Violation Of Plaintiffs' Free
                        Speech Rights Under The Bane Act Or Article I, Section 2 Of The
                        California Constitution By The County Defendants .................................. 10

        D.      Neither The County Nor Mayfield Are Liable Under Plaintiffs' "Working
                In Concert" Theory ................................................................................................ 16

IV.     THE COUNTY AND MAYFIELD ARE ENTITLED TO SUMMARY
        JUDGMENT ON THEIR CROSS-MOTION, OR ALTERNATIVELY, PARTIAL
        SUMMARY JUDGMENT ................................................................................................ 17

        A.      Neither Mayfield Nor The County Violated Plaintiffs' Constitutionally-
                Protected Free Speech Rights ............................................................................... 17

        B.      Plaintiffs' Recovery Is Limited To Statutory Damages Of $4,000 If A
                Violation Of The Bane Act Is Found .................................................................... 18

        C.      Plaintiffs Cannot Recover A $25,000 Civil Penalty ............................................. 19

        D.      Plaintiffs Cannot Recover Treble Damages From County Defendants ................. 20

        E.      Neither The County Nor Mayfield Are Liable For Punitive Damages .................. 21

        F.      Plaintiff Cuviello Cannot Recover His Attorney's Fees From Defendants .......... 23

        G.      Plaintiffs Are Not Entitled To An Injunction Under 42 U.S.C. §1983 Or
                Declaration Under 28 U.S.C. §2201(a) Against Mayfield .................................... 23

V.      CONCLUSION ................................................................................................................. 25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) .................................................................................................. 8

*Archibald v. County of San Bernardino*,
    2018 WL 8949779 (C.D. Cal. May 10, 2018) ................................................ 20, 21

*Bolbol v. City of Daly City*,
    754 F.Supp.2d 1095 (N.D. Cal. 2010) ..................................................................... 19

*C.A. v. William S. Hart Union High School Dist.* (2012)
    53 Cal.4th 861 ........................................................................................................ 10

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) .................................................................................................. 8

*Center for Bio-Ethical Reform, Inc. v. Irvine Co., LLC*,
    37 Cal.App.5th 97 (2019) ........................................................................................ 20

*City of Newport v. Fact Concerts, Inc.*,
    453 U.S. 247, 271 (1981) ........................................................................................ 21

*Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*,
    473 U.S. 788 (1985) .................................................................................................. 9

*Coughlin v. Tailhook Ass'n*,
    112 F.3d 1052 (9th Cir. 1997) ................................................................................ 22

*Cuviello v. City and County of San Francisco*,
    940 F.Supp.2d 1071 (N.D. Cal. 2013) ................................................................... 10

*Cuviello v. City of Vallejo*,
    2020 WL 6728796 (E.D. Cal. Nov. 16, 2020) ................................................ 10, 11

*Cuviello, et al. v. City of Oakland, et al.*,
    2010 WL 3063199 (N.D. Cal. Aug. 3, 2010) ................................................... 19, 23

*Dang v. Cross*,
    422 F.3d 800 (9th Cir. 2005) ................................................................................... 22

*Defending Animal Rights Today and Tomorrow v. Washington Sports and
    Entertainment*,
    821 F.Supp.2d 97 (D.C. D. Ct. 2011) ................................................................. 9, 15

*Dougherty v. City of Covina,*
    654 F.3d 892 (9th Cir. 2011)................................................................................. 23

*Fortune Dynamic, Inc. v. Victoria's Secret Stores Band Mgmt., Inc.*
    618 F.3d 1025 (9th Cir. 2010) ............................................................................... 8

*H.M. v. County of Kern*
    2022 WL 286614 (E.D. Cal. Jan. 31, 2022)........................................................ 21

*Harris v. Capital Growth Inv'rs XIV,*
    52 Cal.3d 1142 (1991), *overruled on other grounds in Munson v. Del Taco,*
    *Inc.*, 46 Cal.4th 661 (2009) ................................................................................. 20

*Heffron v. Int'l Society for Krishna Consciousness, Inc.,*
    452 U.S. 640 (1981) .............................................................................................. 9

*Jefferson v. City of Fremont,*
    2012 WL 1534913 (N.D. Cal. April 30, 2012) ..................................................... 21

*Jeffreys v. City of New York,*
    426 F.3d 549 (2d Cir. 2005).................................................................................. 13

*King v. State of California,*
    242 Cal.App.4th 265 (2015).................................................................................. 10

*Koire v. Metro Car Wash,*
    40 Cal.3d 24 (1985) .............................................................................................. 18

*Kuba v. 1-A Agricultural Association,*
    387 F.3d 850 (9th Cir. 2004)......................................................................... 7, 9, 14

*Kwon v. Ramirez,*
    576 F.Supp.3d 696 (C.D. Cal 2021) ..................................................................... 18

*Loggervale v. Holland,*
    2023 WL 3958893 (N.D. Cal. June 12, 2023) (appeal to Ninth Circuit filed on
    July 11, 2023).......................................................................................................... 20

*Los Angeles Unified School District v. Superior Court,*
    14 Cal.5th 758 (2023)............................................................................................ 21

*Manning v. County of Los Angeles Board of Supervisors,*
    2019 WL 3064469 (C.D. Cal. April 23, 2019) ..................................................... 24

*Marron v. Superior Court,*
    198 Cal.App.4th 1049 (2003)................................................................................ 21

*Molski v. M.J. Cable, Inc.,*
    481 F.3d 724 (9th Cir. 2007)................................................................................. 18

FENNEMORE WENDEL
ATTORNEYS AT LAW
OAKLAND

*Nolin v. Nat'l Convenience Stores, Inc.*,
   95 Cal. App. 3d 279 (1979)..................................................................................... 22

*Olsen v. Idaho State Bd. Of Medicine*,
   363 F.3d 916 (9th Cir. 2004).............................................................................. 16, 17

*Potter v. Firestone Tire & Rubber Co.*,
   6 Cal. 4th 965 (1993) ............................................................................................. 22

*Richardson v. City of Antioch*,
   722 F.Supp. 2d 1133 (N.D. Cal. 2010) ................................................................. 11

*Robinson v. Kiran Ahuja*,
   2021 WL 5564804 (N.D. Cal. Nov. 29, 2021)....................................................... 23

*Robinson v. Solano County*,
   278 F.3d 1007 (9th Cir. 2002) .............................................................................. 10

*Scott v. Harris*,
   550 U.S. 372 (2007) .......................................................................................... 8, 20

*Slotnick v. Garfinkle*,
   632 F.2d 163 (1st Cir. 1980) ................................................................................. 16

*Smith v. Wade*,
   461 U.S. 30 (1983) ................................................................................................ 21

*Steshenko v. Gayrard*,
   44 F.Supp.3d 941 (N.D. Cal. 2014) ...................................................................... 17

*Villiarimo v. Aloha Island Air, Inc.*,
   281 F.3d 1054 (9th Cir. 2002) .............................................................................. 13

*Ward v. Rock Against Racism*,
   491 U.S. 781 (1989) ................................................................................................ 9

*Weaver v. City of Santa Clara*,
   2014 WL 6330402 (N.D. Cal. Nov. 14, 2014)....................................................... 19

*West v. Atkins*,
   487 U.S. 42 (1988) ................................................................................................ 24

*Zamora v. Sacramento Rendering Co.*,
   2007 WL 137239 (E.D. Cal. Jan. 17, 2007)......................................................... 10

**Constitutions**

California Constitution Article I, § 2(a) ............................................................... 7, 12

FENNEMORE WENDEL
ATTORNEYS AT LAW
OAKLAND

**Statutes**

28 U.S.C. § 2201(a) ........................................................................................ 7, 17, 23

42 U.S.C. § 1983 ...................................................................................... 7, 17, 18, passim

42 U.S.C. § 1988 ..................................................................................................... 23

1964 Civil Rights Act Title VII ........................................................................... 23

California Civil Code § 21 ..................................................................................... 18

California Civil Code § 51 ..................................................................................... 18

California Civil Code § 51.5 .................................................................................. 18

California Civil Code § 51.6 .................................................................................. 18

California Civil Code § 51.7 .................................................................................. 18

California Civil Code § 51.9 .................................................................................. 18

California Civil Code § 52 ..................................................................................... 19

California Civil Code § 52 ..................................................................................... 20

California Civil Code § 52(a) ................................................................ 18, 19, 20, 21

California Civil Code § 52(b) ...................................................................... 18, 19, 20

California Civil Code § 52(b)(2) ........................................................................... 19

California Civil Code § 52.1 ................................................................ 7, 10, 12, 18, 19

California Civil Code § 52.1(i) .............................................................................. 23

California Civil Code § 52.1(b) ............................................................................. 19

California Civil Code § 52.1(c) ................................................................... 7, 18, 19

California Civil Code § 52.1(k) ...................................................................... 10, 11

California Civil Code § 3294 ................................................................................. 21

California Civil Code § 3294(a) ............................................................................ 22

California Civil Code § 3294(c)(1) ....................................................................... 22

California Civil Code § 3294(c)(2) ....................................................................... 22

California Civil Code § 3294(c)(3) ....................................................................... 22

FENNEMORE WENDEL
ATTORNEYS AT LAW
OAKLAND

COUNTY OF ALAMEDA'S CROSS-MOTION                                    3:23-CV-01652-VC
49544920.2/059499.0021

California Government Code § 815(a) ........................................................................... 10

California Government Code § 815.2(a) ........................................................................ 10

California Government Code § 818 .......................................................................... 20, 21

**Court Rules**

Federal Rules of Civil Procedure Rule 56 ....................................................................... 8

Federal Rules of Civil Procedure Rule 56(a) .................................................................. 8

Federal Rules of Civil Procedure Rule 56(e) .................................................................. 8

Local Rules of the United States District Court for the Northern District of
    California Rule 56-2(a) ............................................................................................. 8

Local Rules of the United States District Court for the Northern District of
    California Rule 7-4(a)(4) ........................................................................................... 8

**Other Authorities**

Black's Law Dictionary (9th ed. 2009) 1247, 445 ....................................................... 19

FENNEMORE WENDEL
ATTORNEYS AT LAW
OAKLAND

COUNTY OF ALAMEDA'S CROSS-MOTION
49544920.2/059499.0021

3:23-CV-01652-VC

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

**I.     INTRODUCTION**

3
     While Plaintiffs Joseph Cuviello ("Cuviello") and Deniz Bolbol ("Bobol") assert

4
repeatedly that their free speech rights had been unlawfully interfered with by the County of

5
Alameda's Deputy Sheriff Joshua Mayfield ("Mayfield"), the video evidence shows otherwise.

6
Those videos show that from the very beginning Plaintiffs were—to put it in the vernacular—

7
itching for an altercation with the County's deputies.  For example, although Mayfield and his

8
fellow deputy sheriffs had been sent to the rodeo at Rowell Ranch to provide a general law

9
enforcement presence at an event attracting members of the public, Plaintiff Cuviello "knew"

10
from the moment Mayfield arrived—and before a single word had been exchanged between

11
Mayfield and Plaintiffs—that Mayfield "was an asshole from the get-go."  As Cuviello put it,

12
Cuviello "knew…because I've met cops like you so many times and filed lawsuits against cops

13
like you."  Similarly, when the deputies were first walking toward Plaintiffs, Bolbol said, "We got

14
a lawsuit.  Here we go."

15
     Although Plaintiffs made several attempts to goad Deputy Mayfield into saying or doing

16
something Plaintiffs viewed as unconstitutional and actionable, Mayfield did not take the bait and

17
instead remained calm and professional while carrying out the goal of making the event a safe

18
one for every person.  He never ordered Plaintiffs to move to the free speech area that had been

19
set up; he never arrested Plaintiffs; and he never threatened Plaintiffs with arrest.  At no time

20
during or following their interactions with Mayfield and the other deputies, did Plaintiffs ever

21
alter or cease their free speech activities (attempting to speak with rodeo patrons, holding up signs

22
for viewing by the patrons, and attempting to hand leaflets to the patrons as they approached the

23
rodeo entrance).  Nor did Plaintiffs ever express any fear of arrest or any feelings of being

24
intimidated to their fellow demonstrators on the single day that Deputy Mayfield was at Rowell

25
Ranch.  On the contrary, Cuviello boasted to the other demonstrators that if the deputies arrested

26
him, he would sue and "be entitled to damages."  Similarly, Bolbol said the County would have to

27
pay "[h]undreds of thousands of dollars" if they arrested Plaintiffs.

28

FENNEMORE WENDEL
ATTORNEYS AT LAW
OAKLAND

COUNTY OF ALAMEDA'S CROSS-MOTION                                      3:23-CV-01652-VC
49544920.2/059499.0021

1    In sum, while Plaintiffs attempt to put their own spin on what occurred in an effort to

2    impose liability on the County and Deputy Mayfield, the videos—both the deputy sheriffs' body -

3    worn camera footage and Plaintiffs' own videos—tell the true story of what happened, and prove

4    that there was no infringement on or interference with Plaintiffs' free speech rights by the County

5    Defendants.  The Court should reject Plaintiffs' claims, deny their motion, and grant summary

6    judgment for the County Defendants.

7    **II.     FACTUAL AND PROCEDURAL BACKGROUND**

8        **A.     Summary Of Facts**

9    Plaintiffs' claims against Defendants County of Alameda ("County") and Deputy Joshua

10   Mayfield ("Mayfield") (collectively, the "County Defendants") are based solely on events that

11   took place on one day of the three days they demonstrated at the Rowell Ranch Rodeo—May 20,

12   2022, and specifically, Mayfield's three interactions with them.  Rowell Ranch is owned by the

13   Hayward Area Recreation And Park District ("HARD").  Rowell Ranch Rodeo, Inc. ("RRR")

14   uses the property for their rodeo every year.

15         **1.     Mayfield's First Interaction With Plaintiffs**

16   Mayfield and the other deputies arrived at the rodeo at 5:57 p.m. to provide a law

17   enforcement presence.  Declaration of Joshua Mayfield ("Mayfield Decl."), ¶2.  However, before

18   they even approached Plaintiffs or had a single conversation with them, Bolbol states to Cuviello:

19   "They [Rowell Ranch Rodeo employees] think the sheriffs are going to come over here and arrest

20   us."  Declaration of Marc Brainich ("Brainich Decl."), Ex. C at 8:20 minute mark of video

21   ("MM").  Then, as the deputies, including Mayfield, began their approach to Plaintiffs, Bolbol

22   states, "We've got a lawsuit.  Here we go."  *Id.* at 9:35 MM.

23   But when the deputies arrived at the location where Plaintiffs had set up their protest, one

24   of the deputies, Deputy Campbell, immediately states, "I want say hello. We are going to be

25   hanging out here, its free speech, we get that…all we want is for you to play nice – all we ask."

26   Declaration of Christian Campbell ("Campbell Decl."), Ex. A; Brainich Decl., Ex. C, 9:50-11:03

27   MM.  Deputy Campbell then goes on, "They actually want you guys to be over there," as he

28   points to the front entrance.  Bolbol responds, "We know. We're not doing that."  *Id.*  Campbell

1   responds, "Okay; we are just letting you know."  Mayfield then adds, "There is a designated area;

2   if you guys go over there great, but if you choose to stay here, just keep it peaceful."  Bolbol

3   responds, "Absolutely."  Mayfield then says, "Don't yell at the patrons…it's their choice to attend

4   the event, just like it is your choice not to like it… we're all going to be peaceful…and no

5   problem."  The deputies then left with Campbell saying, "have a safe night" and Mayfield saying,

6   "you guys have a great evening."  Bolbol responds by thanking them.  *Id.*  This entire interaction

7   lasted just over two minutes.

8       Two minutes after that initial encounter with Plaintiffs, at 6:01 p.m.[1] Mayfield received a

9   call from Amy Bowles at Alameda County Sheriff's Office ("ACSO") Dispatch.  Brainich Decl.,

10   Ex. K at 10:45-11:25 MM.  He informs her that the demonstrators had been told "to keep it

11   peaceful and they've been advised that there is a designated area for them."  He also advises that

12   the deputies will "be doing security here" in case the demonstrators "act up."  At no point does he

13   advise Ms. Bowles that the protestors had done anything wrong or violated any laws; the clear

14   implication of his words are that he did not intend to compel them to move to the FSA.  *Id.*

15              **2.       Mayfield's Next Interaction With Plaintiffs**

16       The next interaction between plaintiffs and any of the deputies was at 6:08 pm, when

17   HARD Safety Manager Kevin Hart ("Hart") approaches plaintiffs with Deputy Mayfield

18   accompanying him.  After introducing himself, Hart shows plaintiffs a map of the Rowell Ranch

19   parking lot, informing them that they were not in the designated free speech area ("FSA").  He

20   then says, "I'm asking you to go to the designated area…failure to do so will not be good."

21   Declaration of Joshua Mayfield ("Mayfield Decl."), Ex. A-1; Brainich Decl., Ex. F.  Bolbol

22   responds, "I'm not blocking any ingress/egress."  Cuviello then turns his attention to Mayfield

23   (who was standing next to Hart) and asks him whether he was going to arrest them if they didn't

24   comply.  Mayfield responds that they "could be arrested for trespassing."  *Id.*  Cuviello responds,

25   "I don't want a could be arrested…I want to know ahead of time.  You need to call your watch

26

---

27   [1] The timestamp (and date) on the body-worn camera ("BWC") videos of officers of the Alameda
    County Sheriff's Office are time-stamped pursuant to Coordinated Time (UTC), the successor to

28   Greenwich Mean Time.  UTC is seven hours ahead of California time during Pacific Daylight
    Time.  Brainich Decl., ¶10.

FENWICK WENZEL
ATTORNEYS AT LAW
OAKLAND

commander." Mayfield asks, "Sir, Sir, would you let me explain?" Cuviello cuts him off and says, "I'm telling you about my rights…this is a public park, quintessential free speech right…no significant interest in putting us over there…I want to know if you are going to arrest us, because I do not want to be arrested, so if you are going to arrest me illegally, I want to know, because I don't want to be arrested and there is none of this maybe, could be. I want you to tell me before that I'm going to arrest you if you don't leave. If you don't tell me that, there is a big problem." Mayfield responds, "I'm not required to tell you whether I will arrest you." Cuviello retorts, "Yes you are. If I'm asking you, you have to." While Hart begins talking to Plaintiffs again, Mayfield adds, "It is a private event" to which Cuviello responds, "It is doesn't matter, its open to the public." Hart then asks all of the protesters individually whether they are refusing to leave. Cuviello specifically responds, "I'm not leaving and if they arrest us, they will be sued for damages." *Id.*

While Hart is going down the line asking the protestors whether they are refusing to leave, Mayfield leaves and makes a phone call within the line of sight of Plaintiffs, starting at 6:11 pm. Brainich Decl., Ex. F. Plaintiffs remain where they are, continuing to hand out pamphlets and speak with patrons. Declaration of Mateusz Laszuk ("Laszuk Decl."), Ex. A. While Mayfield is on his phone, Bolbol says to Cuviello, "He [Mayfield] is calling his boss to see if he can get permission to arrest us." Cuviello states, "It is just amazing that the Police are willing to violate peoples' rights to protect private interest." Bolbol responds, "They want to, but hopefully the watch commander has a more level head." *Id.*

At 6:16 pm, Mayfield ends his call and then walks over and speaks with Hart and an RRR employee standing out of earshot of Plaintiffs. Brainich Decl., Ex. F, at 7:24-10:40 minute mark ("MM") of video. While Mayfield is speaking with them, Bolbol says to Cuviello, "He's [Mayfield] not allowed to arrest us. He tried." *Id.* She leaves and then Cuviello says to one of the other protesters, "I knew that big cop [Mayfield] was an asshole from the get go… the big guy, I knew he had a hardon to arrest us." *Id.* The other protester responds, "There is nothing they can do." *Id.* Cuviello responds, "They could arrest us and then we file a lawsuit. They wouldn't win the lawsuit if they arrest us…I don't want to be arrested that is why I asked him to tell me if you

1   are going to arrest me and I will leave. If they did arrest us, there would be a lawsuit and we

2   would all be entitled to damages." *Id.* Shortly thereafter, Bolbol states to another protester, "He

3   [Mayfield] is not allowed to arrest us. He tried….the guy who he is talking to - the overweight

4   one [Hart], really wanted to arrest us but he doesn't get to because his watch commander has a

5   level head…do you know how much it would have cost the County if they illegally arrested us,

6   hundreds of thousands of dollars for one time." Brainich Decl., Ex. D, at 3:37-4:55 MM.

7       At 6:19 pm, after speaking with Hart and the RRR employee, Mayfield approaches

8   Plaintiffs and states, "All right, so we are going to ask and require that you stay out of the

9   walkway." Mayfield Decl., Ex. A-1, 11:30-12:40 MM; Brainich Decl., Ex. F, at 10:48-11:50

10  MM. Cuviello responds, "We are not blocking anyone…you just want to make a problem. I

11  knew from the get go when you walked up you had that energy. We are not blocking anyone."

12  Mayfield responds, "I have nothing but positive energy." Cuviello states, "No you do not. I saw

13  you from the get go. The other guy was nice [Deputy Campbell] but you had this energy."

14  Mayfield responds, "You don't even know me." Cuviello retorts, "I've met cops like you so

15  many times and filed lawsuits against them, cops like you. I know you like the back of my hand."

16  *Id.* Mayfield then politely states, "Stay out of the walkway, please. Okay. Don't block anybody.

17  Don't step in front of anyone because now you are blocking their entrance." Cuviello interrupts

18  and says, "We weren't blocking anybody." Mayfield continues, "You guys can hand out fliers all

19  you want, you can talk all you want…don't stand directly in front of anyone, and if you can,

20  please stay out of the walkway. That's all we are asking." *Id.* He then walks away.

21      A short while later, when another protester arrived on the scene [Margo], Cuviello gives

22  her a rundown of what had happened before her arrival. Brainich Decl., Ex. G, at 2:30-5:45 MM.

23  He tells her, "We had a bit of a problem with the Police but everything is ironed out." Cuviello

24  then goes into detail as to what happened, stating, "the rodeo people came out and told us they

25  had a Free Speech Area and we told him to call the Police. The Police came out, these four cops

26  here, the thin one [Deputy Campbell] was really nice, but the tall one [Mayfield] – I knew he was

27  an asshole. I could tell. I've dealt with so many cops like him…he had to repeat everything….

28  Rodeo guy came out [Hart], you need to go Free Speech Area. I asked the officer, you need to

Fennimore Wendel
Attorneys at Law
Oakland

1    tell me if you're going to arrest me – not maybe arrested. I told him you better call watch

2    commander, and he did call his watch commander…he returned and said as long don't

3    block…They have to act like they are in charge… If they had arrested me, I would have sued

4    them." *Id.*

### 3.    Mayfield's Third and Last Interaction With Plaintiffs

6          At 7:36 pm, Mayfield approached Bolbol and another protester standing near the

7    restrooms and an entrance to the rodeo, and says, "Hello, can you do me one favor."  Mayfield

8    Decl., Ex. A-2; Brainich Decl., Ex. I.  Bolbol interrupts him and says, "Hold on, I need to

9    videotape this harassment."  Brainich Decl., Ex. E.  Mayfield continues, "There are two pathways

10   and you're standing in the middle; can you just scoot over a little, so not blocking the bathrooms

11   or the pathway."  Bolbol responds, "You've just got a hardon for us, don't you…you're just

12   trying to harass us…we are not blocking anything…if you're going to be out here all weekend,

13   this is going to be unpleasant…you thought you were going to arrest us before, you were wrong

14   then and you're wrong now…the white guy [Deputy Campbell], he knew what he was talking

15   about…too bad you have seniority over him, because you are very bullish." *Id.*; Brainich Decl.,

16   Ex. I.  Mayfield responds, "If anyone is being bullish, it is you."  Bolbol says, "You're harassing

17   me and blocking my sign."  She then walks around Mayfield, and says, "I'm asking you to stop

18   harassing me." *Id.*  Mayfield then walks away and Bolbol says to him as he is walking away, "Go

19   away."  At no point during this exchange did  Mayfield present as being aggressive, combative or

20   threatening towards Bolbol.

21          Mayfield then walks directly over to Cuviello, who was standing nearby, and says, "All

22   I'm asking is that they don't block the bathroom."  Mayfield Decl., Ex. A-2; Brainich Decl., Ex.

23   H.  Cuviello responds, "They are not blocking the bathroom."  They then engage in a

24   conversation about whether a protester can block patrons or not, with Mr. Cuviello stating that

25   "just blocking someone is not a problem."  He then asks  Mayfield, "So what's your problem?"

26   Mayfield responds, "I don't have a problem at all…I'm simply asking to keep a clear pathway so

27   people can get in and out." *Id.*  Cuviello responds, "It is clear, people can get in and out…we've

28   been doing this for almost 40 years.  If we were going to block somebody, you would know it. I

FENNEMORE WENDEL
ATTORNEYS AT LAW
OAKLAND

1   guarantee it and you would arrest us. We are not here to block anyone."  Mayfield responds, "All

2   I'm asking you a simple request that they not stand in the middle of the walkway."  Cuviello

3   responds, "As long as you are not blocking, it's not a problem. You're making a problem, when

4   there is no problem."  Mayfield responds, "I'm not making a problem. I'm getting complaints that

5   they are standing in the middle of the walkway." Cuviello says, "So what…they can stand

6   wherever they want, as long as they are not blocking."  *Id.*  Cuviello then tells Mayfield to read

7   the *Kuba* case, "which is about the Grand National Rodeo." Mayfield responds, "Okay. I'll read

8   it" and adds, "All we want is peace."  Cuviello responds, "We aren't here to cause problems."

9   Mayfield responds, "I know you're not. That is why we are just standing here having a

10  conversation."  Cuviello responds, "Just having a conversation. That's good."  Mayfield then

11  states, "I'm getting complaints about people having to walk around."  *Id.*  Cuviello says,

12  "Wherever we are, you'll get complaints because people don't like our message." He then goes

13  on to explain to Mayfield why the First Amendment is the most important amendment.  *Id.*

14          As Mayfield and Cuviello are talking, at 7:42 pm, Bolbol approaches them and says,

15  "Let's take a quick photo without you [Mayfield]."  Mayfield Decl., Ex. A-2, 7:17 MM; Brainich

16  Decl., Ex. J.  Mayfield jokingly asks, "You don't want me in the photo?"  Bolbol responds, "If

17  you hold our sign, you can be in the photo" and then  Cuviello interjects, "No, he can be in our

18  photo."  Mayfield walks away laughing, as plaintiffs and some of the other protesters pose for a

19  photo.  *Id.*  Mayfield leaves Rowell Ranch a short while later at 7:56 pm.   Mayfield Decl., Ex.

20  A-3.  There is no further interaction between Mayfield and Plaintiffs.

21          **B.      Procedural Background**

22          Plaintiffs filed their Second Verified Amended Complaint on June 20, 2023 (Dkt. 54)

23  ("SAC").   The third cause of action for violation of Civil Code section 52.1(c) and the fifth cause

24  of action for violation of Article I, Section 2(a) of the California Constitution under Civil Code

25  section 52.1 are alleged against both the County and Mayfield.  The sixth cause of action for

26  injunctive relief under 42 U.S.C. §1983 and declaratory relief under 28 U.S.C. §2201(a)  for

27  violation of the First Amendment is alleged against Mayfield.

28          Plaintiffs filed their motion for partial summary judgment on June 3, 2024 (Dkt 84).

1

2

### III.     PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO THE COUNTY DEFENDANTS SHOULD BE DENIED

3

#### A.     Standard of Review

4

Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure

5

if the moving party demonstrates that there is no genuine issue of material fact and that it is

6

entitled to judgment as a matter of law.  Fed.R.Civ.Proc. 56(a); *Celotex Corp. v. Catrett*, 477 U.S.

7

317, 322 (1986).  A fact is material when, under the substantive law, it could affect the outcome

8

of the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986);.  "A genuine issue of

9

material fact exists when the evidence is such that a reasonable jury could return a verdict for the

10

nonmoving party."  *Fortune Dynamic, Inc. v. Victoria's Secret Stores Band Mgmt., Inc.* 618 F.3d

11

1025, 1031 (9th Cir. 2010); *accord, Anderson,* 477 U.S. at 248.

12

A party seeking summary judgment bears the initial burden of demonstrating the absence

13

of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. at 323.  Then the

14

nonmoving party must set forth, by affidavit or as otherwise, "specific facts showing that there is

15

a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 250; Fed. R. Civ. Proc.

16

56(e).  When ruling, the Court must view the facts and draw all reasonable inferences in the light

17

most favorable to the non-moving party.  *Scott v. Harris*, 550 U.S. 372, 378 (2007).

18

#### B.     Plaintiffs' Improper Statement Of Undisputed Materials Facts Violates Local Rule 56-2(a), And Should Be Disregarded In Its Entirety

19

20

Rule 56-2(a) of the Local Rules of the Northern District expressly states that, "Unless

21

required by the assigned Judge, no separate statement of undisputed facts or joint statement of

22

undisputed facts shall be submitted."  L.R. 56-2(a).  This Court has no special rule requiring a

23

separate statement, and, consequently, Plaintiffs' separate statement violates Rule 56-2(a) and

24

should be disregarded entirely.  Plaintiffs' separate statement is particularly improper, given that

25

it appears to be an attempt by Plaintiffs to evade the twenty-five page limit on Plaintiffs'

26

Memorandum of Points and Authorities in support of their motion ("Memorandum"), since the

27

Memorandum does not contain *any* statement of facts, which is required by Local Rule 7-4(a)(4).

28

In the event the Court determines a counter-statement is required from Defendants, Defendants

FENNEMORE WENDEL
ATTORNEYS AT LAW
OAKLAND

8

COUNTY OF ALAMEDA'S CROSS-MOTION
49544920.2/059499.0021

3:23-CV-01652-VC

1    are prepared to draft and file such a statement.

2    **C.**    **The County Defendants Did Not Violate Plaintiffs' Free Speech Rights In Violation Of The Bane Act Or Article I, Section 2 Of The California Constitution**

3

4           **1.**    **First Amendment Rights And Limitations**

5           Courts generally look at three factors when considering a First Amendment claim: (1)

6    whether the speech was protected; (2) the nature of the forum, i.e., public or private; and (3)

7    whether the restriction on speech was justified.  *Defending Animal Rights Today and Tomorrow*

8    *v. Washington Sports and Entertainment,* 821 F.Supp.2d 97, 103 (D.C. D. Ct. 2011)  ("*DARTT*");

9    *see also Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.,* 473 U.S. 788, 797 (1985).

10          For purposes of this motion, County Defendants will assume these events involved a

11   public forum.  As to the second factor, generally animal rights protests constitute speech

12   protected by the First Amendment.  *See, e.g.*, *Kuba v. 1-A Agricultural Association*, 387 F.3d 850,

13   857 (9th Cir. 2004).  The third factor is the primary issue in this case.  "[E]ven in a public forum

14   the government may impose reasonable restrictions on the time, place, or manner of protected

15   speech."  *Heffron v. Int'l Society for Krishna Consciousness, Inc.*, 452 U.S. 640, 647 (1981);

16   *Kuba*, 387 F.3d at 858-859 (demonstrators are not given "free rein").  Such restrictions are

17   reasonable and permissible so long as the restrictions:  (1) are justified without reference to the

18   content of the regulated speech (*i.e.*, content neutral); (2) are narrowly tailored to serve an

19   important government interest; and (3) leaves open ample alternative channels for communication

20   of the information.  *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989); *Heffron*, 452 U.S. at

21   856; *Kuba,* 387 F.3d at 856.

22          There is a "significant governmental interest in preventing traffic congestion and ensuring

23   the safety of pedestrians and drivers alike."  *Kuba*, 387 F.3d at 858.  *Id.*  In addition, any

24   restriction on speech "must not burden substantially more speech than is necessary to further the

25   government's legitimate interests." *Id.* at 861.  As discussed below, the minimal restrictions here

26   by the County Defendants were reasonable, served a significant government interest, and did not

27   burden Plaintiffs' free speech activities.

28

2.      **The Evidence Does Not Show A Violation Of Plaintiffs' Free Speech Rights Under The Bane Act Or Article I, Section 2 Of The California Constitution By The County Defendants**

Plaintiffs' third cause of action alleges the County Defendants' conduct interfered with their free speech and violated California Civil Code section 52.1 ("Bane Act").  "The essence of a Bane Act claim is that the defendant, by … threat, intimidation, or coercion, tried to … prevent plaintiff from doing something he or she had the right to do under the law or to force the plaintiff to do something that he or she was not required to do under the law."  *King v. State of California*, 242 Cal.App.4th 265, 294 (2015).  Under California law, "[a] public entity is not liable for an injury," "[e]xcept as otherwise provided by statute." Cal. Gov. Code §815(a);  *C.A. v. William S. Hart Union High School Dist.* (2012) 53 Cal.4th 861, 868.  A public entity may be held vicariously liable for its employee's conduct that violates the Bane Act section under Government Code section 815.2(a), which provides that a public entity is liable for the conduct of its employees within the course and scope of their employment if the conduct would have given rise to a cause of action against the employee.  *Robinson v. Solano County*, 278 F.3d 1007, 1016 (9th Cir. 2002);  The terms "threat," "intimidation," and "coercion" are not defined in section 52.1, but courts have applied their ordinary and common meaning.  *See e.g., Zamora v. Sacramento Rendering Co.*, 2007 WL 137239, at *8, n. 6 (E.D. Cal. Jan. 17, 2007).

The Bane Act states that liability may not be based on speech alone unless "the speech itself threatens violence" against a specific person.  Cal. Civ. Code § 52.1(k).  Several courts, however, have suggested that this is an open question, and the Directions for Use to Instruction 3066 (Bane Act – Essential Factual Elements) of the Judicial Council of California Civil Jury Instructions ("CACI") provide the option of instructing the jury that the "coercion [may be] based on a nonviolent threat with severe consequences."  (CACI 3066, Use Notes and cases cited therein.)  In addition, a number of federal courts in California "have found that a threat of arrest from law enforcement can constitute 'coercion' under the Bane Act, even without a threat of violence."  *Cuviello v. City of Vallejo*, 2020 WL 6728796 at *8 (E.D. Cal. Nov. 16, 2020)  However, in each of these cases, there were explicit threats that the plaintiffs *would* be arrested if they did not comply with the officer's instructions.  *See e.g., Cuviello v. City and County of San*

10

1   *Francisco,* 940 F.Supp.2d 1071, 1102 (N.D. Cal. 2013)*; Cuviello v. City of Vallejo,* 2020 WL

2   6728796 at *2,  *8.  Defendants have not located any cases where an officer stated that he

3   "might" or "could" arrest a plaintiff but did not do so, as opposed to either explicitly stating he

4   would arrest them or clearly using his law enforcement authority to imply that he would arrest

5   plaintiff.

6        Civil Code section 52.1(k) provides that speech alone can constitute a violation only if the

7   persons against whom the threat is directed "reasonably fears that, because of the speech,

8   violence will be committed against them."  Accordingly, the courts have determined that the test

9   for a violation of the section is "whether a reasonable person, standing in the shoes of the

10  plaintiff, would have been intimidated by the actions of the defendants and have perceived a

11  threat of violence."  *Richardson v. City of Antioch*, 722 F.Supp. 2d 1133, 1147 (N.D. Cal. 2010),

12  citing *Winarto v. Toshiba America Electronics Components, Inc.*,  274 F.3d 1276, 1289-1290

13  (9th Cir. 2001).

14       The gravamen of Plaintiffs' claims against the County is that Mayfield threatened to arrest

15  them for trespassing if they did not move to the FSA, and his and the other deputies' overall

16  conduct (allegedly standing in front of their signs and instructing them not to block patrons, etc.),

17  was an effort to intimidate plaintiffs into giving up their First Amendment rights.  However,

18  whether an objective (reasonable person) standard or a subjective (what plaintiff actually and

19  reasonably believed) standard is applied here, the video evidence clearly indicates that Mayfield

20  never threatened Plaintiffs with arrest.  Moreover, neither he nor any of the other the deputies

21  blocked the protestors signs nor did they engage in any "intimidating" conduct.

22       Furthermore, Mayfield and the other deputies' requests that Plaintiffs remain peaceful and

23  not block patrons' paths and/or the ingress/egress of the rodeo were at most "content neutral"

24  requests and served a viable government interest in preventing traffic congestion and ensuring the

25  safety of the patrons.  In sum, the video evidence clearly demonstrates that Deputy Mayfield

26  never objectively threatened Plaintiffs and that Plaintiffs never subjectively believed that they had

27  been threatened with arrest at any time on the day in question.  Neither Mayfield nor any of the

28  other deputies violated Plaintiffs' free speech rights.

1   Finally, although Plaintiffs seek summary judgment of their Fifth Cause of Action which

2   purports to allege a violation of not only Civil Code section 52.1, but also Article I, Section 2(a)

3   of the California Constitution, Plaintiffs' motion does not offer any argument concerning Article

4   I, Section 2(a) with respect to Mayfield or the County, and they have waived the point.  *See*

5   Plaintiffs' Memorandum at pp.19:10-21:2.  Even if Plaintiffs had not waived it, there was

6   absolutely no interference by Mayfield or the County with Plaintiffs' free speech rights under

7   either the United States or California Constitutions.

8           a.      **The Video Evidence Shows That Plaintiffs Had Neither an**
                    **Objective Nor Subjective Belief of Arrest**
9

10   Plaintiffs' primary argument is that Mayfield's overall "harassing" conduct (*i.e.*, his

11   requests that they not block the walkways, bathrooms, patrons, etc.), along with his saying they

12   "could be arrested for trespassing" in response to a question from Cuviello just after Hart told

13   them that if they didn't relocate to the FSA "bad things could happen," proves their claim that

14   their Constitutional free speech rights were violated.  However, the only evidence Plaintiffs offer

15   of their purported fear of arrest are their declarations in which they each offer the *same exact*

16   testimony:

17           During my interaction with Defendant Hart and Defendant Deputy
             Mayfield I felt intimidated by their threat of arrest which I believed
18           was a tactic they were using to coerce me into giving up my free
             speech right to demonstrate outside the free speech area.  My fear
19           of being arrested was based on verbal threats, including, but not
             limited to, Defendant Hart stating, "You don't have too much of a
20           choice," to move to the designated "Free Speech Area" and "failure
             to do so will not be good," and Defendant Deputy Mayfield telling
21           me I "could be arrested" and that it was a "possibility" if I didn't
             move to the free speech area.
22

23   Declaration of Joseph Cuviello, p. 6:6-12; Declaration of Deniz Bobol, p. 5:17-23.  Not only do

24   they offer the same testimony, their paraphrases of Mayfield's statements are misleading—as

25   demonstrated by the videos themselves—Mayfield never told them they had to "move to the free

26   speech area," nor did he say arrest was a "possibility" if they did not move there.  Mayfield Decl.,

27   Ex. A-1; Brainich Decl., Ex. F.

28   Courts have refused to find a genuine fact "where the only evidence presented is

'uncorroborated and self-serving' testimony." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002).  In circumstances where the Court finds nothing in the record to support a plaintiff's allegations, other than plaintiff's own self-serving testimony, the Court may deny plaintiff's summary judgment motion (or, alternatively, grant Defendants' cross-motion), "[b]ecause '[n]o reasonable person would undertake the suspension of disbelief necessary to give credit to the allegations made in [the] complaint.'" *Jeffreys v. City of New York,* 426 F.3d 549, 555 (2d Cir. 2005).  That is the case here.

Plaintiffs' declarations stating that they "felt intimidated" are contradicted by the undisputed video evidence of Plaintiffs' actions and their words.  The videos show that during and shortly after Plaintiffs' less than three minute interaction with Mayfield when he stated that they "could be arrested," at no time did Plaintiffs have a subjective belief that they had been threatened with actual arrest.  Plaintiffs never altered their actions after Mayfield's statement; rather, they continued to protest uninterrupted, handing out pamphlets and speaking with patrons in the same location.

Furthermore, Plaintiffs' specific statements at the time show that they did not have a subjective belief they had been threatened with arrest.  For example, Cuviello said, "he [Mayfield] is calling his boss to see if he can get permission to arrest us; I don't want to be arrested that is why I asked him to tell me if you are going to arrest me and I will leave. If they did arrest us, there would be a lawsuit and we would all be entitled to damages."  Brainich Decl., Ex. F.   Bolbol stated: "He is not allowed to arrest us. He [Hart] really wanted to arrest us but he doesn't get to because his watch commander has a level head; do you know how much it would have cost the County if they illegally arrested us, hundreds of thousands of dollars for one time." Brainich Decl., Ex. D.  Cuviello also told one of the other protestors, "if they had arrested me, I would have sued them."   Brainich Decl., Ex. G at 5:45 MM.  Nor does the evidence of Plaintiffs' interactions with  Mayfield support an objective finding of an actual threat of arrest; rather, a "reasonable person" would interpret Mayfield's statement as meaning that Plaintiffs were fine to continue to protest where they were, but that they "could be arrested" if they started to block the ingress/egress or became violent.  Overall, the totality of the evidence clearly indicates that: (1)

1  Mayfield did not threaten plaintiffs with arrest; (2) Plaintiffs had no objectively reasonable fear of

2  being arrested based on Mayfield's words or conduct; and (3) Plaintiffs had no actual subjective

3  fear of being arrested at any time on May 20.

        **b.      Mayfield's Words and Conduct Satisfy the Constitutional**
                    **Requirements for a Reasonable Time, Place and Manner**
                    **Restriction on Speech**

6        As in *Kuba*, 387 F.3d at 857 (which involved an animal rights activist demonstrating at

7  the Cow Palace), this case involves, at most, content neutral restrictions, and Mayfield's words

8  and conduct were designed to advance a significant government interest in keeping the driveway

9  and walkways free of congestion impeding the patrons and potentially emergency vehicles.  For

10  example, during his second encounter with Plaintiffs starting at about 6:19 p.m., Mayfield told

11  them:

> We are going to ask and require that you stay out of the
> walkway…. Stay out of the walkway, please. Okay. Don't block
> anybody. Don't step in front of anyone because now you are
> blocking their entrance…. You guys can hand out fliers all you
> want, you can talk all you want…don't stand directly in front of
> anyone, and if you can, please stay out of the walkway. That's all
> we are asking.

16  Mayfield Decl., Ex. A-1 at 11:24-11:50 MM.  Mayfield used similar language with Bolbol a

17  minute later while she was standing near the arena entrance.  Mayfield Decl., Ex. A-2; Brainich

18  Decl., Ex. E.  During his last encounter with Plaintiffs starting at about 7:36 p.m., he first told

19  Bolbol, "There are two pathways and you're standing in the middle; can you just scoot over a

20  little, so not blocking the bathrooms or the pathway?" He then walked over to Cuviello,  and once

21  again stated, "All I'm asking you a simple request that they not stand in the middle of the

22  walkway."  *Id.*  He further stated that, "I'm receiving complaints that they're standing in the

23  middle of the walkway."  Mayfield Decl., Ex. A-2 at 2:53 MM.  And, in fact, the video evidence

24  shows that one or more of the demonstrators would step in front of rodeo patrons as they were

25  trying to approach the entrance to the rodeo, causing the patrons to have to step around the

26  demonstrator.  Brainich Decl., Ex. G, at 1:10, 1:46, 2:10 and 2:46 MM.  The video also shows

27  Plaintiff Bolbol standing in close proximity to the entrances to the bathroom facilities.  *Id.*

28        Furthermore, the evidence shows that despite some polite urging by  Mayfield ("if you

FENNEMORE WENDEL
ATTORNEYS AT LAW
OAKLAND

14

COUNTY OF ALAMEDA'S CROSS-MOTION
49544920.2/059499.0021

3:23-CV-01652-VC

1  can, please stay out of the walkway"), he never in fact required Plaintiffs (or the other

2  demonstrators) to move, and never threatened to arrest them if they did not.  The overall tenor of

3  Mayfield's words (and his demeanor) during all of the interactions and over the course of the

4  evening is clear—his sole interest was in keeping the demonstrators from blocking the patrons.

5  At times, he expressed that this could be best accomplished by their moving from the driveway

6  and pathway, which would have still allowed Plaintiffs to talk to and leaflet the patrons.

7  Mayfield's politely expressed wishes never turned into commands, much less threats of ejection

8  from the grounds and/or arrest. And finally, there is no evidence that Plaintiffs in fact at any time

9  left the driveway/pathways and moved to a location that offered them less access to the rodeo

10  patrons.

11         The situation at the rodeo is similar to that in *DARTT*, 821 F.Supp.2d 97, where animal

12  rights demonstrators who were protesting a circus, were demonstrating on a public sidewalk

13  adjacent to the building where the circus was taking place. *DARTT*, 821 F.Supp. at 103.  The

14  police directed those demonstrators to move away from the entrance doors while the patrons were

15  leaving en masse, and the demonstrators complied with that request, but then sued, claiming an

16  infringement of their free speech rights.  *Id.* at 105.  The court found that this restriction was

17  narrowly tailored and did not burden any more speech than necessary to protect the governmental

18  interest.  *Id.* at 107.  The demonstrators were still able to reach "a sufficient number of the

19  departing patrons."  *Id.*  They were not limited "to some distant location … trying to flag down

20  members of the crowd after they had already dispersed; they were standing in a sea of pedestrians

21  even at their new location."  *Id.*  There was no constitutional violation even if plaintiffs were not

22  able to reach as many patrons in their new location, because they "did not have a right to leaflet at

23  the most advantageous spot."  *Id.* at 108. The court rejected the demonstrators' argument that

24  defendants could have chosen a less restrictive means, quoting the Supreme Court that, "when a

25  content-neutral regulation does not entirely foreclose any means of communication, it may satisfy

26  the tailoring requirement even though it is not the least restrictive or least intrusive means of

27  serving the statutory goal."  *Id.*

28         Like the demonstrators in *DARTT*, 821 F.Supp.2d 97, Plaintiffs here were not being forced

by Mayfield and/or the other deputies into a peripheral free speech area far from the patrons attending the event; rather, at most, they were requested to step a couple of feet to the side, out of the driveway and walkways themselves, where Plaintiffs would still have the unrestricted ability to talk to the patrons and hand out their leaflets, even if Plaintiffs did not believe it was "the most advantageous spot" for them to do so. The alleged restriction (move a few feet away, off the actual pathways) is a reasonable restriction on Plaintiffs' protected speech.  Other than their self-serving declarations submitted in support of their motion, there is no evidence that they felt "chilled" in their ability to express themselves to the patrons.

### D.    Neither The County Nor Mayfield Are Liable Under Plaintiffs' "Working In Concert" Theory

Apparently realizing that there is no evidence to support their contention that Mayfield (and, by extension, the County) violated their constitutionally protected free speech rights, Plaintiffs resort to a vague suggestion that the County Defendants are liable because Mayfield was "working in concert" with Defendant Kevin Hart ("Hart"), HARD's Safety Manager. However, Plaintiffs offer no factual or legal basis for their contention.  Instead, they make bare conclusory allegations in Paragraph 72 of the SAC, that Defendants "engaged in a concert of action," to further a "common scheme," and had "knowledge of the conspiracy."  SAC, p. 15, ¶7, and similar conclusory statements in their declarations.  Having failed to offer any evidence, legal authority, or argument on the point, Plaintiffs have waived it.  In his declaration, Cuviello merely repeats the conclusory statement that Mayfield was "working in concert" with Defendant Hart.

Conclusory statements of "conspiracy," are insufficient to plead a claim, let alone establish one.  *See Slotnick v. Garfinkle*, 632 F.2d 163, 165-166 (1st Cir. 1980) (complaint was properly dismissed where it relied on conclusory allegations of conspiracy under section 1985).  "To state a claim for conspiracy to violate constitutional rights, 'the plaintiff must state specific facts to support the existence of the claimed conspiracy.'"  *Olsen v. Idaho State Bd. Of Medicine*, 363 F.3d 916, 929 (9th Cir. 2004) (quoting *Burns v. County of King*, 883 F.2d 819, 821 (9th Cir. 1989)).  A plaintiff "must also allege that one or more of the conspirators 'did, or caused to be done, any act in furtherance of the object of the conspiracy,' whereby another was 'injured in his

Fennemore Wendel
Attorneys at Law
Oakland

1  person or property,' or 'deprived of having and exercising any right or privilege of a citizen of the

2  United States.'" *Id.*  A plaintiff must establish facts concerning a specific agreement between the

3  parties, the scope of the conspiracy, the role each played, and when and how the conspiracy

4  operated.  *Steshenko v. Gayrard*, 44 F.Supp.3d 941, 957 (N.D. Cal. 2014).  Plaintiffs failed to

5  introduce any evidence showing that Mayfield was engaged in a scheme with Hart (or anyone

6  else) to violate Plaintiffs' right to free speech.

7       The fact that Mayfield was standing by observing the conversation between Defendant

8  Hart and Plaintiff Cuviello is in no way indicative of action "in concert" by Mayfield.  Observing

9  a conversation between two adversarial parties, Plaintiff Cuviello and Defendant Hart, was

10  entirely consistent with the reason why Mayfield and his fellow deputies had been assigned to the

11  rodeo event in the first place—to provide a general law enforcement presence, or, in other words,

12  to keep the peace.

13       In sum, Plaintiffs' motion for summary judgment should be denied in its entirety.

14  **IV.**  **THE COUNTY AND MAYFIELD ARE ENTITLED TO SUMMARY JUDGMENT
15  ON THEIR CROSS-MOTION, OR ALTERNATIVELY, PARTIAL SUMMARY
      JUDGMENT**

16      **A.**  **Neither Mayfield Nor The County Violated Plaintiffs' Constitutionally-
17  Protected Free Speech Rights**

18       Based on the same evidence and legal authorities discussed above, the County Defendants

19  are entitled to summary judgment on all of Plaintiffs' claims for alleged violation of Plaintiffs'

20  free speech rights under either the United States or California Constitutions.

21       Mayfield is also entitled to summary judgment on Plaintiffs' Sixth Cause of Action, which

22  seeks injunctive relief pursuant to 42 U.S.C. §1983 against Mayfield for his purported violation of

23  Plaintiffs' First Amendment rights, and a declaration under 42 U.S.C. § 2201(a) that he violated

24  these rights.  Consequently, the County Defendants are entitled to summary judgment in their

25  favor on the Third, Fifth and Sixth Causes of Action of Plaintiffs' Second Amended Complaint.

26  Should the Court deny Defendants' summary judgment, the Court may enter partial summary

27  judgment on the issues discussed below.

28

FENNEMORE WENDEL
ATTORNEYS AT LAW
OAKLAND

17

COUNTY OF ALAMEDA'S CROSS-MOTION
49544920.2/059499.0021

3:23-CV-01652-VC

1

**B.     Plaintiffs' Recovery Is Limited To Statutory Damages Of $4,000 If A Violation Of The Bane Act Is Found**

2

3     Plaintiffs' only state law claims against Mayfield and the County are brought under the

4     Bane Act (Civ. Code section 52.1).  Civil Code section 52.1(c) provides that, "[a]n individual . . .

5     may institute and prosecute in their own name and on their own behalf a civil action for damages,

6     including, but not limited to damages under Section 52, injunctive relief, and other appropriate

7     equitable relief . . . ."  However, neither subsection (a) or (b) refers to Civil Code section 52.1.

8     Section 52(a) provides for actual damages for violations of Civil Code sections 51, 51.5 and 51.6.

9     Section 52(b) provides for actual damages, punitive damages (to be determined by a jury or the

10    court sitting without a jury), a civil penalty of $25,000, and attorney's fees, for violations of Civil

11    Code sections 51.7 or 51.9.

12    Plaintiffs both admit that the only "compensatory" damages they are seeking against the

13    County and Mayfield are $29,000 for each Plaintiff; broken down as follows: $25,000 under

14    California Civil Code § 21 and $4,000 under California Civil Code § 52(a).  Plaintiffs also admit

15    that they are not seeking any special damages pursuant to 42 U.S.C. § 1983.  During their

16    depositions, Cuviello and Bolbol both admitted that they suffered no physical, emotional or

17    psychological injuries as a result of their interactions with the ACSO deputies, nor are they

18    seeking any compensation for any lost wages and/or lost earning capacity.  Brainich Decl., Ex. A,

19    Cuviello Depo., p. 113:8-16; Ex. B, Bobol Depo., p. 120:2-15.

20    Where "no actual damages are sought, the $4,000 statutory minimum damages may be

21    awarded without proof of harm and causation," citing *Koire v. Metro Car Wash,* 40 Cal.3d 24, 33

22    (1985)[2]; *see also  Molski v. M.J. Cable, Inc.,* 481 F.3d 724, 731 (9th Cir. 2007); *Kwon v. Ramirez,*

23    576 F.Supp.3d 696, 699 (C.D. Cal 2021).  Since plaintiffs admit that they are not seeking

24    compensatory damages, each would be able to recover, at most, $4,000 in statutory damages.

25

26    [2] *Koire* did not involve a claim under the Bane Act, but rather, a claim under the Unruh Civil Rights Act (Civ. Code §51) brought by a male plaintiff who argued that giving women free admission to a night club on "Ladies Night" violated the Unruh Act.  When defendants argued

27    that the plaintiff could show no harm, the court noted that "Section 52 provides for minimum statutory damages of $250 for every violation of section 51, regardless of the plaintiff's actual

28    damages."  (Since *Koire* was decided, the minimum statutory damages amount under section 52(a) has increased to $4,000.)

FENNEMORE WENDEL
ATTORNEYS AT LAW
OAKLAND

1

**C.      Plaintiffs Cannot Recover A $25,000 Civil Penalty**

2

Under the language of Civil Code sections 52.1 and 52, as well as case law, an individual

3

bringing an action pursuant to section 52.1(c) is not entitled to a civil penalty of $25,000.  Section

4

52.1(b) provides that in cases brought by the Attorney General, any district attorney, or a city

5

attorney, the public attorneys may seek a civil penalty of $25,000.  However, section 52.1(c),

6

which allows an individual to bring his or her own action, does not include a provision that the

7

individual may seek a civil penalty.  Rather, the provision only states that an individual may bring

8

a "civil action for damages, including, but not limited to damages under Section 52, injunctive

9

relief, and other appropriate equitable relief."  Civ. Code §52.1(c) (emphasis added).  Civil Code

10

section 52(a) does not include a civil penalty.  Section 52(b) provides for recovery of actual

11

damages, exemplary damages, a civil penalty of $25,000, and attorney's fees.  However, in

12

*Cuviello, et al. v. City of Oakland, et al.*, 2010 WL 3063199 at *5 (N.D. Cal. Aug. 3, 2010), the

13

court determined that while an individual bringing an action under Civil Code section 52.1 could

14

recover damages, "damages" did not include recovery of a civil penalty.  The court stated that

15

"Section 52(b)(2) civil penalties are not available under Section 52.1(b)."  *Id.* at *6.  The court

16

observed that section 52.1, as a whole, provides five potential remedies:  damages, injunctive

17

relief, equitable relief, civil penalties, and attorney's fees.  *Id.* at *5.  "[T]he word 'damages' in

18

Section 52.1(b) does not include, sub silentio, the civil penalties specified in Section 52(b)(2).

19

Section 52 damages include actual damages, treble damages, and exemplary damages."  *Id.* at *6.

20

The court noted that there is a distinction between civil penalties and damages. "'Penalty' is

21

defined as 'a sum of money exacted as punishment for either a wrong to the state or a civil wrong

22

(as distinguished from compensation for the injured party's loss),' whereas 'damage' is defined as

23

'[o]f or relating to monetary compensation for loss or injury to a person or property.'  Black's

24

Law Dictionary (9th ed. 2009) 1247, 445."  *Id.* at *6.

25

Judge Patel reached the same conclusion in *Bolbol v. City of Daly City,* 754 F.Supp.2d

26

1095, 1117 (N.D. Cal. 2010);  *see also Weaver v. City of Santa Clara*, 2014 WL 6330402 (N.D.

27

Cal. Nov. 14, 2014) ("it is settled in the Northern District that the reference to 'damages' (and not

28

'civil penalty') in § 52.1(b) . . . eliminates the possibility of a $25,000 penalty under §52(b)(2).")

Fennimore Wendel
Attorneys at Law
Oakland

1    In addition, at least one California court has concluded that the $25,000 civil penalty under Civil

2    Code §52(b) is not available to a plaintiff who brought a claim under 52.1(c).  *Center for Bio-*

3    *Ethical Reform, Inc. v. Irvine Co., LLC*, 37 Cal.App.5th 97, 115-116 (2019).  The court stated that

4    the $25,000 civil penalty "is only available when a person is denied a 'right provided by [Civil

5    Code] [s]ection 51.7 or 51.9.' (Civ. Code, §52, subd. (b).)"  *Id.*  Neither provision was alleged

6    against the County Defendants here.

7         In sum, as a matter of law, Plaintiffs are not entitled to recover $25,000 in civil penalties.

8         **D.    Plaintiffs Cannot Recover Treble Damages From County Defendants**

9         Since Plaintiffs are not claiming any compensatory damages (e.g., past or future economic

10   or noneconomic loss), there is no amount of actual damages to treble.  As the language of section

11   52(a) and the Judicial Council's directions in VF-3035 suggest, only actual damages proven

12   would be the subject of trebling.  Nothing suggests that in the absence of actual compensatory

13   damages, that the $4,000 statutory amount may be trebled.

14        Furthermore, some courts have concluded that "the up-to-treble add-on under Section 52

15   bears the hallmarks of punitive damages—including being awarded at the discretion of the

16   factfinder in an unfixed amount—and they are thus unavailable against a governmental entity."

17   *See Loggervale v. Holland*, 2023 WL 3958893 at *36 (N.D. Cal. June 12, 2023) (appeal to Ninth

18   Circuit filed on July 11, 2023).  In *Archibald v. County of San Bernardino*, 2018 WL 8949779, at

19   * 1 (C.D. Cal. May 10, 2018), the court found "that treble damages under §52(a) are properly

20   considered punitive or exemplary, and [Cal. Government Code] § 818 immunizes the County

21   from that liability."  In reaching that conclusion, the court relied on other federal court decisions,

22   as well as language regarding Civil Code section 52 in *Harris v. Capital Growth Inv'rs XIV*, 52

23   Cal.3d 1142 (1991), *overruled on other grounds in Munson v. Del Taco, Inc.*, 46 Cal.4th 661

24   (2009).  In *Harris*, the California Supreme Court stated: "the damages provision allowing for an

25   exemplary award of up to treble the actual damages suffered with a stated minimum amount

26   reveals a desire to punish intentional and morally offensive conduct."  *Harris*, 52 Cal.3d at 1172.

27   As the court in *Archibald* explained: "indeed treble damages under §52(a) bear some of the

28   hallmarks of punitive damages:  they are awarded at the discretion of a factfinder, and the amount

1   is not fixed." *Archibald v. County of San Bernardino*, 2018 WL 8949779, at *1; *see also H.M. v.*

2   *County of Kern* 2022 WL 286614, at *6 (E.D. Cal. Jan. 31, 2022) ("Because California

3   Government Code §818 does not permit the recovery of punitive damages against a public entity

4   such as the County, Plaintiff is unable to recover treble damages under Section 52(a)."); *Jefferson*

5   *v. City of Fremont*, 2012 WL 1534913, at *7 (N.D. Cal. April 30, 2012) (court rejected plaintiff's

6   request for up to three times the amount of actual damages against the City, because it is punitive

7   in nature and precluded by Government Code section 818).)

8         Furthermore, the California Supreme Court recently held that Government Code section

9   818 applies to bar damages that would function as an award of punitive damages.  *Los Angeles*

10  *Unified School District v. Superior Court*, 14 Cal.5th 758 (2023).  In reaching that conclusion, the

11  Court rejected an interpretation that only damages that are "simply and solely punitive" are

12  precluded by section 818.  "[T]he test under section 818 is whether damages would be awarded

13  under Civil Code section 3294, or would otherwise be 'imposed primarily for the sake of example

14  and by way of punishing the defendant' (Gov. Code, §818) such that they would function, in

15  essence, as punitive or exemplary damages." *Id.* at 775-776.  During its lengthy discussion of

16  section 818, the court noted that, "[t]he disinclination to subject public entities to punitive and

17  exemplary damages has extended to treble damages in circumstances where these damages are

18  imbued with a sufficiently exemplary character." *Id.* at 769.  In sum, Plaintiffs cannot recover

19  treble damages from the County Defendants.

20        **E.**      **Neither The County Nor Mayfield Are Liable For Punitive Damages**

21        It is well settled that Plaintiffs, as a matter of law, cannot maintain their punitive damage

22  claim against the County based on either their state or federal law claims.  Gov. Code § 818 ["a

23  public entity is not liable for [punitive or exemplary] damages … or other damages imposed

24  primarily for the sake of example and by way of punishing the defendant"; *Marron v. Superior*

25  *Court,* 198 Cal.App.4th 1049, 1059 (2003) [same, citing § 818]; *City of Newport v. Fact*

26  *Concerts, Inc.*, 453 U.S. 247, 271 (1981) [public entities immune from punitive damages under

27  42 U.S.C. § 1983].)   Although an award of punitive damages directly against Mayfield would be

28  permissible under appropriate circumstances (*Smith v. Wade*, 461 U.S. 30, 36 (1983)), the facts

1    here establish, as a matter of law, that Plaintiffs are not entitled to such a recovery against

2    Mayfield.

3         For the state law claims against Mayfield, the punitive damages claim is subject to

4    California law standards for recovery.  *Coughlin v. Tailhook Ass'n,* 112 F.3d 1052, 1056 (9th Cir.

5    1997).  Under California law, a plaintiff must prove by clear and convincing evidence that a

6    defendant has been guilty of oppression, fraud, or malice.  Cal. Civ. Code §3294(a).  "Malice"

7    means conduct which is intended by the defendant to cause injury to the plaintiff, or despicable

8    conduct which is carried out by the defendant with a willful and conscious disregard of the rights

9    or safety of others.  Civ. Code §3294(c)(1).  "Oppression" means conduct that subjects a person

10   to cruel and unjust hardship in conscious disregard of that person's rights.  Civ. Code

11   §3294(c)(2).  "Fraud" means an intentional misrepresentation or concealment of a material fact

12   known to the defendant with the intent of depriving the plaintiff of property, legal rights, or

13   otherwise causing injury.  Civ. Code §3294(c)(3).  Malice may be shown where the defendant

14   exhibits "the motive and willingness to vex, harass, annoy, or injure,"  *Nolin v. Nat'l Convenience*

15   *Stores, Inc.*, 95 Cal. App. 3d 279, 285 (1979), or a "conscious disregard of the rights and safety of

16   others" *Potter v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 1000 (1993).

17        Punitive damages may also be available under section 1983.  Because it is a claim under

18   federal law, federal standards apply. A plaintiff has the burden of proof that punitive damages

19   should be awarded and the amount, by a preponderance of the evidence."  *Dang v. Cross*, 422

20   F.3d 800, 805 (9th Cir. 2005).  "[A] 'jury may award punitive damages under section 1983 either

21   when a defendant's conduct was driven by evil motive or intent, or when it involved a reckless or

22   callous indifference to the constitutional rights of others.'"  *Id.* at 807 (quoting *Morgan v.*

23   *Woessner*, 997 F.2d 1244, 1255 (9th Cir. 1993).  "The standard for punitive damages under §1983

24   mirrors the standard for punitive damages under common law tort cases," and "malicious,

25   wanton, or oppressive acts or omissions are within the boundaries of traditional tort standards for

26   assessing punitive damages."  *Id.* (citing *Smith v. Wade*, 461 U.S. 30, 34 (1983).

27        Even if  Mayfield were somehow found liable for violating plaintiffs' free speech rights, it

28   would not have been clear to a reasonable officer that informing plaintiffs that they "could be

22

1   arrested" and/or asking plaintiffs not to block the walkways or access to the bathroom facilities

2   was unlawful.  There is absolutely no evidence of malice, oppression or fraud, evil intent or

3   motive, disregard of plaintiffs' safety, and/or reckless indifference to Plaintiffs' rights on the part

4   of Mayfield; there was no physical harm to plaintiffs; and there was no misuse or abuse of power

5   or authority.  In *Cuviello, et al. v. City of Oakland, et al.*, Northern District of California Case No.

6   C-06-5517 MHP (Dkt. No. 218) (July 20, 2009), the magistrate judge rejected Cuviello's claim

7   for punitive damages against the individual police officers, finding that, "Plaintiff's free speech

8   rights were not clearly established as it would not have been clear to a reasonable officer that his

9   conduct was unlawful in the situation he or she confronted." *Id.* at p. 40:19-21.  There are no

10  facts to support an award of punitive damages against Mayfield.

11          **F.      Plaintiff Cuviello Cannot Recover His Attorney's Fees From Defendants**

12          Generally, when a plaintiff represented by counsel prevail at trial, the court may award

13  him or her reasonable attorney's fees based on both the plaintiff's federal and state court claims.

14  *See* 42 U.S.C. § 1988; Cal. Civ. Code § 52.1(i).  However, here, as a matter of law, Cuviello is

15  not entitled to any recovery of attorneys' fees since he is not represented by legal counsel, and

16  instead is appearing *pro se*.  "Attorneys' fees are not available to plaintiff because he is

17  proceeding without representation by a lawyer."  *Robinson v. Kiran Ahuja*, 2021 WL 5564804 at

18  * 4 (N.D. Cal. Nov. 29, 2021) (civil rights case involving employment discrimination under Title

19  VII of the 1964 Civil Rights Act), citing *Kay v. Ehler*, 499 U.S. 432, 435 (1991).

20          Consequently, the County Defendants are entitled to summary judgment on any claim by

21  Mr. Cuviello for attorney's fees.

22          **G.      Plaintiffs Are Not Entitled To An Injunction Under 42 U.S.C. §1983 Or
                    Declaration Under 28 U.S.C. §2201(a) Against Mayfield**

23

24          Mayfield is entitled to summary judgment as to Plaintiffs' Sixth Claim for Relief, because

25  there is no evidence that he violated Plaintiffs' free speech rights.[3]

26  ────────────────

27  [3] Plaintiffs have alleged no cause of action for violation of section 1983 against the County.  *See*
    SAC at pp. 23:21-25:3.  There is no vicarious liability under § 1983, and public entities are only
    liable for a constitutional violation based on its policy, custom, or practice.  *Dougherty v. City of*
28  *Covina*, 654 F.3d 892, 900 (9th Cir. 2011), citing *Monell v. Dept. of Soc. Servs.*, 436 U.S. 658,
    694 (1978).

1    To prevail on a claim under 42 U.S.C. section 1983, a plaintiff must establish two

2    essential elements:  (1) that a right secured by the Constitution of laws of the United States was

3    violated; and (2) that the violation was committed by a person acting under the color of state law.

4    *West v. Atkins*, 487 U.S. 42, 48 (1988).  "To state a viable Section 1983 claim against an

5    individual, a plaintiff's complaint must allege that the individual's own action caused the

6    particular constitutional deprivation alleged."  *Manning v. County of Los Angeles Board of*

7    *Supervisors*, 2019 WL 3064469 at *3 (C.D. Cal. April 23, 2019).

8    As discussed above, the evidence shows that Mayfield was doing nothing more than

9    simply requesting that Plaintiffs stay out of the patrons' way and not block ingress/egress to the

10   rodeo entrance and the bathrooms.  Plaintiffs never changed their location or their conduct in any

11   way.  Their own statements caught on video establish that at no point did Plaintiffs believe they

12   were about to be arrested or even ordered to the FSA by Mayfield.  In sum, there is no evidence

13   that Plaintiffs ever felt "chilled" in their ability to express themselves to the patrons.

14   Finally, even if the evidence had shown some infringement on Plaintiffs' free speech

15   rights by Mayfield, Plaintiffs have not established any need for an order enjoining Mayfield from

16   interfering with Plaintiffs' rights in the future.  Plaintiffs have not offered any evidence of any

17   free speech issues arising at the rodeo that was subsequently held in 2023 at Rowell Ranch or that

18   Mayfield was even present at the rodeo since 2022.  To the contrary, Plaintiffs admit they had no

19   problems demonstrating at the rodeo at Rowell Ranch in 2023.  Brainich Decl., Ex. A, Cuviello

20   Depo., p. 111:8-112:13; Ex. B, Bolbol Depo., p. 119:11-24.  There is no evidence that Plaintiffs

21   would suffer future harm absent injunctive relief.

22   / / /

23   / / /

24   / / /

25   / / /

26   / / /

27   / / /

28   / / /

1  **V.      CONCLUSION**

2          For the reasons set forth above, this Court should grant summary judgment to the County

3  Defendants and deny Plaintiffs' motion for partial summary judgment as to the County

4  Defendants.

5

6  Dated: June 27, 2024                              FENNEMORE WENDEL

7

8                                                    By: /s/ *Thiele R. Dunaway*

9                                                         Thiele R. Dunaway
                                                         Attorneys for Defendants
10                                                       County of Alameda and Alameda County
                                                         Deputy Sheriff Joshua Mayfield
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28