DALE L. ALLEN, JR., State Bar No. 145279
dallen@aghwlaw.com
NICHOLAS D. SYREN, State Bar No. 334807
nsyren@aghwlaw.com
ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, CA 94104
Telephone:   (415) 697-2000
Facsimile:    (415) 813-2045

Attorneys for Defendants
HAYWARD AREA RECREATION AND PARK
DISTRICT and KEVIN HART

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH P. CUVIELLO and DENIZ BOLBOL, individually,<br><br>Plaintiff,<br><br>v.<br><br>ROWELL RANCH RODEO, INC., HAYWARD AREA RECREATION AND PARK DISTRICT, HAYWARD AREA RECREATION AND PARK DISTRICT PUBLIC SAFETY MANAGER/RANGER KEVIN HART, and DOES 1 and 2, in their individually and official capacities, jointly and severally,<br><br>Defendants. | Case No. 3:23-cv-01652-VC<br><br>**REPLY TO PLAINTIFFS' SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF DEFENDANTS HAYWARD AREA RECREATION AND PARK DISTRICT AND KEVIN HART'S OPPOSITION TO PLAINTIFFS' JOINT MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Hon. Vince Chhabria<br><br>Date:   August 15, 2024<br>Time:   10:00 a.m.<br>Ctrm:   4 – 17th Floor |

**Preliminary Statement:**

Plaintiffs submitted a Separate Statement of Facts (Dkt. 84-1) which was not required per the Hon. Vince Chhabria's Standing Order ¶42. Additionally, the Standing Order is silent as to whether a response is required by the Opposing Party. Out of an abundance of caution, Defendants respond to Plaintiffs' Separate Statement of Facts with disputes and objections.

**Plaintiffs' Peaceful Demonstration Against Animal Cruelty and Mistreatment**

1.     Plaintiffs Joseph Cuviello and Deniz Bolbol are "Animal rights activists" with a decades-long history of advocating for the humane treatment of animals. Declaration Joseph

1   Cuviello ("Cuviello Decl.") ¶¶ 3, 6, Exh. 18 (news article characterizing Animal Rights as a

2   political issue and animal rights advocacy as a political position); Declaration Deniz Bolbol

3   ("Bolbol Decl.") ¶ 3. They organize and participate in peaceful demonstrations at events like

4   those hosted by Defendant Rowell Ranch Rodeo, Inc. ("Rowell Ranch"), where animals are used

5   for entertainment purposes and together, Plaintiffs founded a grassroots group, "Humanity

6   through Education," which is a 501(c)3 nonprofit organization. Cuviello Decl. ¶¶ 3, 7-8; Bolbol

7   Decl. ¶¶ 3, 7-8. At demonstrations, Plaintiffs' speech and association focuses on the abuse and

8   mistreatment of animals by circuses, rodeos, and other "entertainment" entities, which is of great

9   public concern locally, nationally, and internationally. Cuviello Decl. ¶ 4; Bolbol Decl. ¶ 4.

10  **Defendants' Response:**

11      Defendants do not dispute any of the facts alleged in Plaintiffs' No. 1.

12      2.      During their decades of animal rights demonstrations both Plaintiffs have had their

13  free speech rights violated by being falsely arrested and by threats of arrest from law enforcement

14  officers on numerous occasions. Cuviello Decl. ¶ 5; Bolbol Decl. ¶ 5. As a result, Plaintiffs have

15  had to file a number of lawsuits over the years to have their rights upheld and protected. Cuviello

16  Decl. ¶ 5; Bolbol Decl. ¶ 5.

17  **Defendants' Response:**

18      Based on information and belief Defendants cannot confirm nor dispute any of the facts

19  alleged in Plaintiffs' No. 2.

20      3.      Plaintiffs Cuviello and Bolbol have been demonstrating at rodeo events at the

21  Rowell Ranch Rodeo Park ("Rodeo Park") intermittently from 1988 to 2022 and 2018 to 2022

22  respectively; they have always stood near the entrance to the rodeo without causing interference

23  and without incident. Cuviello Decl. ¶ 10; Bolbol Decl. ¶ 8. Plaintiffs find the most successful

24  point of persuasion at a rodeo event is at or near the pedestrian entrance as one-on-one

25  communication is the most effective means of communicating their message. Cuviello Decl. ¶¶ 9-

26  10; Bolbol Decl. ¶¶ 9-10.

27  **Defendants' Response:**

28      1.      Defendants object as the material facts are impermissibly compound.

Based on information and belief Defendants do not dispute Plaintiffs Cuviello and Bolbol have demonstrated intermittently from 1988 to 2022 and 2018 to 2022 respectively at Rowell Ranch Rodeo. Defendants dispute that Plaintiffs "stood near the entrance to the rodeo without causing interference and without incident." Defendants dispute based on evidence as follows: Declaration of Kevin Hart ¶¶ 6-13; County of Alameda's Document Production Bates 000368-000396 attached as Exhibit E to Declaration of Nicholas D. Syren; County of Alameda's Document Production Bates 000342-000367 attached as Exhibit D to Declaration of Nicholas D. Syren; Plaintiffs' document production 000014-000017 attached as Exhibit F to Declaration of Nicholas D. Syren; Defendants' Expert James Dudley's Expert Report attached as Exhibit I to Declaration of Nicholas D. Syren.

4.      In 2018 and 2019, prior to attending the demonstrations in those years, Plaintiff Cuviello communicated, via email, with HARD General Manager Paul McCreary and Alameda County Sheriffs, on-site, to ensure Plaintiff's free speech rights would be upheld. Cuviello Decl. ¶ 8, Exh. 19.

**Defendants' Response:**

Based on information and belief Defendants do not dispute any of the facts alleged in Plaintiffs' No. 4. The information is also not 'material' to deciding the motion.

5.      Plaintiffs' method of demonstration consists of holding signs and banners, approaching patrons and speaking in a respectful manner and by handing out leaflets which communicate their message. Cuviello Decl. ¶ 9; Bolbol Decl. ¶¶ 9, 10 (I do not yell or chant), 20. Plaintiff Cuviello asks all participants associated with the organization he founded, Humanity Through Education, to use the same approach. Cuviello Decl. ¶¶ 9- 10, 40, Exh. 21 (example of leaflet); Bolbol Decl. ¶ 9; Declaration Robyn Newkirk ISO Plaintiffs' Joint Motion for Partial Summary Judgment ("Newkirk Decl.") ¶ 7; Declaration Mike Sage ISO Plaintiffs' Joint Motion for Partial Summary Judgment ("Sage Decl.") ¶ 7. 9

**Defendants' Response:**

Defendants object based on the failure of Plaintiffs to file Mr. Sage's Declaration as referenced as evidence here. Without waiving said objection, Defendants dispute that Plaintiffs

"speaking in a respectful manner" and that Plaintiff BolBol allegation that she says "(I do not yell or chant)." Defendants dispute based on evidence as follows: Declaration of Kevin Hart ¶¶ 6-13; County of Alameda's Document Production Bates 000368-000396 attached as Exhibit E to Declaration of Nicholas D. Syren; County of Alameda's Document Production Bates 000342-000367 attached as Exhibit D to Declaration of Nicholas D. Syren; Plaintiffs' document production 000014-000017 attached as Exhibit F to Declaration of Nicholas D. Syren; Defendants' Expert James Dudley's Expert Report attached as Exhibit I to Declaration of Nicholas D. Syren.

### Defendant HARD's "Free Speech Area" at the Rodeo Park

6. The Rodeo Park is public property, owned and managed by Defendant Hayward Area Recreation Department ("HARD"). Declaration of Jessica Blome ("Blome Decl.") ¶ 15, Exh. 34A at 195-196 (HARD purchased Rowell Ranch Rodeo Grounds and has fiduciary responsibility for the property), Exh. 34C at 208-212 ("Rodeo Policy, Fees, and Guidelines"); Cuviello Decl. ¶ 39, Exh. 20 (July 1, 1995, letter from Defendant HARD President Board of Directors Douglas Morrison to Bill Pickett Invitational Rodeo President, Lu Vason stating the Rodeo Park is public property).

**Defendants' Response:**

HARD disputes that the Rowell Ranch Rodeo property is always considered a public or quasi public property because Rowell Ranch Rodeo is not open to the public throughout the vast majority of the year and is used by private entities for Rodeo events.

7. As part of Defendant HARD's "Rowell Ranch Rodeo Policy, Fees and Guidelines" a lessee is required to include a "marked location for public speech" as part of the "Conditions of Use." Blome Decl. ¶ 15, Exh. 34C at 209-210.

**Defendants' Response:**

Objection, this fact is not 'material' to deciding the ultimate issue of the motion.

8. Defendant Rowell Ranch Rodeo applied for and HARD approved a Permit for Rowell Ranch Rodeo to lease the Rodeo Park and host a rodeo event. Blome Decl. ¶ 5, Exhs. 34B, 34F. As the lessee, Defendant Rowell Ranch set up a "Free Speech Area." Blome Decl. ¶ 2,

Exh. 22 at Response to Interrogatory No. 11. Rowell Ranch maintains, "Designation of a Free Speech area (or "Public Speech as defined by HARD requirements) is part of the security plan required by the Rowell Ranch Rodeo Policy, Fees and Guidelines published by HARD." *Id*. at Response to Interrogatory No. 11; Blome Decl. ¶ 15, Exh. 34C at 208-209.

**Defendants' Response:**

Defendant objects to #8 as impermissibly compound.

9. The location of the Free Speech Area was designated by Defendant HARD and selected by Defendants Rowell Ranch and HARD. Blome Decl. ¶ 2, Exh. 22 at Response to Interrogatory No. 14. Defendant HARD designated the Free Speech Area on a map, within the Emergency Action Plan for Rowell Ranch Rodeo, 2022. Blome Decl. ¶ 15, Exh. 34D at 224.

**Defendants' Response:**

Defendant objects and disputes to the extent HARD designated the Free Speech Area on a map and "designated" by Defendant HARD. See Hart Decl. ¶ 4.

10. When asked the reason for the required "marked location for public speech" in the "Rowell Ranch Rodeo, Policy, Fees, and Guidelines," HARD responded, "It is unknown the reasons HARD required a marked location for public speech." Blome Decl. ¶ 11, Exh. 30 at Response to Interrogatory No. 5. Further, when asked to describe the reason HARD set up a "Free Speech Area" during the "2022 Events," HARD responded, "Unknown." *Id*. at Response to Interrogatory No. 6.

**Defendants' Response:**

Defendant does not dispute the above material facts.

11. Free speech activity is a right for individuals and groups at the Rodeo Park, which includes distributing leaflets, holding signs and/or passing out informational leaflets. Cuviello Decl. ¶¶ 38-40, Exhs. 17, 20 and 21 (leaflet provided to Rodeo patrons).

**Defendants' Response:**

Defendant objects as to the ability of Plaintiff Cuviello to provide evidence as to the 'free speech activity right' of individuals as the Rodeo Park. As stated in Defendant's response to fact #6 HARD disputes that the Rowell Ranch Rodeo property is always considered a public or quasi-

1 public property because Rowell Ranch Rodeo is not open to the public throughout the vast
2 majority of the year and is used by private entities for Rodeo events usually open to the public.

3     12. During the May 2022 events at the Rodeo Park, the Free Speech Area,
4 approximately ten feet by five feet, was designated behind the parking lot entrance gate, to the
5 right of the vehicle entrance of the Rodeo Park and approximately 100 yards from the pedestrian
6 entrance to the Rodeo. Blome Decl. ¶ 15, Exh. 34D at 224; *Id*. at ¶ 16, Exh. 35; Cuviello Decl.
7 ¶14, Exh. 6 (timestamp 0:32); Bolbol Decl. ¶ 14.

**Defendants' Response:**

Defendant cannot confirm nor deny the approximate distance of the Free Speech Area from the vehicle entrance of the Rodeo Park. Please see attachment to Decl. of Kevin Hart for approximate location of the Free Speech Area.

    13. On behalf of Defendant Rowell Ranch, Rodeo president Russell Fields stated the intent of setting up the Free Speech Area is to keep the roadways clear from people setting up "camp" on the roadways which "must be kept free for emergency vehicles to gain access to and from the rodeo." Dkt. 39, Declaration of Russell Fields Pursuant to Court's Order of May 17, 2023, regarding Issuance of T.R.O, May 17, 2023, ¶ 6 ("Fields Decl."). The Free Speech Area is mainly for demonstrators who "desire[] to set up a table, tent or umbrella." Dkt. 43, Supplemental Declaration of Russell Fields Pursuant to Court's Order of May 17, 2023, regarding Issuance of T.R.O, May 18, 2023, ¶ 4 ("Fields Suppl. Decl."). Protestors have handed out pamphlets on the roadway, and provided they do not "set up camp," there was no problem. Fields Decl. ¶ 7. Additionally, Mr. Fields stated that "to the best of his knowledge protestors have been showing up for about the last ten years," he can't "say that any of the protestors ever used the designated Free Speech Area," and "there was never any issue or complaint regarding any interaction between the protestors and attendees of the rodeo or with the Rowell Ranch Rodeo Inc. personnel." Dkt. 39, ¶¶ 10, 11.

**Defendants' Response:**

Defendants cannot confirm nor deny the intent or factual basis for Mr. Fields' declaration in support of TRO. The fact is not 'material' to determining the motion.

**Events at the Rodeo Park on May 20, 2022**

14. Plaintiffs, along with their colleagues, participated in demonstrations at the Rodeo Park from May 20 - May 22 of 2022. Cuviello Decl. ¶ 12; Bolbol Decl. ¶ 13; Sage Decl. ¶ 6; Newkirk Decl. ¶ 6. Upon arrival on May 20, 2022, Plaintiff Cuviello noticed a cordoned off area that had a sign that read "Free Speech Area." Cuviello Decl. ¶ 14. The area was located behind the front parking lot gate, approximately 100 yards away from the pedestrian entrance to the facility. *Id.*; Bolbol Decl. ¶ 14. Because it was far from the pedestrian entrance, Plaintiffs knew it would not be an effective option to communicate their message. Cuviello Decl. ¶ 15; Bolbol Decl. ¶ 14. Plaintiffs positioned themselves near, but not interfering with ingress or egress, the pedestrian entrance, as they have done in previous years without incident. Cuviello Decl. ¶ 16. This location is traversed by all patrons who enter the facility at this entrance. Cuviello Decl. ¶ 16; Bolbol Decl. ¶ 14.

**Defendants' Response:**

Defendants object based on the failure of Plaintiffs to file Mr. Sage or Ms. Newkirk's Declaration as referenced as evidence here. Without waiving said objection, Defendants dispute that "Plaintiffs positioned themselves near, but not interfering with ingress of egress, the pedestrian entrance.." as well the exact distance and location of the Free Speech Area. Defendants dispute based on evidence as follows: Declaration of Kevin Hart ¶¶ 6-13; County of Alameda's Document Production Bates 000368-000396 attached as Exhibit E to Declaration of Nicholas D. Syren; County of Alameda's Document Production Bates 000342-000367 attached as Exhibit D to Declaration of Nicholas D. Syren; Plaintiffs' document production 000014-000017 attached as Exhibit F to Declaration of Nicholas D. Syren; Defendants' Expert James Dudley's Expert Report attached as Exhibit I to Declaration of Nicholas D. Syren.

15. At the pedestrian entrance to the Rodeo Park, Plaintiffs displayed a banner that read "Not Fun for the Animals" and held animal rights signs. Cuviello Decl. ¶ 16, Exh. 15. Plaintiff Cuviello also held a sign that had a large photo of a man petting a bull that read, "Bulls Are Not Mean & Wild; They Are Docile." Cuviello Decl. ¶ 13, Exh. 14. Plaintiff Bolbol held a sign stating, "They Buck from Pain Caused by Bucking Straps," with a photo of a bucking steer.

1  Bolbol Decl. ¶ 27, Exh. 16. Doe Defendant 1, identified by Defendant Rowell Ranch as Gary

2  Houts, Rowell Ranch's Public Safety Coordinator, told Plaintiffs they must move to the Free

3  Speech Area. Bolbol Decl. ¶ 15, Exh. 1; Blome Decl. ¶ 2, Exh. 22 at 43, ¶ 14, Exh. 33B at 167 (p.

4  3:15-17).

**Defendants' Response:**

Defendants do not dispute these facts. Defendants object as these facts are not 'material' to deciding the motion against HARD Defendants.

16.  As Plaintiffs stood peacefully, Mr. Houts repeatedly told them to move to the Free Speech Area and tried to grab Plaintiff Cuviello's banner. Blome Decl. ¶ 14, Exh. 33B at 173; Cuviello Decl. ¶ 17, Exh. 7; Bolbol Decl. ¶ 15, Exh. 1 (timestamp 0:12-0:15). Plaintiffs told Mr. Houts he is not allowed to touch them. Cuviello Decl. ¶ 17, Exh. 7 (timestamp 0:15-0:17); Bolbol Decl. ¶ 15, Exh. 1 (timestamp 0:15). Plaintiff Cuviello made clear to Mr. Houts that if he has a problem, he should call the police. Blome Decl. ¶ 14, Exh. 33B at 173 (p. 26:22-27:22); Cuviello Decl. ¶ 17, Exh. 7 (timestamp 0:10); Bolbol Decl. ¶ 15, Exh. 1. Mr. Houts insisted, "You're not in the area you need to be," stood in front of Plaintiffs' banner, blocking their message regarding animal welfare and stated, "I can block you." Blome Decl. ¶ 14, Exh. 33B at 173 (p. 28:14); Cuviello Decl. ¶ 17, Exh. 7; Bolbol Decl. ¶ 15, Exh. 1 (timestamp 1:03 – 1:27). Mr. Houts also told Plaintiffs they didn't understand what they were saying [about animals used in the rodeo], they were spreading lies and the photos on their signs were altered. Blome Decl. ¶ 14, Exh. 33B at 173-174; Cuviello Decl. ¶ 17, Exh. 7 (timestamp 1:15) ; Bolbol Decl. ¶ 15, Exh. 1 (timestamp 1:55 – 2:15).

**Defendants' Response:**

Defendants do not dispute these facts. Defendants object as these facts are not 'material' to deciding the motion against HARD Defendants.

17.  At approximately 5:47 p.m., Mr. Houts called Defendant Alameda County Sheriff's Office ("ACSO") and stated that Plaintiffs were blocking the parking lot and entrance, despite the fact that Plaintiffs were not blocking ingress or egress, as is evident in the video footage. Blome Decl. ¶ 13, Exh. 32 at p. 3 (Verizon phone records), ¶ 14, Exh. 33A (Event

Register) and 33B at 174 (p. 31), ¶ 10, Exh. 29 at Response to Interrogatory No. 7; Cuviello Decl. ¶ 17, Exh. 7 (timestamp 3:00); Bolbol Decl. ¶ 15, Exh. 1 (timestamp 3:03). During this call, Mr. Houts informed the dispatch officer that Plaintiffs were holding signs and blocking access and that they "need to be removed." Blome Decl. ¶ 9, Exh. 28 (audio recording of call), ¶ 14, Exhs. 33A, 33B at 174 (p. 30:15-16). Mr. Houts described Plaintiffs and their colleagues to the dispatch operator. Blome Decl. ¶ 9, Exh. 28 (timestamp 1:36-2:56), ¶ 14, Exhs. 33A and 33B. As Mr. Houts spoke, Plaintiffs told him to stop lying. Cuviello Decl. ¶ 17 (Exh. 7).

**Defendants' Response:**

Defendants do not dispute any of the facts as stated in Plaintiff's paragraph 17.

18. Approximately five minutes later, four Officers from Defendant ACSO arrived in Sheriff vehicles and in full uniform. Cuviello Decl. ¶ 18; Newkirk Decl. ¶ 11; Sage Decl. ¶ 10. As soon as Defendant Deputy Joshua Mayfield exited the Sheriff vehicle, a rodeo patron or representative approached Defendant Mayfield and they warmly greeted and hugged each other. Bolbol Decl. ¶ 15, Exh. 1(timestamp 7:50).

**Defendants' Response:**

Defendants do not dispute any of the facts as stated in Plaintiff's paragraph 18.

19. Upon approaching Plaintiffs, the officers, including Defendant Mayfield ("Mayfield"), acknowledged that Plaintiffs' conduct was protected free speech and told Plaintiffs that if they choose to remain where they are to "just keep it peaceful." Blome Decl. ¶¶ 17, Exh. 36 (timestamp 0:50-1:17), and ¶ 14, Exh. 33B at 143 (p. 12:16-18); Bolbol Decl. ¶ 16, Exh. 1 (timestamp 10:22- 10:30); Cuviello Decl. ¶ 18. To which Plaintiff Bolbol responded, "Always.". Blome Decl. ¶ 14, Exh. 33B at 143 (p. 12:19-21), ¶ 17, Exh. 36 (timestamp 1:18); Bolbol Decl. ¶ 16, Exh. 1 (timestamp 10:27- 10:30). Defendant Deputy Mayfield then called dispatch and confirmed he talked to the protestors, advised them to keep it peaceful and that there's a designated area and that he would remain at the Rodeo Park throughout the rest of the event and requested a detail for the remainder of the night. Blome Decl. ¶ 9, Exh. 28 (ACSO audio link, timestamp 10:46- 11:32), ¶ 10, Exh. 29 at 92-93.

///

**Defendants' Response:**

Defendants do not dispute any of the facts as stated in Plaintiff's paragraph 19.

20. At approximately 6:20 p.m., after, according to HARD, "HARD/Rowell Ranch had requested that the Sheriff's Deputies instruct the demonstrators to relocate to the Free Speech Area," Defendant Deputy Mayfield, working in concert with Defendant Hart, again approached Plaintiffs. Blome Decl. ¶ 10, Exh. 29 at 92-93; Cuviello Decl. ¶ 19; Bolbol Decl. ¶ 17. At least three different video exhibits capture the subsequent interactions. See Blome Decl. ¶ 18, Exh. 37; Cuviello Decl. ¶ 19, Exh. 8; Bolbol Decl. ¶ 17, Exh. 2. Defendant Hart stated that Plaintiffs and colleagues were not in the designated area and held a map of the Rodeo Park to show them the designated Free Speech Area. Blome Decl. ¶ 18, Exh. 37 (timestamp 1:00), ¶ 14, Exh. 33B at 174 (p. 31-32); Bolbol Decl. ¶ 17, Exh. 2. Defendant Hart told Plaintiffs and colleagues that failure to move to the free speech area "will not be good." Blome Decl. ¶ 18, Exh. 37 (timestamp 1:07-1:10), ¶ 14, Exh. 33B at 174 (p. 31:25-32:3); Cuviello Decl. ¶ 20, Exh. 24  8 (timestamp 0:17-0:20).

**Defendants' Response:**

Defendants dispute that HARD requested that Sheriff's Deputies instruct the demonstrators to relocate to the Free Speech Area. Defendants dispute based on evidence as follows: Declaration of Kevin Hart ¶¶ 19-20; County of Alameda's Document Production Bates 000368-000396 attached as Exhibit E to Declaration of Nicholas D. Syren; County of Alameda's Document Production Bates 000342-000367 attached as Exhibit D to Declaration of Nicholas D. Syren; Plaintiffs' document production 000014-000017 attached as Exhibit F to Declaration of Nicholas D. Syren; Defendants' Expert James Dudley's Expert Report attached as Exhibit I to Declaration of Nicholas D. Syren.

21. Plaintiff Cuviello asked Defendant Hart what would happen if they did not move to the Free Speech Area and Defendant Hart replied, "You'll just have to figure that out when it happens." Blome Decl. ¶ 18, Exh. 37 (timestamp 1:10-1:15), ¶ 14, Exh. 33B at 174 (p. 32:8-9); Cuviello Decl. ¶ 20, Exh. 8 (timestamp: 0:21-0:31). Plaintiff Cuviello told Defendant Hart "You need to tell us now" and Defendant Hart replied, "I don't have any responsibility to tell you that

sir." Blome Decl. ¶ 18, Exh. 37 (timestamp 1:18-1:21), ¶ 14, Exh. 33B at 174 (p. 32:12-14); Cuviello Decl. ¶ 20; Exh. 8 (timestamp 0:27-0:30). Defendant Hart added, "You don't have too much of a choice." Blome Decl. ¶ 18, Exh. 37 (timestamp:2:20), ¶ 14, Exh. 33B at 175 (p. 34:16-17). Cuviello Decl. ¶ 20, Exh. 8.

**Defendants' Response:**

Defendants respond that the video speaks for itself and cannot dispute the video evidence.

22. Plaintiff Cuviello asked Defendant Deputy Mayfield, "Are you going to arrest us if we don't go there?" Blome Decl. ¶ 18, Exh. 37 (timestamp 1:21), ¶ 14, Exh. 33B at 174 (p. 32:15-16); Cuviello Decl. ¶ 21; Bolbol Decl. ¶ 17; Newkirk Decl. ¶; Sage Decl. ¶ 11. Defendant Deputy Mayfield replied, "You could be arrested." Blome Decl. ¶ 18, Exh. 37 (timestamp 1:21-1:24), ¶ 14, Exh. 33B (p. 32:17, 25); Cuviello Decl. ¶ 21, Exh. 8 (timestamp 0:31- 0:35). Plaintiff Cuviello said he did not want to be arrested and, "If you're going to arrest me, I need to know ahead of time" as he would have left. Blome Decl. ¶ 18, Exh. 37 (timestamp 1:21), ¶ 14, Exh. 33B (p. 33:3-4); Cuviello Decl. ¶¶ 21 and 22, Exh. 8; Sage Decl. ¶¶ 11-12. Defendant Deputy Mayfield maintained Plaintiff "could be arrested," it was a "possibility," and said, "I'm not required to tell you whether I will arrest you or not." Blome Decl. ¶ 18, Exh. 37 (timestamp 1:55-2:12), ¶ 14, Exh. 33B at 175 (p. 34:9-10); Cuviello Decl. ¶ 22, Exh. 8 (timestamp 1:31). Plaintiff Cuviello told Defendant Deputy Mayfield he needed to call his watch commander. Blome Decl. ¶ 18, Exh. 37 (timestamp 1:32), ¶ 14, Exh. 33B at 175 (p. 33:6); Cuviello Decl. ¶ 22, Exh. 8 (timestamp 0:44); Sage Decl. ¶ 12.

**Defendants' Response:**

Defendants respond that the video speaks for itself and cannot dispute the video evidence.

23. At this point, Defendant Deputy Mayfield stepped aside to make a phone call on his cellphone; Plaintiffs believed he was calling his watch commander. Cuviello Decl. ¶ 23, Exh. 8 (timestamp 2:05 – 2:45); Bolbol Decl. ¶ 17, Exh. 2 (timestamp 0:30- 0:36); . According to Defendants, Defendant Deputy Mayfield called Sergeant Gomez, the Sergeant on Duty for Defendant ACSO at the Rodeo. Blome Decl. ¶ 10, Exh. 29 at Response to Interrogatory No. 7 at 92-93. Defendant ACSO states that Defendant Deputy Mayfield's phone call informed Sergeant

1  Gomez that the demonstrators had been peaceful, and that Defendants HARD and Rowell Ranch
2  requested Defendant ACSO deputies instruct the demonstrators to relocate. *See* id.

3  **Defendants' Response:**

4  Defendants cannot confirm nor deny the substance of Deputy Mayfield's phone call nor
5  who he called at the time.

6  24. Defendant Hart then turned and individually asked Plaintiffs Cuviello and Bolbol,
7  "Are you refusing to leave?" Blome Decl. ¶ 18, Exh. 37 (timestamp 2:54-3:20), ¶ 14, Exh. 33B at
8  175-176 (p. 36-37); Bolbol Decl. ¶ 18, Exh. 2 (timestamp 0:27-0:35); Cuviello Decl. ¶ 23, Exh. 8
9  (timestamp 2:05 – 2:44); Sage Decl. ¶ 13. Plaintiffs Cuviello and Bolbol replied that they would
10 not leave. Blome Decl. ¶ 18, Exh. 37 (timestamp 2:46, 3:30), ¶ 14, Exh. 33B at 175-176 (p. 36-
11 37); Defendant Hart then proceeded to ask each demonstrator one-by-one, "Are you refusing to
12 leave" and they all answered yes. Blome Decl. ¶ 18, Exh. 37 (timestamp 2:54-3:30), ¶ 14, Exh.
13 33B at 175-176 (p. 36-37); Bolbol Decl. ¶ 18, Exh. 2 (timestamp 0:28 - 0:35); Cuviello Decl. ¶
14 23, Exh. 8 (timestamp 2:05 – 2:44). Defendant Hart again stated, "You're not in the designated
15 area." Blome Decl. ¶ 14, Exh. 33B at 176 (p. 37: 23-24); Bolbol Decl. ¶ 18, Exh. 2 (timestamp
16 0:44-0:47).

17 **Defendants' Response:**

18 Defendants respond that the video speaks for itself and cannot dispute the video evidence.

19 25. Both Plaintiffs felt intimidated and fearful they would be arrested but wanted to
20 wait and see what the response would be from Defendant Mayfield's watch commander. Cuviello
21 Decl. ¶¶ 22-23; Bolbol Decl. ¶¶ 18. Ms. Newkirk felt the threat of arrest was real, and that she
22 had the impression Defendant HARD's Hart was law enforcement "based on the way he was
23 acting," but did not leave, as she knew from previous experience, she was not disobeying the law.
24 Newkirk Decl. ¶ 12. Mr. Sage felt that Defendant Deputy Mayfield and Hart spoke with one
25 voice, repeating the same messages that they needed to move to the "free speech zone." Sage
26 Decl. ¶ 10. Mr. Sage did not leave as he was accustomed to this type of police harassment and
27 knew he was peaceful and did not block exit or entrance. Sage Decl. ¶ 14.
28 ///

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

12

OPPO TO PLTFS MSJ – SEP STMT
3:23-CV-01652-VC

663086.1

**Defendants' Response:**

Defendants object to the facts as presented as they related to the Newkirk and Sage Declarations as neither were presented in Plaintiffs' filing of its Motion for Partial Summary Judgment. Thus, Defendants have not had the opportunity to review the authenticity and/or merits of the declarations. Defendants dispute that Plaintiffs felt intimidated and fearful they would be arrested. Defendants dispute based on evidence as follows: Declaration of Kevin Hart ¶¶ 3-26; County of Alameda's Document Production Bates 000368-000396 attached as Exhibit E to Declaration of Nicholas D. Syren; County of Alameda's Document Production Bates 000342-000367 attached as Exhibit D to Declaration of Nicholas D. Syren; Plaintiffs' document production 000014-000017 attached as Exhibit F to Declaration of Nicholas D. Syren; Defendants' Expert James Dudley's Expert Report attached as Exhibit I to Declaration of Nicholas D. Syren.

26.     During this interaction with Defendants Hart and Deputy Mayfield, both Plaintiffs felt intimidated by Defendants' threat of arrest which they believed was intended to coerce them into giving up their free speech right to demonstrate outside the "free speech area." Bolbol Decl. ¶ 21; Cuviello Decl. ¶ 26. Plaintiffs' fear of being arrested was based on verbal threats, including, but not limited to, Defendant Hart stating, "You don't have too much of a choice," to move to the designated "Free Speech Area" and "failure to do so will not be good," and Defendant Deputy Mayfield telling them they "could be arrested" and that it was a "possibility" if they didn't move to the free speech area. Cuviello Decl. ¶¶ 20, 26; Bolbol Decl. ¶ 21; Sage Decl. ¶ 14 (describing tactic of intimidation to "make us afraid and pressure us to move").

**Defendants' Response:**

Defendants object to the facts as presented as they related to the Newkirk and Sage Declarations as neither were presented in Plaintiffs' filing of its Motion for Partial Summary Judgment. Thus, Defendants have not had the opportunity to review the authenticity and/or merits of the declarations. Defendants dispute that Plaintiffs felt intimidated, fearful or coerced into giving up their free speech right. Defendants dispute based on evidence as follows: Declaration of Kevin Hart ¶¶ 3-26; County of Alameda's Document Production Bates 000368-000396 attached

13     OPPO TO PLTFS MSJ – SEP STMT
3:23-CV-01652-VC

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

as Exhibit E to Declaration of Nicholas D. Syren; County of Alameda's Document Production Bates 000342-000367 attached as Exhibit D to Declaration of Nicholas D. Syren; Plaintiffs' document production 000014-000017 attached as Exhibit F to Declaration of Nicholas D. Syren; Defendants' Expert James Dudley's Expert Report attached as Exhibit I to Declaration of Nicholas D. Syren.

27. Plaintiffs' fear of being arrested was also based on their two contradictory interactions with Defendant Deputy Mayfield; the first when Defendant Deputy Mayfield acknowledged they had a right to protest near the entrance and the second interaction when Defendant Deputy Mayfield changed his message to tell Plaintiffs they could be arrested if they don't move to the "free speech area." Bolbol Decl. ¶ 22, Cuviello Decl. ¶ 27; Newkirk Decl. ¶ 12 (the threat of arrest was real).

**Defendants' Response:**

Defendants object to the facts as presented as they related to the Newkirk and Sage Declarations as neither were presented in Plaintiffs' filing of its Motion for Partial Summary Judgment. Thus, Defendants have not had the opportunity to review the authenticity and/or merits of the declarations. Defendants dispute that Plaintiffs felt intimidated, fearful or coerced into giving up their free speech right. Defendants dispute based on evidence as follows: Declaration of Kevin Hart ¶¶ 3-26; County of Alameda's Document Production Bates 000368-000396 attached as Exhibit E to Declaration of Nicholas D. Syren; County of Alameda's Document Production Bates 000342-000367 attached as Exhibit D to Declaration of Nicholas D. Syren; Plaintiffs' document production 000014-000017 attached as Exhibit F to Declaration of Nicholas D. Syren; Defendants' Expert James Dudley's Expert Report attached as Exhibit I to Declaration of Nicholas D. Syren.

28. After Defendant Deputy Mayfield ended his phone call of approximately five minutes, he returned to confer with Defendant Hart, the other ACSO officers, and an unidentified woman who appeared to be affiliated with Defendant Rowell Ranch Rodeo. Bolbol Decl. ¶ 18, Exh. 3; Cuviello Decl. ¶ 24.

///

663086.1

**Defendants' Response:**

Defendants do not dispute this fact.

29. During this time, Mr. Houts approached Plaintiffs' colleague, Mr. Sage, who was holding a sign stating, "Are you man enough to be kind to animals?" and began to push him, trying to move him as he held his sign. Bolbol Decl. ¶ 19, Exh. 3 (timestamp 0:03- 0:11); Sage Decl. ¶ 9. Plaintiff Bolbol told Mr. Houts that he could not touch Mr. Sage. Blome Decl. ¶ 14, Exh. 33B at 171 (p. 20:6). Bolbol Decl. ¶ 19, Exh. 3; Sage Decl. ¶ 9. Mr. Sage informed Plaintiff Bolbol, "He came right up to me and was pushing me." Bolbol Decl. ¶ 19, Exh. 3 (timestamp 0:03-0:08); Sage Decl. ¶ 9. Plaintiff Bolbol informed Mr. Houts that this was unacceptable. Bolbol Decl. ¶ 19, Exh. 3 (timestamp 0:03-0:08); Sage Decl. ¶ 9.

**Defendants' Response:**

Defendants state this is not material to deciding the motion.

30. Shortly after conversing with the group, Defendant Deputy Mayfield re-approached Plaintiffs and told them to stay out of the walkway. Blome Decl. ¶ 17, Exh. 36 (timestamp 11:30), ¶ 14, Exh. 33B at 148 (p. 29); Cuviello Decl. ¶ 24, Exh. 9; Bolbol Decl. ¶ 20. Defendants Deputy Mayfield and Rowell Ranch Rodeo representatives harassed the protesters about using the walkway to pass out leaflets. Sage Decl. ¶ 15; Blome Decl. ¶ 17, Exh. 36 (timestamp: 12:45- 13:30), ¶ 14, Exh. 33B at 150 (p. 38); Cuviello Decl. ¶ 25. Defendant Deputy Mayfield spoke to Mike Sage and told him he was blocking people. Blome Decl. ¶ 14, Exh. 33B at 150 (p. 38). Defendant Deputy Mayfield added, "I'm telling you if you continue to do it, it may escalate." *Id*. Mr. Sage felt that Defendant Deputy Mayfield harassed him by telling him many times not to stand in the walkway, and that this harassment interfered with his exercising his free speech rights. Sage Decl. ¶ 15.

**Defendants' Response:**

Defendants do not dispute the video evidence.

31. Regardless, Plaintiffs, and their colleagues, proceeded to demonstrate near the front entrance, standing in the walkway and leafleting patrons as they passed, without interference or incident. Cuviello Decl. ¶ 25. In fact, access vehicles, including a large truck, easily moved in

and out of the roadways during Plaintiffs' peaceful protest, as can be seen in video footage from the event. Cuviello Decl. ¶ 25, Exh. 10 (timestamp 1:25; 2:07-2:16).

**Defendants' Response:**

Defendants dispute these facts as related to the time period prior to Plaintiffs' interactions with Mr. Hart. Hart Decl. ¶¶ 6-12.

32. Around this time, Defendant Deputy Mayfield again conferred with Defendant Hart, the other ACSO officers, Mr. Houts, and an unidentified woman who appeared to be affiliated with Defendant Rowell Ranch Rodeo. Blome Decl. ¶ 19, Exh. 38. Defendant Deputy Mayfield stated, "This is still an event, open to the public." Blome Decl. ¶ 14, 33B at 149 (p. 36:7-9). He added, "That's where we get stuck." *Id.* (p. 36:10-11). Mr. Houts looked visibly disappointed when Defendant Mayfield told him that Plaintiffs did not have to demonstrate in the Free Speech Area, and Houts responded, "I'm not blaming you all." *Id.* (p. 36: 12-13); Blome Decl. ¶ 19, Exh. 38 (timestamp: 0:43-44). Deputy Mayfield also responded, "No, I get it. I know you're not. So, I'm with you guys, but there's a certain line we have to kind of tow." Blome Decl. ¶ 14, Exh. 33B at 149 (p. 36:14-16); ¶ 19, Exh. 38 (timestamp: 0:49-51).

**Defendants' Response:**

These facts are not material to deciding the motion against HARD Defendants.

33. During this conversation, an unidentified woman in the group who appears affiliated with the Rodeo states to the group in reference to Plaintiffs, "We know they're out here pushing their boundaries. That's their M.O." Blome Decl. ¶ 14, Exh. 33B at 149 (p. 36:19-20). Defendant Deputy Mayfield responds, "That's what they want to do," and Defendant Hart states, "they want us to push them back." *Id.* at 149 (p. 36:21-25). Defendant Deputy Mayfield repeats, "And they want us to push back." *Id.* at 150 (p. 37:1-2).

**Defendants' Response:**

These facts are not material to deciding the motion against HARD Defendants.

34. Once the front parking lot was full, the number of patrons entering through the front entrance decreased, so Plaintiffs and their colleagues moved to the back entrance. Cuviello Decl. ¶ 28; Bolbol Decl. ¶ 23. At the back entrance, Defendant Deputy Mayfield harassed

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

16

OPPO TO PLTFS MSJ – SEP STMT
3:23-CV-01652-VC

663086.1

1  Plaintiff Bolbol by accusing her of blocking "ingress" and the "walkway" while he blocked her

2  sign with his body. Bolbol Decl. ¶ 23, Cuviello Decl. ¶ 29; Blome Decl. ¶ 14, Exh. 33B at 353 (p.

3  43-44). At all times Plaintiff Bolbol did not block the entrance or ingress or egress. Bolbol Decl. ¶

4  23, Exh. 4 (timestamp: 0:29 – 0:32); Cuviello Decl. ¶ 28, Exh. 11 (timestamp 0:10-1:00).

5  Defendant Deputy Mayfield's conduct caused Plaintiff Bolbol emotional and mental stress.

6  Bolbol Decl. ¶ 23. Plaintiff Bolbol specifically asked Defendant Deputy Mayfield to stop

7  harassing her. Blome Decl. ¶ 14, Exh. 33B at 151-153 (p. 44:23, 25; p. 49).

8  **Defendants' Response:**

9  These facts are not material to deciding the motion against HARD Defendants.

10  **Events at the Rodeo Park on May 21, 2022**

11  35.   On May 21, 2022, Plaintiffs returned to the Rodeo Park to resume demonstrations.

12  Cuviello Decl. ¶ 31; Bolbol Decl. ¶ 24. Plaintiff Bolbol held a sign that read "They Buck From

13  Pain Caused By the Bucking Strap" with a photo of a bull bucking from the bucking strap. Bolbol

14  Decl. ¶ 24. As they made their way to the back entrance, Doe Defendant 2, identified by

15  Defendant Rowell Ranch as volunteer George Ferris, attempted to prevent Plaintiff Cuviello from

16  entering the lot, and Plaintiff Bolbol told him not to touch Plaintiff Cuviello. Blome Decl. ¶ 2,

17  Exh. 22 at Response to Interrogatory Nos. 3, 4 (identifying Mr. Ferris); Cuviello Decl. ¶ 32;

18  Bolbol Decl. ¶ 24, Exh. 5 (timestamp 0:26). At that point Mr. Ferris then turned his attention to

19  Plaintiff Bolbol and yelled that she needed a ticket and shouted "Out," as he repeatedly blocked

20  her from entering the property by stepping in front of her and pushing his body into her as she

21  tried to walk around him, despite her repeated requests for him to stop touching her. Cuviello

22  Decl. ¶ 32, Ex. 12; Bolbol Decl. ¶ 24, Ex. 5 (timestamp 0:30 – 58). Plaintiff Bolbol felt scared

23  due to Mr. Ferris's physical aggression. Bolbol Decl. ¶ 24.

24  **Defendants' Response:**

25  These facts are not material to deciding the motion against HARD Defendants.

26  36.   Later that day, Plaintiff Cuviello stood near the back entrance at the Rodeo Park

27  near a tree, holding a yellow cloth banner which read "Not Fun for the Animals." Cuviello Decl. ¶

28  33, Exh. 13. Because there was a breeze the cloth banner would occasionally touch the back of an

1 electric utility vehicle parked near the tree. Cuviello Decl. ¶ 34. Mr. Houts approached Plaintiff

2 Cuviello and told him not to touch his electric utility vehicle with Plaintiff's banner, and without

3 objection, Plaintiff moved away from the vehicle. *Id*. at ¶ 34, Exh. 13 (timestamp 0:00 – 0:10).

**Defendants' Response:**

These facts are not material to deciding the motion against HARD Defendants.

37. Shortly thereafter, despite that the vehicle was facing away from Plaintiff, there was ample room for Mr. Houts to easily drive the vehicle forward, and Plaintiff was in no way blocking Mr. Houts from moving his vehicle, Mr. Houts told Plaintiff Cuviello to move as he got into the electric vehicle. Cuviello Decl. ¶ 35, Exh. 13 (timestamp 0:43). An unidentified woman, who appeared affiliated with the Rodeo, told Plaintiff Cuviello he had to move, and while Plaintiff was explaining to the woman that Mr. Houts could drive forward instead of in reverse towards Plaintiff, Mr. Houts, sitting in the driver's seat, looked over his shoulder behind the vehicle where Plaintiff was standing and intentionally accelerated his vehicle backwards and rammed it directly into Plaintiff Cuviello. Cuviello Decl. ¶ 36, Exh. 13 (timestamp 0:49 - 1:02). After being struck by the vehicle, Plaintiff Cuviello informed Mr. Houts that he assaulted him and in response, Mr. Houts smiled and said, "I asked you to move." *Id*. at 36 (timestamp 1:10- 1:14).

**Defendants' Response:**

These facts are not material to deciding the motion against HARD Defendants.

38. Throughout the weekend, fellow protestors, including Mr. Sage and Ms. Newkirk, felt rodeo staff expressed hostility toward them, including by repeatedly driving golf carts close to them. Newkirk Decl. ¶ 10; Sage Decl. ¶ 9 (rodeo staff…did not like our messages regarding the abuse of the animals used by the rodeo).

**Defendants' Response:**

These facts are not material to deciding the motion against HARD Defendants.

39. From May 20 to May 22, 2022, at the end of our demonstrations at the Rodeo Park, Plaintiffs posed for photographs together with fellow protestors. Cuviello Decl. ¶ 40, Exh. 17. Despite Defendants' harassment and violation of their rights throughout the events at the Rodeo Park, Plaintiffs remain committed to exercising their right to speech and association to

1  advance animal rights advocacy. Cuviello Decl. ¶¶ 3-4, 7; Bolbol Decl. ¶¶ 6-7. One of Plaintiff

2  Cuviello's reasons for filing this lawsuit was fear that violence may be used against him or his

3  colleagues in the future. Cuviello Decl. ¶ 37.

4  **Defendants' Response:**

5  These facts are not material to deciding the motion against HARD Defendants except to

6  show that Plaintiffs' rights were not violated and Plaintiffs were free to demonstrate freely on the

7  property and did not fear arrest.

Respectfully submitted,

Dated:  June 27, 2024

ALLEN, GLAESSNER,
HAZELWOOD & WERTH, LLP

By: */s/ Nicholas D. Syren*
DALE L. ALLEN, JR.
NICHOLAS D. SYREN
Attorneys for Defendants
HAYWARD AREA RECREATION AND
PARK DISTRICT and KEVIN HART