Jessica L. Blome (State Bar No. 314898)
Lily A. Rivo (State Bar No. 242688)
GREENFIRE LAW, PC
2748 Adeline Street, Suite A
Berkeley, CA 94703
Ph/Fx: (510) 900-9502
Email: jblome@greenfirelaw.com
lrivo@greenfirelaw.com

*Attorneys for Plaintiff Deniz Bolbol*

JOSEPH P. CUVIELLO
205 De Anza Blvd., #125
San Mateo, CA 94402
Telephone: (650) 315-3776
Email: pcuvie@gmail.com

*Plaintiff in pro per*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH P. CUVIELLO and DENIZ BOLBOL, individually,<br><br>PLAINTIFFS.<br><br>v.<br><br>ROWELL RANCH RODEO, INC.; HAYWARD AREA RECREATION AND PARK DISTRICT; HAYWARD AREA RECREATION AND PARK DISTRICT PUBLIC SAFETY MANAGER/RANGER KEVIN HART; ALAMEDA COUNTY SHERIFF'S OFFICE; ALAMEDA COUNTY DEPUTY SHERIFF JOSHUA MAYFIELD; and DOES 1 and 2, in their individual and official capacities, jointly and severally,<br><br>DEFENDANTS. | Case No. 3:23-cv-01652-VC<br><br>**DECLARATION OF MICHAEL SAGE IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Judge: Hon. Vince Chhabria<br>Dept: Courtroom 5 – 17th Floor |

I, Michael Sage, declare as follows:

1. I have personal knowledge of the facts declared herein and will competently

Declaration of Michael Sage ISO Motion for Partial Summary Judgment

testify to them if called upon to do so. I am submitting this declaration in support of Plaintiffs' Motion for Partial Summary Judgment.

2. I have been an advocate for animal rights for approximately 17 years and attend protests organized by Pat Cuviello and Deniz Bolbol as well as participate in other animal rights protests, educational outreach efforts and other activities that promote animal welfare. The first animal rights protest I participated in was at a Starbucks in the city of Mountain View, California, in approximately 2006. In 2007, I participated in a monthly animal rights protest at a KFC (Kentucky Fried Chicken) in San Jose. From December 2007 to November 2008, I participated in California's YES ON PROP 2 ("Prevention of Farm Animal Cruelty Act") campaign which was supported by the Humane Society of the United States and other groups. After November 2008 I was active in Santa Clara County Activists for Animals and participated in various animal rights protests and leafletings, and sometimes traveled to Sacramento to express support for animal-friendly bills in legislative committee hearings.

3. When attending protests organized by Plaintiffs, my speech and association focuses on the abuse and mistreatment of animals by rodeos or circuses which is of great public concern locally, nationally, and internationally. I know that previously Pat and Deniz have had to go to court to stop other venues from violating free speech rights at protests they organize. I trust that Plaintiff Cuviello understands the details of our legal rights to protest peacefully and legally.

4. As an advocate for animal welfare and for ethical and kind treatment of animals, I consider myself an "Animal activist," and I have signed petitions and taken other actions to encourage the adoption of legislation to protect animals.

5. I have sought and will continue to seek out opportunities to demonstrate at events that abuse and mistreat animals, such as Rowell Ranch Rodeo.

6. I have participated in a protest at Rowell Ranch Rodeo for several years. I plan to continue to demonstrate at Rowell Ranch Rodeo Park ("Rodeo Park") in the future. When at the 2022 protest at the Rodeo Park I held a sign that read, "Are You Tough Enough To Be Kind To Animals?"

7. While demonstrating, I offer informational leaflets to people with a calm voice, respectful demeanor, and make direct eye contact. I find this type of one-on-one communication is the most effective means of communicating our message because I am interested to speak with the patrons and get their thoughts and share our leaflets too.

8. I do not block the entrances or exits, nor do I interfere with patrons' and event staff's ability to enter or exit the venues.

9. When I attended the 2022 protest, the rodeo staff, Alameda County Sheriff Deputies and an individual who I now know was a HARD representative tried repeatedly to get us to go to the laughably-named "free speech zone" that was far from the foot traffic of patrons entering the rodeo grounds. Standing in that "free speech zone" would have made effectively communicating our message difficult, if not impossible. It was clear the rodeo staff, who appeared to be in charge and repeatedly told us we could not stand near the entrance and had to move to the "free speech zone," did not like our messages regarding the abuse of the animals used by the rodeo. The rodeo employee, who I now know is Rowell Ranch Rodeo employee Gary Houts, was harassing Pat and Deniz and even grabbed their banner. Deniz repeatedly told him to stop touching them. Mr. Houts later pushed me in an attempt to intimidate me as I was standing with my sign and leaflets; Deniz told Mr. Houts to stop touching me. The rodeo staff's aggressive and hostile treatment towards us made clear to me that they did not like our point of view, specifically, our message about animal cruelty at rodeo events, and accordingly did not want us there.

10. At some point, approximately four Alameda County Sheriff deputies arrived. I understood that the Sheriff Deputies and an individual who I now know to be HARD representative Kevin Hart were working together and were there because the Rowell Ranch Rodeo people didn't like us protesting. Because the HARD representative Hart and the Sheriff Deputies were working together they appeared to me to speak with one voice, often repeating the same messages that we needed to move to the "free speech zone."

11. I heard Pat repeatedly ask an officer, who I now know was Sheriff Deputy Mayfield if the Deputy would arrest Pat if he did not move. I heard the Deputy tell Pat he did not have to tell him if he would be arrested and that Pat needed to move. The Sheriff Deputy and HARD representative Hart said a lot of things in an attempt to intimidate us and to cause us to move to the "free speech area" – we were in essence threatened with arrest if we did not move.

12. Pat then told the Deputy Mayfield, who was in full uniform, to call his "watch commander" and that he did not want to be arrested and that Mayfield needed to tell us if we were going to be arrested before arresting us. The Deputy Mayfield said he did not have to warn us before arresting us.

13. After repeatedly telling us we had to move, Deputy Mayfield and HARD representative Hart asked Pat if he was going to leave. After Pat said he would not leave, the Deputy Mayfield and HARD representative Hart asked Deniz if she would leave. After Deniz said she would not leave, Deputy Mayfield and HARD representative Hart asked me if I would leave. I said I would not leave the area either, after hearing both Pat and Deniz saying they would not leave the area and knowing from my previous experience that we were not disobeying the law.

14. Deputy Mayfield and HARD representative Hart proceeded to individually ask each protester if they would leave – which seemed to be a police tactic to indicate that something bad could happen to each of us if we did not leave. I considered this to be a tactic of intimidation to make us afraid and pressure us to move. But because we are peaceful, do not block exit or entrance and are familiar with our rights, we would not leave. People not accustomed to this type of police harassment and with less knowledge of the law would probably have felt intimidated to move.

15. The Sheriff Deputy then went to his Sheriff vehicle and made a phone call which I presumed was to his "watch commander" as Pat had asked him to do. After that the group of law enforcement – the other Sheriff Deputies were standing around Deputy Mayfield and HARD representative Hart when they were talking with us – stopped asking us to move to the "free

speech zone." Shortly thereafter, Deputy Mayfield then started to harass me by telling me many times to not to stand in the middle of the pathway despite the fact that I was not interfering with the entrance or exit of patrons or staff to the rodeo grounds. This harassment interfered with my exercising my free speech as I felt less free in moving around the area.

    I make this declaration under penalty of perjury under the laws of the United States of America, executed this ___9___ th day of May 2024 in Belmont, California.

*Mike Sage*
Michael Sage