DALE L. ALLEN, JR., State Bar No. 145279
dallen@aghwlaw.com
NICHOLAS D. SYREN, State Bar No. 334807
nsyren@aghwlaw.com
ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, CA 94104
Telephone:      (415) 697-2000
Facsimile:      (415) 813-2045

Attorneys for Defendants
HAYWARD AREA RECREATION AND PARK
DISTRICT and KEVIN HART

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH P. CUVIELLO and DENIZ BOLBOL, individually, <br><br> Plaintiff, <br><br> v. <br><br> ROWELL RANCH RODEO, INC., HAYWARD AREA RECREATION AND PARK DISTRICT, HAYWARD AREA RECREATION AND PARK DISTRICT PUBLIC SAFETY MANAGER/RANGER KEVIN HART, and DOES 1 and 2, in their individually and official capacities, jointly and severally, <br><br> Defendants. | Case No. 3:23-cv-01652-VC <br><br> **DEFENDANTS' NOTICE OF CROSS MOTION AND CROSS MOTION FOR SUMMARY JUDGEMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION AND OPPOSITION TO PLAINTIFFS JOINT MOTION FOR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINT AND AUTHORITIES (F.R.C.P. 56)** <br><br> Hon. Vince Chhabria <br><br> Date:      August 15, 2024 <br> Time:      10:00 a.m. <br> Ctrm:      4, 17th Floor <br><br> Trial:      October 21, 2024 |

**TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

NOTICE IS HEREBY GIVEN that on August 15, 2024, at 10:00 a.m., in Courtroom 4 of

the above-entitled Court, located on the 17th Floor at 450 Golden Gate Avenue, San Francisco,

CA, 94102, defendants HAYWARD AREA RECREATION AND PARK DISTRICT and

HAYWARD AREA RECREATION AND PARK DISTRICT PUBLIC SAFETY MANAGER

KEVIN HART (collectively "HARD Defendants") will, and hereby do, move the

Court for an order granting summary judgment or, in the alternative summary adjudication, in

their favor, and against plaintiffs JOSEPH P. CUVIELLO and DENIZ BOLBOL ("Plaintiffs")

*ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP*
*180 Montgomery Street, Suite 1200*
*San Francisco, California 94104*

662247.1

1   with respect to the following in Plaintiffs' Second Amended Complaint ("Complaint") or

2   "SAC"), pursuant to FRCP §56:

3       1.      Civil Code §52.1 (Bane Act) (Third Cause of Action);

4       2.      Violation of Article I, Section 2(a) of the California State Constitution (Fifth

5   Cause of Action);

6       3.      Violation of First Amendment, Injunctive Relief under 42 U.S.C §1983

7   Declaratory Relief under 28 U.S.C. §2201(a) (Sixth Cause of Action).

8       4.      Punitive Damages

9       This motion is made pursuant to Federal Rule of Civil Procedure, Rule 56, on the grounds

10  that no genuine issue of material fact exists as to the above-mentioned claims, and HARD

11  Defendants are entitled to judgment as a matter of law. Specifically, all causes of action fail

12  because Mr. Hart acted reasonably and lawfully. The state-law claim for violation of the Bane Act

13  fails because Mr. Hart did not have the apparent ability to arrest Plaintiffs, and Plaintiffs were not

14  reasonably in fear of arrest. Additionally, HARD Defendants are immune from Bane Act based

15  on 820.2 immunity because the action of Mr. Hart was reasonable and lawful. The Violation of

16  Article I of the California State Constitution fails because Mr. Hart acted reasonably, and the

17  equitable remedies are moot. The Section 1983 claims against the individual defendant fail

18  because Mr. Hart is entitled to qualified immunity and the equitable remedies are moot. Federal

19  and state punitive damages are barred because there was no evil motive, reckless disregard,

20  malice, oppression, or fraud against Plaintiffs.

21      This motion is further based on this Notice, on the Memorandum of Points and

22  Authorities below, on the declaration of Nicholas D. Syren filed herewith and all exhibits

23  attached thereto, the declaration of Kevin Hart and all exhibits attached thereto, on the [proposed]

24  Order, on the Court's file in this matter, and on such oral and/or documentary evidence as may be

25  presented at the hearing of this motion.

26  **STATEMENT OF RELIEF SOUGHT**

27      Defendants seek an order granting summary judgment or in the alternative adjudication in

28  their favor, and against Plaintiffs, with respect to the following portions of Plaintiffs' Second

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

MSJ/MSA
3:23-CV-01652-VC

662247.1

Amended Complaint: the third cause of action (California Civil Code §52.1 -- Bane Act); the fifth

cause of action (Violation of Article I, Section 2(a) of the California State Constitution); the sixth

cause of action (Violation of First Amendment pursuant to 42 U.S.C. §1983 et. al); and punitive

damages.

Respectfully submitted,

Dated:  July 1, 2024

ALLEN, GLAESSNER,
HAZELWOOD & WERTH, LLP

By:   _/s/ Nicholas D. Syren_____
DALE L. ALLEN, JR.
NICHOLAS D. SYREN
Attorneys for Defendants
HAYWARD AREA RECREATION AND
PARK DISTRICT and KEVIN HART

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ........................................................................................... 1

II.     FACTS ........................................................................................................... 2

        A.      Plaintiffs' History of Arrests at Demonstrations.................................. 2

        B.      Rowell Ranch Rodeo Event ................................................................. 2

        C.      Events of May 20, 2022, Prior to Mr. Hart's Interaction with Plaintiffs ............ 3

        D.      Mr. Hart's Initial Interaction with Plaintiffs on May 20, 2022 ........... 3

III.    PLEADINGS/PROCEDURAL STATUS ...................................................... 5

IV.     LEGAL ARGUMENT ................................................................................... 6

        A.      Standard for Summary Judgment......................................................... 6

                1.      Issue for the Court to Determine ................................................ 7

        B.      Bane Act Standard................................................................................ 7

        C.      No Reasonable Jury Would Find Plaintiffs Were in 'Reasonable Fear' of Arrest........... 9

                1.      Plaintiff Cuviello's Reasonable Fear of Arrest on May 20, 2022.......... 10

                2.      Plaintiff Bolbol's Reasonable Fear of Arrest on May 20, 2022............. 11

        D.      Plaintiffs Suffered No Actual Harm as Outlined in the Standard of In re MS... 11

        E.      HARD Defendants Immune based on Government Code section 820.2 ........... 12

        F.      Mr. Hart's Inability to Arrest Plaintiffs and Plaintiffs Belief at Time of Incident Proves HARD Defendants are Entitled to Summary Judgment on the Bane Act ............ 13

        G.      Mr. Hart's Words and Actions Did Not Constitute Threats, Intimidation or Coercion ........... 14

        H.      Plaintiffs' Assertion that Mr. Hart and Deputy Mayfield "Acted in Concert" is False and Lacks Factual Support ...................................... 15

        I.      Plaintiffs Cannot Establish a Violation of 42 U.S.C.A. §1983 as a Matter of Law as HARD Defendants are Subject to Qualified Immunity and Cannot Establish Available Equitable Remedies Under Plaintiff's Sixth Cause of Action ............ 15

        J.      First Amendment Violation Cause of Action Should Fail Due to Mootness and Satisfaction of Equitable Remedy ................................. 18

        K.      Mr. Hart is Entitled to Dismissal of Punitive Damages ..................... 19

V.      CONCLUSION............................................................................................. 19

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

# TABLE OF AUTHORITIES

<u>Page</u>

**U.S. Supreme Court**

*Anderson v. Liberty Lobby, Inc.*
(1986) 477 U.S. 242.................................................................................................6

*Ashcroft v. al-Kidd*
(2011) 563 U.S. 131...............................................................................................16

*Celotex Corp. v. Catrett*
(1986) 477 U.S. 317.............................................................................................6, 7

*Harlow v. Fitzgerald*
(1982) 457 U.S. 800...............................................................................................16

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*
(1986) 475 U.S. 574.................................................................................................7

*Smith v. Wade*
(1983) 461 U.S. 30.................................................................................................19

**Ninth Circuit Court of Appeals**

*Grossman v. City of Portland*
33 F.3d 1200, 1210 (9th Cir. 1994) ...............................................................16, 17

**Other Circuit Courts**

*Esso Standard Oil Co. v. Lopez-Freytes*
522 F.3d 136, 148 (1st Cir. 2008)...................................................................17, 18

**Federal District Courts**

*Cuviello v. City & County of San Francisco*
940 F. Supp. 2d 1071, 1102 (N.D. Cal. 2013) ........................................................8

*Richardson v. City of Antioch*
722 F. Supp. 2d 1133, 1147 (N.D. Cal. 2010) ........................................................9

*Zamora v. Sacramento Rendering Co.*
2007 WL 137239 (E.D. Cal. 2007)........................................................................14

**California Supreme Court**

*In re M.S.*
(1995) 10 Cal.4th 698 ....................................................................................7, 8, 12

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

662247.1

# TABLE OF AUTHORITIES

Page

## California Court of Appeals

*Austin B. v. Escondido Union School Dist.*
(2007) 149 Cal.App.4th 860 ...........................................................................................7

*Bazan v. Curry*
No. E075075, 2022 WL 16847782, at *5 (Cal.Ct.App. Nov. 10, 2022) ..........................12, 13

*Conway v. Cnty. of Tuolumne*
(2014) 231 Cal.App.4th 1005.........................................................................................12

*Cornell v. City and County of San Francisco*
(2017) 17 Cal.App.5th 766 ...........................................................................................7

*Shoyoye v. Cty. of Los Angeles*
(2012) 203 Cal.App.4th 947 ..........................................................................................8

## Federal Statutes and Law

28 U.S.C. §2201(a) ......................................................................................................ii

42 U.S.C §1983 .............................................................. ii, iii, iv, 1, 5, 15, 17, 19

F.R.C.P. §56 ................................................................................................................ii

F.R.C.P. §56(a) ............................................................................................................6

F.R.C.P. §56(c)(1) ........................................................................................................6

F.R.C.P. §56(e) ............................................................................................................6

## California Constitution

Article I, Section 2(a) ............................................................................... ii, iii, 5

## California Statutes and Law

Civ. Code §43 ..............................................................................................................6

Civ. Code §52.1 ................................................................................... ii, iii, 7, 8, 9, 12

Civ. Code §52.1(b) .......................................................................................................7

Civ. Code § 52.1(j) .....................................................................................................13

Civ. Code §3294 ........................................................................................................19

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

662247.1

# TABLE OF AUTHORITIES

<u>Page</u>

Civ. Code §3294(a) ........................................................................................................ 19

Cal. Civ. Prac. Civil Rights Litigation §3:19 ............................................................... 13

Gov't Code §815.2(b) .................................................................................................... 13

Gov't Code §820.2 .........................................................................................ii, iv, 1, 12, 13

**Other Statutes**

CACI 3066 .......................................................................................................9, 10, 13, 14

CACI 3610 ...................................................................................................................... 15

**ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP**
180 Montgomery Street, Suite 1200
San Francisco, California 94104

662247.1

**STATEMENT OF ISSUES TO BE DECIDED**

This motion presents the following issues to be decided:

1.      Whether there is a triable issue that Mr. Hart's actions violated the Bane Act;

2.      Whether Government Code section 820.2 immunizes Defendants from liability;

3.      Whether qualified immunity or remedies apply to the Fifth Cause of Action; and

4.      Whether Plaintiff may recover for punitive damages.

## I.      INTRODUCTION

The undisputed facts regarding the events of May 20, 2022, at Rowell Ranch Rodeo show: (1) Plaintiffs were never arrested, (2) Plaintiffs were never threatened with arrest nor other violent act; (3) Plaintiffs and their fellow protestors never had their banners and signs interfered with nor their protesting stopped for one second; (4) No acts of physical intimidation occurred; (5) Most notably the video evidence shows Plaintiffs were never actually afraid of arrest nor any act of violence against them by Mr. Hart; and, (6) Mr. Hart had no authority to effectuate an arrest nor carried handcuffs. The uncontroverted video evidence proves Mr. Hart never used the words "arrest" "citation" "detention" nor threatened any violent act.

For the aforementioned reasons, namely, a lack of case law that imposes liability on Mr. Hart and HARD, and the applicability of available immunities, Mr. Hart and HARD move for summary judgment or in the alternative summary adjudication against Plaintiffs' causes of action against Mr. Hart and HARD for Bane Act, Violation of California Constitution and First Amendment. Additionally, Plaintiffs' First Amendment cause of action is no longer viable due to Judge Chhabria's reasoning in his Order regarding TRO (Dkt. 46). Also Plaintiffs' 42 U.S.C.A. §1983 related cause of action is barred by qualified immunity and failure to meet the requirements of equitable relief (preliminary and permanent injunction) as outlined below.

HARD and Hart do not dispute Plaintiffs argument that the "Free Speech Zone" as constituted at the date of the event was an unreasonable time, place and manner restriction of free speech. However, they do dispute any violation of law occurred here. Moreover, HARD and Hart are immune from liability based on Government Code section 820.2 which protects a public employee from an act or omission where the act is a result of the exercise of discretion vested in

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

662247.1

him. Notably, no actual harm occurred here. Protestors including Plaintiffs were allowed to protest at all times in the front ticket booth area and no rights were actually harmed. Lastly, Mr. Hart never had the authority nor ability to arrest Plaintiffs. For these reasons HARD Defendants respectfully request the Court grant its Cross Motion for Summary Judgment or in the alternative Motion for Summary Adjudication, and deny Plaintiffs' Joint Motion for Partial Summary Judgment.

## II.    FACTS

### A.    Plaintiffs' History of Arrests at Demonstrations

Plaintiffs have a lengthy history of arrests and interactions with law enforcement at demonstrations. Plaintiff Bolbol estimates that she has been arrested 3-5 times at demonstrations. (Depo Transcript of Deniz Bolbol "Bolbol Depo", 13:7-15, Decl. of Nico Syren ¶ 1). Plaintiff Cuviello testified he has been arrested at least 4 times since 2001 at animal rights demonstrations. (Depo Transcript of Joseph Cuviello "Cuviello Depo", 24:24-25, 25:1-5 Decl. of Syren ¶ 2). All of Mr. Cuviello's noted arrests ended in lawsuits. (Cuviello depo, 37:18-20). Plaintiff Cuviello was given warning of arrest in at least three of the four scenarios prior to arrest since 2001. (Cuviello depo, 35:6-9). In one scenario in or around 2013 Plaintiffs Cuviello and Bolbol were present when a San Francisco Police Officer told Plaintiffs they would be subject to arrest if they continued protesting outside of a free speech zone. (Cuviello depo, 28:11-22). Plaintiffs moved to the free speech zone so as not to be arrested. (Cuviello depo, 29: 17-24). Plaintiff Cuviello nor Plaintiff Bolbol could not recall if they had ever seen or interacted with Kevin Hart prior to May 20, 2022. (Cuviello depo, 55:6-15, Bolbol depo, 41:21-25, 42:1).

### B.    Rowell Ranch Rodeo Event

Defendant Rowell Ranch Rodeo holds an annual 3-day rodeo event every year at Rowell Ranch Rodeo which is open to the public. HARD owns the subject property which is closed to the public the vast majority of the year but opens for select events including the May 20 – May 22, 2022, event at issue here. Kevin Hart was on duty as the Public Safety Manager with a shirt identifying himself as such at Rowell Ranch Rodeo on the evening of May 20, 2022. (*Declaration of Kevin Hart*, ¶ 3). This was an event with private security and also included members of the

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

662247.1

Alameda County Sheriff's Department. A security plan was created by the Rodeo group renting the park for the day which Mr. Hart was aware of from his previous review and approval. (*Decl. of K. Hart*, ¶ 4). The "free speech area" was designated in the immediate area of the entrance to the parking lot. (*Decl. of K. Hart*, ¶ 5).

**C.     Events of May 20, 2022, Prior to Mr. Hart's Interaction with Plaintiffs**

Mr. Hart observed Plaintiffs Cuviello and Bolbol approaching the ticket booth area of park property on foot holding signs with graphic pictures of animal abuse. (*Decl. of K. Hart*, ¶ 6). None of these individuals made any attempt to pay an entrance fee or enter the park. Mr. Hart observed Plaintiffs and other individual demonstrators standing directly in front of the security entrance and attempting to block visitors to the rodeo from entering the rodeo event ticket booth entrance. (*Decl. of K. Hart*, ¶ 7). Mr. Hart observed Plaintiffs and demonstrators hold their signs and shout to individual visitors and de-cry how they could watch such an event where animal abuse happens. Mr. Hart received complaints relayed to him by Rowell Ranch volunteers that rodeo visitors felt their peace was being disturbed by the demonstrators. (*Decl. of K. Hart*, ¶ 8).

Prior to Mr. Hart's interactions with Plaintiffs, Plaintiffs were near the front ticket booth entrance and saw Alameda County Sheriff's Officers starting to approach them from a distance. Before any interaction with HARD, Mr. Hart or the Alameda County Sheriff's Department Plaintiff Bolbol stated, "We got a lawsuit. Here we go." (*Plaintiffs' Video Transcript.*, at 13:8, attached as Ex. "C" to Syren Decl.).

**D.     Mr. Hart's Initial Interaction with Plaintiffs on May 20, 2022**

Mr. Hart approached an individual later identified as Plaintiff Cuviello who appeared to be the group leader and advised him there was a designated free speech area located towards the front entrance of the parking lot area. (*Decl. of K. Hart*, ¶ 9). Mr. Hart observed demonstrators including Plaintiffs continue to demonstrate when requested to move to the designated free speech area and at times blocked the vehicle gate area being used by vehicle traffic. (*Decl. of K. Hart*, ¶ 10). Mr. Hart observed Plaintiffs refuse to move and refuse to stop blocking visitors from entering the rodeo. (*Decl. of K. Hart*, ¶ 11).

Mr. Hart had no intention of stopping the demonstrators from demonstrating at any time.

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

(*Decl. of K. Hart*, ¶ 15). Additionally, Mr. Hart had no intention of physically moving Plaintiffs or to intimidate, coerce or threaten Plaintiffs with arrest. (*Decl. of K. Hart*, ¶ 16). Mr. Hart had no authority to arrest Plaintiffs. (*Decl. of K. Hart*, ¶ 18). At no time did Mr. Hart instruct Alameda County Deputies to arrest Plaintiffs nor instruct Alameda County Deputies to threaten Plaintiffs with arrest. (*Decl. of K. Hart*, ¶ 19). Mr. Hart did not coordinate nor plan a response to the demonstrators with Deputy Mayfield nor anyone else from the Alameda County Sheriff's Department at any time prior to his interactions with Plaintiff. (*Decl. of K. Hart*, ¶ 20). Mr. Hart had no weapon on his person during his interactions with Plaintiffs nor any handcuffs. (*Decl. of K. Hart*, ¶ 22). Mr. Hart never raised his voice nor stepped toward Plaintiffs to make them feel intimidated or threatened. (*Decl. of K. Hart*, ¶ 23). Plaintiff Bolbol only heard "bits and pieces" of the conversation with Mr. Hart and testified that "I don't recall paying full attention to it." (*Bolbol Dep. Tr.*, at 55:10-14, 56:14-16, attached as Ex. "B" to Syren Decl.) ("Bolbol"). Plaintiff Cuviello testified he did not believe Mr. Hart had the ability to arrest him at the time of the incident. (Cuviello depo, 56:21-25, Ex. A to Syren Decl.).

The entire interaction with the demonstrators and Mr. Hart is found in the uncontroverted video evidence where Mr. Hart states, "…So here's the designated area. I'm asking you to go to the designated area that's been predesignated and approved. All right? Failure to do so, all right, will not be good." (*County of Alameda Officer Body Camera Video Transcript.*, at 14:23 – 15:2, attached as Ex. "D" to Syren Decl.).).

Plaintiff Bolbol then states, "We're not going." (*Id.* at 15:3). Plaintiff Cuviello then states, "What is going to happen if we don't do so? What's going to happen if we don't do so?" (*Id. at* 15:4-15:5). Mr. Hart replies, "You'll have to figure that out when it happens." (*Id.* at 15:6-15:7). Plaintiff Cuviello then approaches Deputy Mayfield and asks, "Are you going to arrest us if we don't go there?" (*Id.* at 15:13 -15:14). Plaintiff Cuviello moments later states (directed toward Deputy Mayfield), "I don't want to be could be arrested, I want to know ahead of time. You need to call your watch commander out here because we have a free speech right." (*Id.* at 15:24 – 16:2). Importantly Plaintiff Cuviello then states interrupting Deputy Mayfield that, "…So if – if you're going to arrest us, I want to know, because I don't want to be arrested. So if you're going

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

1  to arrest me illegally, I want to know because I don't want to be arrested. And there's none of this

2  maybe, could be; I want you to tell me before, I'm going to arrest you if you don't leave. If you

3  don't tell me that, then there's a big problem." (*Id.* at 16:18-16:24). Plaintiff Bolbol then says, "I

4  think they're messing with you, Pat." (*Id.* at 16:25-17:1). Plaintiff Bolbol then stated referring to

5  Deputy Mayfield, "Now he's calling his boss to see if he can get permission to arrest us." (*Id.* at

6  26:9 – 26:11).

7       As most visitors got into the park to watch the rodeo, the demonstrators left the area

8  without incident. Mr. Hart had no further contact with Plaintiffs. (*Decl. of K. Hart*, ¶26). Later on

9  Plaintiff Bolbol stated, "Yeah, the guy --- the guy who's talking to the, I don't know, the

10  overweight one, he really wanted to arrest us, but doesn't get to. His watch commander has a

11  level head, isn't willing to beat constitutional violation of an illegal arrest. You know how much

12  it would have cost this county if they would have illegally arrested us?... Hundreds of thousands

13  of dollars." (*Plaintiffs' Video Transcript.*, at 20:17-20:23), attached as Ex. "C" to Syren Decl. ¶

14  5)). Plaintiffs did not appear afraid of arrest at any time. (*Decl. of K. Hart*, ¶ 24). Plaintiffs were

15  never stopped from protesting nor physically forced to move to the "Free Speech Area." (*Decl. of

16  K. Hart*, ¶ 25).

17  **III.**    <u>**PLEADINGS/PROCEDURAL STATUS**</u>

18       Plaintiffs filed their initial complaint on April 6, 2023. Plaintiffs filed their First Amended

19  Complaint on May 5, 2023. Plaintiffs filed the operative Second Amended Complaint ("SAC") on

20  June 20, 2023. (Dkt. No. 54, at ¶¶ 92-139, Request for Judicial Notice ¶ 1).). The SAC contains

21  causes of action against Defendants HARD and Mr. Hart for: (1) Violation of California Civil

22  Code, section 52.1(c), Bane Act (Third Cause of Action); (2) Violation of Article I, Section 2(a)

23  of the California and State Constitution (Fifth Cause of Action); and (3) Violation of First

24  Amendment, as applied to the states under the Fourteenth Amendment (Relief under 42. U.S.C.

25  section 1983) (Sixth Cause of Action). Defendant HARD and Mr. Hart filed an answer to the

26  SAC on July 5, 2023. (Dkt. No. 59, RJN ¶ 2).

27       Plaintiffs' SAC alleges "On May 20, 2022, DEFENDANT HART and DEFENDANT

28  DEPUTY MAYFIED, *working in concert*, threatened to arrest PLAINTIFFS if they did not move

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

to the "Free Speech Area." (Dkt. No. 54, at ¶ 94). The SAC continues, "DEFENDANT HART continued to harass PLAINTIFFS. He told PLAINTIFFS they had to go to the designated "Free Speech Area", and he said, "Failure to do so will not be good." (*Id.* at ¶ 96) "DEFENDANT HART then said, "You'll have to figure out." (*Id.* at ¶ 97). "PLAINTIFFS took these statements to mean that the PLAINTIFFS could be arrested as a form of intimidation and coercion so that PLAINTIFFS would voluntarily acquiesce and give up their right to free speech near the entrance." (*Id.* at ¶ 98). Plaintiffs allege that the rights attempted to be violated including "(a) the right of protection from bodily harm pursuant to California Civil Code, section 43 and (b) the right to be free from interference, or retaliation form their exercise of constitutionally protected rights, including but not limited to speech, press, association, conscience, and beliefs as secured by the First and Fourteenth Amendments of the US Constitution and California Constitution…" (*Id.* at ¶ 102).

Plaintiffs do not allege a conspiracy cause of action nor explain in detail how Defendants were coordinating or "working in concert" instead concluding that Deputy Mayfield and Mr. Hart were "working in concert" in allegedly violating Plaintiffs rights constituting a Bane Act violation.

## IV. <u>LEGAL ARGUMENT</u>

### A. <u>Standard for Summary Judgment</u>

Summary judgment is proper if there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The moving party bears the initial burden of identifying those portions of the pleadings, discovery and affidavits which demonstrate the absence of a triable issue of material fact. Fed.R.Civ.P. 56(c)(1); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the moving party meets its initial burden, then the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e). A genuine issue for trial exists if there is sufficient evidence for a reasonable jury, viewing the evidence in the light most favorable to the non-moving party, to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Material facts are those "that might affect

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

the outcome of the suit under the governing law." (*Id*.) If the nonmoving party fails to make the requisite showing, "the moving party is entitled to judgment as a matter of law." *Celotex,* 477 U.S. at 323. And a genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *See id*. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial,'" and where "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986) (citations omitted)).

### 1.  Issue for the Court to Determine

The main issue here is for the Court to determine whether the undisputed evidence rises to the level of a Bane Act violation as a matter of law in favor of HARD Defendants, or whether the uncontroverted evidence shows a triable issue of fact requiring determination by a jury. As stated below, HARD Defendants argue that no case law extends judgment as a matter of law to Plaintiffs based on the facts as presented in Plaintiffs' moving papers. Conversely, HARD Defendants are entitled to summary judgment based on the uncontroverted video evidence and accompanying evidence proving no 'actual harm' was suffered here by Plaintiffs and they cannot establish one or more elements required for a Bane Act violation.

### B.  **Bane Act Standard**

A Section 52.1 claim requires a showing that the defendant, "by the specified improper means of threats, intimidation, or coercion, tried to or did prevent the plaintiff from doing something he or she had the right to do under the law or to force the plaintiff to do something that he or she was not required to do under the law." *Austin B. v. Escondido Union School Dist.,* 149 Cal.App.4th 860, 883 (2007). To prevail on a Bane Act claim, Plaintiffs must show two things: (1) Defendants attempted to, or did, interfere with their statutory or constitutional rights; and (2) the attempted, or actual, interference was accompanied by threats, intimidation, or coercion. Cal. Civ. Code, §52.1(b); *See Cornell v. City and County of San Francisco,* 17 Cal.App.5th 766, 791 (2017).

The in case *In re M.S.*, "Subdivision (j) of Civil Code section 52.1 provides that speech

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

alone is insufficient to support such an action, except upon a showing that the speech itself threatens violence against a specific person or group of persons, the person or group of persons against whom the speech is directed 'reasonably fears that, because of the speech, violence will be committed against them or their property and that the person threatening violence has the apparent ability to carry out the threat.' . . . The presence of the express 'reasonable fear' element, in addition to the 'apparent ability' element, in Civil Code section 52.1, governing civil actions for damages, most likely reflects the Legislature's determination [that] ***a defendant's civil liability should depend on the harm actually suffered by the victim.***" (*In re M.S., supra*, (1995) 10 Cal.4th 698, 715 [42 Cal.Rptr.2d 355, 896 P.2d 1365].) The Bane Act "was intended to address only egregious interferences with constitutional rights, not just any tort." *Shoyoye v. Cty. of Los Angeles*, 203 Cal.App.4th 947, 959 (2012). "The act of interference with a constitutional right must itself be deliberate or spiteful." *Id.*

In *Cuviello v. City & County of San Francisco*, 940 F. Supp. 2d 1071, 1102 (N.D. Cal. 2013) (hereinafter "*CCSF*") Plaintiffs cited this case as sufficient to show "Threat of arrest suffices to demonstrate 'threats, intimidation, or coercion' under the Bane Act. In *CCSF* demonstrators including Plaintiff Cuviello demonstrated with banners in an area near San Francisco's Union Square and were requested to move to the pre-designated free speech zone. (*Id.* at 1077-1078). Plaintiff Cuviello was cited and found to be threatened with arrest after an unambiguous warning of arrest and threat of placement in handcuffs if he did not move by a uniformed police officer. *Id.* at 1103. Plaintiff was cited and moved to the free speech area. (*Id.* at 1078). However, the facts of the CCSF case are easily distinguishable here. First, the threat of arrest was plain and unambiguous. Second, Plaintiffs' banners and materials were tampered with and actually interfered with their freedom of expression, and Plaintiffs were actually cited by law enforcement and threatened with handcuffs and arrest. These facts are distinguishable as none of those facts occurred here, as no threat of arrest was actually stated. Additionally, Mr. Hart did not have the apparent authority to arrest Plaintiffs compared with the San Francisco Police Officer in the CCSF case who clearly did have that authority. Therefore, the CCSF case is not on point here and should not be used as precedent.

662247.1

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

1      Lastly, the Court should look to the California Jury Instruction on the Bane Act outlined

2  in CACI 3066. The Essential Factual Elements for a Bane Act Violation state:

3  / / /

> "[Name of plaintiff] claims that [name of defendant] intentionally interfered with [or
> attempted to interfere with] [his/her/nonbinary pronoun] civil rights by threats,
> intimidation, or coercion.
>
> To establish this claim, [name of plaintiff] must prove all of the following:1. [That by
> threats, intimidation or coercion, [name of defendant]caused [name of plaintiff] to
> _reasonably believe_ that if[he/she/nonbinary pronoun] exercised [his/her/nonbinary
> pronoun]right [insert right, e.g., "to vote"], [name of defendant] would commit violence
> against [[him/her/nonbinary pronoun]/ [or] [his/her/nonbinary pronoun] property] and that
> [name of defendant] had the _apparent ability_ to carry out the threats;]"

      As stated in the argument section below, Plaintiff cannot establish one or more of the

required elements namely: (1) Reasonable belief of arrest or other violent act by Mr. Hart; (2)

Lack of threats, intimidate or coercion; and (3) Plaintiffs lack of belief that Mr. Hart had the

ability to carry out the alleged threats.

### C.   No Reasonable Jury Would Find Plaintiffs Were in 'Reasonable Fear' of Arrest

      At trial, a jury would be required to determine whether [That by threats, intimidation or

coercion, _Mr. Hart_ caused Plaintiffs Cuviello and Bolbol to _reasonably believe_ that if they

exercised their First Amendment right, _Mr. Hart_ would commit violence against them, or their

property and that _Mr. Hart_ had the apparent ability to carry out the threats]. (See _3066 Bane Act –

Essential Factual Elements Jury Instructions (Civ. Code § 52.1)._ Despite Plaintiff's reliance on

_Richardson v. City of Antioch_, 722 F. Supp. 2d 1133, 1147 (N.D. Cal. 2010), here a jury would

make a determination if Plaintiffs Bolbol and Cuviello did reasonably believe that Mr. Hart would

commit an act of arrest or violence against them. The record clearly shows they were not in fear

of arrest at time of the incident.

      No jury would find all elements would be met based on the facts here including the

following elements: (1) Mr. Hart's words and actions constituted threats, intimidation or

coercion; (2) Mr. Hart caused Plaintiffs to reasonably believe that if they exercised their First

Amendment right, Mr. Hart would commit violence against them or their property; and (3) Mr. Hart had the apparent ability to carry out the threats.

Defendants' Police Practices Expert Jim Dudley's expert Opinion Five states, "The protesters were not threatened with arrest at the event. There were no threats of arrest made to Cuviello, Bolbol or any of the other protesters at Rowell Ranch on 05/20/2022. Although law enforcement officers must advise a person of what they are being arrested, there is no requirement to advise them of what they could be arrested. At various times throughout, especially in the initial meeting with Deputies, the subsequent meeting with Hart present, and the exchange with Deputy Mayfield and Sage, the plaintiffs Cuviello and Bolbol did not act intimidated or threatened by Hart or the deputies. Instead, Cuviello and Bolbol were abrasive, interrupting the instructions and making declarations that the security staff nor deputies knew about their rights to protest. They harangued and lectured the deputies and Hart with their perception of their rights and declared that they wanted to arrest the protesters but were denied by their commander. (See Dudley Expert Report p. 14, Exh. "I" to Syren Decl. ¶ 11).

Further, Mr. Dudley stated, "in my professional opinion that the protesters, specifically Mr. Pat Cuviello and Ms. Deniz Bolbol seemed intent on confronting law enforcement and security at the rodeo to draw attention and create conflict. The demands that were made to Public Safety Manager Hart and to the ACSO Deputies seemed intent to explicitly say that if Cuviello, Bolbol and the others did not move from their location and relocate to the 'Free Speech Area' that they would be arrested. Indeed, no one ever said that to protesters. It is proven by the fact that there were no arrests made, even though the protesters remained at walkways, in front of ticket booths, restrooms and to the entrance to the rodeo events." (Dudley Expt. Rept. p. 16).

       1.     Plaintiff Cuviello's Reasonable Fear of Arrest on May 20, 2022

First, no reasonable jury would find that element (2) of CACI 3066 'reasonable belief' standard has been met here. Plaintiff Cuviello's response to Mr. Hart's comments requesting they move to the Free Speech Zone is to immediately confront Deputy Mayfield and ask him if he was subject to arrest. (*Ex. D* to Syren Decl. at 15:24 – 16:2). Plaintiff Cuviello then requested Deputy Mayfield call his watch commander to determine if the demonstrators including Plaintiffs were

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

MSJ/MSA
3:23-CV-01652-VC

662247.1

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

subject to arrest. (*Id.* at 15:24 – 16:2). These actions alone prove that Plaintiff Cuviello was not in fear of arrest at any time and needed further clarification from County of Alameda deputies regarding the possibility of his imminent arrest. Based on prior demonstrations by Plaintiffs, each Plaintiff had been arrested or threatened with arrest on numerous occasions. Most notably in San Francisco at the Union Square protest in or around 2013, Plaintiffs were threatened with arrest and cited. Based on this threat of arrest, the Plaintiffs both moved to the Free Speech Zone because they feared arrest. Conversely here, Plaintiffs never left the front ticket booth area, nor were ever stopped from demonstrating at any time. Moreover, Plaintiff Cuviello stepped forward into the personal space of both Mr. Hart and Deputy Mayfield acting as aggressor seemingly without fear of Mr. Hart; Mr. Hart never physically intimidated Plaintiffs nor threatened Plaintiffs with weapons; Mr. Hart never used the word "arrest" at any time and Plaintiff Cuviello admitted he did not believe Mr. Hart had the ability to arrest him. These facts tend to prove that no reasonable jury would find Plaintiff Cuviello was in reasonable fear of arrest.

> 2.   Plaintiff Bolbol's Reasonable Fear of Arrest on May 20, 2022

As stated above, at deposition Plaintiff Bolbol only heard "bits and pieces" of the conversation with Mr. Hart and testified that "I don't recall paying full attention to it." (*Bolbol Dep. Tr.*, at 55:10-14, 56:14-16). Thus, it's unclear exactly what Plaintiff Bolbol heard at the time Mr. Hart spoke to Plaintiffs over the approximate three-minute period that is the subject of its Bane Act cause of action. This alone leaves Plaintiff Bolbol's Bane Act claims subject to summary judgment as one cannot be in reasonable fear of arrest if they did not hear the words uttered by Mr. Hart. The same argument made above regarding Plaintiff Cuviello's reasonable fear is also made here in regard to Plaintiff Bolbol's reasonable fear of arrest based on here previous demonstration activity including the event at San Francisco's Union Square in which demonstrators were threatened with arrest and cited.

For these reasons, no reasonable jury could find Plaintiffs were in 'reasonable fear' of arrest at the time of the incident in question on May 20, 2022.

> **D.   Plaintiffs Suffered No Actual Harm as Outlined in the Standard of *In re MS***

Relevant case law states, "The presence of the express "reasonable fear" element, in

addition to the "apparent ability" element, in Civil Code section 52.1, governing civil actions for damages, most likely reflects the Legislature's determination a defendant's civil liability should depend on the harm <u>actually suffered</u> by the victim." *In re M.S.,* (1995) 10 Cal.4th 698, 715.

As stated above Plaintiffs faced no actual harm based on Mr. Hart's actions. They were not in reasonable fear of arrest nor stopped from demonstrating at any time. Their signs nor their pamphlets were destroyed nor tampered with. Mr. Hart's specific words did not cause reasonable fear of arrest. Combined with the testimony from Plaintiff Cuviello that at the time of the incident he did not believe Mr. Hart had the ability to arrest him, Mr. Hart committed no harm towards Plaintiff Cuviello. As to Plaintiff Bolbol, as previously mentioned she only heard "bits and pieces" of Mr. Hart's statements. Plaintiff Bolbol suffered no actual harm as she did not hear significant portions of Mr. Hart's statement at the time of the incident. The statement was directed toward Mr. Cuviello as the apparent leader of the group. Ms. Bolbol then stated that she believed Mr. Hart and Deputy Mayfield were "just messing" with Plaintiff Cuviello. Based on the standard set forth in *In re MS* Plaintiffs continued unabated by Mr. Hart to demonstrate throughout the remaining evening and weekend at Rowell Ranch. Plaintiffs even took a photograph at the end of their demonstration along with other demonstrators that clearly show smiles and feelings of positivity not harm. The facts prove that no 'actual harm' was suffered by the Plaintiffs.

### E.    HARD Defendants Immune based on Government Code section 820.2

To the extent deemed involved, Government Code section 820.2 also immunizes the individual defendants including Mr. Hart against the state-law claims. That provision states, in pertinent part, that "a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused." California courts apply the immunity to "deliberate and considered policy decisions, in which a [conscious] balancing [of] risks and advantages ... took place." *Conway v. Cnty. of Tuolumne*, 231 Cal.App.4th 1005, 1015 (2014) (internal quotations and citations omitted.) It has been applied to "the decision to pursue a fleeing vehicle, the decision to investigate an accident or not, the decision not to make an arrest, and the decision whether to use official law enforcement authority to resolve a dispute." *Bazan v. Curry*, No.

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

MSJ/MSA
3:23-CV-01652-VC

1    E075075, 2022 WL 16847782, at *5 (Cal.Ct.App. Nov. 10, 2022).

2        Immunity applies here because the decision to arrest or not to arrest and to investigate the

3    complaints regarding Plaintiffs has been found to be a cognizable rationale for applying section

4    820.2 immunity. (See *Bazan v. Curry* at 5 regarding the decision to not make an arrest and the

5    decision to use official law enforcement authority to resolve a dispute). To the extent it is deemed

6    involved and/or responsible for the actions of its employees including Mr. Hart, HARD is equally

7    immune. See Government Code §815.2(b).)

8        **F.    Mr. Hart's Inability to Arrest Plaintiffs and Plaintiffs Belief at Time of**
         **Incident Proves HARD Defendants are Entitled to Summary Judgment on the**
9        **Bane Act**

10       Mr. Hart had no authority to arrest Plaintiffs. (*Decl. of K. Hart*, ¶ 18). A violation of the

11   Bane Act requires that Plaintiffs reasonably believed Mr. Hart had the apparent ability to

12   effectuate an arrest. (See *CACI Jury Instruction 3066, Bane Act*). (*Bane Act*) liability may not be

13   based on "Speech alone" unless "the speech itself threatens violence against a specific person or

14   group of persons; and the person or group of persons against whom the threat is directed

15   reasonably fears that, because of the speech, violence will be committed against them or their

16   property and ***that the person threatening violence had the apparent ability to carry out the***

17   ***threat***." [*Civ. Code, §52.1, subd. (j)]; § 3:19. Prohibited conduct: interference or attempted*

18   *interference by threats, intimidation or coercion; speech alone insufficient unless it threatens*

19   *violence, Cal. Civ. Prac. Civil Rights Litigation §3:19.*

20       As stated above Plaintiff Cuviello testified that he did not believe Mr. Hart had the ability

21   to arrest him at the time of the incident. (Cuviello depo, 56:21-25, Ex. A to Syren Decl.).

22   Additionally, Plaintiff Bolbol only heard "bits and pieces" of Mr. Hart's comments directed

23   toward the demonstrators and Plaintiff Cuviello. These facts alone prove that Plaintiffs never

24   reasonably believed Mr. Hart had the ability to carry out the alleged threat of arrest. Additionally,

25   Plaintiff Bolbol is heard on video stating "I think they're trying to mess with you Pat," inferring

26   that she did not believe Mr. Hart nor anyone else was attempting to arrest or threaten arrest

27   anyone including Plaintiffs. When the situation is taken in context, it's clear from the record that

28   Plaintiffs did not believe Mr. Hart had the ability to arrest them, a requirement of CACI 3066.

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

MSJ/MSA
3:23-CV-01652-VC

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

Without this requirement of the element of the Bane Act, their Bane Act claim fails. Thus, HARD Defendants have presented the requisite facts to establish summary judgment on the issue of the 'apparent ability' of Mr. Hart to arrest them.

### G.     Mr. Hart's Words and Actions Did Not Constitute Threats, Intimidation or Coercion

Mr. Hart had no intention of arresting the Plaintiffs. He also had no intent to intimidate or threaten Plaintiffs with arrest. Importantly, Mr. Hart had no authority to arrest Plaintiffs. (*Decl. of K. Hart*, ¶ 18). CACI Jury Instruction 3066, would require the following: "Mr. Hart caused Plaintiffs to reasonably believe that if they exercised their First Amendment right, Mr. Hart would commit violence against them or their property." In a footnote in an unpublished decision former District Court Judge David Levi quoted this book with approval regarding the use of the "common parlance" definition of the word "intimidation," by describing the definition of intimidation—"to make timid or fearful" [*Zamora v. Sacramento Rendering Co.*, 2007 WL 137239 (E.D. Cal. 2007)], quoting *§ 3:19. Prohibited conduct* et al.

Here, Plaintiffs are extremely experienced demonstrators with a long history of interactions with law enforcement. They are also experienced in perceiving threats of arrest or actual arrests both being arrested on multiple occasions. Plaintiffs never heard a statement that they would be imminently arrested or arrested at all. Mr. Hart never uttered the word 'arrest.' Importantly, Plaintiffs actions as stated above tend to show Plaintiffs were not in reasonable fear of arrest by Mr. Hart at any time. Additionally, Mr. Hart's specific words never included the word "arrest", nor "violence." Plaintiffs as experienced in demonstrations and dealing with law enforcement did not perceive Mr. Hart's words as threats, coercion or intimidation. Plaintiffs do not cite any Bane Act cases that show the same or similar words spoken by Mr. Hart are actionable as threats, intimidation or coercion as a matter of law. Plaintiff Bolbol stated at the time that "I think they're just messing with you, Pat." Additionally, Plaintiff Cuviello testified that he did not believe Mr. Hart had the ability to arrest him at the time of the incident. Plaintiffs do not define what statements constitute "threats, intimidation or coercion" in Bane Act jurisprudence as defined in California or federal courts. Therefore, whether the words uttered by

Mr. Hart with the combined circumstances of the evening constituted "threats, intimidation or coercion" are in favor of the HARD Defendants and at the very least a triable issue of fact for a jury.

**H.** **Plaintiffs' Assertion that Mr. Hart and Deputy Mayfield "Acted in Concert" is False and Lacks Factual Support**

Here, Plaintiffs' SAC states without factual support that Mr. Hart and Deputy Mayfield "acted in concert" at the time of the subject incident. This is purely conclusory and untrue. As stated in the facts section, Mr. Hart had no authority to arrest Plaintiffs. (*Decl. of K. Hart*, ¶ 18). At no time did Mr. Hart instruct Alameda County Deputies to arrest Plaintiffs nor instruct Alameda County Deputies to threaten Plaintiffs with arrest. (*Decl. of K. Hart*, ¶ 19). Mr. Hart did not coordinate nor plan a response to the demonstrators with Deputy Mayfield nor anyone else from the Alameda County Sheriff's Department at any time prior to his interactions with Plaintiff. (*Decl. of K. Hart*, ¶ 20). Mr. Hart had no weapon on his person during his interactions with Plaintiffs nor any handcuffs. (*Decl. of K. Hart*, ¶ 22). Based on these facts, no reasonable jury could find that Mr. Hart and Deputy Mayfield "acted in concert" to allegedly deprive Plaintiffs of their First Amendment rights. Criminal case law discusses actions "in concert" between two separate entities or individuals at volume in criminal law (See, Judicial Council Of California Civil Jury Instruction 3610 et al.). Courts have extended liability in 42 U.S.C.A. §1983 causes of action between state and federal agencies. However, Plaintiffs have not plead or argued, and HARD Defendants have not found case law extending acts in concert to allegation of a Bane Act violation.

Plaintiffs' claims that Mr. Hart and Deputy Mayfield "acted in concert" are purely conclusory and not supported by the facts. For these reasons, the actions of each Defendant Mr. Hart/HARD and County of Alameda/Deputy Mayfield should be evaluated on their own merits without the inclusion of the combined action of both actors when there is no evidence of a conspiracy present here.

**I.** **Plaintiffs Cannot Establish a Violation of 42 U.S.C.A. §1983 as a Matter of Law as HARD Defendants are Subject to Qualified Immunity and Cannot Establish Available Equitable Remedies Under Plaintiff's Sixth Cause of**

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

MSJ/MSA
3:23-CV-01652-VC

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

**Action**

Qualified immunity public officials are shielded from liability for civil damages "unless a plaintiff pleads facts showing: (1) that the official violated a statutory or constitutional rights, and (2) that the right was "clearly established" at the time of the challenged conduct. *Ashcroft v. al-Kidd*, 563 — U.S. —, 131 S. Ct. 2074, 2080 (2011) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).) A right is clearly established if -- at the time of the challenged conduct -- "every reasonable official would have understood that what he is doing violates that right." *Ashcroft*, supra, 2083 (emphasis added) (internal citations and quotations omitted).

As stated above, element one has not been determined and HARD Defendants vehemently deny any constitutional right was violated here. When discussing element (2) in *Harlow* it's clear that Mr. Hart did not understand that any right was being violated by his actions and that the standard of "every reasonable official would have understood he was violating Plaintiffs constitutional rights" has not been properly plead by Plaintiffs.

In *Grossman v. City of Portland*, 33 F.3d 1200, 1210 (9th Cir. 1994), the plaintiff was arrested for demonstrating in a public park without a permit in violation of a city ordinance that turned out to be unconstitutional under the First Amendment. Ruling that the arresting officer was protected by qualified immunity, the Ninth Circuit found "[t]his ordinance, which had been duly promulgated by the city council, was not so obviously unconstitutional as to require a reasonable officer to refuse to enforce it." *Grossman* at 1210. The plaintiff clearly violated the ordinance and the defendant correctly believed that the ordinance required a permit. The Ninth Circuit also observed that "an officer who reasonably relies on the legislature's determination that a statute is constitutional should be shielded from personal liability." *Id.*

Where the plaintiff alleged that a police officer seized his still camera in February 2001 in order to retaliate against him in violation of his First Amendment rights, the Ninth Circuit declared that "a right exists to be free of police action for which retaliation is a but—for cause even if probable cause exists for that action." However, the defendant was entitled to qualified immunity because he did not violate clearly settled law at the time. Indeed the right was then "far

662247.1

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

from clearly established in this Circuit or in the nation." See §8:72. *Law enforcement officers in the circuits—First Amendment, 2 Nahmod, Civil Rights & Civil Liberties Litigation: The Law of Section 1983 §8:72.*

Here, a security plan was created by the Rodeo group renting the park for the day which Mr. Hart was aware of from his previous review and approval. (*Decl. of K. Hart*, ¶ 4). The "free speech area" was designated in the immediate area of the entrance to the parking lot. (*Decl. of K. Hart*, ¶ 5). Mr. Hart attempted to enforce the "free speech area" with the reasonable belief that the "free speech area" was constitutionally enforceable. This situation is illustrated in *Grossman* and 9th Circuit case law which allows for the mistaken belief of the lawfulness of an officer's action and is squarely defensible by qualified immunity. For these reasons, qualified immunity shields the HARD Defendants and the 42 U.S.C.A §1983 cause of action should fail as a matter of law.

Additionally, Plaintiffs' cause of action is for injunctive relief in the form of both a temporary and permanent injunction. The issuance of a permanent injunction requires the application of a familiar four-step framework in which the plaintiff: must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of the hardships between the [parties], a remedy in equity is warranted; and (4) that the public interest will not be disserved by a permanent injunction. *Esso Standard Oil Co. v. Lopez-Freytes*, 522 F.3d 136, 148 (1st Cir. 2008).

As stated in the Order, "The Park District's declaration explains that its rangers will not even be at the rodeo and will therefore have "no interaction with protesters who may come to the rodeo event." Dkt. No. 40 at 1. To the extent any allegedly unlawful behavior is reported to the rangers, the rangers have been instructed simply to report it to local law enforcement. Dkt. No. 40 at 2." (Quoting, Dkt. 46, p. 1-2).

Therefore, as argued above element one is disputed, but Plaintiffs cannot prove that, considering the balance of the hardships between the [parties], a remedy in equity is warranted here as the alleged issues have been remedied. Again the "free speech area" has been moved toward the ticket booth entrance area and HARD Defendant rangers will not be present going

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

forward the for the Rodeo events and if HARD rangers are on the property they've been

instructed not to call law enforcement regarding failure to demonstrate in the "free speech area."

Therefore, Plaintiff's claim for injunctive relief, related to the First Amendment violation cause of

action should fail as a matter of law.

**J.**     **First Amendment Violation Cause of Action Should Fail Due to Mootness and Satisfaction of Equitable Remedy**

Plaintiffs seek both a temporary and permanent injunction against HARD Defendants due

to alleged First Amendment violations. The issuance of a permanent injunction requires the

application of the familiar four-step framework found above in *Esso Standard Oil Co. v. Lopez-*

*Freytes*, 522 F.3d 136, 148 (1st Cir. 2008).

As discussed in Judge Chhabria's Order regarding Plaintiff's Application for Temporary

Restraining Order (Dkt. 46), Rowell Ranch has satisfactorily remedied any alleged First

Amendment violation of time, place and manner restrictions regarding the "free speech area" as it

has been moved to a constitutionally proper area near the entrance to the event. Specifically,

"Rowell Ranch declares that it has designated a second free speech zone fifteen to twenty feet

from the ticket booth closest to the pedestrian entrance to the arena, around where the plaintiffs

typically demonstrate. Rowell Ranch further declares that "[d]emonstrators are *not* limited to the

Free Speech Area to hand out their leaflets or engage the attendees" and that its employees "have

*not* been instructed to call any law enforcement department simply because a demonstrator is not

demonstrating in a Free Speech Area." Dkt. No. 43 at 2 (emphasis added)." (Dkt. 46 pp. 1-2, RJN

¶ 3).

Further, as stated in the Order, "The Park District's declaration explains that its rangers

will not even be at the rodeo and will therefore have "no interaction with protesters who may

come to the rodeo event." Dkt. No. 40 at 1, RJN ¶ 4). To the extent any allegedly unlawful

behavior is reported to the rangers, the rangers have been instructed simply to report it to local

law enforcement." Dkt. No. 40 at 2, RJN ¶ 4); (Dkt. 46 pp. 1-2, RJN ¶ 3).

Therefore, as argued above element one is disputed, but Plaintiffs cannot prove that,

considering the balance of the hardships between the [parties], a remedy in equity is warranted

ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP
180 Montgomery Street, Suite 1200
San Francisco, California 94104

here as the alleged First Amendment issues have been remedied. Again the "free speech area" has been moved toward the ticket booth entrance area and HARD Defendant rangers will not be present going forward the for the Rodeo events and if HARD rangers are on the property they've been instructed not to call law enforcement regarding failure to demonstrate in the "free speech area." Therefore, Plaintiff's claim for injunctive relief, related to the First Amendment violation cause of action should fail as a matter of law as the issue has already been remedied.

### K.        Mr. Hart is Entitled to Dismissal of Punitive Damages

A plaintiff is allowed to recover punitive damages in a Section 1983 case, where the defendant's conduct is "shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56, 103 S.Ct. 1625 (1983). There is no evidence the individual defendants acted with evil intent or reckless or callous indifference. The purpose of Mr. Hart's words directed toward Plaintiff Cuviello was to attempt to move Plaintiff to the "free speech area," not a deliberate or malicious act to deprive Plaintiffs of their rights. State-law punitive damages also fail. California Code of Civil Procedure § 3294(a) only permits punitive damages where it is proven "by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." Civil Code §3294. There is no evidence Mr. Hart acted in such a manner. Mr. Hart responded to complaints about the demonstrators. There was no intent to cause injury to Plaintiffs or any actions with willful and conscious disregard of their rights.

## V.        CONCLUSION

For these reasons, Defendants respectfully request their cross motion for summary judgment be granted and Plaintiff's Second Amended Complaint dismissed with prejudice and Plaintiffs' Joint Motion for Summary Judgment be denied.

Dated:  July 1, 2024                                    ALLEN, GLAESSNER,
                                                        HAZELWOOD & WERTH, LLP


                                            By:   /s/ Nicholas D. Syren
                                                  DALE L. ALLEN, JR.
                                                  NICHOLAS D. SYREN
                                                  Attorneys for Defendants
                                                  HAYWARD AREA RECREATION AND
                                                  PARK DISTRICT and KEVIN HART