1  PAUL CALEO (SBN 153925)
   pcaleo@grsm.com
2  OSMAAN KHAN (SBN 331766)
   oakhan@grsm.com
3  **GORDON REES SCULLY MANSUKHANI, LLP**
   100 Pringle Avenue, Suite 300
4  Walnut Creek, CA 94596
   Oakland, CA 94607
5  Telephone: (510) 463-8600
   Facsimile: (510) 984-1721
6
7  *Attorneys for Defendant*
   ROWELL RANCH RODEO INC.

8

9              **UNITED STATES DISTRICT COURT**

10            **NORTHERN DISTRICT OF CALIFORNIA**

11

12 | JOSEPH P. CUVIELLO and DENIZ      | Case No.: 3:23-CV-01652
   | BOLBOL, individually,

13 |                      Plaintiffs,   | **DEFENDANT ROWELL RANCH RODEO
   |                                    | INC.'S NOTICE AND CROSS-MOTION
14 |        v.                          | FOR SUMMARY JUDGMENT, OR IN THE
   |                                    | ALTERNATIVE SUMMARY
15 | ROWELL RANCH RODEO, INC.;          | ADJUDICATION; MEMORANDUM OF
   | HAYWARD AREA RECREATION AND        | POINTS AND AUTHORITIES
16 | PARK DISTRICT; HAYWARD AREA
   | RECREATION AND PARK DISTRICT
17 | PUBLIC SAFETY MANAGER/RANGER       | **Date:**      August 15, 2024
   | KEVIN HART; and DOES 1 through 2, in| **Time:**      10:00 a.m.
18 | their individual and official capacities, jointly | **Dept.:**      5, 17th Floor
   | and severally.                     | **Judge:**     Hon. Vince Chhabria
19 |
20 |                      Defendants.   | Complaint Filed:      April 6, 2023
   |                                    | Trial:                October 21, 2024

21

22

23

24

25

26

27

28

*(left margin, vertical text)* Gordon Rees Scully Mansukhani, LLP
100 Pringle Avenue, Suite 300
Walnut Creek, CA 94596

-1-

1

**TABLE OF CONTENTS**

2

I.    INTRODUCTION ...................................................................................................... 5

3

II.   RELEVANT FACTS ................................................................................................ 6

4

    A.   UNDISPUTED MATERIAL FACTS ............................................................... 6

5

        1.   May 20, 2022 ....................................................................................... 6

6

        2.   May 21, 2022 ....................................................................................... 8

7

    B.   RESPONSE TO PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS ..................... 10

8

    C.   ADDITIONAL FACTS NOT REFERENCED IN PLAINTIFFS' SEPARATE STATEMENT THAT
9
    COMPEL DENIAL OF THE MOTION ..................................................................... 15

10

III.  STANDARD OF REVIEW ................................................................................... 16

11

IV.   ARGUMENT ........................................................................................................ 17

12

    A.   EVIDENCE COMPELS THE CONCLUSION THAT ROWELL RANCH VOLUNTEERS DID NOT
13  HAVE THE INTENT, NOR WERE THE PLAINTIFFS INTIMIDATED OR PREVENTED, FOR A §52.1
    VIOLATION ........................................................................................................ 17
14

        1.   George Ferris' Interaction With Plaintiff Bolbol Cannot Meet the Necessary Element
15      of Intent, nor was it Intimidating, Coercive or Violent ........................................ 18

16

        2.   Gary Houts' Actions Compel the Conclusion that Did Not Deprive Plaintiff Cuviello
17      of his Right to Free Speech, nor did he Intend to do so. ..................................... 20

18

    B.   EVIDENCE COMPELS THE CONCLUSION THAT PLAINTIFFS WERE NOT HARMED ............... 21

19

        1.   Evidence Establishes that Law Enforcement was Already Scheduled to be at the Park
20      before Gary Houts' Phone Call ........................................................................ 21

21

        2.   The Undisputed Evidence Compels the Conclusion that Plaintiff Bolbol Suffered No
22      Harm from her Interaction with George Ferris .................................................. 22

23

        3.   Evidence Compels the Conclusion that Plaintiff Cuviello was not Harmed by Gary
        Houts' Utility Cart ........................................................................................ 22

24

    C.   PLAINTIFFS CANNOT ESTABLISH INTENT AND HARM FOR ASSAULT AND BATTERY ......... 23

25

V.    CONCLUSION ..................................................................................................... 24

26

27

28

Gordon Rees Scully Mansukhani, LLP
100 Pringle Avenue, Suite 300
Walnut Creek, CA 94596

DEFENDANT'S NOTICE AND CROSS-MOTION FOR SUMMARY JUDGMENT, OR IN THE
ALTERNATIVE SUMMARY ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES

1

# TABLE OF AUTHORITIES

2

CASES

3

*Alamo v. Practice Management Information Corp.*
4
219 Cal.App.4th 466 (2013) ------------------------------------------------------------21

5

*Austin B. v. Escondido Union Sch. Dist.*
6
(2007) 149 Cal. App. 4th 860---------------------------------------------------------18

7

*Bloom v. Universal City Studios, Inc.*
(C.D. Cal. 1990) 734 F.Supp. 1553--------------------------------------------------16
8

*Celotex Corp. v. Catrett*
9
(1986) 477 U.S. 317 ------------------------------------------------------------------16

10

*Garcia* v. *County of Merced*
(9th Cir. 2011) 639 F.3d 1206 -------------------------------------------------------16
11

*Jones v. Kmart Corp.*
12
(1998) 17 Cal. 4th 329---------------------------------------------------------- 17, 18

13

*Koire v. Metro Car Wash*
(1985) 40 Cal.3d 24-------------------------------------------------------------------17
14

*Lal* v. *California*
15
(9th Cir. 2014) 746 F.3d 1112 -------------------------------------------------------16

16

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*
17
(1986) 475 U.S. 574 586 -------------------------------------------------------------16

18

*Reese v. County of Sacramento*
(2018) 888 F.3d 1030-----------------------------------------------------------------18
19

*Richardson v. City of Antioch*
20
(N.D. Cal. 2010) 722 F. Supp. 2d 1133 ---------------------------------------------18

21

*Scott* v. *Harris*
22
(2007) *550* U.S. 372---------------------------------------------------------- 16, 17

23

*Shoyoye v. County of Los Angeles*
(2012) 203 Cal.App.4th 947 ---------------------------------------------------------18
24

*Simmons v. Superior Court*
25
(2016) 7 Cal.App.5th 1113 -----------------------------------------------------------18

26

*So v. Shin*
27
(2013) 212 Cal.App.4th 652 ---------------------------------------------------------23

28

Gordon Rees Scully Mansukhani, LLP
100 Pringle Avenue, Suite 300
Walnut Creek, CA 94596

DEFENDANT'S NOTICE AND CROSS-MOTION FOR SUMMARY JUDGMENT, OR IN THE
ALTERNATIVE SUMMARY ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES

*Tzung v. State Farm Fire and Casualty Co.*
(9th Cir. 1989) 873 F.2d 1338 ------------------------------------------------------------------16

*Vos* v. *City of Newport Beach*
(9th Cir. 2018) 892 F.3d 1024 ------------------------------------------------------------------16

STATUTES

California Code of Civil Procedure §51.7 -------------------------------------------------------6, 21

California Code of Civil Procedure §52.1 -------------------------------------------------------5, 18

Federal Rule of Civil Procedure §56 -----------------------------------------------------------5, 16

OTHER AUTHORITIES

California Civil Jury Instructions (CACI) 2024 ------------------------------------------------17

RULES

Federal Rules of Evidence 402 --------------------------------------------------------12, 14, 15

Federal Rules of Evidence 403 --------------------------------------------------------------10

Federal Rules of Evidence 701 ------------------------------------------------10, 11, 13, 14, 15

Federal Rules of Evidence 1007 -------------------------------------------------------------10

Gordon Rees Scully Mansukhani, LLP
100 Pringle Avenue, Suite 300
Walnut Creek, CA 94596

DEFENDANT'S NOTICE AND CROSS-MOTION FOR SUMMARY JUDGMENT, OR IN THE
ALTERNATIVE SUMMARY ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES

Pursuant to Federal Rule of Civil Procedure 56, Defendant Rowell Ranch Rodeo, Inc. ("Rowell Ranch"), respectfully moves for summary judgment on all of Plaintiffs JOSEPH P. CUVIELLO  and DENIZ BOLBOL's claims against it, and for other and further relief as the Court deems just and proper. In support, Rowell Ranch submits its Memorandum of Law which is incorporated below, and the Declaration of Osmaan Khan, which is being filed contemporaneously with this cross-motion.

## I.       INTRODUCTION

This lawsuit is an attempt by Plaintiffs JOSPEH P. CUVIELLO ("Plaintiff Cuviello") and DENIZ BOLBOL ("Plaintiff Bolbol"), two long-term animal rights activists, to benefit from a series of non-incidents. The concerned events took place on May 20 and May 21, 2022, at a rodeo event hosted by Defendant ROWELL RANCH RODEO, INC. ("Rowell Ranch") at the Rowell Ranch Rodeo Park ("Park") in Hayward. Plaintiffs showed up to demonstrate and protest at the event by spreading their message regarding animal cruelty. The complaint filed in this action claims an elaborate conspiracy spread over known and unknown actors, including not just Rowell Ranch and its volunteers, but also law enforcement and a special park district. Plaintiffs spin the facts to benefit themselves while smearing responsibility amongst all of the named defendants. Essentially, Plaintiffs allege that they had their rights to free speech trampled on and that they were threatened with arrest, assaulted, and generally inhibited from spreading their message. Plaintiffs have failed to demonstrate that they have suffered any actual harm or damages. Plaintiffs concede that did not suffer any physical or emotional injury, or have incurred any economic damages. Throughout the three-day event, Plaintiffs returned to the Park premises to protest each day without fail. They were never arrested, detained or physically forced out of the Park or even restricted to a location. Plaintiffs have now filed

Plaintiffs' allege the following causes of action against Rowell Ranch and its volunteers:

(i)      California Civil Code ("Civ. Code") §52.1 violation for ROWELL RANCH volunteer George Ferris' interaction with Plaintiff Bolbol.

(ii)     Civ. Code §52.1 violation for ROWELL RANCH volunteer Gary Houts negligently driving a utility cart into Plaintiff Cuviello.

Gordon Rees Scully Mansukhani, LLP
100 Pringle Avenue, Suite 300
Walnut Creek, CA 94596

(iii)   Civ. Code §51.7 violation for ROWELL RANCH volunteer Gary Houts reporting the Plaintiffs' to the police.

(iv)   Civ. Code §51.7 violation for ROWELL RANCH volunteer George Ferris' interaction with Plaintiff Bolbol.

(v)    Civ. Code §51.7 violation for ROWELL RANCH volunteer Gary Houts negligently driving the utility cart into Plaintiff Cuviello.

(vi)   Assault and Battery against ROWELL RANCH volunteer George Ferris for his interaction with Plaintiff Bolbol.

(vii)  Assault and Battery against ROWELL RANCH volunteer Gary Houts negligently driving the utility cart into Plaintiff Cuviello.

Based on the undisputed material facts outlined below, Plaintiffs' cannot establish the intent of the Rowell Ranch volunteers, nor can they show that they suffered any harm from the actions of the volunteers. Plaintiffs are required to affirmatively prove each element for each of their alleged causes of action. Since the evidence submitted in support of this motion estabishes they cannot do so, Rowell Ranch is entitled to an Order dismissing *all* causes of action against it. In the alternative, this Court can adjudicate the dismissal of some, if not all, causes of action against Rowell Ranch.

## II.    RELEVANT FACTS

### A.    Undisputed Material Facts

#### 1.    May 20, 2022

Plaintiffs arrived the Park on May 20, 2022 around 6 pm to demonstrate against the use of animals at the rodeo. Declaration of Joseph P. Cuviello in support of Plaintiffs' Motion for Partial Summary Judgment ("Cuviello Decl."), ¶¶ 14, 15, 19. Declaration of Deniz Bolbol in support of Plaintiffs' Motion for Partial Summary Judgement ("Bolbol Decl."), ¶¶ 14, 15. Plaintiffs noticed the cordoned off "Free Speech Area" ("FSA"), and deemed it ineffective for their planned demonstration. Cuviello Decl. ¶ 14. The Plaintiffs continued their demonstration near the Park's pedestrian entrance. Cuviello Decl. ¶ 16. Plaintiffs' demonstration primarily

Gordon Rees Scully Mansukhani, LLP
100 Pringle Avenue, Suite 300
Walnut Creek, CA 94596

Gordon Rees Scully Mansukhani, LLP
100 Pringle Avenue, Suite 300
Walnut Creek, CA 94596

1  included holding their banners and signs, and passing out leaflets. Cuviello Decl. ¶ 16, Exh. 15,

2  ¶ 13, Exh. 14, Bolbol Decl. ¶ 27, Exh. 16.

3  Gary Houts, ROWELL RANCH volunteer, approached Plaintiffs and informed them of

4  the FSA. Bolbol Decl. ¶ 15, Exh. 1. Plaintiffs told Gary Houts to call the police if he had a

5  problem. *Id.* After some antagonistic back-and-forth, Gary Houts called the police and told the

6  dispatcher that the Plaintiffs were blocking the parking lot and entrance. Cuviello Decl. ¶ 17, Exh.

7  7 (timestamp 3:00); Bolbol Decl. ¶ 15, Exh. 1 (timestamp 3:03), Blome Decl. ¶ 9, Exh. 28

8  (timestamp 1:36-2:56), ¶ 14, Exhs. 33A and 33B.

9  Police officers from Defendant Alameda County Sherriff's Office ("ACSO"), including

10  Defendant Deputy Mayfield ("Deputy Mayfield") arrived at the Park approximately 5 minutes

11  after Gary Houts' phone call to dispatch. Cuviello Decl. ¶ 18. ACSO was scheduled to be at the

12  Park before Gary Houts made the phone call to dispatch. Blome Decl. ¶ 9, Exh. 28 (timestamp

13  10:45). The audio recording from ACSO has dispatch personnel talking to a police officer already

14  present at Park, 7 minutes and 49 seconds after hanging up on Gary Houts. *Id* (timestamp 10:45).

15  The police officer informs dispatch that they have *already* advised the protestors to keep things

16  peaceful. *Id.* (timestamp 11:02).

17  Plaintiffs had multiple interactions with Deputy Mayfield and Defendant Kevin Hart

18  ("Hart") of the Hayward Area Recreation District ("HARD"). Cuviello Decl., ¶¶ 18 to 27. Around

19  7:15 pm, Plaintiffs moved to the back entrance of the Park. Plaintiff's demonstration on that day

20  ended at 7:40 pm. Cuviello Decl., ¶ 18.

21  Plaintiff Cuviello, in his Deposition, testified that he was not afraid of arrest on May 20,

22  2021, after having interacted with Deputy Mayfield and Hart. Declaration of Osmaan Khan in

23  support of this Cross-Motion, Exhibit 1 – Deposition Transcript of Plaintiff Pat Cuviello

24  ("Cuviello Depo."), at 92: 7-16. Further, Plaintiff Cuviello testified that *if* law enforcement had

25  indicated that they were going to arrest him, he would have moved from the location. Cuviello

26  Depo., at 86:23-87:6. Plaintiff Cuviello was not afraid of arrest, and continued to protest not just

27  on May 20, 2024, but also for the next 2 days. Cuviello Decl., ¶ 40, Exh. 17.

28

DEFENDANT'S NOTICE AND CROSS-MOTION FOR SUMMARY JUDGMENT, OR IN THE
ALTERNATIVE SUMMARY ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES

2.    *May 21, 2022*

Plaintiffs and fellow demonstrators, after demonstrating at the front entrance without incident on May 21, 2022, headed toward the back entrance and observed personnel in reflective vests. Bolbol. Decl., ¶ 24, Exh. 5.   George Ferris, ROWELL RANCH volunteer in a reflective vest, interacted with the Plaintiffs as they attempted to proceed towards the back entrance. Bolbol. Decl., ¶ 24, Exh. 5. (timestamp 0:24). Their interaction, documented on video, went as follows:

> **Ferris:** Hey you need tickets to the rodeo!
> **Bolbol:** Don't touch him!
> [Ferris moves a couple of feet to his right side to block the path of Defendant Bolol.]
> **Ferris:** You need tickets to the rodeo!
> **Bolbol:** Don't touch him!
> **Ferris:** Call the cops! Call the cops right now!
> [George Ferris blocks the path of Defendant Bolol by standing in front of her.]
> **Ferris:** Call the cops right now!
> **Bolbol:** You are out of your f****** mind man!
> **Ferris:** You are!
> **Bolbol:** Don't [inaudible].
> **Ferris:** Out!
> **Bolbol:** Don't touch me!
> **Ferris:** You're touching me! You are running into me! You are touching me!
> **Bolbol:** Stop it!
> [Ferris has stopped blocking Defendant Bolbol's path, and she continues to walk towards the back entrance.]
> **Ferris:** Out! You need tickets to the rodeo!
> **Bolbol:** Stop it! Stop it you bully! That is what you do to the animals too you brute! You brute! Trying to intimidate a woman! Shame on him!

Bolbol. Decl., ¶ 24, Exh. 5. (timestamp 0:26)

George Ferris merely stepped in front of Plaintiff Cuviello in attempt to block his path. Bolbol. Decl., ¶ 24, Exh. 5. This was in order to stop him from proceeding further without a ticket to the rodeo. *Id.* His attention was then diverted to Plaintiff Bolbol, and he attempted to block her path as well. *Id.* He yelled at her that she needed a ticket for the rodeo, clearly articulating why he was blocking her path. *Id.* George Ferris also repeatedly shouted, "[o]ut." *Id.* He did not push into Plaintiff Bolbol, and only stepped in front of her to block her path. *Id.* It is obvious from the footage that if there was any physical contact, it was initiated by Plaintiff Bolbol trying to force her way past George Ferris. George Ferris can be heard requesting for assistance by law enforcement. *Id.* He also clearly articulates that Plaintiff Bolbol is the one touching him and running into him. *Id.* George Ferris stopped blocking Plaintiff Bolbol's path about 30 seconds

their interaction had commenced, and Plaintiff Bolbol proceeded to the back entrance. Plaintiff Bolbol then threatens a woman, also in a green vest, with a lawsuit. *Id*. She continues walking towards the back entrance. *Id.*.

Later at the back entrance, Plaintiff Cuviello held a banner with another demonstrator near a tree, close to where an utility cart that was parked. Cuviello Decl. ¶ 33, Exh. 13. Gary Houts approached Plaintiff Cuviello and told him to not touch the electric utility vehicle with the banner and Plaintiff Cuviello moved a step away from the vehicle. Cuviello Decl. ¶ 33, Exh. 13. Gary Houts told Plaintiff Cuviello that he had to move from behind his vehicle and then got into it.

Plaintiff Cuviello can be observed, in his own footage, with his large 2-person banner standing right behind the utility vehicle. The following exchange takes place:

**Houts [off camera likely addressing Plaintiff Cuviello]:** You can't cover my cart.
**Houts [off camera and addressing someone off camera]:** You asked [inaudible]. There is a handicap girl in here that needs a ride in a cart.
**Unknown Female [off camera]:** We are taking someone in right now. He is taking someone in. We will get them to send [inaudible].
**Houts: [off camera]:** [in audible] I will use the center gate.
**Houts [off camera and addressing Plaintiff Cuviello]:** You all got to move [inaudible]. Houts is seen getting into the utility vehicle.
**Cuviello:** He can go forward. He is just trying to make trouble.
**Unknown Female [off camera]:** He has to back up.
**Cuviello:** Why does he have to back up?
**Unknown female [off camera]:** Because he is security!

Cuviello. Decl., ¶ 34, Exh. 13. (timestamp 0:00)

Gary Houts then backs up a short distance and makes imperceptible contact with Plaintiff Cuviello. Cuviello. Decl., ¶ 34, Exh. 13. (timestamp 1:02). Plaintiff Cuviello does not move and his reaction does not indicate any fear or intimidation. Cuviello. Decl., ¶ 34, Exh. 13. (timestamp 1:02). The is as follows:

**Cuviello:** Hey hey hey!
**Unknown Female:** You need to move! He asked you to move!
**Cuviello:** I got you on video you f****** a******!
**Unknown Female:** He asked you to move.
**Cuviello:** That's f****** assault with a deadly weapon you a******!
**Houts:** I asked you to move.
**Cuviello:** I don't care. You don't get to run people over. D*******!
**Unknown Female:** He asked you to move!
**Cuviello:** F*** Off!

Gordon Rees Scully Mansukhani, LLP
100 Pringle Avenue, Suite 300
Walnut Creek, CA 94596

-9-

1   Cuviello. Decl., ¶ 34, Exh. 13. (timestamp 1:02)

2       Plaintiff Cuviello does not show any indication of discomfort, embarrassment, or fear, let

3   alone injury. As Gary Houts drives away, the gravel and ground appear to be of a lighter color

4   than the one in front of the vehicle before it moved. Further, Gary Houts drives the utility vehicle

5   in the direction behind Plaintiff Cuviello.

6       Plaintiffs continued to protest for the rest of the day, and also the day after on May 22,

7   2024. Cuviello Decl. ¶ 40.

8       **B.    Response to Plaintiff's Statement of Undisputed Material Facts**

9       Both Plaintiffs Cuviello and Bolbol were deposed, yet their Motion does not reference their

10  depositions. Instead, the Motion relies on their Declarations, which contradict their deposition

11  testimony. Relying on the Plaintiff's Declarations is potentially a breach of Federal Rules of

12  Evidence ("FRE") 1007, the Best Evidence Rule, and should be excluded by this Court under FRE

13  403, for causing confusion of issues at trial and misleading the jury.

14      Finally, the Motion refers to Declarations by Mike Sage and Robyn Newkirk, but they are

15  not part of the pleadings concurrently filed. Both Mike Sage and Robyn Newkirk were deposed

16  previously, and thus any Declaration by them would breach FRE 1007 as well.

17      Below is a <u>non-exhaustive</u> list of objections and disputed facts:

18      1.      Paragraph No. 3. Plaintiffs find the most successful point of persuasion at a rodeo

19  event is at or near the pedestrian entrance as one-on-one communication is the most effective

20  means of communicating their message. Cuviello Decl. ¶¶ 9-10; Bolbol Decl. ¶¶ 9-10. Rowell

21  Ranch objects to this alleged fact on the ground that Plaintiffs' evidence is opinion testimony by

22  a lay witness. FRE 701.

23      2.      Paragraph No. 8. As lessee, Rowell Ranch set up a FSA. Blome Decl. ¶ 2, Exh. 22

24  at Response to Interrogatory No. 11. Rowell Ranch disputes this alleged fact because the Blome

25  Declaration at ¶ 2 does not refer to an Exhibit 22.

26      3.      Paragraph No. 8. Rowell Ranch maintains that "Designation of a Free Speech area

27  (or "Public Speech as defined by HARD requirements) is part of the security plan required by the

28  Policy, Fees and Guidelines published by HARD." Blome Decl. ¶ 2, Exh. 22 at Response to

Gordon Rees Scully Mansukhani, LLP
100 Pringle Avenue, Suite 300
Walnut Creek, CA 94596

-10-

Gordon Rees Scully Mansukhani, LLP
100 Pringle Avenue, Suite 300
Walnut Creek, CA 94596

Interrogatory No. 11; ¶ 15, Exh. 34C at 208-209. Rowell Ranch disputes this alleged fact because the Blome Declaration at ¶ 2 does not refer to an Exhibit 22.

4. Paragraph No. 9. The location of the FSA was designated by HARD and selected by Rowell Ranch and HARD. Blome Decl. ¶ 2, Exh. 22 at Response to Interrogatory No. 14, ¶ 15, Exh. 34D at 224. Rowell Ranch disputes these alleged facts because the Plaintiff's evidence states that Rowell Ranch selected and then designated the FSA on the Emergency Action Plan ("EAP"), which was later approved by HARD.

5. Paragraph No. 12. During the May 2022 events at the Park, the FSA was approximately ten feet by five feet. Blome Decl. ¶ 15, Exh. 34D at 224; ¶ 16, Exh. 35; Cuviello Decl. ¶ 14, Exh. 6 (timestamp 0:32); Bolbol Decl. ¶ 14. Rowell Ranch disputes these alleged facts because none of the evidence referenced mentions the dimensions of the FSA.

6. Paragraph No. 14. Because it was far from the pedestrian entrance, Plaintiffs knew it would not be an effective option to communicate their message. Cuviello Decl. ¶ 15; Bolbol Decl. ¶ 14. Rowell Ranch objects to this alleged fact on the ground that it is opinion testimony by a lay witness. FRE 701.

7. Paragraph No. 15. Gary Houts told Plaintiffs they must move to the FSA. Bolbol Decl. ¶ 15, Exh. 1; Blome Decl. ¶ 2, Exh. 22 at 43, ¶ 14, Exh. 33B at 167 (p. 3:15-17). Rowell Ranch objects to this alleged fact because the Blome Declaration's Exhibits do not reference what is being claimed.

8. Paragraph No. 25. Both Plaintiffs felt intimidated and fearful they would be arrested but wanted to wait and see what the response would be from Defendant Mayfield's watch commander. Cuviello Decl. ¶¶ 22-23; Bolbol Decl. ¶¶ 18. Rowell Ranch disputes this alleged fact because there is contradictory information in Plaintiff Cuviello's Deposition. Cuviello Depo., at 92: 7-16. Rowell Ranch disputes this alleged fact because Plaintiffs continued to protest for 2 more days which contradictory to their claim of feeling intimidated.

9. Paragraph No. 26. During this interaction with Hart and Deputy Mayfield, both Plaintiffs felt intimidated by Defendants' threat of arrest which they believed was intended to coerce them into giving up their free speech right to demonstrate outside the "free speech area."

DEFENDANT'S NOTICE AND CROSS-MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE SUMMARY ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES

Bolbol Decl. ¶ 21; Cuviello Decl. ¶ 26. Plaintiffs' fear of being arrested was based on verbal threats, including, but not limited to, Defendant Hart stating, "You don't have too much of a choice," to move to the designated "Free Speech Area" and "failure to do so will not be good," and Defendant Deputy Mayfield telling them they "could be arrested" and that it was a "possibility" if they didn't move to the free speech area. Cuviello Decl. ¶¶ 20, 26; Bolbol Decl. ¶ 21; Sage Decl. ¶ 14 (describing tactic of intimidation to "make us afraid and pressure us to move"). Rowell Ranch disputes this alleged fact because there is contradictory information in Plaintiff Cuviello's Deposition. Cuviello Depo., at 92: 7-16 and 86:23-87:6. Rowell Ranch disputes this alleged fact because Plaintiffs continued to protest for 2 more days which contradictory to their claim of feeling intimidated.

10.     Paragraph No. 27. Plaintiffs' fear of being arrested was also based on their two contradictory interactions with Defendant Deputy Mayfield; the first when Defendant Deputy Mayfield acknowledged they had a right to protest near the entrance and the second interaction when Deputy Mayfield changed his message to tell Plaintiffs they could be arrested if they don't move to the "free speech area." Bolbol Decl. ¶ 22, Cuviello Decl. ¶ 27; Newkirk Decl. ¶ 12 (the threat of arrest was real). Rowell Ranch disputes this alleged fact because there is contradictory information in Plaintiff Cuviello's Deposition. Cuviello Depo., at 92: 7-16 and 86:23-87:6. Rowell Ranch disputes this alleged fact because Plaintiffs continued to protest for 2 more days which contradictory to their claim of feeling intimidated.

11.     Paragraph No. 29. During this time, Gary Houts approached Plaintiffs' colleague, Mr. Sage, who was holding a sign stating, "Are you man enough to be kind to animals?" and began to push him, trying to move him as he held his sign. Bolbol Decl. ¶ 19, Exh. 3 (timestamp 0:03- 0:11); Sage Decl. ¶ 9. Rowell Ranch objects to these alleged facts on the ground that Plaintiffs' evidence is irrelevant. FRE 402. Rowell Ranch disputes these alleged facts because the footage at Bolbol Decl. ¶ 19, Exh. 3 (timestamp 0:03- 0:11) does not show Gary Houts make any physical contact with Mr. Sage.

12.     Paragraph No. 31. Access vehicles, including a large truck, easily moved in and out of the roadways during Plaintiffs' peaceful protest, as can be seen in video footage from the event.

DEFENDANT'S NOTICE AND CROSS-MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE SUMMARY ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES

Gordon Rees Scully Mansukhani, LLP
100 Pringle Avenue, Suite 300
Walnut Creek, CA 94596

Cuviello Decl. ¶ 25, Exh. 10 (timestamp 1:25; 2:07-2:16). Rowell Ranch objects to these alleged facts on the ground that it is opinion testimony by a lay witness. FRE 701. Rowell Ranch disputes this claim because it Cuviello Decl. ¶ 25, Exh. 10 (*until* timestamp 1:25) categorically shows Plaintiff Bolbol standing at spot which requires her to move to allow for the truck to pass through. Further, Cuviello Decl. ¶ 25, Exh. 10 (timestamp 2:07 to 2:16) shows Mike Sage walking in the path of the utility vehicle.

13.     Paragraph No. 34. At all times Plaintiff Bolbol did not block the entrance or ingress or egress. Bolbol Decl. ¶ 23, Exh. 4 (timestamp: 0:29 – 0:32); Cuviello Decl. ¶ 28, Exh. 11 (timestamp 0:10-1:00). Rowell Ranch objects to these alleged facts on the ground that it is opinion testimony by a lay witness. FRE 701. Rowell Ranch disputes these alleged facts because the video footage at Cuviello Decl. ¶ 25, Exh. 10 (*until* timestamp 1:25) categorically shows Plaintiff Bolbol standing at spot which requires her to move to allow for the truck to pass through.

14.     Paragraph No. 34. Deputy Mayfield's conduct caused Plaintiff Bolbol emotional and mental stress. Bolbol Decl. ¶ 23. Rowell Ranch objects to these alleged facts on the ground that it is opinion testimony by a lay witness. FRE 701. Rowell Ranch disputes these alleged facts based on the Plaintiff's admitted fact that they continued to protest for 2 more days.

15.     Paragraph No. 35. George Ferris turned his attention to Plaintiff Bolbol and yelled that she needed a ticket and shouted "Out," as he repeatedly blocked her from entering the property by stepping in front of her and pushing his body into her as she tried to walk around him, despite her repeated requests for him to stop touching her. Cuviello Decl. ¶ 32, Ex. 12; Bolbol Decl. ¶ 24, Ex. 5 (timestamp 0:30 – 58). Plaintiff Bolbol felt scared due to Mr. Ferris's physical aggression. Bolbol Decl. ¶ 24. Rowell Ranch disputes these alleged facts based on the video footage which *only* shows George Ferris standing in front of Plaintiff Bolbol's path, rather than pushing his body against her. Plaintiff Bolbol makes it past George Ferris and threatens to sue another Rowell Ranch volunteer. Further, Plaintiff Bolbol continued to protest and showed up to the Park on the next day which shows that she did not feel scared.

16.     Paragraph No. 36. Because there was a breeze the cloth banner would occasionally touch the back of an electric utility vehicle parked near the tree. Cuviello Decl. ¶ 34. Rowell Ranch

DEFENDANT'S NOTICE AND CROSS-MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE SUMMARY ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES

Gordon Rees Scully Mansukhani, LLP
100 Pringle Avenue, Suite 300
Walnut Creek, CA 94596

Gordon Rees Scully Mansukhani, LLP
100 Pringle Avenue, Suite 300
Walnut Creek, CA 94596

objects to these alleged facts on the ground that it is opinion testimony by a lay witness. FRE 701. Gary Houts approached Plaintiff Cuviello and told him not to touch his electric utility vehicle with Plaintiff's banner, and without objection, Plaintiff moved away from the vehicle. *Id.* at ¶ 34, Exh. 13 (timestamp 0:00 – 0:10). Rowell Ranch disputes these alleged facts since the footage shows Plaintiff Cuviello moving a single step, which does not constitute as moving away from the vehicle.

17.     Paragraph No. 37. Despite that the vehicle was facing away from Plaintiff, there was ample room for Gary Houts to easily drive the vehicle forward, and Plaintiff was in no way blocking Gary Houts from moving his vehicle, Gary. Houts told Plaintiff Cuviello to move as he got into the electric vehicle. Cuviello Decl. ¶ 35, Exh. 13 (timestamp 0:43). An unidentified woman, who appeared affiliated with Rowell Ranch, told Plaintiff Cuviello he had to move, and while Plaintiff was explaining to the woman that Gary Houts could drive forward instead of in reverse towards Plaintiff, Gary Houts, sitting in the driver's seat, looked over his shoulder behind the vehicle where Plaintiff was standing and intentionally accelerated his vehicle backwards and rammed it directly into Plaintiff Cuviello. Cuviello Decl. ¶ 36, Exh. 13 (timestamp 0:49 - 1:02). Rowell Ranch disputes these alleged facts because Gary Houts was driving the vehicle to assist a disabled person and Plaintiff Cuviello was blocking the path of the vehicle. The vehicle did not ram into Plaintiff Cuviello; it covered a distance of approximately 1 feet before coming into contact with him, which did not cause him any harm whatsoever.

18.     Paragraph No. 38. Throughout the weekend, fellow protestors, including Mr. Sage and Ms. Newkirk, felt rodeo staff expressed hostility toward them, including by repeatedly driving golf carts close to them. Newkirk Decl. ¶ 10; Sage Decl. ¶ 9 (rodeo staff...did not like our messages regarding the abuse of the animals used by the rodeo). Rowell Ranch objects to these alleged facts on the ground that Plaintiffs' evidence is irrelevant. FRE 402. Rowell Ranch objects to these alleged facts on the ground that it is opinion testimony by a lay witness. FRE 701.

19.     Paragraph No. 39. From May 20 to May 22, 2022, at the end of the demonstrations at the Park, Plaintiffs posed for photographs together with fellow protestors. Cuviello Decl. ¶ 40, Exh. 17. Despite Defendants' harassment and violation of their rights throughout the events at the

Rodeo Park, Plaintiffs remain committed to exercising their right to speech and association to advance animal rights advocacy. Cuviello Decl. ¶¶ 3-4, 7; Bolbol Decl. ¶¶ 6-7. One of Plaintiff Cuviello's reasons for filing this lawsuit was fear that violence may be used against him or his colleagues in the future. Cuviello Decl. ¶ 37. Rowell Ranch objects to these alleged facts on the ground that Plaintiffs' evidence is irrelevant. FRE 402. Rowell Ranch objects to these alleged facts on the ground that it is opinion testimony by a lay witness. FRE 701. Rowell Ranch objects to this alleged fact on the ground that it cannot be relied on to form a factual basis since it is a statement of law.

## C. Additional Facts Not Referenced in Plaintiffs' Separate Statement that Compel Denial of the Motion

1.      Gary Houts' phone call to dispatch did not cause the arrival of law enforcement at the Park. 7 minutes and 49 seconds after dispatch hung up on Gary Houts, they talk to an officer who confirms that they have already advised the protestors to keep it peaceful. Blome Decl. ¶ 9, Exh. 28 (timestamp 10:45). Law enforcement was already scheduled to arrive before Gary Houts made the phone call. Even if the presence of law enforcement led to any harm to the Plaintiffs, there is no causal connection between the arrival of law enforcement at the Park and Gary Houts' phone call.

2.      Plaintiff Cuviello was not afraid of arrest on May 20, 2021, after having interacted with Deputy Mayfield and Hart. Cuviello Depo., at 92: 7-16. Further, Plaintiff Cuviello testified that if law enforcement indicated that they were going to arrest him, he would have moved from the location. Cuviello Depo., at 86:23-87:6.

3.      On May 21, 2020, George Ferris' only stepped in front of Plaintiff Bolbol to block her path because she did not have a ticket. Bolbol. Decl., ¶ 24, Exh. 5. (timestamp 0:26). George Ferris repeatedly articulated to Plaintiffs that they needed tickets, and since they did not have those they had to leave. *Id*. George Ferris did not push into Plaintiff Bolbol. *Id*. The video footage only shows the Plaintiff Bolbol pushing into George Ferris and George Ferris standing in her path. *Id*. Any physical contact that took place was initiated by Plaintiff Bolbol, not George Ferris. *Id*.

Gordon Rees Scully Mansukhani, LLP
100 Pringle Avenue, Suite 300
Walnut Creek, CA 94596

DEFENDANT'S NOTICE AND CROSS-MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE SUMMARY ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES

4.     On May 21, 2020, Gary Houts' drove the vehicle in order to assist a disabled patron at the rodeo. Cuviello. Decl., ¶ 34, Exh. 13.

5.     Plaintiffs, admittedly, were not injured or harmed in the duration of May 20, 2020 to May 21, 2020. Plaintiffs have not identified any physical injuries, medical or mental health care, and no arrests made of them by anyone. They continued to demonstrate at the Park till May 22, 2020.

### III.     STANDARD OF REVIEW

Review of a summary judgment is de novo. *Tzung v. State Farm Fire and Casualty Co.*, 873 F.2d 1338 (9th Cir. 1989).  Under Federal Rule of Civil Procedure 56 (c), the moving party must show lack of evidence to support a verdict for the opposing party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The opposing party must show evidence of "specific facts showing that there is a genuine issue for trial." Id. at 324. The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 586 (1986).

A defendant's motion is granted when the plaintiff fails to present evidence supporting elements on which he bears the burden of proof, and fails to show that material disputes could be resolved for either party. *Bloom v. Universal City Studios, Inc.*, 734 F.Supp. 1553, 1557-58 (C.D. Cal. 1990), aff'd, 933 F.2d 1013 (9th Cir. 1991).

The Court views the evidence in the light most favorable to the non-moving party and draws all justifiable inferences in their favor. *(Lal* v. *California,* 746 F.3d 1112, 1115-16 (9th Cir. 2014) (quoting *Garcia* v. *County of Merced,* 639 F.3d 1206, 1208 (9th Cir. 2011)). That is equally applicable to evidence consisting of video and any justifiable inferences from the video will also be viewed in the light most favorable to the nonmoving party so long as the non-movant's version of the facts is not blatantly contradicted by that video evidence. *Vos* v. *City of Newport Beach,* 892 F.3d 1024, 1028 (9th Cir. 2018) (citing *Scott* v. *Harris, 550* U.S. 372, 378-79 (2007)) The mere existence of video footage of the incident, as here, does not foreclose a genuine factual dispute as to the reasonable inferences that can be drawn from that

Gordon Rees Scully Mansukhani, LLP
100 Pringle Avenue, Suite 300
Walnut Creek, CA 94596

DEFENDANT'S NOTICE AND CROSS-MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE SUMMARY ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES

1   footage. *Scott, 550* U.S.at 380 (focusing on whether a party's version of events "is so utterly

2   discredited by the record that no reasonable jury could have believed him").

3                                    **IV.   ARGUMENT**

4       **A.     Evidence Compels the Conclusion that Rowell Ranch Volunteers Did Not**

5              **Have the Intent, nor were the Plaintiffs Intimidated or Prevented, for a §52.1**

6              **Violation**

7            Civ. Code §52.1 violations, as enacted by the Bane Act, require all the following elements

8   to be met:

9               (1)    By threats, intimidation or coercion, defendant caused plaintiff to
                       reasonably believe that if they exercised their right [e.g. "to free
10                     speech"], defendant would commit violence against them or their
                       property and that defendant had the apparent ability to carry out
11                     the threats
                       [or]
12                     Defendant acted violently against plaintiff/and plaintiff's
                       property to prevent them from exercising their right [e.g., to free
13                     speech]/to retaliate against plaintiff for having exercised their
                       right [e.g., to free speech];
14

15              (2)    That defendant intended to deprive plaintiff of their enjoyment of
                       the interests protected by the right [e.g., to free speech];
16
                (3)    That plaintiff was harmed; and
17
                (4)    That defendant's conduct was a substantial factor in causing
18                     plaintiff's harm.

19           The California Civil Jury Instructions ("CACI") 2024, elaborate on instruction no. 3066's

20  with "Directions for Use". It states that under the Unruh Act, if only the statutory minimum

21  damages of $4,000 is sought, it is not necessary to prove harm and causation. *Koire v. Metro Car*

22  *Wash* (1985) 40 Cal.3d 24, 33 [219 Cal.Rptr. 133, 707 P.2d 195]. The directions presume the

23  same rule applies under the Bane Act as the statutory minimum of section 52(a) should be

24  recoverable. Therefore, a plaintiff who is *only* claiming statutory damages of $4,000 does not

25  have to prove the last 2 elements of harm and causation.

26           The Bane Act requires "an attempted or completed act of interference with a legal right,

27  accompanied by a form of coercion." *Jones v. Kmart Corp.*, 17 Cal. 4th 329, 334, (1998). To

28  obtain relief under this statute, a plaintiff must prove that a defendant tried to, or did, by the

Gordon Rees Scully Mansukhani, LLP
100 Pringle Avenue, Suite 300
Walnut Creek, CA 94596

DEFENDANT'S NOTICE AND CROSS-MOTION FOR SUMMARY JUDGMENT, OR IN THE
ALTERNATIVE SUMMARY ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES

Gordon Rees Scully Mansukhani, LLP
100 Pringle Avenue, Suite 300
Walnut Creek, CA 94596

specified improper means, prevent the plaintiff from doing something that he had the right to do under the law, or force plaintiff to do something that he was not required to do under the law. *Austin B. v. Escondido Union Sch. Dist.*, 149 Cal. App. 4th 860, 883, (2007) (citing *Jones,* 17 Cal. 4th at 334). The relevant inquiry under the Bane Act "is whether a reasonable person, standing in the shoes of the plaintiff, would have been intimidated by the actions of the defendants and have perceived a threat of violence." *Richardson v. City of Antioch*, 722 F. Supp. 2d 1133, 1147 (N.D. Cal. 2010). "[T]he Bane Act requires that the challenged conduct be intentional." *Simmons v. Superior Court* (2016) 7 Cal.App.5th 1113, 1125. "The statutory framework of section 52.1 indicates that the Legislature meant the statute to address interference with constitutional rights involving more egregious conduct than mere negligence." *Shoyoye v. County of Los Angeles* (2012) 203 Cal.App.4th 947, 958.

In *Reese v. County of Sacramento*, 888 F.3d 1030, 1043 (2018), it was held that under California law "the Bane Act requires 'a specific intent …'") (citation omitted.)

> 1. *George Ferris' Interaction With Plaintiff Bolbol Cannot Meet the Necessary Element of Intent, nor was it Intimidating, Coercive or Violent*

Plaintiffs have alleged in the third cause of action in their amended complaint that "All Defendants" violated Civ. Code § 52.1. Plaintiffs claim that George Ferris tried to intimidate Plaintiff Bolbol by apparently pushing into her and that his conduct was intended to infringe on her exercise of her free speech rights. Plaintiffs, in their motion, claim that the footage shows what they are claiming..

The "offending" conduct (visible in the footage) lasts about half a minute and consists of George Ferris telling Plaintiff that she needed tickets to the rodeo to tread where she and Plaintiff Cuviello chose to walk through, and for them to leave.

George Ferris did not intend on preventing Plaintiff Bolbol from exercising her free speech rights. In the short interaction, George Ferris articulates clearly his intent behind blocking Plaintiff Bolbol's path. George Ferris' conduct was intended to "herd" the Plaintiffs and at best admonish them for not having tickets to the rodeo. Clearly, he does not have the *specific* intent of depriving Plaintiff Bolbol of her right to free speech.

-18-

1     Furthermore, there is no evidence that George Ferris actually knew Plaintiffs or what they
2  were up to. All the video shows was there attempt to pass through to the back entrance without
3  tickets. In the process, Plaintiff Bolbol played to her camera (which she knew was running),
4  making statements to the effect that this man "was a brute, that he was trying to intimidate a
5  woman". Finally, at the time of this interaction, Plaintiff Bolbol was not involved in any free
6  speech activities. They were instead walking and carrying their materials. They were likewise not
7  speaking to any members of the public and were not spreading their chosen message to anyone.
8  It bodes the question, what was the infringement on free speech that was taking place at that time.
9  That very brief interaction is the entirety of the claims asserted by Plaintiffs against George Ferris
10 for any purported bad conduct. Merely making your way to the location you want to pontificate
11 at is not in and of itself free speech.

12     Plaintiffs cannot point to any evidence which can lead to the conclusion that George Ferris
13 intended to deprive Plaintiff Bolbol of her free speech right at the time of their interaction.

14     <u>George Ferris' conduct does not constitute as threatening, intimidating, coercive, or</u>
15 <u>violent.</u> He merely stood in front of her to block her path for a mere 30 seconds. The footage does
16 not make clear if there was any actual physical contact between Plaintiff Bolbol and George
17 Ferris. Both George Ferris and Plaintiff Bolbol tell each other off for "touching" them
18 respectively, but *only* George Ferris categorically states "You are touching me. You are running
19 into me." The short interaction cannot be characterized as "continuous", as the Plaintiffs claim in
20 their motion. <u>Plaintiff Bolbol did not reasonably believe that George Ferris would commit</u>
21 <u>violence against her, or her property, for exercising her right.</u> If she had reasonably believed as
22 such, she would have stopped walking towards the back entrance and followed George Ferris'
23 instruction to leave, or get out. Instead, she belligerently pushed through George Ferris. She
24 clearly did not deem him a threat. If she had been marginally intimidated, she would have
25 acknowledge that she did not have tickets. Instead, Plaintiff Bolbol continued to make their way
26 into the premises while verbally and physically confronting George Ferris. What is manifest from
27 the video of this lone encounter is the brusque, rude, attitude displayed by Plaintiffs and their
28 mistreatment of ROWELL RANCH volunteers, law enforcement and members of the public in

Gordon Rees Scully Mansukhani, LLP
100 Pringle Avenue, Suite 300
Walnut Creek, CA 94596

-19-

1   attendance. Plaintiff Bolbol refused to cooperate at all and then proceeded to verbally accost a

2   second person she encountered several yards further after forcing her way past George Ferris. Not

3   only did she continue to protest and demonstrate on that day, she did so on the next day as well.

4          The evidence compels the conclusion that George Ferris' actions were not threatening,

5   intimidating, coercive or violent. In turn, and based on the evidence of Plaintiff Bolbol's conduct

6   both during and after this interaction, Plaintiff Bolbol did not perceive George Ferris as a threat

7   in any manner.

8          Plaintiffs cannot prove the required elements to establish a Bane Act §52.1 violation for

9   George Ferris' conduct.

10         *2.     Gary Houts' Actions Compel the Conclusion that Did Not Deprive Plaintiff
                   Cuviello of his Right to Free Speech, nor did he Intend to do so.*

11

12         Plaintiffs' claim that Gary Houts prevented Plaintiff Cuviello's free speech and violated

13   §52.1 by backing into Plaintiff Cuviello.

14         <u>Gary Houts did not intend to deprive Plaintiff Cuviello of his free speech rights</u>. Gary

15   Houts drove the utility cart with the intention to assist a disabled patron. It is important to note

16   that when he drives away, it is in the direction that he was backing into, and presumably in the

17   direction of the disabled patron. Further, just before moving the utility cart, Gary Houts asked

18   Plaintiff Cuviello to move from behind it. If his intention was to deprive Plaintiff Cuviello of his

19   rights, he would not have warned him prior to moving the vehicle. Plaintiff Cuviello did not

20   bother to move on his own accord, and instead engaged in a verbal argument with another woman

21   standing nearby. In the process and due to his own failure to get out from behind the utility cart

22   there was some "contact" between the utility cart and Plaintiff Cuviello. These undisputed facts

23   compel the conclusion that Plaintiff's cannot establish the specific intent of Gary Houts as

24   wanting to deprive Plaintiff Cuviello of his free speech.

25         <u>Plaintiff Cuviello was not threatened, intimidated, or coerced by Gary Houts' negligent</u>

26   <u>backing of the utility cart because it was not a violent action, and the evidence of Plaintiff</u>

27   <u>Cuviello's conduct after this occurence.</u> The footage shows that there was not enough contact to

28   even nudge Plaintiff Cuviello, as he kept filming steadily and proceeded to unleash a tirade of

Gordon Rees Scully Mansukhani, LLP
100 Pringle Avenue, Suite 300
Walnut Creek, CA 94596

curses both at Gary Houts and at the woman standing there. In short, whatever contact took place it was *de minimis*. Plaintiff Cuviello lashed out right after, and later continued to protest not just on the day, but the day after as well. A reasonable person would not have been intimidated by this negligent action, and Plaintiff Cuviello was certainly not.

The evidence categorically shows that Gary Houts' conduct cannot meet the elemental requirements of a §52.1 violation.

### B.    Evidence Compels the Conclusion that Plaintiffs were not Harmed

For a Civ. Code §51.7 violation, a plaintiff claims that defendant committed an act of violence against them because of their actionable characteristic, e.g. political affiliation in this instance. To establish this claim, the plaintiff must prove *all* of the following:

1. Defendant committed a violent act against plaintiff or their property;
2. A substantial motivating reason for defendant's conduct was their perception of plaintiff's characteristic, e.g. political affiliation
3. Plaintiff was harmed; and
4. Defendant's conduct was a substantial factor in causing plaintiff's harm.

The California Supreme Court concluded that '[r]equiring the plaintiff to show that discrimination was a substantial motivating factor, rather than simply a motivating factor, more effectively ensures that liability will not be imposed based on evidence of mere thoughts or passing statements unrelated to the [dispute]'... *Alamo v. Practice Management Information Corp.* (2013) 219 Cal.App.4th 466, 479 [161 Cal.Rptr.3d 758].

#### 1.    *Evidence Establishes that Law Enforcement was Already Scheduled to be at the Park before Gary Houts' Phone Call*

The Plaintiffs claim Gary Houts intimidated them by calling the police (notably at Plaintiffs' invitation) and telling the police that they were blocking ingress to the event.  While there is a question of fact regarding the extent to which they were blocking ingress, and the fact whether this call to the police would constitute a threat given that Plaintiffs actually instructed Gary Houts to call the police, the most signfiiacnt issue Plaintiffs face is the issue of causation.

The police were already en route to the Park when Gary Houts made the call to dispatch. Law enforcement arrived less than 5 minutes after the call. The recording of Gary Houts' phone call to dispatch also includes the call from dispatch to the ACSO officer already present at the

-21-

Gordon Rees Scully Mansukhani, LLP
100 Pringle Avenue, Suite 300
Walnut Creek, CA 94596

Gordon Rees Scully Mansukhani, LLP
100 Pringle Avenue, Suite 300
Walnut Creek, CA 94596

park. This call from dispatch to the ACSO officer took place 7 minutes after Gary Houts phone call. In the call, the ACSO officer categorically states that they have already communicated to the protesters. Gary Houts' call did not cause the arrival of law enforcement whatsoever. Even if Plaintiffs' claim that their interaction with law enforcement harmed them in some way, Gary Houts' phone call did not cause this harm, let alone be a substantial factor in causing this harm.

Once the police arrived, they did not arrest or otherwise impact the Plaintiffs' free speech activities. Plaintiffs continued to demonstrate at the Park for another 2 days after the arrival of the police. These facts compel the conclusion that Plaintiffs were not harmed and there is no §51.7 violation.

2.      *The Undisputed Evidence Compels the Conclusion that Plaintiff Bolbol Suffered No Harm from her Interaction with George Ferris*

As discussed above, George Ferris did not have the intent to limit Plaintiff Bolbol's free speech nor did he commit any violent act, let alone *substantial* motivation. If anything, Plaintiff Bolbol ran into him.

For the purposes of §51.7, Plaintiff Bolbol was not harmed either. There is no evidence physical injury nor any credible evidence of emotional distress. Right after making her way past George Ferris, she threatens a lawsuit while hurling verbal abuse. Afterwards, Plaintiff Bolbol continued to demonstrate and protest not just on May 21, 2020, but also the next day. Plaintiff Bolbol demonstrated and spread her message at any location she deemed fit, for the duration of the rodeo event, negating any claim of fear and intimidation.

The evidence compels the conclusion that George Ferris' conduct does not meet the requirements for a §51.7 violation either.

3.      *Evidence Compels the Conclusion that Plaintiff Cuviello was not Harmed by Gary Houts' Utility Cart*

Likewise, the utility vehicle incident with Gary Houts and Plaintiff Cuviello is discussed above and constitutes negligence at best rather than intentional conduct.

Plaintiffs cannot prove that Gary Houts motivating intent was Plaintiff Cuviello's political affiliation since his intention for moving the utility cart was to assist a disabled patron and he warned Plaintiff Cuviello before moving it. Even if the alleged motivation of Gary Houts was his

DEFENDANT'S NOTICE AND CROSS-MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE SUMMARY ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES

Gordon Rees Scully Mansukhani, LLP
100 Pringle Avenue, Suite 300
Walnut Creek, CA 94596

animus towards Plaintiff Cuviello's speech, it was not a *substantial* motivating factor. Further, it is not an act of violence since it did not even nudge Plaintiff Cuviello.

Based on the evidence, there was no personal injury that took place or that has been claimed in discovery in this case, as there was no doctor visit, no treatment, and most notably no break in the Plaintiffs ongoing expression of free speech that day or the next when they returned.

Again, the evidence points to the fact that Plaintiffs cannot establish the requirements of a §51.7 violation.

**C.    Plaintiffs Cannot Establish Intent and Harm for Assault and Battery**

"The essential elements of a cause of action for assault are:

1) defendant acted with intent to cause harmful or offensive contact, or threatened to touch plaintiff in a harmful or offensive manner;
2) plaintiff reasonably believed she was about to be touched in a harmful or offensive manner or it reasonably appeared to plaintiff that defendant was about to carry out the threat;
3) plaintiff did not consent to defendant's conduct;
4) plaintiff was harmed; and
5) defendant's conduct was a substantial factor in causing plaintiff's harm."

*So v. Shin* (2013) 212 Cal.App.4th 652, 668−669.

"The essential elements of a cause of action for battery are:

a) defendant touched plaintiff, or caused plaintiff to be touched, with the intent to harm or offend plaintiff;
b) plaintiff did not consent to the touching;
c) plaintiff was harmed or offended by defendant's conduct; and
d) a reasonable person in plaintiff's position would have been offended by the touching."

*So v. Shin* (2013) 212 Cal.App.4th 652, 669.

The complaint presents the sole basis for assault against Plaintiff Bolbol as the conduct of George Ferris who told Plaintiffs they needed tickets to enter the gate they went through. She ignored George Ferris, and proceeded to try to walk through him. The footage is evidence of the fact that if there was any physical contact, it was minimal, brief, and initiated by Plaintiff Bolbol. All the footage shows is George Ferris' attempt at herding the Plaintiffs rather than any offensive touching. Plaintiff Bolbol did not suffer either actual harm or physical injury. She was clearly not

harmed and proceeded on her way, including rudely addressing another person ahead of her. As discussed above, George Ferris did not have the intent to harm Plaintiff Bolbol when he was trying to enforce tickets.

Similarly, Plaintiff Cuviello who claims assault and battery from the utility vehicle incident has failed to meet his burden to prove intent versus mere negligence and has not claimed in the complaint that he suffered harm (the forth required element). A reasonable person, in both Plaintiffs' position would not deem the contact offensive. Plaintiff Bolbol literally ran into George Ferris, while Plaintiff Cuviello admittedly was warned to get away from the vehicle yet refused to heed.

Plaintiffs cannot establish intent and harm.  The reliance on the same conduct of Mr. Ferris and Mr. Houts leaves the trier of fact needing more as the evidence posits alternatives to the required elements.

## V.    CONCLUSION

Plaintiffs' motion for partial summary judgment fails in itsentirity. Based on the evidence, Rowell Ranch is entitled to judgment. In the alternative, this Court should adjudicate the dismissal of the causes of action individually.

Dated:  July 2, 2024                    GORDON REES SCULLY MANSUKHANI, LLP

                                        By:  _____
                                             Paul Caleo
                                             Osmaan Khan
                                             Attorneys for Defendant
                                             ROWELL RANCH RODEO INC.

Gordon Rees Scully Mansukhani, LLP
100 Pringle Avenue, Suite 300
Walnut Creek, CA 94596

1

2

**PROOF OF SERVICE**
*Cuviello, et al.  v. Rowell Ranch Rodeo Inc., et al.*
USDC - Northern District of California, Case No. 3:23-CV-01652

3

4

     I am a resident of the State of California, over the age of eighteen years, and not a party to the within action.  My business address is: Gordon Rees Scully Mansukhani, LLP, 100 Pringle Avenue, Suite 300, Walnut Creek, CA 94596. On the date set forth below, I served the within documents:

5

6

**DEFENDANT ROWELL RANCH RODEO INC.'S NOTICE AND CROSS-MOTION FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE SUMMARY ADJUDICATION; MEMORANDUM OF POINTS AND AUTHORITIES**

7

8

☐  by transmitting via facsimile the document(s) listed above to the fax number(s) set forth below on this date before 5:00 p.m.

9

10

☒  **VIA E-MAIL OR ELECTRONIC TRANSMISSION:**  I caused a copy of the document(s) to be sent by electronically mailing a true and correct copy through the Gordon Rees Scully Mansukhani, LLP electronic mail system from my email address: khernandez@grsm.com, to the email address(s) set forth herein.

11

☐  by having Nationwide PERSONALLY DELIVER the document(s) listed above to the person(s) at the address(es) set forth below.

12

13

☐  by placing the document(s) listed above in a sealed envelope with postage thereon fully prepaid, in United States mail in the State of California at San Francisco, addressed as set forth below.

14

15

16

☐  by placing a true copy thereof enclosed in a sealed envelope, at a station designated for collection and processing of envelopes and packages for overnight delivery by FEDEX as part of the ordinary business practices of Gordon Rees Scully Mansukhani, LLP described below, addressed as follows:

17

18

19

20

21

22

| Attorneys for Plaintiff<br>DENIZ BOLBOL<br><br>Lily Rivo, Esq.<br>**GREENFIRE LAW, PC**<br>2748 Adeline Street, Suite A<br>Berkeley, CA 94703<br>Tel:    (510) 900-9502<br>Fax:   (510) 900-9502<br>Email: lrivo@greenfirelaw.com<br>         jblome@greenfirelaw.com | Plaintiff In Pro Per<br><br>Joseph P. Cuviello<br>205 De Anza Blvd.<br>San Mateo, CA 94402<br><br>P.O. Box 2834<br>Redwood City, CA 94064<br>Tel:    (650) 315-3776<br>Fax:<br>Email: pcuvie@gmail.com |
|---|---|
| Attorneys for Defendants<br>COUNTY OF ALAMEDA; ALAMEDA COUNTY DEPUTY SHERIFF'S OFFICE; and JOSHUA MAYFIELD<br><br>William B. Rowell, Esq.<br>Thiele R. Dunaway, Esq.<br>Marc Brainich, Esq.<br>Michele C. Kirrane, Esq.<br>**FENNEMORE WENDEL**<br>1111 Broadway, 24th Floor | Attorneys for Defendants<br>HAYWARD AREA RECREATION AND PARK DISTRICT, and KEVIN HART<br><br>Dale L. Allen, Jr., Esq.<br>Nicholas D. Syren, Esq.<br>**ALLEN, GLAESSNER, HAZELWOOD & WERTH, LLP**<br>180 Montgomery Street, Suite 1200<br>San Francisco, CA 94104 |

23

24

25

26

27

28

*Gordon Rees Scully Mansukhani, LLP*
*100 Pringle Avenue, Suite 300*
*Walnut Creek, CA 94596*

-25-

| | |
|---|---|
| Oakland, CA 94607<br>Tel:      (510) 834-6600<br>Fax:     (510) 834-1928<br>Email: browell@fennemorelaw.com<br>          rdunaway@fennemorelaw.com<br>          mbrainich@fennemorelaw.com<br>          mkirrane@fennemorelaw.com<br>          lmason@fennemorelaw.com | Tel:      (415) 697-2000<br>Fax:     (415) 813-2045<br>Email: dallen@aghwlaw.com<br>          erodas@aghwlaw.com<br>          mhernandez@aghwlaw.com<br>          dallen@aghwlaw.com<br>          kallen@aghwlaw.com<br>          erodas@aghwlaw.com<br>          nsyren@aghwlaw.com |

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on July 2, 2024 at Sacramento, California.

_____
Kristie Hernandez

Gordon Rees Scully Mansukhani, LLP
100 Pringle Avenue, Suite 300
Walnut Creek, CA 94596