1  Jessica L. Blome (Cal. Bar No. 314898)
   Lily A. Rivo (Cal. Bar No. 242688)
2  GREENFIRE LAW, PC
3  2748 Adeline Street, Suite A
   Berkeley, CA 94703
4  Ph/Fx: (510) 900-9502
   Email: jblome@greenfirelaw.com
5          lrivo@greenfirelaw.com

6  *Attorneys for Plaintiff Deniz Bolbol*

7  JOSEPH P. CUVIELLO
8  205 De Anza Blvd., #125
   San Mateo, CA 94402
9  Telephone: (650) 315-3776
   Email: pcuvie@gmail.com
10

11 *Plaintiff in Pro Se*

12

**UNITED STATES DISTRICT COURT**
13 **NORTHERN DISTRICT OF CALIFORNIA**

14

15 |                                          | Case No. 3:23-cv-01652-VC |

16 JOSEPH P. CUVIELLO and DENIZ
   BOLBOL, individually,

17                                          **PLAINTIFFS' JOINT OPPOSITION TO
                                              DEFENDANTS COUNTY OF ALAMEDA
                                              AND DEPUTY MAYFIELD'S CROSS-
                                              MOTION FOR SUMMARY JUDGMENT
                                              AND REPLY ISO PLAINTIFFS' JOINT
                                              MOTION FOR PARTIAL SUMMARY
                                              JUDGMENT**

                Plaintiffs
18

19              v.

20 ROWELL RANCH RODEO, INC., et al.,

21              Defendants                   Date:      August 15, 2024
                                             Time:      10:00 a.m.
22                                           Judge:     Hon. Vince Chhabria
                                             Courtroom: 5, 17th Floor
23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Table of Contents**

I.    **Introduction**..........................................................................................- 6 -

II.   **Plaintiffs Response to Defendants' Summary of Facts**......................- 6 -

III.  **Argument** ...........................................................................................- 7 -

      A.    Plaintiffs have a constitutionally protected free speech right to demonstrate outside the Free Speech Area. ...............................................................- 7 -

      B.    Defendant Mayfield threatened to arrest Plaintiffs if they did not relocate to the Free Speech Area, in violation of Section 52.1...............................- 9 -

          1.    Defendant Mayfield's speech constitutes a threat of arrest. ........................- 10 -

          2.    Violence is not required to prove Plaintiffs' Section 52.1 claim against Defendants because law enforcement threatened arrest. .............................- 12 -

      C.    Defendant Mayfield understood Plaintiffs' right to protest and acted with "reckless disregard" by threatening arrest in violation of Section 52.1. ..............- 13 -

      D.    Under both a subjective and objective standard, Defendant Mayfield's actions constitute threats, intimidation, and coercion supporting Plaintiffs' Section 52.1 claim...................................................................................- 14 -

      E.    Defendants ACSO and Defendant Mayfield worked in concert with Defendant HARD's Kevin Hart to violate Plaintiff's' rights under Section 52.1. .................- 15 -

      F.    California law makes clear that the $25,000 civil penalty listed in Civil Code, section 52(b) is part of the damages available under Section 52.1. ...................- 17 -

          1.    The term "damages" is defined by law as monetary compensation. ............- 18 -

          2.    The Section 52(b) civil penalty is considered "damages" under the law, as it is "compensation in money."..........................................................- 20 -

          3.    Legislative history makes clear the civil penalty is part of the damages available to a Section 52.1 plaintiff. ...........................................- 22 -

          4.    Punitive damages are available to Plaintiffs. ...............................- 23 -

IV.  **Conclusion** ......................................................................................**- 24 -**

Plaintiffs' Opposition and Reply to Defendants County of Alameda and Defendant Mayfield
(3:23-cv-01652-VC)

1

**Table of Authorities**

2

**Cases**

3

*AIU Ins. Co. v. Superior Court,* 51 Cal.3d 807 (1990) ........................................................ 18, 19, 20

4

*Ameron Intern. Corp. v. Ins. Co. of Pa*., 60 Cal.Rptr.3d 55 (2007).................................................. 18

5

*Anderson v. Ford Motor Co*., 74 Cal.App.5th 946 (2022)............................................................... 12

6

*APL Co. Pte. Ltd. v. Valley Forge Ins. Co.,* 754 F.Supp.2d 1084 (N.D. Cal. 2010) ....................... 18

7

*Austin B. v. Escondido Union School Dist*., 149 Cal. App. 4th 860 (2007) ....................................... 8

8

9

*Black Lives Matter- Stockton Chapter v. San Joaquin Cty Sheriff's Office*, 398 F. Supp. 3d 660
  (E.D. Cal. 2019)........................................................................................................................... 12

10

*Brodheim v. Cry*, 584 F.3d 1262 (9th Cir. 2009) ......................................................................... 9, 13

11

*City & County of San Francisco*, 940 F. Supp. 2d 1071 (N.D. Cal. 2013) ...................................... 12

12

13

*Cole v. Doe*, 387 F. Supp. 2d 1084 (N.D. Cal. 2005) ...................................................................... 11

*Cornell v. City and County of San Francisco*, 17 Cal.App.5th 766 (2017).................... 11, 12, 20, 21

14

*Cuviello v. City of Oakland, et al.* 2010 WL 3063199 at (N.D. Cal. Aug. 3, 2010).......................... 17

15

16

*Cuviello v. City of Stockton,* No. CIV. S-07-1625 LKK, 2009 WL 9156144
  (E.D. Cal. Jan. 26, 2009)............................................................................................................. 11

17

18

*Dang v. Cross*, 422 F.3d 800 (9th Cir. 2005) ................................................................................. 22

19

*Davis v. City of San Jose*, 69 F.Supp.3d 1001 (N.D. Cal. 2014) ..................................................... 17

20

21

*Defending Animal Rights Today and Tomorrow (DARTT) v. Washington Sports and Entertainment*,
  821 F.Supp.2d 97 (D.C. D. Ct. 2011) ........................................................................................... 7

22

*Gasho v. U.S.*, 39 F.3d 1420 (9th Cir. 1994) .................................................................................. 13

23

*In re MS*, 10 Cal.4th 698 (1995) ...................................................................................................... 9

24

*Jeffers v. U.S.*, 432 U.S. 137 (1977) ............................................................................................... 14

25

*Kizer v. County of San Mateo*, 53 Cal.3d 139 (1991) ..................................................................... 18

26

*Limon v. Circle K Stores, Inc*., 84 Cal.App.5th 671 (2022)................................................... 19, 22, 23

27

*Los Angeles Unified School Dist. v. Superior Court*, 14 Cal.5th 758 (2023) ............................ 18, 19

28

Plaintiffs' Opposition and Reply to Defendants County of Alameda and Defendant Mayfield
(3:23-cv-01652-VC)

*Lozado v. City and County of San Francisco,* 145 Cal.App.4th 1139 (2006) .................................. 18

*Lungren v. Deukmejian*, 45 Cal.3d 727 (1988).................................................................................. 17

*Mary M v. City of Los Angeles,* 54 Cal.3d 202 (1991) ..................................................................... 11

*MTA v. Superior Court*, 20 Cal.Rptr.3d 92 (2004) ........................................................................... 19

*People Ex Rel. Younger v. Superior Court*, 16 Cal.3d 30 (1976)...................................................... 18

*People v. Chandler*, 60 Cal.4th 508 (2014) ...................................................................................... 12

*People v. Lashley*, 1 Cal.App.4th 938 (1991) ................................................................................... 12

*People v. Lowery,* 52 Cal.4th 419 (2011) ............................................................................................ 9

*People v. Osuna*, 225 Cal.App.4th 1020 (2014). .............................................................................. 21

*People v. Pineda*, 13 Cal.5th 186 (2022) ........................................................................................... 9

*People v. Valencia*, 3 Cal.5th 347 (2017) ......................................................................................... 17

*Potter v. Firestone Tire & Rubber Co.*, 6 Cal.4th 965 (1993)........................................................... 22

*Raines v. Coastal Pacific Food Distributors, Inc.*, 23 Cal.App.5th 667 (2018).................... 19, 22, 23

*Rhodes v. Robinson*, 408 F.3d 559 (9th Cir. 2005)........................................................................... 13

*Richardson v. City of Antioch*, 722 F.Supp.2d 1133 (N.D. Cal. 2010)............................................. 13

*Smith v. Wade*, 46 U.S. 30 (1983)..................................................................................................... 22

*Stamps v. Superior Court*, 136 Cal.App.4th 1441 (2006)................................................................. 17

*U.S. v Orozco-Santillan*, 903 F.2d 1262 (9th Cir. 1990) ................................................................... 9

*U.S. v. Gilbert*, 884 F.2d 454 (9th Cir. 1989) .................................................................................... 9

*U.S. v. Malik*, 16 F.3d 45 (2d Cir. 1994)............................................................................................ 9

*US v. Cassel*, 408 F.3d 622 (9th Cir. 2005) ..................................................................................... 12

*Venegas v. County of Los Angeles*, 32 Cal.4th 820 (2004).................................................... 8, 11, 20

*Virginia v. Black*. 538 U.S. 343 (2003)................................................................................... 9, 12, 13

*Whitworth v. City of Sonoma,* No. A103342, 2004 WL 2106606 (Cal. Ct. App. Sept. 22, 2004) .... 12

*Winarto v. Toshiba America Electronics Components, Inc.*, 274 F.3d 1276 (9th Cir. 2001)............. 13

Plaintiffs' Opposition and Reply to Defendants County of Alameda and Defendant Mayfield
(3:23-cv-01652-VC)

**Statutes**

15 U.S.C. § 1681 ................................................................................................ 19

42 U.S.C. § 2201(a) ............................................................................................. 5

42 U.S.C. § 2983 .................................................................................................. 5

Ca. Civ. Code, section 3294 ............................................................................... 22

Ca. Civ. Code, section 3281 .......................................................................... 17, 20

Ca. Civ. Code, section 52(b) ........................................................................ passim

Ca. Civ. Code, section 52.1 .......................................................................... passim

Ca. Govt. Code, section 3309.5 .......................................................................... 18

Ca. Govt. Code, section 818 ............................................................................... 18

Ca. Health & Safety Code, section 1417 ........................................................... 18

Ca. Lab. Code, section 2698 ............................................................................... 19

Ca. Water Code, section 13350 .......................................................................... 18

**Constitutional Provisions**

U.S. Const. amend. I ............................................................................................ 5

Cal. Const. art. I, § 2(a) ...................................................................................... 5

**Memorandum of Points and Authorities**

## I.      Introduction

As to Defendants Alameda County Sherriff (ACSO) and Deputy Joshua Mayfield, Plaintiffs Joseph P. Cuviello and Deniz Bolbol jointly seek summary judgment on their Third Cause of Action (Violation of Civil Code, section 52.1(c)) and their Fifth Cause of Action (Violation of Article I, Section 2(a) of the California Constitution and Civil Code, section 52.1). Plaintiffs did not move for summary judgment on their Sixth Cause of Action (Violation of the First Amendment of the United States Constitution, through 42 U.S.C. §§ 2983, 2201(a)), but Defendants cross-moved on that claim. Because the undisputed, uncontroverted facts at issue require a finding for Plaintiffs as a matter of law on these three claims,[1] this Court should enter judgment in Plaintiffs' favor on their Third and Fifth Causes of Action, reserving the Sixth Cause of Action for trial.

## II.     Plaintiffs Response to Defendants' Summary of Facts

Plaintiffs do not generally dispute the facts alleged in Defendants' Summary of Facts, Dkt. 89, § II, however, some of the "facts" presented mis-state the evidence or present conclusions of law or argument as factual representations. Other facts are unsupported by citations to evidence of any sort. Plaintiffs, therefore, lodge the following formal objections:

- On page 3, lines 12-14, Defendants state, "At no point does he advise Ms. Bowles that the protestors had done anything wrong or violated any laws; the clear implication of his words are that he did not intend to compel them to move to the [F]."

This sentence is attributed to Defendants' Exhibit K at 10:45-11:25 MM. No speakers make these statements in Exhibit K. Plaintiffs object to this statement for lack of foundation under FRE 602; because it calls for a legal conclusion and under FRE 703; and because the video evidence speaks for itself.

- On page 5, line 16, Defendants state, "Mayfield then politely states," and on page 6 at lines 19-20, Defendants state, "At no point during this exchange did Mayfield present as being aggressive, combative, or threatening towards Bolbol."

---

[1]Defendants ask the Court to enter summary judgment in their favor on Plaintiff Cuviello's "claim for attorneys' fees." Dkt. 89, p. 23:11-21. Plaintiff Cuviello makes no such claim, as he is not a licensed attorney. But Defendants' argument is also premature, as this Court has yet to determine who prevailed in litigation, so no motion for attorneys' fees is pending before the Court.

Plaintiffs' Opposition and Reply to Defendants County of Alameda and Defendant Mayfield
(3:23-cv-01652-VC)

These statements are presented without attribution and should be struck. Plaintiffs object to these statements for lack of foundation under FRE 602 and because they are argumentative in violation of FRE 403.

- On page 6, lines 23 through 25, Defendants state that Plaintiff Cuviello told Defendant Mayfield, "just blocking someone is not a problem."

Plaintiff Cuviello never made this statement to Defendant Mayfield. Plaintiffs object to this statute for lack of foundation under FRE 602 and because the evidence speaks for itself.

Lastly, due to an inadvertent filing error, Plaintiffs did not file the Declarations of Robyn Newkirk or Michael Sage when they filed their Motion for Summary Judgment, though they used them for evidentiary support in their briefing. Dkt. 84. Upon learning of the error, Plaintiffs immediately filed these declarations on June 28, 2024. Dkts. 113, 114. Plaintiffs incorporate the declarations filed at Docket Numbers 113 and 114 as though these declarations are being filed in support of their Opposition to Defendants' Cross-Motion for Summary Judgment.

### III.   Argument

#### A.   Plaintiffs have a constitutionally protected free speech right to demonstrate outside the Free Speech Area.

Plaintiffs established the parameters of their free speech rights under the California Constitution in the opening argument of their Memorandum in Support of their Motion for Partial Summary Judgment. Dkt. 84, pp. 7:20-8:6. Defendants ACSO and Defendant Mayfield claim, "Plaintiffs' motion does not offer any argument concerning Article I, Section 2(a) with respect to Mayfield or the County, and they have waived the point." Dkt. 89, p. 12:1-4.[2] This is not true. Plaintiffs made clear in their Memorandum that, "[b]ecause the California Constitution offers 'more expansive protection than the federal constitution,' the Court must address Plaintiffs' state

---

[2] Plaintiffs also briefly respond to Defendants' contention that Plaintiffs' separate statement of undisputed facts violated the Court's local rule. Dkt. 89, p. 8. That rule states, "Unless required by the assigned Judge, no separate statement of undisputed facts or joint statement of undisputed facts shall be submitted" unless permitted by a judge's standing order. L.R. 56-2. This Court's Standing Order contemplates a separate statement of facts for summary judgment briefs but explains that they are not necessary (implying they are not prohibited). Order, no. 42. Plaintiffs submitted a separate statement to efficiently litigate any factual disputes on paper, given the many different parties and three opposition briefs (and dozens of declarations) filed in this litigation already. Plaintiffs did not intend to skirt the Court's page limitations, as boldly suggested by Defendants.

1   constitutional claims 'in order to avoid unnecessary consideration of the federal constitutional

2   claims.'" Dkt. 84, pp. 7:20-8:6. Accordingly, Plaintiffs reserved for trial their Sixth Cause of Action

3   against Defendants because under the plain letter of the law, the Court need not reach this claim as

4   to Defendants if it finds for Plaintiffs under the California Constitution and Civil Code, section 52.1

5   (hereinafter "Section 52.1").

6        It is undisputed, moreover, that Plaintiffs' free speech activity on May 20, 2022, was

7   constitutionally protected, as even Defendants ACSO and Defendant Mayfield acknowledge the

8   Rodeo Park is a public forum. Dkt 89, p. 9:10-11. In response to Plaintiffs' Section 52.1 claims,

9   Defendants first argue the constitutionality of Defendant Mayfield's instruction to Plaintiffs to,

10  "remain peaceful and not block patrons as content neutral requests that served a viable government

11  interest in preventing traffic congestion and ensuring the safety of patrons." Dkt. 89, pp.11:22-25,

12  14:6-15-10. Defendants liken the situation in this case to the situation in *Defending Animal Rights*

13  *Today and Tomorrow (DARTT) v. Washington Sports and Entertainment*, 821 F.Supp.2d 97 (D.C.

14  D. Ct. 2011), in which "protesters were directed to move their leafleting activity from their chosen

15  location under the overhang directly outside the Verizon Center doors to other points on the F Street

16  sidewalk." *Id*. at 99. But Defendants' reliance on *DARTT* is inapposite, as it did not involve a Free

17  Speech Area, Section 52.1 claim, or threat of arrest. *DARTT*, 821 F.Supp.2d 97.

18       Defendants ACSO and Mayfield appear to be confused as to Plaintiffs' Section 52.1 claims.

19  Unlike the protestors in *DARTT,* Plaintiffs' video evidence establishes that Plaintiffs demonstrated

20  peacefully, never interfering with ingress/egress, despite Defendant Mayfield's repeated

21  harassment. *See* Dkt. 84-1, ¶ 31; Dkt. 84-10, ¶ 25, Exh. 10 (Dkt. 84-115)(timestamp 1:25; 2:07-2-

22  16). Defendant Mayfield himself now testifies that he did not arrest Plaintiffs because they never

23  blocked ingress or egress and remained peaceful throughout the Rodeo Event. Dkt. 89-2, Mayfield

24  Decl. ¶ 3 ("I had no intention of arresting plaintiffs or any of the demonstrators *unless* they blocked

25  ingress/egress, *became* violent, or otherwise broke the law*"*). Because Plaintiffs never blocked any

26  ingress/egress, Defendant Mayfield did not threaten Plaintiffs with arrest for blocking

27

28

Plaintiffs' Opposition and Reply to Defendants County of Alameda and Defendant Mayfield
(3:23-cv-01652-VC)

ingress/egress. Accordingly, Plaintiffs did not sue Defendants for any statements deputies made to Plaintiffs about alleged blocking of ingress or egress. This argument is simply a distraction.

> **B.      Defendant Mayfield threatened to arrest Plaintiffs if they did not relocate to the Free Speech Area, in violation of Section 52.1.**

Once a constitutionally protected right has been established, Section 52.1 requires a showing that the defendant, "by the specified improper means of threats, intimidation, or coercion, tried to or did prevent the plaintiff from doing something he or she had the right to do under the law or to force the plaintiff to do something that he or she was not required to do under the law." *Austin B. v. Escondido Union School Dist.*, 149 Cal.App.4th 860, 883 (2007). The word "interferes" means violates. *Id.* "[A] defendant is liable if they tried to or did interfere with a plaintiff's constitutional rights." *Austin B.*, 1149 Cal.App.4th at 883 (citing *Venegas v. County of Los Angeles*, 32 Cal.4th 820, 841-843 (2004).

Defendants HARD and Kevin Hart, in their Cross-Motion for Summary Judgment, admit that their Free Speech Area constitutes an unreasonable—and therefore illegal—time, place, and manner restriction on free speech under California and U.S. Constitutions. Dkt. 115, p. 1:24-26 ("HARD and Hart do not dispute Plaintiffs' argument that the "Free Speech Zone" as constituted on the date of the event was an unreasonable time, place, and manner restriction of free speech."). As such, Defendants ACSO and Mayfield's argument that Defendant Mayfield's "words and conduct" were aligned with a reasonable time, place, and manner restriction totally lacks merit. Dkt. 89, p.14:4-9. Because HARD requires the creation of a free speech area in its lease, its concession on this point should be dispositive. Blome Decl. ¶ 15, Exh. 34C at 208-209 (requiring lessees to set up a "marked location for public speech).

There can be no doubt, then, that Defendants ACSO and Mayfield did or attempted to unlawfully interfere with Plaintiffs' free speech rights by repeatedly harassing them and threatening them with arrest if they did not relocate to the Free Speech Area. Dkt. 84, pp. 17-21.

### 1. Defendant Mayfield's speech constitutes a threat of arrest.

"A threat is an 'expression of an intent to inflict evil, injury, or damage on another.'" *In re MS*, 10 Cal.4th 698, 710 (1995)(*citing U.S. v Orozco-Santillan*, 903 F.2d 1262, 1265 (9th Cir. 1990)). "By its very nature, a statement that 'warns' a person to stop doing something carries the implication of some consequence of a failure to heed that warning." *Brodheim v. Cry*, 584 F.3d 1262, 1270 (9th Cir. 2009). "The power of a threat lies not in any negative actions eventually taken, but in the apprehension it creates in the recipient of the threat." *Id*. at p. 1271. Because the consequence of Defendant Mayfield's warning would have resulted in Plaintiffs being arrested, Defendant Mayfield's expressed intention constituted a threat, as an arrest would have inflicted "evil, injury [and] damage" on Plaintiffs. *In re MS*, 10 Cal.4th at 710. Thus, by warning Plaintiffs they "could be arrested for trespassing" if they did not relocate to the Free Speech Area, Defendant Mayfield clearly expressed an intent to arrest Plaintiffs for non-compliance. Dkt. 84-1, ¶22; Dkt. 84-47 (timestamp 1:21-24); Dkt. 84-39 at 174 (p. 23:17, 25). It is irrelevant whether Mayfield's threat of arrest is considered explicit or not, as "rigid adherence to the literal meaning of a communication without regard to its reasonable connotations derived from its ambience would render [threat statutes] powerless against the ingenuity of threateners who can instill in the victim's mind as clear an apprehension of impending injury by an implied menace as by a literal threat." *People v. Pineda*, 13 Cal.5th 186, 249 (2022)(*citing U.S. v. Malik*, 16 F.3d 45, 50 (2d Cir. 1994)). Even if Defendant Mayfield's communication is considered a "subtle" threat, it remains a threat. *Orozco-Santillan*, 903 F.2d at 1265 (*citing U.S. v. Gilbert*, 884 F.2d 454, 457 (9th Cir. 1989)).

Additionally, in determining whether speech is a threat, the Court should consider what "a reasonable listener would understand, in light of the context and surrounding circumstances" in which the communication was made. *People v. Lowery,* 52 Cal.4th 419, 427 (2011)(*citing Virginia v. Black*. 538 U.S. 343, 359 (2003)). Plaintiffs' evidence demonstrates Defendant Mayfield's speech expressed an intent to act. Indeed, he outlined a specific consequence if Plaintiffs did not move to the Free Speech Area, as understood by any reasonable listener. *Brodheim*, 584 F.3d at 1270; *Lowery*, 52 Cal.4th at 427. The context and surrounding circumstances in which Defendant

Plaintiffs' Opposition and Reply to Defendants County of Alameda and Defendant Mayfield
(3:23-cv-01652-VC)

Mayfield communicated to Plaintiffs that they "could be arrested for trespassing" if they did not move to the Free Speech Area includes the following: (1) Plaintiffs were engaged in a lawful demonstration against the rodeo, in a public forum. Dkt. 84-1, ¶¶14-15. (2) Defendants Rowell Ranch Rodeo and HARD set up a Free Speech Area, that HARD and their onsite representative Defendant Kevin Hart now admit was unconstitutional, and Kevin Hart knew he was violating Plaintiffs' legal rights when he attempted to force Plaintiffs to use it. Dkt. 84-1, ¶¶12-13, Dkt. 115, p. 1:24-26; Dkt. 115-11, ¶17. (3) Defendant Mayfield told Plaintiffs in his first interaction that they would be "fine" if they chose to demonstrate outside the Free Speech Area. Dkt. 84-1, ¶19; Dkt. 89, p. 3:1-7. (4) Defendants Hart and Rowell Ranch Rodeo "requested" Defendant Mayfield to "instruct" Plaintiffs to relocate to the Free Speech Area. Dkt. 84-34, p. 8:11-13, Response No. 7. (5) Defendant Mayfield, accompanied by Defendant Hart, approached Plaintiffs as requested. Dkt. 84-1 ¶20; Dkt. 84-47; Dkt. 89, p. 3, § 2. (6) Defendant Hart told Plaintiffs they had to relocate to the Free Speech Area, and failure to do so would "not be good." Dkt. 84-39 at 174 (p. 32:3); Dkt. 84-47 (timestamp 1:07-1:10). Plaintiff Cuviello asked Defendant Hart what would happen if they did not move, and Defendant Hart responded, "You'll just have to figure that out when it happens." Dkt. 84-1 ¶ 21; Dkt. 84-13(timestamp 0:11-0:31); Dkt. 84-47 (timestamp 1:10-1:15); Dkt. 84-39 at 174 (p. 32:3). (7) Plaintiff Cuviello, wanting to ascertain what action Defendant Mayfield would take in reference to Defendant Hart's statement, turned to Defendant Mayfield and asked him, "Are you going to arrest us if we don't go there?" and Defendant Mayfield responded, "You could be arrested for trespassing." Dkt. 84-1¶ 22; Dkt. 89, p. 3:22-24; Dkt. 84-13 (timestamp 0:31-0:35); Dkt. 84-47 (timestamp 1:21-1:24); Dkt. 84-39 at 174 (p. 32:17-18, 25). In this context, Defendant Mayfield was threatening Plaintiffs with arrest for trespassing if they did not comply with Defendant Hart's demand they relocate to the Free Speech Area.

Analysis of the context of Defendant Mayfield's threat also establishes the absurdity of Defendants' argument that a "reasonable person" would have interpreted Defendant Mayfield's communication differently. Dkt. 89, p. 13:24-28. The undisputed video evidence establishes that Defendant Mayfield never mentioned blocking ingress/egress in this (or his first) interaction with

Plaintiffs' Opposition and Reply to Defendants County of Alameda and Defendant Mayfield
(3:23-cv-01652-VC)

1  Plaintiffs. Dkt. 89, § II(A)(1), (2). And there can be no doubt that the threat of arrest felt real to

2  Plaintiffs and to fellow protestors Robyn Newkirk and Michael Sage. Dkts. 113, 114. Mr. Sage

3  asserted that he felt that Defendants Mayfield and Hart spoke with "one voice," repeating the same

4  messages that they needed to move to the "free speech zone." Dkt.114, ¶10. Ms. Newkirk stated

5  that, "the threat of arrest felt real" and that she had the impression Defendant Hart was law

6  enforcement "based on the way he was acting." Dkt. 113, ¶12.

7  On its face (and in context), Defendant Mayfield's threat of arrest violated Section 52.1.

8  **2.   Violence is not required to prove Plaintiffs' Section 52.1 claim against Defendants because law enforcement threatened arrest.**

9

10  While Section 52.1(k) states, "***speech alone***" is not sufficient to support a Section 52.1

11  action in some circumstances, subsection (k) applies only to private actors in practice. *See* Cal. Civ.

12  Code, § 52.1(k)(emphasis added); Dkt. 89, pp. 10:18-19 and 11:6-13. Indisputably, a police officer

13  "is acting as the official representative of the state, with all of its coercive power." *Mary M v. City*

14  *of Los Angeles,* 54 Cal.3d 202, 216 (1991). Therefore, an officer's speech is "inherently coercive."

15  *Cornell v. City and County of San Francisco*, 17 Cal.App.5th 766, 800 (2017). Indeed, a police

16  officer's speech is never "speech alone," as it is always combined with "the most awesome and

17  dangerous power that a democratic state possesses with respect to its residents—the power to use

18  lawful force to arrest and detain them." *Mary M,* 54 Cal.3d at 216. Section 52.1(k) simply does not,

19  and should not, bar claims under Section 52.1 that center on threats of arrest by a law enforcement

20  officer. *Id.*

21  Moreover, the California Supreme Court has declared that, "Plaintiffs adequately state a

22  cause of action under Section 52.1," where the plaintiff alleges an unreasonable search and seizure,

23  even though the search did not involve violence or explicit threats of violence. *Venegas v. Cty. of*

24  *Los Angeles*, 32 Cal.4th 820, 843 (2004).

25  "[C]ourts have consistently held that a threat of arrest from law enforcement can be 'coercion' under the Bane Act, even without a threat of violence per se. *Cuviello v. City of Stockton,* No. CIV. S-07-1625 LKK, 2009 WL 9156144, at *17 (E.D. Cal. Jan. 26, 2009)('[T]he particular coercive power of law enforcement officers has led courts to impose liability when detention, rather than violence, is threatened.')(citing *Cole v. Doe*, 387 F. Supp. 2d 1084, 1102 (N.D. Cal. 2005)); *Cuviello v. City &*

26

27

28

Plaintiffs' Opposition and Reply to Defendants County of Alameda and Defendant Mayfield
(3:23-cv-01652-VC)

*County of San Francisco*, 940 F. Supp. 2d 1071, 1103 (N.D. Cal. 2013)(Bane Act claim based on violation of free speech adequately alleged where plaintiffs pled defendants 'threatened them with arrest' if they protested); *Whitworth v. City of Sonoma*, No. A103342, 2004 WL 2106606, at *6-7 (Cal. Ct. App. Sept. 22, 2004)(unpublished)(officer's unspoken threat of arrest that prevented plaintiff from entering a meeting room was sufficient to state a Bane Act claim)."

*Black Lives Matter- Stockton Chapter v. San Joaquin Cty Sheriff's Office*, 398 F. Supp. 3d 660, 680-681 (E.D. Cal. 2019)(denying defendants' motion to dismiss plaintiffs' Section 52.1 claim based on threat of arrest without violence). For their part, Defendants acknowledge a threat of arrest without a threat of violence can constitute coercion under Section 52.1. Dkt. 89, p. 10:24-26.

### C.   Defendant Mayfield understood Plaintiffs' right to protest and acted with "reckless disregard" by threatening arrest in violation of Section 52.1.

Under a Section 52.1, it is irrelevant whether Defendant Mayfield "recognize[d] the [unlawfulness] of his act" so long as he acted "in reckless disregard" for Plaintiffs' constitutional rights that he violated under Section 52.1. *Cornell v. City and County of San Francisco*, 17 Cal.App.5th 766, 803-804 (2017). Acting with "reckless disregard" means acting "willfully," *People v. Lashley*, 1 Cal.App.4th 938, 949 (1991), which simply means Mayfield acted "intentionally." *Anderson v. Ford Motor Co*., 74 Cal.App.5th 946, 972 fn. 15 (2022). Defendant Mayfield understood that Plaintiffs had a right to peacefully protest at the Rodeo Park, as he advised Plaintiffs during their first encounter and later informed ACSO Dispatch. Dkt. 84-1, ¶119; Dkt. 89, p. 3:1-14 (describing his call with ACSO Dispatch). Thus, when Defendant Mayfield later told Plaintiffs they "could be arrested for trespassing" if they did not relocate to the Free Speech Area, he acted without a lawful purpose and willfully intimidated Plaintiffs. "[I]intimidation' involves 'words and conduct that would put an ordinary, reasonable person in fear or apprehension,'" and "both in common and legal usage, can refer to the act of placing someone in fear of injury other than harm to the body." *US v. Cassel*, 408 F.3d 622, 636 (9th Cir. 2005). Because Defendant Mayfield unlawfully directed "a threat" to Plaintiffs "with the intent of placing them in fear" of being arrested, his actions constitute "intimidation." *People v. Chandler*, 60 Cal.4th 508, 519 (2014)(*citing Virginia v. Black*, 538 U.S. 343, 359-360 (2003)). Additionally, an officer's threat of

1  arrest can constitute "coercion." *Gasho v. U.S.*, 39 F.3d 1420, 1432 (9th Cir. 1994). "[A] serious

2  threat [is] meant to coerce…" *Virginia v. Black*, 538 US 343, 357 (2003). Defendant Mayfield

3  indisputably acted in reckless disregard of Plaintiffs' free speech rights, and it was not until after he

4  spoke with his "Sergeant On Duty" that Defendant Mayfield stopped threatening Plaintiffs with

5  arrest, even though he continued to harass Plaintiffs about not blocking ingress/egress.

6
   **D.      Under both a subjective and objective standard, Defendant Mayfield's**
7  **actions constitute threats, intimidation, and coercion supporting Plaintiffs'**
   **Section 52.1 claim.**
8
9          Although the undisputed evidence shows that Plaintiffs subjectively felt intimidated and

10  coerced by Defendant Mayfield's threat of arrest and truly feared arrest in response to Defendants

11  Mayfield and Hart's verbal threats, (Dkt. 84-13), the parties agree that the standard for evaluating a

12  violation of a Section 52.1 claim is objective; "whether a reasonable person, standing in the shoes of

13  the plaintiff would have been intimidated by the actions of the defendants and have perceived a

14  threat of [arrest]." Dkt. 89, p.11:8-13 (citing *Richardson v. City of Antioch*, 722 F.Supp.2d 1133,

15  1147 (N.D. Cal. 2010); *Winarto v. Toshiba America Electronics Components, Inc.*, 274 F.3d 1276,

16  1289-1290 (9th Cir. 2001)). "To hold otherwise 'would be unjust,' as it would 'allow a defendant to

17  escape liability for a First Amendment violation merely because an unusually determined plaintiff

18  persists in his protected activity.'" *Brodheim v. Cry*, 584 F.3d 1262, 1271 (9th Cir. 2009)(*citing*

19  *Rhodes v. Robinson*, 408 F.3d 559, 569 (9th Cir. 2005)).

20          There is no question a reasonable person would have perceived Defendant Mayfield's

21  threats of arrest for not relocating to the Free Speech Area as he intended them, when he explicitly

22  told Plaintiffs they, "could be arrested for trespassing" if they did not relocate to the Free Speech

23  Area. Dkt. 84-10, ¶ 23, Exh. 8 (Dkt. 84-13)(timestamp 0:44). Defendants ACSO and Mayfield are

24  liable for violating Plaintiffs' rights under Section 52.1.

25

26

27

28

**E.      Defendants ACSO and Defendant Mayfield worked in concert with Defendant HARD's Kevin Hart to violate Plaintiff's' rights under Section 52.1.**

The common meaning of "concert" is "of agreement in a design or plan." *Jeffers v. U.S.*, 432 U.S. 137, 149 (1977). It "generally connote[s] cooperative action and agreement." *Id*. at 148, fn. 14. That both Defendants Defendant Mayfield and Hart were working in concert was obvious to everyone present at the time. Dkt. 113, ¶11-13; Dkt. 114, ¶11-15; *see also* Dkt. 84-3, ¶16-23; Dkt. 84-10, ¶18-26. It is even more obvious in Defendant Mayfield's video evidence, which includes a private conversation between Defendants Mayfield, Hart, and Rowell Ranch Rodeo's Gary Houts. Dkt. 84-1, ¶ 32; Dkt. 84-48. Despite this uncontroverted evidence, Defendants ACSO and Mayfield argue that Plaintiffs "failed to introduce evidence showing that Mayfield was engaged in a scheme with Hart…to violate Plaintiffs' right to free speech." Dkt. 89, p.17:4-6. But Defendants did not produce any evidence to contradict Plaintiffs' or ACSO's videos showing Defendants ACSO, Mayfield, and Hart working together toward the common goal of relocating Plaintiffs to the Free Speech Area through joint encounters with Plaintiffs, reinforced threats, and a general effort to intimidate and coerce. *Id.*

That Defendants Mayfield and Hart were working in concert, (i.e., in agreement and cooperating) to get Plaintiffs to move to the Free Speech Area is incontrovertible. In fact, it was only after Defendants HARD and Rowell Ranch Rodeo requested Mayfield to "instruct" Plaintiffs to relocate to the FSA that Defendants Mayfield and Hart collaboratively approached Plaintiffs, evidencing a prior agreement to so. Dkt. 84-1, ¶10; Dkt. 84-34, p. 8:11-13, Response No 7. Everything Defendants said to Plaintiffs advanced their mutual attempts to achieve a common goal to get Plaintiffs to relocate to the Free Speech Area. *Id.;* Dkt. 113, ¶13; Dkt. 114, ¶10. Indeed, as Defendant Hart threatened Plaintiffs if they refused to move to the Free Speech Area, such as "it will not be good," Defendant Mayfield backed Defendant Hart by clearly telling Plaintiffs that if they do not relocate to the Free Speech Area, they "could be arrested." Dkt. 84-1, ¶¶ 22, 26, Dkt. 84-47.

1    Among the parties, the plethora of video evidence creates a clear, documented agreement

2  between Defendants Mayfield and Hart, including: (1) Defendant Mayfield and other deputies

3  arrived on site, approached Plaintiffs and informed Plaintiffs about the Free Speech Area, and

4  Defendant Mayfield told Plaintiffs they were fine demonstrating outside the Free Speech Area; (2)

5  minutes later Defendant Mayfield called Defendant ACSO Dispatch and gave no indication that

6  Plaintiffs were doing anything wrong or violating any laws; (3) Defendant Hart and Defendant

7  Rowell Ranch Rodeo then told Defendant Mayfield they wanted him to "instruct" Plaintiffs to

8  relocate to the Free Speech Area; (4) Defendant Mayfield then approaches Plaintiffs for a second

9  time, only this time he was accompanied by Defendant Hart; (5) Defendant Mayfield stood near

10  Hart while Hart told Plaintiffs they have to go to the Free Speech Area, and "failure to do so will

11  not be good;" (6) When asked what will happen if they don't move Hart responded, "You'll have to

12  figure that out when it happens;" (7) Plaintiff Cuviello turned to Defendant Mayfield and asked

13  him, "Are you going to arrest us if we don't go there?" Mayfield responded, "You could be

14  arrested;" (8) Plaintiff Cuviello told Mayfield he did not want to be arrested and asked Mayfield to

15  tell him before he arrested him, and Mayfield responded, "You could be arrested," and "It's a

16  possibility;" (9) Plaintiff Cuviello told Mayfield he should call his watch commander, explained his

17  constitutional rights to Mayfield, and told Mayfield he needed to inform him before he arrested him;

18  (10) Defendant Mayfield told Plaintiff Cuviello "I'm not required to tell you;" (11) Defendant Hart

19  then told Plaintiffs, "You don't have too much of a choice;" (12) Hart told Plaintiffs, "You don't

20  have a right to be on this property;" (13) Plaintiff Cuviello told Hart, "It's a public park, a

21  quintessential first Amendment public forum;" (14) Mayfield then falsely told Plaintiffs that, "This

22  is a private event;" (15) Mayfield called his "Sergeant On Duty;" and finally, (16) after Mayfield

23  ended his call, there were no more threats of arrest for the rest of the evening. Dkt. 84-13; Dkt. 84-

24  39 (ACSO's transcription of ACSO body cam footage). Even Defendants ACSO and Mayfield

25  acknowledged Mayfield's threat of arrest was in concert with Hart, as he made his threat to compel

26  compliance with Defendant Hart's demand that Plaintiffs relocate to the Free Speech Area. Dkt. 89,

27  p. 3:16-25.

28

Plaintiffs' Opposition and Reply to Defendants County of Alameda and Defendant Mayfield
(3:23-cv-01652-VC)

1    Beyond these conversations, Defendant Mayfield's video depicts his private conversation

2 with Defendant Hart and Rowell Ranch Rodeo representatives, as they stand around, lament

3 Plaintiffs' refusal to move, and discuss their inability to get Plaintiffs to move to the Free Speech

4 Area. Dkt. 84-1, ¶32; Dkt. 84-48. Though the first thirty seconds of the video is conspicuously

5 silent, when the sound is turned on, Defendant Mayfield explained why he could not move Plaintiffs

6 to the Free Speech Area, and stated, "It's still an event open to the public," "[s]o that is where we

7 get stuck." Dkt. 84-1, ¶32; Dkt. 84-48 (timestamp 0:33- 0:42); Dkt. 84-39 at 149 (p. 36:7-11).

8 Defendant Gary Houts then told Defendant Mayfield, "I'm not blaming you all," and Mayfield

9 responded, "I know you're not, *I'm* **with you guys**." Dkt. 84-1, ¶32 (emphasis added); Dkt. 84-48

10 (timestamp 0:44-0:46); Dkt. 84-39 at 149 (p. 36:12-13). Then, a Rowell Ranch Rodeo

11 representative opined that Plaintiffs were motivated to "push boundaries," and Defendant Mayfield

12 responded in agreement, "That's what they want to do." Dkt. 84-1, ¶ 32; Dkt. 84-48 (timestamp

13 0:58-1:01); Dkt. 84-39 at 149 (p. 36:19-22). Then Defendant Hart said, "And they want us to push

14 back," and Defendant Mayfield responded in agreement, "And they want us to push back." Dkt. 84-

15 1, ¶ 33; Dkt. 84-48 (timestamp 1:01-1:06); Dkt. 84-39 at 149-150 (pp. 36-37:24-01).

16    Plaintiffs' motives are simply to advocate against animal abuse, and they utilize their

17 constitutionally protected free speech rights to do so. Dkt. 84-1, ¶¶ 1-3. That Defendant Mayfield, a

18 law enforcement officer who is trained to remain objective and protect constitutional rights, was so

19 extremely and subjectively invested in helping one side of a conflict by attempting to subvert the

20 others' free speech rights is appalling. Defendant Mayfield's conduct and speech establishes his

21 bias and explains why he repeatedly harassed Plaintiffs and other demonstrators about blocking the

22 walkway and the back entrance when there was no true interference. Defendants Defendant

23 Mayfield and Hart worked in concert to violate Plaintiffs' rights under Section 52.1.

### F.    California law makes clear that the $25,000 civil penalty listed in Civil Code, section 52(b) is part of the damages available under Section 52.1.

26    Defendants argues that the $25,000 civil penalty is not available to a Section 52.1 plaintiff.

27 *See* Dkt. 89, p. 19 (citing *Cuviello v. City of Oakland*, *et al.* 2010 WL 3063199 at *5 (N.D. Cal.

Plaintiffs' Opposition and Reply to Defendants County of Alameda and Defendant Mayfield
(3:23-cv-01652-VC)

Aug. 3, 2010). This argument is based on a trial court decision mistakenly finding that because the Legislature specifically identified each relief for damages in Section 52(b) – "actual damages," "exemplary damages" and "a civil penalty" – that "[t]here is a distinction between civil penalties and damages" and held "civil penalties provided by Section 52(b)(2) are not available to a Section 52.1 plaintiff." *Id.*

By contrast, the court in *Davis v. City of San Jose* made no distinction between damages and civil penalties regarding "damages available under §52." *Davis v. City of San Jose*, 69 F.Supp.3d 1001 (N.D. Cal. 2014). The defendants argued against the plaintiff receiving any damages under Section 52(b), including the civil penalty. *Id.* at 1009- 1010. The court noted the plain language of Section 52.1 "permits recovery under section 52 but does not limit recovery to any subsection, of which there are several." *Id.* at 1010. The court concluded its analysis stating, "Given that the Bane Act was enacted after sections 51.7 and 52, and the lack of any case law or legislative intent suggesting that recovery for violations of the Bane Act should be limited to any subsection of Section 52, the Court concludes that a plain reading of an unambiguous statute allows Plaintiff to pursue damages under Section 52(b)." *Id.*; *see also Stamps v. Superior Court*, 136 Cal.App.4th 1441, 1446-48 (2006)(discussing history of the Bane and Ralph Acts). The *Davis* court's analysis, based on the plain language of the statute, is accurate. The courts "have long recognized that the language used in a statute or constitutional provision should be given its ordinary meaning, and '[i]f the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature.'" *People v. Valencia*, 3 Cal.5th 347, 357 (2017)(citing *Lungren v. Deukmejian*, 45 Cal.3d 727, 735 (1988)).

Plaintiffs provide the Court with the following in depth analysis regarding the plain language of the statute, the statutorily defined and judicially construed definition of "damages," and the legislative history of Section 52.1 which together make clear that a civil penalty is included in as available "damages" under Section 52(b) because they are available to a Section 52.1 plaintiff.

**1. The term "damages" is defined by law as monetary compensation.**

The term "damages" is legally defined by California law as "compensation in money." Civ. Code, § 3281. "Within that definition, the term compensation is not construed 'in its technical legal sense,' but 'encompass[es] any remunerative payment made to an aggrieved party,' including 'restitutive and punitive measures.'" *APL Co. Pte. Ltd. v. Valley Forge Ins. Co.,* 754 F.Supp.2d

1   1084, 1094 (N.D. Cal. 2010)(citing *AIU Ins. Co. v. Superior Court,* 51 Cal.3d 807, 826, fn.11

2   (1990)). Because Section 52.1 does "not compel a more limited definition of 'damages,' [the Court

3   should] adopt the meaning set forth in *AIU." Ameron Intern. Corp. v. Ins. Co. of Pa*., 60

4   Cal.Rptr.3d 55, 78 (2007). Depending on the statute, courts consider some civil penalties

5   compensatory and others punitive. If considered punitive, it's still a remunerative payment and falls

6   under *AIU*'s definition of "damages." If considered compensatory penalties are "damages" in the

7   "technical legal sense."

8          The California Supreme Court in *People Ex Rel. Younger v. Superior Court*, 16 Cal.3d 30

9   (1976) determined that civil penalties "pursuant to section 13350, subdivision (a)(3), of the Water

10  Code" were compensatory because they were meant to "compensate the people of this state," (*Id*. at

11  37-39), and, therefore, fulfilled "legitimate compensatory functions." *Id*. at 39 (overruled on other

12  grounds); *see also Los Angeles Unified School Dist. v. Superior Court*, 14 Cal.5th 758, 775 (2023).

13         The court never questioned whether civil penalties pursuant to Water Code, section 13350,

14  subdivision (a)(3) could qualify as damages, accepting they were either compensatory or punitive in

15  nature.

16         In *Lozado v. City and County of San Francisco,* 145 Cal.App.4th 1139 (2006), Lozado

17  specifically argued that the $25,000 civil penalty in Government Code, section 3309.5 "was not

18  'damages' because it was not compensatory in nature," (*Id*. at 1161), but rather a "specifically

19  enumerated sanction to be imposed by the court under its equitable relief powers where malice is

20  found." *Id*. at 1160. The court rejected Lozado's interpretation and found that the purpose of the

21  civil penalty was "to compensate for the injury sustained by an aggrieved plaintiff," (*Id*. at 1162),

22  and "comes within well-established understandings of the term 'damages.'" *Id*. at 1161.

23         By contrast the California Supreme Court in *Kizer v. County of San Mateo,* 53 Cal.3d 139

24  (1991) had to determine, "whether Government Code, section 818 prevents the state from imposing

25  statutory civil penalties pursuant to the Long-Term Care, Health, Safety, and Security Act of 1973

26  (Health & Saf. Code §1417; hereinafter the Act) on a state-licensed, county-operated, long-term

27  health care facility." *Id*. at 141. The court found because the "primary purpose" of the civil penalty

28

Plaintiffs' Opposition and Reply to Defendants County of Alameda and Defendant Mayfield
(3:23-cv-01652-VC)

1   was to "offset the state's costs in enforcing the health and safety regulations," it was not "punitive"

2   or "damages [that] serve to compensate the victim," but rather regulatory, i.e., "to secure obedience

3   to statutes and regulations." *Id*. (overruled on other grounds); *see also Los Angeles Unified School*

4   *Dist.*, 14 Cal.5th at 775.

5          The court in *Raines v. Coastal Pacific Food Distributors, Inc*., 23 Cal.App.5th 667 (2018),

6   on the other hand, defined damages "under the Labor Code Private Attorneys General Act of 2004

7   (PAGA)(Lab. Code, § 2698)," (*Id*. at 670), as "compensatory" and because it determined that,

8   "Civil penalties, like punitive damages, are intended to punish the wrongdoer and to deter future

9   misconduct." *Id*. at 681. They are not damages. *Id*. at 681.

10         Similarly, in *Limon v. Circle K Stores, Inc*., 84 Cal.App.5th 671 (2022), Limon argued that

11  the "Fair Credit Reporting Act (FCRA)(15 U.S.C. § 1681)" "established statutory penalties

12  for…willful violations regardless of whether they result in an injury." *Id*. at 700. Because the FCRA

13  did not define the term "damages," the court's analysis, relying in part on the decision in *Raines,*

14  determined that "damages" are compensatory and "civil penalties" are punitive, and concluded the

15  term "damages" under FCRA did not include civil penalties. *Id*. at 701-703. Both the court in

16  *Raines* and *Limon* ignored the long-established definition of "damages" as "encompass[ing] any

17  remunerative payment made to an aggrieved party,' including 'restitutive and punitive measures.'"

18  *AIU Ins. Co. v. Superior Court,* 51 Cal.3d 807, 826 fn.11 (1990). Even though considered punitive

19  by the courts in *Raines* and *Limon,* the civil penalty was still a remunerative payment and, therefore,

20  should have been considered "damages." *Id.*

21         **2.   The Section 52(b) civil penalty is considered "damages" under the
22              law, as it is "compensation in money."**

23         Specifically pertaining to the civil penalty in Section 52(b), the California Court of Appeal

24  in *MTA v. Superior Court*, 20 Cal.Rptr.3d 92 (2004) recognized that the history of this civil penalty

25  "clearly demonstrates that the Legislature intended to provide increased **compensation** for plaintiffs

26  and to encourage private parties to file lawsuits under the statute." *Id*. at 98 (emphasis added).

27  "Under the current wording of section 52, subdivision (b)(2), the civil penalty clearly provides a

28

Plaintiffs' Opposition and Reply to Defendants County of Alameda and Defendant Mayfield
(3:23-cv-01652-VC)

1   minimum **compensatory** recovery even in those cases where the plaintiff can show little or no

2   actual damages." *Id*. at 99 (emphasis added). Because the civil penalty available in Section 52(b) is

3   "compensation in money" it is, in the "technical legal sense," considered "damages" under

4   California law and is, therefore, available to a successful Section 52.1 plaintiff, as "damages under

5   Section 52." *See* Civ. Code, sec. 3281; *AIU Ins. Co.,* 51 Cal.3d at 826 fn.11.

6           The California Court of Appeal in *Cornell v. City and County of San Francisco*, 17

7   Cal.App.5th 766 (2017) recognized that private actions by aggrieved individuals under Section

8   52.1(b) can recover "***civil penalties***." *Id*. at 791 (emphasis added). The most recent California

9   Supreme Court case addressing the civil penalty in Section 52.1 is *Venegas v. County of Los*

10  *Angeles*, 11 Cal.Rptr.3d 692 (2004). In *Venegas,* Los Angeles County complained that, "allowing

11  unrestricted civil actions under Civil Code, section 52.1 will result in 'an incalculable increase in

12  the filing of lawsuits in our State's courts,' imposing heavy burdens on 'the already financially-

13  strapped court system....'" because "if section 52.1 indeed applied to all tort actions, the section

14  would provide plaintiffs in such cases **significant civil penalties** and attorney fees as well as

15  compensatory damages." *Id*. at 707 (emphasis added). The Court acknowledged the County's

16  concerns but held, Section 52.1 "does not extend to all ordinary tort actions because its provisions

17  are limited to threats, intimidation, or coercion that interfere with a constitutional or statutory right,"

18  so, "imposing added limitations on the scope of section 52.1 would appear to be more a legislative

19  concern than a judicial one." *Id*. at 707-708. Justice Baxter, in a concurring opinion, recognized that

20  "amendments" to the Bane Act "since 1987 added new penalty provisions ($25,000) which may be

21  sought in both public and private actions under the act." *Id.* at 710.

22          Although the State's legal and judicial definition of "damages" alone establishes Plaintiffs

23  are entitled to receive the compensatory Section 52(b) $25,000 civil penalty, the Legislative history

24  of Section 52.1 establishes clear intent to provide the Section 52(b) civil penalty to a Section 52.1

25  plaintiff.

26

27

28

**3.   Legislative history makes clear the civil penalty is part of the damages available to a Section 52.1 plaintiff.**

Section 52.1, known as the Tom Bane Civil Rights Act, was enacted in 1987 "as part of a comprehensive legislative package to combat hate crimes." *Cornell v. City and County of San Francisco,* 17 Cal.App.5th 766, 790 (2017). In 1990, the Legislature amended the Bane Act to make clear that an aggrieved individual "may seek damages in actions brought under the [Bane] Act." *See* Plaintiffs' Request for Judicial Notice, Exhs. A and B  (hereinafter Plaintiffs' RJN). In 1991, the California Legislature further "revised various civil and criminal penalties in an effort to discourage persons from committing various civil rights violations." Plaintiffs' RJN, Exhs. C and D. Legislative analysis supporting the 1991 amendments outlined the "current law, Civil Code Section 52(b)," and found that the bill would: (1) "change the amount of the current civil penalty award from $10,000 to $25,000," and (2) "specify that Civil Code Section 52.1, which defines a related discrimination crime, include, but not be limited to, the damage provisions proposed in Civil Code Section 52(b)." *Id.*, Exh. D at p. 2. Because the term "damages" had been "statutorily defined and judicially construed," the Court must presume that the Legislature, in adding Section 52(b) to Section 52.1, was "aware of existing laws and judicial constructions at the time legislation is enacted," and that the Legislature amended Section 52.1 "in light thereof." *People v. Osuna*, 225 Cal.App.4th 1020, 1028 (2014). The Court must presume the Legislature was acting with existing law in mind, which defines "damages" as "compensation in money," and understood the civil penalty constituted damages when it added Section 52(b) to the damages available to a Section 52.1 plaintiff. *Id.* at 1028.

Additionally, prior to 2001, a Section 52.1 plaintiff could sue for damages only, and public enforcers had to sue for injunctive or equitable relief. Plaintiffs' RJN, Exh. E. In 2001, the California Legislature again amended the Bane Act, and outlined the first "key issue" as follows: "In Actions Brought Under The Bane Act On Behalf Of Hate Crimes Victim, Should Government Attorneys Be Permitted To Seek The Same Civil Penalties, Which Would Be Awarded To Individual Victims, That Such Victims Are Already Entitled To Recover When They Sue On Their

1    Own Behalf?" Plaintiffs' RJN, Exh. F, p.1. The "Synopsis," under "Existing Law" plainly stated,

2    "when Bane Act suits are brought by individual victims of hate crimes, the individual is able to

3    recover damages, including a civil penalty of $25,000." *Id*. p. 2, ¶2. The Legislative history makes

4    clear that the Legislature understood the Bane Act to already provide individual victims entitlement

5    to recover the $25,000 civil penalty, "when they sue on their own behalf." *Id*., p. 2.

6        Other documents relating to the 2001 Amendment make clear the Legislature understood

7    that the civil penalty is available to a Section 52.1 plaintiff including: (1) a July 12, 2001, letter

8    from State Attorney General Bill Lockyer to Governor Gray Davis, Plaintiffs' RJN, Exh. G; (2)

9    "Assembly Republican Bill Analysis," Plaintiffs' RJN, Exh. H; (3) "Office of Criminal Justice

10   Planning" August 27, 2001, "Enrolled Bill Report," Plaintiffs' RJN, Exh. I; and (4) August 21,

11   2001, California Attorney General's Office "Civil Rights Handbook, Third Edition," page 5, "Civil

12   Code Section 52.1," Plaintiffs' RJN, Exh. J.

13       Section 52(b) civil penalties are available to Section 52.1 plaintiffs as statutory damages.

14                    **4.   Punitive damages are available to Plaintiffs.**

15       Defendant Mayfield acted with malice, i.e., conduct carried out with a "willful and

16   conscious disregard of the rights of others," and "reckless or callous indifference to the

17   constitutional rights of others." Cal. Civ. Code, § 3294; *Potter v. Firestone Tire & Rubber Co.*, 6

18   Cal.4th 965, 1000 (1993); *Dang v. Cross*, 422 F.3d 800, 807 (9th Cir. 2005)(*citing Smith v. Wade*,

19   46 U.S. 30, 34 (1983)); *see also* Dkt. 89, p. 22:3-26. Defendant Mayfield argues that Plaintiffs' free

20   speech rights were not clearly established, and it wouldn't have been clear to a reasonable officer

21   that his conduct was unlawful in the situation. Dkt. 89, p. 21:5-10.

22       This contradicts the video evidence, which speaks for itself. In Defendant Mayfield's first

23   interaction with Plaintiffs, he understood they were within their rights to demonstrate outside the

24   Free Speech Area. It was only after Defendants HARD and Rowell Ranch Rodeo "requested"

25   Mayfield to "instruct" Plaintiffs to relocate their demonstration to the Free Speech Area that

26   Defendants Mayfield and Hart jointly approach Plaintiffs, and speaking in one voice, threatened

27   Plaintiffs with arrest if they did not relocate to the Free Speech Area. In Defendant Mayfield's

28

Plaintiffs' Opposition and Reply to Defendants County of Alameda and Defendant Mayfield
(3:23-cv-01652-VC)

1   private conversation with Defendants Hart, Rowell Ranch Rodeo's Gary Houts, and other Rowell

2   representatives, he laments that he cannot move Plaintiffs and explains that he cannot force them to

3   relocate Plaintiffs to the Free Speech Area. Dkt. 84-1, ¶32. He tells them, "I'm with you." *Id.*; Dkt.

4   84-48 (timestamp 0:44-0:46); Dkt. 84-39 at 149 (p. 36:12-13).

5        It appears the only reason for Defendant Mayfield's second interaction with Plaintiffs was to

6   carry out an instruction he was given by the people he considered himself "with" to relocate

7   Plaintiffs' demonstration to the Free Speech Area. This is not the action of a "reasonable officer."

8   Moreover, only after he threatened Plaintiffs with arrest did Defendant Mayfield call his "Sergeant

9   On Duty" and discuss the situation with him. A reasonable officer would have made that call prior

10  to threatening Plaintiffs with arrest. Defendant Mayfield's actions represented a reckless disregard

11  for Plaintiffs' free speech rights, in violation of state and federal law. Accordingly, punitive

12  damages should be assessed against Defendant Mayfield.

13      **IV.**    **Conclusion**

14       For the foregoing reasons Plaintiffs respectfully request that this Court grant Plaintiffs' Joint

15  Motion for Partial Summary Judgment on their Third and Fifth causes of action against Defendants

16  ACSO and Deputy Mayfield. Plaintiffs also request this Court deny Defendants' Cross-Motion for

17  Partial Summary Judgment on Plaintiffs' third, fifth, and sixth causes of action.

18                          Respectfully submitted,

19  DATED: June 25, 2024           */s/ Jessica L. Blome*

20                          Jessica Blome
                        Lily R. Rivo

21                          GREENFIRE LAW, PC
                        *Attorney for Plaintiff Deniz Bolbol*

22

23  DATED: June 25, 2024           *Joseph P. Cuviello*
                        JOSEPH P. CUVIELLO

24                          *Plaintiff In Pro Se*

25

26

27

28

Plaintiffs' Opposition and Reply to Defendants County of Alameda and Defendant Mayfield
(3:23-cv-01652-VC)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on this 25th day of July 2024 the foregoing was served on all parties through the Court's electronic filing, CM/ECF system in accordance with Rule 5 of the Federal Rules of Civil Procedure.

GREENFIRE LAW, P.C.

By:   _/s/ Jessica San Luis_
Jessica San Luis