# REQUEST FOR JUDICIAL NOTICE

# EXHIBIT H

| | |
|---|---|
| **Assembly Republican Bill Analysis** | **AB 587 (Firebaugh)** |
| **Judiciary Committee** | **Non-Concur** |

**AB 587 (FIREBAUGH)**
**CIVIL RIGHTS**

**Version:** 7/18/01 Last Amended
**Vote:** Majority
**Non-Concur**

**Vice-Chair:** Robert Pacheco
**Tax or Fee Increase:** No

Encourages more litigation to be pursued by government attorneys on behalf of civil rights victims and could apparently provide a "windfall" double recovery of civil penalties and discourage small business activities.

### Policy Question

1. Should it be necessary under the "hates crime" statute to encourage more litigation to be pursued by government attorneys by allowing them to seek civil penalties of $25,000 per violation, which individual victims already may obtain in their individual civil suits?
2. Should the bill be amended to prevent a windfall double recovery to the plaintiff where he or she could receive a $25,000 civil penalty under existing law and a $25,000 civil penalty under this bill when also pursued to judgment by a government attorney?
3. Should the $1,000 minimum cap that may be awarded victims for violations of various civil rights acts be raised four-fold from $1000 to $4,000?

### Summary

**Authorizes government attorneys to seek specified civil penalties in actions brought on behalf of victims of hate crimes, and raises from $1,000 to $4,000 the minimum damages that may be awarded for violations of various civil rights acts.** More specifically this bill:

(1) Allows the Attorney General, any district attorney, or any city attorney to seek a civil penalty of $25,000 (in addition to injunctive and other appropriate equitable relief already available);
(2) Such civil penalty, if requested, must be assessed individually against each person who is determined to have violated the statute, and the penalty must be awarded to each individual victim whose rights under the statute are determined to have been violated; and
(3) The amount of damages awarded victims for violations of the Unruh Civil Rights Act, Civil Code Section 51.5, and the Gender Tax Repeal Act rises from $1,000 to $4,000.
(4) **SENATE AMENDMENTS** clarify that the minimum additional amount of damages awarded for alleged discrimination on the price charged for similar or like services on the basis of gender rises in Civil Code Section 51.6 from $1000 to $4,000 and attorney's fees that may determined by the court to be awarded in addition thereto.

### Support

Attorney General (Sponsor); Anti-Defamation League; California School Employees Association; Lambda Legal Defense and Education Fund, Inc.; Los Angeles County District Attorney's Office; Pacific Southwest Region; and Protection and Advocacy, Inc.

### Opposition

None on file.

### Arguments In Support of the Bill

1. The author's office states that this bill permits government attorneys to seek civil penalties in addition to their current authority to pursue injunctive or equitable relief to "provide incentives for individuals to pursue actions for violations of the ("Tom Bane Civil Rights Act" or "hate crimes" statute) statute, by reporting these incidents to the Attorney General and district attorney and city attorneys. Currently, individuals would likely hire a private attorney if they could afford one or find one, rather than seeking the assistance of government prosecutors, because in its present state, the Bane Act only permits these government prosecutors to obtain injunctive and equitable

**Assembly Republican Judiciary Votes** (7-2) 4/3/01
  Ayes: None
  Noes: Robert Pacheco, Harman

  Abs. / NV: Bates

**Assembly Republican Floor Votes** (46-23) 4/19/01
  Ayes: Richman
  Noes: All Republicans, except
  Abs. / NV: Kelley, Leslie, Maddox, Maldonado, Rod Pacheco, Pescetti

**Senate Republican Floor -- VOTES NOT AVAILABLE**
**Votes** (0-0) 7/20/01
  Ayes: None
  Noes: None
  Abs. / NV: None

**Assembly Republican**   **Votes** (0-0) 1/1/01
  Ayes: None
  Noes: None
  Abs. / NV: None

relief. It is often difficult for victims of civil rights violations to find attorneys who are willing to take such cases on a contingency fee basis, which is often the only way they will take these cases because of the uncertainty of recovery, the difficulties of proving the case, and the expenses necessarily incurred in prosecuting such cases." The author's office concludes that, "If the problem is not addressed, most victims of Bane Act violations will be unable to obtain meaningful relief for future violations, and perpetrators of such violations will have little incentive to refrain from future violations."

2. The Attorney General, the sponsor, echoes the above statements, and also argues for raising from $1,000 to $4,000 the minimum damages that may be awarded for violations of the Unruh Civil Rights Act, related anti-discrimination provision, and the Gender Tax Repeal Act, in order to further deter such violations. The *Koire v Metro Car Wash* case of 1985, at 40 Cal.3d 24, is cited by the Attorney General's office as example of the need for such increased damage recovery. In *Koire* the male plaintiff was refused discounts on car washes and nightclub charges offered to women through "Ladies Day" or "Ladies Night" promotions. The actual dollar amount overcharged to the plaintiff based on his gender was $2 to $3 per transaction. In such case the plaintiff would likely only recover the $1,000 minimum amount but the defendant may have hundreds or thousands of transactions that violated the acts and which would have unjustly enriched him or her, according to the Attorney General's office (AG). The AG apparently concludes that the prospect of paying such an occasional $1,000 damage ward due to a discriminatory promotion may be calculated as an absorbable cost of ding business, if a s a result of the promotion, a great number of customers who are unaware of the law patronize the business. The AG contends that since the typical $1,000 damage award is unlikely to have a significant deterrent effect on the discriminatory practices of a large company, that minimum amount should be increased to at least $4,000. The AG further views such increase to continue to allow plaintiffs to pursue such claims within the jurisdictional limits of small claims court but not otherwise putting a small business out of business for a judgment for one violation.

### Arguments In Opposition to the Bill

1. Although the Attorney General continues to seek greater emphasis of shifting resources to pursue civil rights and business violations, possibly at the expense of pursuing continued or greater prosecution of serious violent crimes, would not this bill unnecessarily encourage and increase the pursuit of frivolous and marginal actions for such civil rights and business violations? Is it necessary to increase the minimum cap on penalty damages four-fold from $1,000 to $4000 on small businesses, who in such cases, like *Koire,* (cited above under #2 of "Arguments in Support of the Bill") *generally* may have benevolent intentions in promoting discount business?

2. Is the statutory language that also allows the government attorneys to seek $25,000 civil penalties to be awarded to the alleged victim for each violation and from each co-conspirator intended to be a "windfall" doubling of recovery and thereby allow private attorney action for such $25,000 civil penalty assessments as well as the government attorney's civil penalty assessments awarded to the plaintiff? (SEE PROPOSED AMENDMENT under # 1 of "Comments" below).

### Fiscal Effect

Unknown.

### Comments

1. A proposed amendment would have made this bill less onerous: On Page 4, Line 26 of the March 26th, 2001 version of the bill, insert after "determined to have been violated.": *"This civil penalty shall only be assessed where it is not otherwise assessed and awarded pursuant to subdivision (b) to each person whose rights under this section are determined to have been violated."* This amendment seeks to prevent a double assessment of $25,000 per violation per victim where the victim is so compensated with a $25,000 civil penalty recovery under subdivision (b) Civil Code Section 52.1. Subdivision (b) of Civil Code Section 52.1 provides for such civil penalty recovery in authorizing the victim to "institute and prosecute in his or her own name and on his or her own behalf a civil action for damages, *including, but not limited to, damages under Section 52,* injunctive relief, and other appropriate equitable relief to protect the peaceable exercise or enjoyment of the right or rights secured." Civil Code Section 52 (b) (2) provides for the civil penalty of $25,000.

2. **Under existing law: (1)** The "Hate Crimes" statute (The Ralph Civil Rights Act) provides that all persons within California have the right to be free from any violence or intimidation by threat of violence, committed against them or their property because of their race, sex, or religion. [Civil Code Section 51.7(a)]; **(2)** Whoever denies another of any of these rights is liable for actual damages, as well as a civil penalty of $25,000, exemplary damages, and attorney's fees as determined by the court [Civil Code Section 52(b)]; **(3)** The "Tom Bane Civil Rights Act" provides that an action may be brought by the Attorney General, any district

**Assembly Republican Bill Analysis**  AB 587 (Firebaugh)

attorney or city attorney, or an individual if a person, whether or not acting under color of law, interferes or attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by the individual of rights secured by the constitution or laws of the state or federal government [Civil Code Section 52.1(a) and (b)]; **(4)** Suits brought by individual victims under the Bane Act enables the individual to recover damages, including a civil penalty of $25,000, exemplary damages, and attorney's fees, as well as injunctive and other equitable appropriate relief [Civil Code Section 52.1 (b) and (h)]; **(5)** Government attorneys who bring actions under the Bane Act on behalf of victims may only seek equitable and injunctive relief [Civil Code Section 52.1(a)]; **(6)** The Unruh Civil Rights Act provides that all persons within the state are free and equal and no matter what their sex, race, color, religion, ancestry, national origin, or disability are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever (Civil Code Section 51); **(7)** No business establishment of any kind whatsoever shall discriminate against, boycott or blacklist, or refuse to buy from, contract with, sell to, or trade with any person in this state because of race, creed, color, national origin, sex, disability, or medical condition of the person because the person is perceived to have one of more of those characteristics, or because the person is associated with a person who has, or is perceived to have, any of those characteristics (Civil Code Section 51.5); and **(8)** The Gender Tax Repeal Act provides that no business establishment may discriminate with respect to the price charged for services of similar or like kind, against a person because of the person's gender [Civil Code Section 51.6(b)].

3. **Prior Legislation.** This measure builds upon AB 2719 (Wesson)/ Chapter 98 of 2000 Statutes, which passed the Assembly on a 51 to 21 vote and a 23 to 14 vote in the Senate. AB 2719 reversed appellate court rulings [*Boccato v. City of Hermosa Beach* (1994) 29 Cal.App.4th 1797; and *Cabesula v. Browning-Ferris Industries of California, Inc.* (1998) 68 Cal.App.4th 101]. Those appellate court rulings held that an action brought pursuant to Civil Code Section 52.1 alleging the interference by threats, intimidation, or coercion with the exercise or enjoyment by an individual of rights secured by the constitution or laws of the state or federal government, must further allege that the interference was motivated by the membership of the individual being in one of the protected classes enumerated in Civil Code Section 51.7. AB 2719 removed such proof of motivation based on animosity toward a protected class and could now encourage more marginal and frivolous suits to obtain the civil penalty and punitive damages.

4. **Related Pending Legislation.** AB 1088 (Jackson) would amend the Gender Tax Repeal Act to delete the cost of providing services from the allowable bases for price differences. This bill is scheduled for an April 24th, 2001 hearing before the Assembly Judiciary Committee.

5. **Senate amendment** included Civil Code 51.6 on alleged gender price discrimination to be added to the existing provisions of the bill to thereby increase additional penalty recovery.

**Policy Consultant:** Mark Redmond 7/20/01
**Fiscal Consultant:**