Jessica L. Blome (Cal. Bar No. 314898)
Lily A. Rivo (Cal. Bar No. 242688)
GREENFIRE LAW, PC
2748 Adeline Street, Suite A
Berkeley, CA 94703
Ph/Fx: (510) 900-9502
Email: jblome@greenfirelaw.com
         lrivo@greenfirelaw.com

*Attorneys for Plaintiff Deniz Bolbol*

JOSEPH P. CUVIELLO
205 De Anza Blvd., #125
San Mateo, CA 94402
Telephone: (650) 315-3776
Email: pcuvie@gmail.com

*Plaintiff in Pro Se*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH P. CUVIELLO and DENIZ BOLBOL, individually,<br><br>Plaintiffs<br><br>v.<br><br>ROWELL RANCH RODEO, INC., et al.,<br><br>Defendants | Case No. 3:23-cv-01652-VC<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS' HAYWARD AREA RECREATION AND PARK DISTRICT AND KEVIN HART'S CROSS- MOTION FOR SUMMARY JUDGMENT AND REPLY IN SUPPORT OF PLAINTIFFS' JOINT MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date:       August 15, 2024<br>Time:       10:00 a.m.<br>Judge:      Hon. Vince Chhabria<br>Courtroom:  5, 17th Floor |

1

**Table of Contents**

2  I.   Plaintiffs' Response to Defendants' "Facts"......................................................... - 7 -

3  II.  Argument ............................................................................................................. - 9 -

4       A.   Plaintiffs have a constitutionally protected free speech right to demonstrate outside
             the Free Speech Area at the Rowell Ranch Rodeo Park. ........................................ - 9 -

5       B.   Defendant Hart's intimidation, coercion, and threat to arrest Plaintiffs if they did not
6            relocate to the Free Speech Area violated Section 52.1. ........................................ - 9 -

7            1.   Defendant Hart's words and actions constitute threats, intimidation, and
                  coercion. .............................................................................................. - 11 -

8            2.   Defendants Hart and Mayfield worked in concert to violate Plaintiffs' free
                  speech rights, including by threatening arrest. ........................................... - 12 -

9
10           3.   Plaintiffs objectively felt threatened, intimidated, and coerced by Defendant
                  Hart's threats and conduct. ..................................................................... - 16 -

11           4.   Defendant Hart had apparent and actual authority to arrest Plaintiffs, so
                  Plaintiffs fear of arrest was reasonable. ................................................... - 18 -

12           5.   Defendant Hart recklessly disregarded Plaintiffs' free speech rights. ....... - 20 -

13      C.   Plaintiffs are entitled to punitive damages against Defendants HARD. .............. - 20 -

14      D.   Defendants HARD and Hart are not entitled to immunity pursuant to Government
             Code, section 820.2, as Hart's ministerial action is not protected. ...................... - 21 -

15      E.   Defendants are not entitled to qualified immunity under 42 U.S.C. § 1983 because
16           they knew the FSA was unconstitutional as a matter of law, and Hart's threats and
             conduct were objectively unreasonable. ............................................................... - 22 -

17      F.   Defendants must be permanently enjoined from requiring lessees to establish a free
18           speech area. ......................................................................................................... - 23 -

19           1.   Plaintiffs are likely to succeed on the merits of their claims. ................... - 24 -

20           2.   Plaintiffs are likely to suffer irreparable harm in the absence of injunctive
                  relief. .................................................................................................... - 25 -

21           3.   The balance of equities tips in Plaintiffs' favor for injunctive relief, as the
                  public interest is best served by enjoining Defendants' lessee requirement for
22                a Free Speech Area. ............................................................................... - 26 -

23  III. Conclusion ......................................................................................................... - 27 -

24

25

26

27

28

1

**Table of Authorities**

2

**Cases**

3

*All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011) .................................. 22

4

*Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046 (9th Cir. 2009) ............................ 22

5

*Anderson v. Creighton*, 483 U.S. 635 (1987) ................................................................... 20

6

*Anderson v. Ford Motor Co.*, 74 Cal.App.5th 946 (2022) ................................................. 18

7

*Austin B. v. Escondido Union School Dist.*, 149 Cal.App.4th 860 (2007) ......................................... 8

8

9

*Bazan v. Curry*, No. E075075, 2022 Cal. App. Unpub. Lexis 6831 ................................................. 19

10

*Black Lives Matter- Stockton Chapter v. San Joaquin Cty Sheriff's Office*, 398 F.Supp.3d 660 (E.D. Cal. 2019) ........................................................................................................ 8

11

*Brodheim v. Cry*, 584 F.3d 1262 (9th Cir. 2009) ............................................. 9, 14, 15

12

*Caldwell v. Montoya*, 10 Cal.4th 972 (1995) ............................................................... 19

13

*Callahan v. Wilson*, 863 F.3d 144 (2nd. Cir. 2017) ......................................................... 6

14

*Center for Biological Diversity v. Department of Forestry & Fire Protection*, 232 Cal.App.4th 931 (2014) ........................................................................................................ 19

15

16

*Cole v. Doe*, 387 F. Supp. 2d 1084 (N.D. Cal. 2005) .......................................................... 8

17

*Comite de Jornaleros v. City of Redondo Beach*, 657 F. 3d 936 (9th Cir. 2011) ............................ 23

18

*Conway v. County of Tuolumne*, 231 Cal.App. 4th 1005 (2014) ..................................... 19, 20

19

*Cornell v. City and County of San Francisco*, 17 Cal. App. 5th 766 (2017) ............................ 14, 18

20

*Cunningham v. Gates*, 229 F.3d 1271 (9th Cir. 2000) ....................................................... 17

21

*Cuviello v. City & County of San Francisco*, 940 F. Supp. 2d 1071 (N.D. Cal. 2013) ...................... 8

22

23

*Cuviello v. City of Stockton,* No. CIV. S-07-1625 LKK, 2009 WL 9156144 (E.D. Cal. Jan. 26, 2009) ........................................................................................................ 8

24

*Elrod v. Burns*, 427 U.S. 347 (1976) .......................................................................... 24

25

26

*Gasho v. U.S.*, 39 F.3d 1420 (9th Cir. 1994) ................................................................ 14

27

28

1  *Gillan v. City of San Marino*, 147 Cal. App. 4th 1033 (2007) ................................................. 19

2  *Grossman v. City of Portland*, 33 F.3d 1200 (1994) ............................................... 21, 23

3  *Harlow v. Fitzgerald*, 457 U.S. 800 (1982) ......................................................... 20

4  *In re M.S.*, 10 Cal.4th 698 (1995) ................................................................. 9, 15

5

6  *Jeffers v. U.S.*, 432 U.S. 137 (1977) ............................................................... 10

7  *Kaufman v. ACS Systems, Inc.*, 2 Cal.Rptr 3d 296 (2003) ......................................... 22

8  *Klein v. City of San Clemente*, 584 F.3d 1196 (9th Cir. 2009) ................................... 22

9  *Korea Supply Co. v. Lockheed Martin Corp* (2003) 29 Cal.App.4th 1134 ................ 18

10  *Kub v. 1-A Agric. Ass'n*, 387 F.3d 850 (9th Cir. 2004) ............................................. 23

11  *Leiva-Perez v. Holder*, 640 F.3d 962 (9th Cir. 2011) ............................................... 22

12  *Liberal v. Estrada*, 632 F.3d 1064 (9th Cir. 2011) ................................................. 19

13  *Lim v. City of Long beach*, 217 F.3d 1050 (9th Cir. 2000) ...................................... 23

14

15  *McCorkle v. City of Los Angeles*, 70 Cal. 2d 252 (1969) .......................................... 20

16  *Minasian v. Standard Chtd. Bank, P.L.C.*, 109 F.3d 1212 (1997) ............................... 7

17  *Nimely v. City of N.Y.*, 414 F.3d 381 (2d Cir. 2005) ............................................... 7

18  *People v. Chandler*, 60 Cal. 4th 508 (2014) ....................................................... 14

19  *People v. Lashley*, 1 Cal.App.4th 938 (1991) ..................................................... 18

20  *People v. Lowery*, 52 Cal. 4th 419 (2011) ................................................... 10, 12

21

22  *People v. Pineda*, 13 Cal.5th 186 (2022) ........................................................... 10

23  *Rhodes v. Robinson*, 408 F. 3d 559 (9th Cir. 2005) ............................................. 14

24  *Richardson v. City of Antioch*, 722 F.Supp.2d 1133 (N.D. Cal. 2010) ...................... 14

25  *Sammartano v. First Judicial District Court, in and for County of Carson City*, 303 F.3d 959 (9th Cir.2002) ......................................................................................... 24

26

27  *Sharp v. County of Orange*, 871 F.3d 901 (9th Cir. 2017) ...................................... 19

28

*Simmons v. Superior Court,* 7 Cal.App.5th 113 (2016) ............................................................ 18

*Smith v. Wade*, 461 U.S. 30, 103 S.Ct. 1625 (1983) ................................................................ 18

*Thalheimer v. City of San Diego*, 645 F.3d 1109 (9th Cir. 2011) ............................................ 24

*Tobias v. Arteaga*, 996 F.3d 571 (9th Cir. 2021) ..................................................................... 17

*U.S. v Orozco-Santillan*, 903 F.2d 1262 (9th Cir.  1990) ..................................................... 9, 10

*U.S. v. Gilbert*, 884 F.2d 454 (9th Cir. 1989) ......................................................................... 10

*U.S. v. Malik*, 16 F.3d 45 (2d Cir. 1994) ................................................................................. 10

*US v. Cassel*, 408 F.3d 622 (9th Cir. 2005) ............................................................................ 14

*Venegas v. County of Los Angeles*, 32 Cal.4th 820 (2004) ....................................................... 8

*Virginia v. Black*. 538 U.S. 343 (2003) ....................................................................... 10, 12, 14

*Ward v. Rock Against Racism,* 491 U.S. 781 (1989) ............................................................... 23

*Whitworth v. City of Sonoma,* No. A103342, 2004 WL 2106606 (Cal. Ct. App. Sept. 22, 2004) ...... 8

*Winarto v. Toshiba America Electronics Components, Inc.*, 274 F.3d 1276 (9th Cir. 2001) ............ 14

*Winter v. Natural Res. Def. Council*, 129 S. Ct. 365 (2008) .................................................... 22

**Statutes**

42 U.S.C. § 1983 ............................................................................................................. 20, 21

Fed. R. Evid. § 106 ............................................................................................................ 5, 6

Fed. R. Evid. § 602 ............................................................................................................... 6

Fed. R. Evid. § 702 ............................................................................................................... 6

Fed. R. Evid. § 704 ............................................................................................................... 7

Fed. R. Evid. § 803 ............................................................................................................... 6

Fed. R. Evid. § 901 ............................................................................................................... 6

Cal. Civ. Code § 52 ............................................................................................................. 16

Cal. Civ. Code § 52.1 .................................................................................................... passim

Plaintiffs' Opposition and Reply to Defendants HARD and KEVIN HART
(3:23-cv-01652-VC)

Cal. Govt. Code § 820.2........................................................................................ 19, 20

Cal. Penal Code § 815.2.............................................................................................. 20

Cal. Penal Code § 830.31...................................................................................... 16, 17

Cal. Penal Code § 836.......................................................................................... 16, 17

Cal. Penal Code § 837.................................................................................................. 17

**Memorandum of Points and Authorities**

## I.      Plaintiffs' Response to Defendants' "Facts"

Plaintiffs do not generally dispute the facts alleged in Defendants' Statement of Fact, Dkt.

115, § II, however, some of the "facts" presented misstate the evidence or present conclusions of

law or argument as factual representations. Plaintiffs lodge the following formal objections:

- On page 3, lines 8-11, Defendants state, "Mr. Hart observed Plaintiffs and other individual demonstrators standing directly in front of the security entrance and attempting to block visitors to the rodeo from entering the rodeo event ticket booth entrance."

This sentence is attributed to the declaration of Defendant Kevin Hart, Dkt. 115-11, ¶7.

Plaintiffs object to these statements because they reflect incomplete evidence in violation of

Federal Rules of Evidence section 106 and because the video evidence speaks for itself. *See* Dkt.

84-46 (timestamp 0:00 – 0:40); Dkt. 84-47 (timestamp 0:00 – 0:26); *see also* Dkt. 115-6 (HARD

produced Axon Body Cam Video 1808_ X603994B1, Joshua Mayfield); Dkt. 89-5 (Mayfield

Exhibit A-1).

- On page 3, lines 23-25, Defendants state, "Mr. Hart observed demonstrators including Plaintiffs continue to demonstrate when requested to move to the designated free speech area and at times blocked the vehicle gate area being used by vehicle traffic."

This sentence is attributed to Defendant Hart's declaration, Dkt. 115-11, ¶10. Plaintiffs

object to these statements because they reflect incomplete evidence in violation of FRE 106 and

because the video evidence speaks for itself. Dkt. 84-47; Dkt. 89-5 (Mayfield Exhibit A-1); Dkt.

115-6 (HARD produced Axon Body Cam Video 1808_ X603994B1, Joshua Mayfield)

- On page 3, lines 26-27, Defendants state, "Mr. Hart observed Plaintiffs refuse to move and refuse to stop blocking visitors from entering the rodeo."

This sentence is attributed to Defendant Hart's declaration, Dkt. 115-11, ¶11. Plaintiffs

object to these statements because they reflect incomplete evidence in violation of FRE 106 and

because the video evidence speaks for itself. Dkt. 84-47; Dkt. 89-5 (Mayfield Exhibit A-1).

- On page 4, line 5, Defendants state, "Mr. Hart did not coordinate nor plan a response to the demonstrators with Deputy Mayfield nor anyone else from the Alameda County Sheriff's Department at any time prior to his interactions with Plaintiffs."

This sentence is attributed to Defendant Hart's declaration, Dkt. 115-11, ¶20. Plaintiffs object because this statement reflects incomplete evidence in violation of FRE 106. Defendant Alameda County Sherriff's Office (ACSO)'s testimony directly refutes it. Dkt. 84-34, p. 8:10-13 (Response No. 7) ("HARD/Rowell Ranch had requested that the Sheriff's Deputies instruct the demonstrators to relocate to the Free Speech Area.").

- On page 4, line 9-10, Defendants state, "Mr. Hart never raised his voice nor stepped toward Plaintiffs to make them feel intimidated or threatened."

This sentence is attributed to Defendant Hart's declaration, Dkt. 115-11, ¶23. Plaintiffs object because this reflects incomplete evidence in violation of FRE 106, and because the video evidence speaks for itself. *See* Dkt. 84-46 (timestamp 1:27).

- On page 4, line 11, Defendants state, "Plaintiff Bolbol only heard 'bits and pieces' of the conversation with Mr. Hart and testified that 'I don't recall paying full attention to it.'"

This sentence is attributed to Plaintiff Bolbol's Deposition, Dkt. 115-3, p. 55:10-17. Plaintiffs object to this statement because it reflects incomplete evidence in violation of FRE 106. Defendants took Plaintiff Bolbol's testimony out of context, as she made clear she understood Defendants Hart and Mayfield were threatening Plaintiffs with arrest if they did not move to the Free Speech Area (FSA). *See* Supplemental Declaration Deniz Bolbol, ¶ 21, Exh. 42, p. 51:7-53:24.

- Defendants offer the "Rule 26(a)(2)(B) Report of James I. Dudley," as Exhibit I to the Declaration of defense attorney Syren.

Plaintiffs object to the Mr. Dudley's expert report in its entirety because Mr. Dudley did not authenticate the report under oath, and it is being offered for the truth of the matter asserted therein. It therefore lacks foundation under FRE 602 and 901 and is hearsay in violation of FRE 803. Mr. Dudley's expert report, moreover, repeatedly presents legal conclusions as expert opinion. An expert may base an opinion on facts or data in the case, but he may not testify as to the ultimate **legal** conclusions in the case. FRE 702; *Callahan v. Wilson*, 863 F.3d 144, 153 (2nd. Cir. 2017) ("[E]xpert testimony is not admissible under Federal Rule of Evidence 702 if it 'usurp[s] . . . the role of the jury in applying th[e] law to the facts before it,' as such testimony 'undertakes to tell

the jury what result to reach, and thus attempts to substitute the expert's judgment for the jury's.") (citing *Nimely v. City of N.Y.*, 414 F.3d 381, 397 (2d Cir. 2005); *see also Minasian v. Standard Chtd. Bank, P.L.C.*, 109 F.3d 1212, 1216 (1997) (explaining the limitations of FRE 704).

Finally, due to an inadvertent filing error, Plaintiffs did not file the Declarations of Robyn Newkirk or Michael Sage when they filed their Motion for Summary Judgment. *See* Dkts. 84, 84-1. Upon learning of the error, Plaintiffs filed the missing declarations on June 28, 2024, giving Defendants three days to review them and incorporate arguments into their briefing. Dkts. 113, 114. Plaintiffs hereby incorporate the Dkts. 113 and 114 as though the declarations are being filed to support of their opposition to Defendants' Cross-Motion for Summary Judgment.

## II.    Argument

### A.    Plaintiffs have a constitutionally protected free speech right to demonstrate outside the Free Speech Area at the Rowell Ranch Rodeo Park.

It is undisputed that Plaintiffs free speech activity on May 20, 2022, was constitutionally protected. Defendant HARD, the government entity that owns the Rodeo Park and requires the Free Speech Area (FSA) restriction, also admits the FSA was an unreasonable restriction on Plaintiffs constitutionally protected free speech rights. Dkt. 115, p. 1:24-26. Defendant Hart admits that he was aware it was an unreasonable restriction prior to his interaction with Plaintiffs. Dkt. 115-11, ¶17 ("I was informed prior to my interactions with Plaintiffs that Plaintiffs had a legal right to protest at any location of park property unless they blocked ingress and egress…"). Nevertheless, Defendant Hart, together with law enforcement, armed and in full uniform while driving a Sheriff-marked vehicle, alongside private actor Defendant Rowell Ranch, worked to thwart and deter Plaintiffs' peaceful activity through threat of arrest and coercive intimidation.

### B.    Defendant Hart's intimidation, coercion, and threat to arrest Plaintiffs if they did not relocate to the Free Speech Area violated Section 52.1.

California Civil Code, section 52.1, known as the Tom Bane Civil Rights Act, authorizes suit against anyone who, by threats, intimidation, or coercion interferes or attempts to interfere with the exercise or enjoyment of rights secured by the constitutions or laws of the state or the United States. Cal. Civ. Code, § 52.1. Once a constitutionally protected right has been established,

a Section 52.1 claim requires a showing that the defendant, "by the specified improper means of threats, intimidation, or coercion, tried to or did prevent the plaintiff from doing something he or she had the right to do under the law or to force the plaintiff to do something that he or she was not required to do under the law." *Austin B. v. Escondido Union School Dist.*, 149 Cal.App.4th 860, 883 (2007) (internal citations omitted). The word "interferes" means violates. *Id.* [A] defendant is liable if they tried to or did interfere with a plaintiff's constitutional rights." *Austin B.,* 1149 Cal.App.4th at 833 (citing *Venegas v. County of Los Angeles*, 32 Cal.4th 820, 841-843 (2004).

Section 52.1 (k) states "**speech alone**" is not sufficient to support a Section 52.1 action, unless the speech threatens violence and the target of the speech reasonably fears that the violence will be committed against them, and the person making the threat has the apparent ability to carry out the threat. *See* Cal. Civ. Code, § 52.1(k) (emphasis added). However:

> "[C]ourts have consistently held that a threat of arrest from law enforcement can be 'coercion' under the Bane Act, even without a threat of violence per se. *Cuviello v. City of Stockton,* No. CIV. S-07-1625 LKK, 2009 WL 9156144, at *17 (E.D. Cal. Jan. 26, 2009) ('[T]he particular coercive power of law enforcement officers has led courts to impose liability when detention, rather than violence, is threatened.') (citing *Cole v. Doe*, 387 F. Supp. 2d 1084, 1102 (N.D. Cal. 2005)); *Cuviello v. City & County of San Francisco*, 940 F. Supp. 2d 1071, 1103 (N.D. Cal. 2013) (Bane Act claim based on violation of free speech adequately alleged where plaintiffs pled defendants 'threatened them with arrest' if they protested); *Whitworth v. City of Sonoma*, No. A103342, 2004 WL 2106606, at *6-7 (Cal. Ct. App. Sept. 22, 2004) (unpublished) (officer's unspoken threat of arrest that prevented plaintiff from entering a meeting room was sufficient to state a Bane Act claim)."

*Black Lives Matter- Stockton Chapter v. San Joaquin Cty Sheriff's Office*, 398 F.Supp.3d 660, 680-681 (E.D. Cal. 2019). Defendant HARD acknowledges that a threat of arrest is sufficient to establish a Section 52.1 violation. Dkt 115, p. 8:13-28.[1] In their outline describing the elements Plaintiffs need to establish a Section 52.1 violation, Defendant HARD accepts it can either be a "[r]easonable belief of arrest or other violent act by Mr. Hart." *Id*. at p. 9:10-12.

---

[1] At the same time, Defendants state, "Plaintiffs do not define what statements constitute "threats, intimidation or coercion in Bane Act jurisprudence as defined in California or federal courts." Dkt. 115, p. 14:26-29.

Accordingly, in the context of this case, Plaintiffs have established the following in support of their Section 52.1 claim: (1) Defendant Hart's speech threatened Plaintiffs with arrest; (2) Plaintiffs reasonably believed Defendant Hart would carry out the threat and felt intimidated or coerced; and (3) Defendant Hart had the ability to carry out the threat. Dkt. 115, p. 9:10-14.

### 1. Defendant Hart's words and actions constitute threats, intimidation, and coercion.

"A threat is an 'expression of an intent to inflict evil, injury, or damage on another.'" *In re M.S.*, 10 Cal.4th 698, 710 (1995) (*citing U.S. v Orozco-Santillan*, 903 F.2d 1262, 1265 (9th Cir. 1990)). It is undisputed that Defendant Hart knew Plaintiffs had a right to demonstrate outside the FSA. Dkt. 115-1, ¶17. So, when Defendant Hart, accompanied by Defendant Mayfield, threatened Plaintiffs that if they did not relocate to the FSA "it will not be good," Hart was expressing a clear intent to inflict evil, injury, and damage on Plaintiffs. Dkt. 115-4, p. 5:1-2. Additionally, when asked by Plaintiff what would happen if Plaintiffs did not move, Defendant Hart told Plaintiffs, "You'll just have to figure that out when it happens," and, "I don't have any responsibility to tell you." Dkt. 84-39 at 174 (p. 32:3); Dkt. 84-47 (ACSO video) (timestamp 01:14-01:21); Dkt. 84-13 (timestamp 0:23-0:30); Dkt. 84-39 at 174 (p. 32:8-9, 23-13). Defendant Hart added, "You don't have too much of a choice." Dkt. 84-47; Dkt. 84-39 at 175 (p. 34:16-17).

"By its very nature, a statement that 'warns' a person to stop doing something carries the implication of some consequence of a failure to heed that warning." *Brodheim v. Cry*, 584 F.3d 1262, 1270 (9th Cir. 2009). During Defendant Hart's interaction with Plaintiffs, as he stood beside Defendant Mayfield who was in full uniform accompanied by three other Sheriff deputies, Hart made clear to Plaintiffs that the consequence for not relocating to the FSA would "not be good" for them, and that they "don't have too much of a choice." This threat, along with Defendant Hart's warning that Plaintiffs will "just have to figure" out what will happen if they don't move to the FSA, "when it happens," were clear threats that Defendant Hart used to instill fear in Plaintiffs, and to intimidate and coerce them into relocating to the FSA. *See* Dkt. 84-39 at 144 (p. 15:6-7)

1    The fact that Defendant Hart's threats were not explicit is immaterial, as the California

2    Supreme Court recognizes that implied threats constitute true threats; "rigid adherence to the literal

3    meaning of a communication without regard to its reasonable connotations derived from its

4    ambience would render [threat statutes] powerless against the ingenuity of threateners who can

5    instill in the victim's mind as clear an apprehension of impending injury by an implied menace as

6    by a literal threat." *People v. Pineda*, 13 Cal.5th 186, 249 (2022) (*citing U.S. v. Malik*, 16 F.3d 45,

7    50 (2d Cir. 1994)). "The fact that a threat is subtle does not make it less of a threat." *Orozco-*

8    *Santillan*, 903 F.2d at 1265, (*citing U.S. v. Gilbert*, 884 F.2d 454, 457 (9th Cir. 1989)).

9    To determine whether Hart's communication was a threat of arrest, the Court considers what

10   "a reasonable listener would understand, in light of the context and surrounding circumstances" in

11   which the communication was made. *People v. Lowery*, 52 Cal. 4th 419, 427 (2011) (*citing*

12   *Virginia v. Black*. 538 U.S. 343, 359 (2003)). The context and surrounding circumstances in which

13   Defendant Hart threatened Plaintiffs show that Hart was working in concert with police officer

14   Defendant Mayfield, using the threat of arrest to intimidate and coerce Plaintiffs into relinquishing

15   their free speech rights and relocating to the FSA.

16   ### 2.  Defendants Hart and Mayfield worked in concert to violate Plaintiffs' free speech rights, including by threatening arrest.

17   Defendant HARD argues that Plaintiffs have no "factual support that Mr. Hart and Deputy

18   Mayfield 'acted in concert' at the time of the subject incident." Dkt. 115, p. 15:4-26. In fact, just

19   the opposite is true. The common meaning of "concert" is "of agreement in a design or plan."

20   *Jeffers v. U.S.*, 432 U.S. 137, 149 (1977). It "generally connote[s] cooperative action and

21   agreement." *Id.* at 148, fn. 14. That both Defendants Hart and Mayfield were working in concert

22   was obvious to anyone present at the time. Dkt. 113, ¶¶11-13; Dkt. 114¶¶ 11-15; *see also* Dkt. 84-

23   3, ¶¶16-12; Dkt. 84-10, ¶¶18-26. It is even more obvious in light of Defendant Mayfield's video

24   evidence, which includes a private conversation between Defendants Hart, Mayfield, and Rowell

25   Ranch Rodeo's Gary Houts, as well as other Rowell representatives. Dkt. 84-1, ¶32; Dkt. 84-48.

26

27

28

Plaintiffs' Opposition and Reply to Defendants HARD and KEVIN HART
(3:23-cv-01652-VC)

1       The evidence that Defendants Hart and Mayfield were working in concert, (i.e., in

2 agreement and cooperating) to get Plaintiffs to move to the FSA is incontrovertible. It establishes

3 that in Defendants Mayfield's and Hart's joint encounter with Plaintiffs they: (1) spoke privately

4 prior to approaching Plaintiffs, (2) approached Plaintiffs collaboratively; (3) had a clear common

5 goal of attempting to get Plaintiffs to relocate their demonstration to the FSA; and (4) spoke with

6 one voice in furtherance of their goal. Dkt. 84-47; Dkt. 84-34, p. 8:11-13 (ACSO Response No. 7);

7 Dkt. 113, ¶¶11-13; Dkt. 114. ¶10. All of their actions and communications evidenced a prior

8 agreement to work together to get Plaintiffs to relocate to the FSA.

9       On May 20, 2022, Defendant HARD and Rowell Ranch Rodeo set up the FSA where they

10 wanted Plaintiffs to demonstrate, even though Defendants HARD and Hart understood this FSA

11 was not a constitutionally reasonable restriction. Dkt. 115, p. 1:24-26 and Dkt. 115-11, ¶17,

12 respectively. Plaintiffs were engaged in a lawful demonstration outside the FSA when Defendant

13 Mayfield initially approached them, and Mayfield, in concert with the other deputies, confirmed to

14 Plaintiffs their demonstration outside the FSA was fine. *See* Dkt. 115-4, pp. 101-13. Then

15 Defendants Hart and Rowell Ranch Rodeo requested Mayfield to "instruct" Plaintiffs to relocate to

16 the FSA.[2] Defendants Hart and Rowell Ranch Rodeo had a common goal of relocating Plaintiffs to

17 the FSA, and now requested Defendant Mayfield join them in that goal. Defendant Mayfield's

18 subsequent actions establish he agreed.

19       After this agreement, Defendants Hart and Mayfield jointly approached Plaintiffs. *See* Dkt.

20 84-47 (timestamp 0:20-0:40). Defendant Hart, with Mayfield standing next to him, took the lead

21 and told Plaintiffs they had to move to the FSA and "failure to do so will not be good." *Id.*

22 (timestamp 1:07-1:10)*;* Dkt. 84-39 at 174 (p. 32:3). When asked what will happen if they don't

23 comply, Defendant Hart responded, "You'll just have to figure that out when it happens" and "I

24 don't have any responsibility to tell you that." Dkt. 84-1 ¶21; Dkt. 84-13(timestamp 0:11-0:31);

25

---

26 [2] Dkt. 84-34, p. 8:11-13. Although Defendant Hart states in his Declaration that "[a]t no time did I instruct Alameda County Deputies to arrest Plaintiffs nor instruct Alameda County Deputies to threaten Plaintiffs with arrest," Defendant

27 Mayfield never stated Hart instructed him, only "that HARD/Rowell Ranch had **requested** that the Sheriff's Department **instruct the demonstrators** to relocate to the Free Speech Area." Dkt. 115-11, ¶19 (emphasis added).

28
Plaintiffs' Opposition and Reply to Defendants HARD and KEVIN HART
(3:23-cv-01652-VC)

1   Dkt. 84-47 (timestamp 1:10-1:15); Dkt. 84-39 at 174 (p. 32:3, 12-14). At this point, Plaintiff

2   Cuviello, wanting to ascertain what action Defendant Deputy Mayfield would take in reference to

3   what Hart just told him, turned to Mayfield and asked him, "Are you going to arrest us if we don't

4   go there" and Mayfield responded affirmatively, "You could be arrested." Dkt. 84-1, ¶22; Dkt. 89,

5   p. 3:22-24; Dkt. 84-13 (timestamp 0:31-0:35); Dkt. 84-47 (timestamp 1:21-1:24); Dkt. 84-39 at

6   174 (p. 32:17-18, 25). Mayfield's response was in furtherance of Hart's communications and

7   clarified the reason Defendant Hart told Plaintiffs it "won't be good" if they do not relocate to the

8   FSA was because they "could be arrested" if they do not.

9       Defendant Hart did not contradict Defendant Mayfield's threat of arrest—evidence of a

10  shared goal—and in fact piggybacked off it. After Defendant Mayfield told Plaintiffs they "could

11  be arrested," Plaintiff Cuviello explained why they had a free speech right to demonstrate outside

12  the FSA and told Mayfield he did not want to be arrested and to warn him prior to arresting him.

13  Dkt. 84-39 at 174 (p. 32:22-25) and 175 (pp. 35:24-25 –36:1-6). Despite the fact that both

14  Defendants Hart and Mayfield knew Plaintiffs in fact did have a free speech right to demonstrate

15  outside the FSA, Mayfield continued to push his arrest threat by telling Cuviello "I'm not required

16  to tell you whether I will arrest you," at which point Hart, reinforcing and supporting Mayfield,

17  told Plaintiffs "you don't have much of a choice." Dkt. 84-39 at 175 (p. 34:16-17). Hart then told

18  Plaintiffs "you don't have a right to be on this property" and Mayfield, piggybacking off of Hart's

19  communication, falsely told Plaintiffs, "[I]t's a private event." Dkt. 84-39 at 146 (p. 24:4-5 and 13-

20  15); 84-41, p. 198, "Is this event private? No". Hart continued to threaten Plaintiffs by telling them,

21  "you're going to have to leave." Dkt. 84-39 at 175 (p. 36:20-21).

22       "[A] reasonable listener would understand, in light of the context and surrounding

23  circumstances," that Defendants Hart and Mayfield were working in concert to not only threaten

24  Plaintiffs with "arrest" if they did not comply with Hart's demand to relocate to the FSA, but to

25  also threaten Plaintiffs that they could be arrested at any time without warning. *People v. Lowery,*

26  52 Cal.4th at 427 (*citing Virginia*, 538 U.S. at 359). Defendants Hart and Mayfield communicated

27  their threats to Plaintiffs jointly, spoke with one voice in furtherance of a clearly shared goal, and

28

1   their communications piggybacked off of each other in furtherance of their shared goal. Defendants

2   Hart and Mayfield knowingly attempted to interfere with Plaintiffs free speech rights by threats,

3   intimidation and coercion, in violation of Section 52.1.

4         Beyond these conversations, Defendant Mayfield's video depicts his private conversation

5   with Defendant Hart and Rowell Ranch Rodeo representatives, as they stand around and lament

6   Plaintiffs' refusal to move. Dkt. 84-1, ¶32; Dkt. 84-48. Defendant Mayfield's video also shows law

7   enforcement's discussion about their inability to get Plaintiffs to move to the FSA. Dkt. 84-48.

8   Though the first thirty seconds of the video is conspicuously silent, when the sound is turned on,

9   Defendant Mayfield explained why he could not move Plaintiffs to the Free Speech Area, and

10  stated, "It's still an event open to the public," "[s]o that is where we get stuck." Dkt. 84-1, ¶32;

11  Dkt. 84-48 (timestamp 0:33- 0:42); Dkt. 84-39 at 149 (p. 36:7-11). Defendant Gary Houts then told

12  Defendant Mayfield, "I'm not blaming you all," and Mayfield responded, "I know you're not, ***I'm***

13  ***with you guys***." Dkt. 84-1, ¶32 (emphasis added); Dkt. 84-48 (timestamp 0:44-0:46); Dkt. 84-39 at

14  149 (p. 36:12-13). Then, a Rowell Ranch Rodeo representative opined that Plaintiffs were

15  motivated to "push boundaries," and Defendant Mayfield responded in agreement, "That's what

16  they want to do." Dkt. 84-1, ¶32; Dkt. 84-48 (timestamp 0:58-1:01); Dkt. 84-39 at 149 (p. 36:19-

17  22). Then Defendant Hart said, "And they want us to push back," and Defendant Mayfield

18  responded in agreement, "And they want us to push back." Dkt. 84-1, ¶33; Dkt. 84-48 (timestamp

19  1:01-1:06); Dkt. 84-39 at 149-150 (pp. 36-37:24-01).

20        Plaintiffs' motives are simply to advocate against animal abuse, and they utilize their

21  constitutionally protected free speech rights to do so. Dkt. 84-1, ¶¶1-3. That Defendants Hart and

22  Mayfield intended to work in-concert and intentionally interfere with Plaintiffs' free speech rights

23  is clear, and appalling. Defendant Hart's conduct and speech, together with Defendant Mayfield,

24  demonstrates a concerted effort to violate Plaintiffs' rights under Section 52.1.

25

26

27

28

**3.   Plaintiffs objectively felt threatened, intimidated, and coerced by Defendant Hart's threats and conduct.**

The standard for establishing that Defendant Hart threatened, intimidated, or coerced Plaintiffs is an objective one: "whether a reasonable person, standing in the shoes of the plaintiff would have been intimidated by the actions of the defendants and have perceived a threat of [arrest]." Dkt. 89, p.11:8-13, (citing *Richardson v. City of Antioch*, 722 F.Supp.2d 1133, 1147 (N.D. Cal. 2010), citing *Winarto v. Toshiba America Electronics Components, Inc.*, 274 F.3d 1276, 1289-1290 (9th Cir. 2001)). "To hold otherwise 'would be unjust' as it would 'allow a defendant to escape liability for a First Amendment violation merely because an unusually determined plaintiff persists in his protected activity.'" *Brodheim*, 584 F.3d at 1271 (*citing Rhodes v. Robinson*, 408 F. 3d 559, 569 (9th Cir. 2005)).

"[I]ntimidation' involves 'words and conduct that would put an ordinary, reasonable person in fear or apprehension...'" and "both in common and legal usage, can refer to the act of placing someone in fear of injury other than harm to the body." *US v. Cassel*, 408 F.3d 622, 636 (9th Cir. 2005). Because Defendant Hart directed "a threat" to Plaintiffs "with the intent of placing them in fear" of being arrested, this communication constitutes "intimidation." *People v. Chandler*, 60 Cal. 4th 508, 519 (2014) (*citing Virginia*, 538 U.S. at 359-360). Additionally, "[o]ne of the chief evils wrought by a threat is its . . . coercive effect on the victim...," *Cassel*, 408 F.3d at 628, and an officer's threat of arrest can constitute "coercion." *Gasho v. U.S.*, 39 F.3d 1420, 1432 (9th Cir. 1994). Because Defendant Hart's threat of arrest was meant to coerce Plaintiffs into relocating to the FSA it constitutes coercion. "[A] serious threat [is] meant to coerce..." *Virginia*, 538 U.S. at 357.

In the context of a Section 52.1 claim, the only harm plaintiffs needed to suffer for a Bane Act claim is that the "defendant, by the specified improper means (i.e., 'threats, intimidation or coercion'), tried to or did prevent the plaintiff from doing something he or she had the right to do under the law or to force the plaintiff to do something that he or she was not required to do under the law." *Cornell v. City and County of San Francisco*, 17 Cal. App. 5th 766, 791 (2017).

1  Defendants misinterpret the term "harm." Dkt. 115, pp. 11-12. There is no harm requirement

2  beyond what the code defines.

3      Defendant HARD alleges Plaintiff Bobol did not hear "significant" portions of Defendant

4  Hart's statements at the time of the incident. Dkt. 115, p. 12:10-13. Yet, Plaintiff Bolbol never said

5  she did not hear "significant" portions; HARD intentionally mischaracterized her testimony. *See*

6  Suppl. Decl. Bolbol, ¶21, Exh. 42, p. 51:7-53:1. In fact, Plaintiff Bolbol was always aware of what

7  was occurring, and when she stated, "They're just messing with you," to Plaintiff Cuviello, she

8  explained this referred to Plaintiff Cuviello's repeated questioning of whether Defendants would

9  arrest Plaintiffs if they did not move to the FSA. *Id.* at pp. 51:7-53:24. During her deposition,

10  Plaintiff Bolbol explained that she perceived Defendants Hart and Mayfield were, "Playing this

11  word game like Trump plays. Everybody knows what he's saying, but then you can't get him

12  because he didn't say the word, the right, magical word. I mean, there's -- human beings, like when

13  I'm talking to you -- you can get a sense of what I'm trying to say sometimes with just one little

14  word."[3] *Id.* at p. 93:2-23. Further, the fact that Plaintiffs persisted, as "unusually determined

15  plaintiff[s]," and continued to exercise their right to free speech does not negate Defendants HARD

16  and Hart's liability for a Section 52.1 violation. *See Brodheim*, 584 F.3d at 1271.

17      For all the reasons outlined above, there is no question a reasonable person would have

18  perceived Defendant Hart was threatening them with arrest for not relocating to the FSA. A

19  reasonable person would have also perceived that based on Defendant Hart's words and actions, he

20  would in fact arrest them,[4] and would have felt intimidated by the threat of arrest and coerced into

21  relocating to the FSA to avoid being arrested. This evidence disputes Defendants' contention that

22  "Plaintiffs faced no actual harm based on Mr. Hart's actions," citing *In re M.S.* . Dkt. 115, p. 11;

23  (1995) 10 Cal.4th 698, 715.

24  _____

25  [3] During Plaintiff Bolbol's deposition, she stated "I remember basically saying -- Pat kept saying, 'Are you going to
arrest us? I need to know now if you're going to arrest us,' and he said, No. You need to go to the free speech area, and

26  Pat would say, "But if we don't, are you going to arrest us?" He says, "You need to go" and something to the effect of
"You'll find out", or, you know, something like -- you know, not saying, "No, we won't arrest you," but not saying,

27  "Yes, we will arrest you." Suppl. Decl. Bolbol ¶21, Exh. 42, p. 93:6-23.

  [4] Plaintiffs have experienced citizen arrest which in practice is accepted at the officer's discretion.

28
**Plaintiffs' Opposition and Reply to Defendants HARD and KEVIN HART**
**(3:23-cv-01652-VC)**

Accordingly, Plaintiffs have met all the requirements HARD argues they needed to establish a Section 52.1 violation by Defendant Hart; (1) a reasonable belief of arrest … by Mr. Hart; (2) Hart threatened, intimidated or coerced Plaintiffs; and (3) Plaintiffs believed Hart had the ability to arrest them. Dkt 115, p. 9:10-14.

### 4.  Defendant Hart had apparent and actual authority to arrest Plaintiffs, so Plaintiffs fear of arrest was reasonable.

Defendants claim Plaintiffs could not have reasonably feared arrest because, "Mr. Hart had no authority to effectuate an arrest." Dkt. 115, pp. 1:13-14, 4:2-3. This argument misrepresents the requirements of Section 52.1 as well as Mr. Hart's authority. Section 52.1 applies to a person or persons, "whether or not acting under color of law," who "interferes by threat, intimidation, or coercion" with the exercise or enjoyment of an individual's constitutional rights. Civ. Code, sec. 52.1. No threat of arrest is required, but a threat of arrest is evidence of intimidation, threats, and coercion, even if the threat of arrest is hollow. Civ. Code, sec. 52.1(c). Indeed, Section 52.1 applies to a threat of arrest if the defendant had the "apparent authority" to carry out the arrest. Section 52.1 further authorizes the recovery of damages against anyone who aids, incites, or conspires in the offense. *See* Cal. Civ. Code, sec. 52. Together with Defendant Deputy Mayfield, Defendant Hart aided, incited, and conspired in the violation of Plaintiffs' rights under Section 52.1 and is therefore liable for violation of Plaintiffs Section 52.1 rights. Plaintiffs' Section 52.1 claim, moreover, is not predicated on Hart's threat of arrest alone, but the evidence establishes that he possessed the actual and apparent authority to carry out his threat.

First, Defendant Hart had actual authority, as a peace officer, to arrest Plaintiffs. According to HARD's regulations, district park rangers "have the full authority of peace officers" under Penal Code, section 830.31(b). Suppl. Cuviello Decl. ¶14, Ex. 40 (Regulations governing use of parks, recreation areas, and facilities.) Penal Code Section 830.31 gives persons "designated by a local agency as a park ranger" the power to "make arrests pursuant to Section 836." Pen. Code, sec. 830.31. Penal Code Section 836 further provides,

> (a) A peace officer may arrest a person in obedience to a warrant, or, pursuant to the authority granted to him or her by Chapter 4.5 (commencing with Section

830) of Title 3 of Part 2, without a warrant, may arrest a person whenever any of the following circumstances occur: (1) The officer has probable cause to believe that the person to be arrested has committed a public offense in the officer's presence.

Pen. Code., sec. 836. At all times during the Rodeo Event, Defendant Hart wore a shirt that read "Ranger, Hayward Area Recreation and Park District," Dkt. 115-11, ¶3, accompanied by the insignia of a district park ranger badge. Dkt. 84-13. The parties do not dispute that Defendant Hart had the power of a district park ranger. Dkt. 47, ¶9. Accordingly, Defendant Hart had peace officer authority to arrest Plaintiffs on May 20, 2022. *Tobias v. Arteaga*, 996 F.3d 571, 583 (9th Cir. 2021) ("[P]olice officers have a duty to intercede when their fellow officers violate the constitutional rights of a suspect or other citizen.); *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000)). When peace officer Hart heard Defendant Mayfield threaten Plaintiffs with arrest if they do not relocate to the FSA, Hart, based on his understanding this was in violation of Plaintiffs' free speech rights, had a legal duty to intercede and tell Mayfield and Plaintiffs that arrest was not an option.

And Defendant Hart had apparent authority to arrest Plaintiffs during the Rodeo Event. His shirt bore an insignia marking him as law enforcement, and Plaintiffs understood him to have the authority to effectuate a citizen's arrest. Suppl. Cuviello Decl. ¶11. In Plaintiffs' experience, even individuals without peace officer status may affect a "citizens' arrest." Suppl. Cuviello Decl. ¶¶5-10; Suppl. Bolbol Decl. ¶¶5-10; *see also* Pen. Code, sec. 837 ("A private person may arrest another . . . for a public offense committed or attempted in his presence."). Indeed, Plaintiffs have been falsely arrested by citizens' arrest on several occasions where law enforcement did not want to take responsibility for the arrest but would accept, and even encourage, a citizen's arrest of Plaintiffs. Suppl. Cuviello Decl. ¶¶5-10; Suppl. Bolbol Decl. ¶¶5-10; Based on their experience, which Defendants acknowledge, Plaintiffs believed Defendant Hart could arrest them. Suppl. Cuviello Decl. ¶11; Suppl. Bolbol Decl. ¶11. Defendant Hart had actual and apparent authority to arrest Plaintiffs, and their fear of arrest was reasonable.

**5.  Defendant Hart recklessly disregarded Plaintiffs' free speech rights.**

The Bane Act requires that the challenged conduct be "intentional." *Simmons v. Superior Court,* 7 Cal.App.5th 113, 1125 (2016). But in evaluating intentionality, it is irrelevant whether Defendants "recognize[d] the [unlawfulness] of their acts" so long as they acted "in reckless disregard" for Plaintiffs' constitutional rights. *Cornell,* 17 Cal.App.5th at 803-804. Acting with "reckless disregard" means acting "willfully," *People v. Lashley*, 1 Cal.App.4th 938, 949 (1991), which simply means Defendants acted "intentionally" to achieve the desired outcome, regardless of whether they understood the outcome would in-fact violate Plaintiffs' rights. *Anderson v. Ford Motor Co*., 74 Cal.App.5th 946, 972 fn. 15 (2022); *see also Korea Supply Co. v. Lockheed Martin Corp* (2003) 29 Cal.App.4th 1134, 1156-1157 (Intention means that a person's intended action or omission results in an intended result).

Defendants knew the FSA was an unconstitutional restriction on Plaintiffs' free speech rights, so the only purpose for Hart to threaten Plaintiffs for not relocating to the FSA was to intentionally deprive Plaintiffs of their free speech rights. Similar to the plaintiffs in *Cornell,* Defendant Hart doubled down on the obstruction of Plaintiffs' ability to exercise their free speech rights. Accordingly, Defendant Hart acted in reckless disregard of Plaintiffs' free speech rights.

**C.  Plaintiffs are entitled to punitive damages against Defendants HARD.**

Defendants argue that Plaintiffs can only recover punitive damages if they can show Defendant Hart's conduct was "motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Dkt. 115, p. 19:7-19 (citing *Smith v. Wade*, 461 U.S. 30, 56, 103 S.Ct. 1625 (1983). As outlined above, with callous indifference to Plaintiffs' free speech rights, Defendant Hart repeatedly threatened Plaintiffs with arrest if they failed to relocate to the FSA. Defendant Hart knowingly and willfully attempted to violate Plaintiffs' free speech rights. Because Hart knew it was a violation of Plaintiffs' rights, the only logical rational for his motive is that he disliked Plaintiffs' message and was trying to neutralize it. For the foregoing reasons Plaintiffs are entitled to punitive damages against Defendant Hart.

### D.    Defendants HARD and Hart are not entitled to immunity pursuant to Government Code, section 820.2, as Hart's ministerial action is not protected.

Defendant Hart argues he is immune from Plaintiffs' Section 52.1 claim based on Government Code section 820.2 and cites *Conway v. County of Tuolumne*, 231 Cal.App. 4th 1005 (2014) in support. The state appellate court in *Conway* made clear that under Section 820.2, "immune discretionary acts" are distinguished "between 'planning' and 'operational' functions of government." *Id*. at 1014 (*citing Caldwell v. Montoya*, 10 Cal.4th 972, 980, 981 (1995)). "Immunity is reserved for those '*basic policy decisions* [which have] ... been [expressly] committed to coordinate branches of government,' and as to which judicial interference would thus be 'unseemly.'" *Id*. The court clarified, "there is no basis for immunizing lower-level, or `ministerial,' decisions that merely implement a basic policy already formulated." *Id*. at 1015. "Police officers, however, are not immune under section 820.2 when their acts are ministerial or public policy dictates against immunity. Accordingly, courts have determined discretionary immunity does not apply to the following;… deciding to arrest an individual when there was no probable cause to do so." *Id*. (*citing Gillan v. City of San Marino*, 147 Cal. App. 4th 1033, 1047 (2007)). *See also Sharp v. County of Orange*, 871 F.3d 901 (9th Cir. 2017), "As a matter of law, section 820.2 ['discretionary'] immunity does not apply to an officer's decision to detain or arrest a suspect." *Sharp* at 920, (*citing Liberal v. Estrada*, 632 F.3d 1064, 1084 (9th Cir. 2011)).

Defendant Hart's decision to threaten Plaintiffs with arrest if they did not move to the FSA was a "ministerial decision" merely attempting to implement HARD's FSA policy and is not protected by Section 820.2 immunity. "A ministerial duty is an obligation to perform a specific act in a manner prescribed by law whenever a given state of facts exists, without regard to any personal judgment as to the propriety of the act. *Bazan,* No. E075075, 2022 WL 16847782, *13 (*quoting Center for Biological Diversity v. Department of Forestry & Fire Protection*, 232 Cal.App.4th 931, 952 (2014)). Moreover, "even if a public employee's act is classified as 'discretionary,' the employee is not immune if the injury to another results, not from the exercise of discretion to undertake the act, 'but from his negligence in performing it after having made the

1   discretionary decision to do so.'" *Conway*, 231 Cal.App.4th at 1018 (*citing McCorkle v. City of Los*

2   *Angeles*, 70 Cal. 2d 252, 261 (1969)). Accordingly, even if Defendant Hart's interaction with

3   Plaintiffs can be viewed as "discretionary" under Section 820.2, he would still be liable for

4   violation of Section 52.1 for his negligence in knowingly threatening Plaintiffs in violation of their

5   constitutionally protected free speech rights. Dkt. 115-11, ¶17. Defendant Hart is not entitled to

6   immunity under Section 820.2. For the same reasons set forth above, Defendant HARD is not

7   protected through vicarious immunity under Section 815.2(b). Section 815.2(b) provides that "a

8   public entity is not liable for an injury resulting from an act or omission of an employee of the

9   public entity where the employee is immune from liability." Here, because discretionary immunity

10  would be improper as applied to Defendant Hart's actions, Defendant HARD is not shielded from

11  liability.

12          **E.      Defendants are not entitled to qualified immunity under 42 U.S.C. § 1983
                      because they knew the FSA was unconstitutional as a matter of law, and Hart's
13                    threats and conduct were objectively unreasonable.**

14          Qualified immunity is only available where allegedly unlawful official action was grounded

15  in "objective legal reasonableness" of the action, assessed in light of legal rules that were "clearly

16  established" at the time the actions were taken. *Anderson v. Creighton*, 483 U.S. 635 (1987) (*citing*

17  *Harlow v. Fitzgerald,* 457 U.S. 800, 819 (1982)). Further, the right to free speech under the First

18  Amendment to the U.S. Constitution is a "clearly established" right. *Anderson*, 483 U.S. at 639.

19  Defendants should not be shielded from liability by qualified immunity because Hart knowingly

20  sought to enforce unconstitutional restrictions on speech and his behavior was not "objectively

21  reasonable."

22          The "objective legal reasonableness" of the action in question requires that "the contours

23  must be sufficiently clear that a reasonable official would understand that what he is doing violates

24  that right." *Anderson*, 483 U.S. at 639-640. Defendant Hart knew Plaintiffs had a right to

25  demonstrate outside of the FSA. Dkt. 115-1, ¶17. Additionally, the right was "clearly established"

26  at the time that Defendant Hart violated Plaintiffs' First Amendment rights. Dkt. 115, p. 1: 24-26

27

28
Plaintiffs' Opposition and Reply to Defendants HARD and KEVIN HART
(3:23-cv-01652-VC)

1   ("HARD and Hart do not dispute Plaintiffs' argument that the "Free Speech Zone" as constituted

2   on the date of the event was an unreasonable time, place, and manner restriction of free speech.").

3          Defendants misplace reliance on *Grossman v. City of Portland*, because there, an officer

4   objectively, reasonably relied on unconstitutional policies, while the case here presents an

5   unreasonable, threatening, and coercive effort to knowingly "enforce" an unconstitutional

6   restriction on free speech rights. 33 F.3d 1200, 1210 (1994). In *Grossman*, a police officer arrested

7   the plaintiff for violating a permit requirement during a protest demonstration. 33 F.3d at 1202.

8   The permit requirement was later found to be unconstitutional and qualified immunity protected

9   the arresting officer due to his good faith adherence to a law he had no awareness was

10  unconstitutional. *Id.* at 1210.

11         Unlike the officer in *Grossman*, Defendant Hart knew Plaintiffs had a right to demonstrate

12  outside the FSA. Dkt. 115-11, ¶17. Even if he did not know that the FSA was unconstitutional, a

13  reasonable officer in Hart's position, would not engage in the harassment and intimidation as Hart

14  did. This is not a case where an officer relied on policies and carried out orders in an objectively

15  reasonable manner. *Grossman,* 33 F.3d at 1209. Rather, Defendant Hart demonstrated bad faith

16  through his threats, intimidation, and coercion, attempting to force Plaintiffs to move their

17  demonstrations in violation of the First Amendment. The principles of qualified immunity do not

18  allow officers to knowingly violate constitutional rights with threats, intimidation, and coercion,

19  and later shield them from liability on the basis that they were following a law the officer

20  "thought" was constitutional. *Grossman,* 33 F.3d at 1209. Defendants HARD and Hart have no

21  objectively reasonable rationale to suggest that Hart's choices were simply in adherence to the

22  security plan that was created.  Defendants are liable for damages under 42 U.S.C § 1983.

23                  **F.      Defendants must be permanently enjoined from requiring lessees to**
                            **establish a free speech area.**

24         Plaintiffs seek an injunction to prevent Defendant HARD from requiring its lessees to

25  establish a FSA at all times in the future. Dkt. 54, pp. 23- 26. Defendants claim HARD "has

26  satisfactorily remedied any alleged First Amendment violation of time, place and manner

27

28                                                    - 23 -

restrictions regarding the 'free speech area' as it has been moved to a constitutionally proper area near the entrance to the event." Dkt. 115, p. 18:11-13. Although, the constitutionality of the new FSA has not been determined, the evidence in this case establishes there is no need for an FSA. Defendant HARD admits they do not even know why they require the FSA. Dkt. 84-36, p. 4:17-26. Defendants' concession on this point should be dispositive, as HARD advances no government interest in defense of the constitutionality of its restriction on free speech. Dkt. 84-42 at 208-209 (requiring lessees to set up a "marked location for public speech).

To warrant injunctive relief, a plaintiff, "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Klein v. City of San Clemente*, 584 F.3d 1196, 1199 (9th Cir. 2009) (reversing district court's denial of preliminary injunction); *Winter v. Natural Res. Def. Council*, 129 S. Ct. 365, 374 (2008); *see also Am. Trucking Ass'ns, Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009). The court may "balance the elements" of this test, "so long as a certain threshold showing is made on each factor." *Leiva-Perez v. Holder*, 640 F.3d 962, 966 (9th Cir. 2011). Thus, for example, "serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) (quotation marks omitted).  Although Plaintiff "has the general burden of establishing the elements necessary to obtain injunctive relief, the city has the burden of justifying the restriction on speech." *Klein*, 584 F.3d at 1201, (*citing Kaufman v. ACS Systems, Inc.*, 2 Cal.Rptr 3d 296, 313 (2003)).

### 1.  Plaintiffs are likely to succeed on the merits of their claims.

Plaintiffs are likely to succeed on the merits of their claim for injunctive relief. It is undisputed the Rodeo Park is a public forum. Accordingly, the only question for the Court is whether the FSA is a constitutionally reasonable restriction on Plaintiffs free speech rights, i.e., a content neutral restriction, narrowly tailored to serve a significant government interest, providing

alternative channels of communications. *See Comite de Jornaleros v. City of Redondo Beach*, 657 F. 3d 936, 945 (9th Cir. 2011) (*citing Ward v. Rock Against Racism,* 491 U.S. 781, 791 (1989)). "The failure to satisfy any single prong of this test invalidates the requirement." *Kub v. 1-A Agric. Ass'n,* 387 F.3d 850, 858 (9th Cir. 2004) (*citing Grossman v. City of Portland*, 33 F.3d at 1205). "Traditionally and logically, . . . the party seeking to restrict protected speech has the burden of justifying that restriction." *Id*. (*citing Lim v. City of Long beach*, 217 F.3d 1050, 1054 (9th Cir. 2000)).

Defendant HARD cannot satisfy the significant government interest prong, as it admits it does not know why it requires the FSA, which means it has no significant government interest that is served by the FSA. Dkt. 84-10; Dkt. 84-36, p.4 (Responses No. 5,6).  The failure to satisfy any single prong of this test invalidates the requirement." *Kub,* 387 F.3d at 858. Plaintiffs satisfy the first injunction requirement that they are likely to succeed on the merits.

## 2.   Plaintiffs are likely to suffer irreparable harm in the absence of injunctive relief.

Defendants argue that Plaintiffs' request for an injunction is moot. Dkt. 115, p. 18:12-26. But Plaintiffs are likely to suffer irreparable harm in the absence of injunctive relief because restricting their free speech activity to *any* free speech area will result in constitutional infringement of their rights to speak with people directly as they leaflet. Defendants pray that the court trust them to allow Plaintiffs access to patrons, but their prayers are not enforceable. The only enforceable restriction on Defendants' future ability to infringe on Plaintiffs' rights would be a court order enjoining the restriction. Indeed, Defendants make no promises at all with respect to the exact contract requirements that led to Defendants' illegal response to Plaintiffs' free speech activity. Moreover, Defendants' policy proposition is concerning and does not remedy Plaintiffs' injuries in three ways. First, Defendant Hart said an initial reason to approach Plaintiffs was in response to "complaints" of disturbance. Dkt. 115, p. 3:13-14. This vague, ambiguous reason to approach Plaintiffs was in the context that Rowell did not want Plaintiffs demonstrating outside the

1  FSA. Lessees could continue to improperly harass Plaintiffs under the guise of "public safety" or

2  "allegedly unlawful" behavior to keep demonstrators away from direct contact with patrons.

3        Next, by keeping the FSA requirement, lessees are likely to continue reporting to law

4  enforcement that Plaintiffs and those similarly situated will not stay in the FSA which continues

5  the risk that Defendants' rangers will work in concert with law enforcement to harass and violate

6  free speech rights of demonstrators under the pretense of "public safety." And finally, because

7  Defendant HARD requires that lessees to establish a FSA, lessees assume Plaintiffs are required to

8  use it. These interactions constitute ongoing interference with Plaintiffs' free speech rights in two

9  ways: (1) Plaintiffs must stop demonstrating to engage with people attempting to relocate them to

10  the FSA; and (2) sometimes these situations get heated, and often, patrons who walk by and see a

11  conflict between demonstrators and the Rodeo organizers, are less likely to express interest in

12  Plaintiffs' message. "The loss of First Amendment freedoms, for even minimal periods of time,

13  unquestionably constitutes irreparable injury." *Thalheimer v. City of San Diego*, 645 F.3d 1109,

14  1128 (9th Cir. 2011) (*citing Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Plaintiffs satisfy the second

15  injunction requirement that they are likely to suffer irreparable harm.

16             **3.   The balance of equities tips in Plaintiffs' favor for injunctive relief, as
                the public interest is best served by enjoining Defendants' lessee
17             requirement for a Free Speech Area.**

18        Defendants admit that its lease requirement restricting free speech activity to a "marked

19  location for public speech" serves no government interest. Dkt. 84-36, p. 4:17-26. Accordingly, the

20  balance of equities favors Plaintiffs. The public, moreover, has no interest in the establishment of a

21  free speech area that serves no government interest, and the public has a "significant" interest in

22  "upholding First Amendment principles." *Thalheimer*, 645 F. 3d at 1129, (*citing Sammartano v.*

23  *First Judicial District Court, in and for County of Carson City*, 303 F.3d 959, 974 (9th Cir.2002)).

24  Plaintiffs seek an injunction precisely because the time, place, and manner restriction continues to

25  be unreasonable and unconstitutional. Plaintiffs are entitled to a permanent injunction prohibiting

26  Defendants from requiring a free speech area at the Rowell Ranch Rodeo Park.

27

28

Plaintiffs' Opposition and Reply to Defendants HARD and KEVIN HART
(3:23-cv-01652-VC)

### III.     Conclusion

For the foregoing reasons Plaintiffs respectfully request that this Court grant Plaintiffs' Joint Motion for Partial Summary Judgment and deny Defendants' Cross Motion for Summary Judgment or Summary Adjudication.

1

2

Respectfully submitted,

3       DATED: July 29, 2024            */s/ Jessica L. Blome*

4                                        Jessica Blome
                                         Lily R. Rivo
5                                        GREENFIRE LAW, PC
                                         *Attorney for Plaintiff Deniz Bolbol*
6
        DATED: July 29, 2024            *Joseph P. Cuviello*
7                                        JOSEPH P. CUVIELLO
                                         *Plaintiff In Pro Se*
8

9

10

11

12

13

14                        **CERTIFICATE OF SERVICE**

15          I hereby certify that on this 29th day of July 2024 the foregoing was served on all parties

16   through the Court's electronic filing, CM/ECF system in accordance with Rule 5 of the Federal

17   Rules of Civil Procedure.

18                               GREENFIRE LAW, P.C.

19                        By:   */s/ Jessica San Luis*
                                Jessica San Luis
20

21

22

23

24

25

26

27

28
     Plaintiffs' Opposition and Reply to Defendants HARD and KEVIN HART
                          (3:23-cv-01652-VC)