# EXHIBIT 41

# SENATE COMMITTEE ON PUBLIC SAFETY
### Senator Nancy Skinner, Chair
### 2019 - 2020 Regular

| | | | |
|---|---|---|---|
| **Bill No:** | AB 1775 | **Hearing Date:** | August 7, 2020 |
| **Author:** | Jones-Sawyer | | |
| **Version:** | July 31, 2020 | | |
| **Urgency:** | No | **Fiscal:** | Yes |
| **Consultant:** | MK | | |

**Subject:** *False Reports and Harassment*

## HISTORY

Source: Author

Prior Legislation: AB 1769 (Rodriguez) Chapter 96, Stats. 2016
SB 333 (Lieu) Chapter 284, Stats. 2013
AB 538 (Arambula) 2009-2010, Vetoed
AB 2741 (Cannella) Chapter 262, Stats. 1994
AB 2225 (Mountjoy) – Chapter 227, Stats. 2006
SB 1707 (Aanestad) – Chapter 51, Stats. 2004
SB 2057 (O'Connell) – Chapter 521, Stats. 2002

Support: City of Alameda; Asian Law Alliance; California Chapter National Emergency Number Association (CALNENA); California Environmental Justice Alliance; California Nurses Association; California State Sheriffs' Association; California Teachers Association; City of Thousand Oaks; League of California Cities; National Association of Social Workers, California Chapter; Riverside Sheriffs' Association

Opposition: None known

Assembly Floor Vote: Not Relevant

## PURPOSE

*The purpose of this bill is to make a number of changes in criminal and civil law to discourage individuals from using 911 or other communications with law enforcement to harass a person because that person belongs to a protected class.*

*Existing law* provides that a privileged publication or broadcast is one made in the proper discharge of an official duty or in a legislative, judicial or other official proceeding or in the initiation or course of any other proceeding authorized by law with some exceptions. (Civil Code Section 47(a)(b))

*This bill* adds to the exceptions to privileged communications by stating that this section does not make privileged any communication between a person and a law enforcement agency in which the person makes a false report that another person has committed, or is in the act of committing

000245

a criminal act or is engaged in an activity requiring law enforcement intervention, knowing that the report is false or with reckless disregard for the truth or falsity of the report.

*Existing law* provides, in the Ralph Civil Rights Act of 1976, that all persons within California have the right to be free from any violence, or intimidation by threat of violence committed against their persons or property because of political affiliations or on account of any specified characteristic, or position in a labor dispute or because another person perceives them to have one or more of those characteristics. (Civil Code Section 51.7(b))

*This bill* provides that "intimidation by threat of violence" includes, but is not limited to, making or threatening to make a claim or report to a peace officers or law enforcement agency that falsely alleges that another person has engaged in unlawful activity or in an activity that requires law enforcement intervention, knowing that the claim of report is false, or with reckless disregard for the truth or falsity of the claim or report.

*Existing law* defines a member of a protected class, for purposes of hate crimes, as the victim's actual or perceived race, color, ethnicity, religion, nationality, country of origin, ancestry, disability, gender, gender identity, gender expression, or sexual orientation. (Penal Code Sections 422.55 and 422.85)

E*xisting law* prohibits the use of a telephone for the purpose of annoying or harassing an individual through the 911 line. (Penal Code Section 653x(a).)

*Existing law* states that the intent to annoy or harass is established by proof of repeated calls that are unreasonable under the circumstances. (Penal Code Section 653x(b).)

*Existing law* states that anyone guilty of using the 911 line to annoy or harass is responsible for all reasonable costs incurred by the unnecessary emergency response. (Penal Code Section 653x(c).)

*Existing law* states that anyone who knowingly uses the 911 telephone system for any reason other than because of an emergency is guilty of an infraction, punishable by a warning for a first offense, and fines for subsequent offenses. (Penal Code Section 653y)

*This bill* provides that knowingly allowing the use of or suing the 911 emergency system for the purpose of harassing another is a crime that is punishable as follows:

- For a first violation an infraction punishable by a $250 fine or as a misdemeanor punishable by up to 6 months in the county jail, a fine of up to $1,000 or both.
- For a second or subsequent violation as a misdemeanor punishable by up to six months in the county jail, a fine up to $1,000 or both.

*This bill* provides that if a person knowingly allows the use of or uses the 911 system for the purpose of hassling another person who is part of a protected class, the person who commits the act is guilty of a misdemeanor and punishable by up to one year in a county jail, a fine of not less than $500 nor more than $2,000 or both imprisonment and fine.

*This bill* provides that this section does not apply to uses of the 911 emergency system by a person with an intellectual disability or other mental disability that makes it difficult or impossible for the person to understand the potential consequences of their actions.

## COMMENTS

### 1. Need for This Bill

According to the author:

> There has been increasing media coverage of so called "living while black" stories, where people of color are viewed with suspicion, subjected to 911 calls, and ultimately confronted by police officers or armed civilians for simply existing in public spaces. Although video and social media coverage of these incidents have proliferated, the individual callers rarely face legal consequences, while the person of color faces the harm and stress of being racially profiled and being forced to justify their presence in a public or private space.
>
> The 911 emergency system has long been used to harass people of color, and this bill seeks to create a disincentive for this weaponizing of our emergency system. Using the emergency system in this way is not only a waste of taxpayer resources, but also puts law enforcement in danger by requiring them to arrive at a tense, racially charged situation in which they would not otherwise intervene. This legislation facilitates stronger punitive measures for those who refuse to eradicate their own conscious or subconscious racial biases and reprehensibly utilize law enforcement to persecute other people.
>
> AB 1775 addresses the need to deter discriminatory unlawful calls to law enforcement, and the imperative to prevent individuals from using emergency services as their "personal concierge" to harass others. Additionally, this legislation balances California's commitment to decreasing incarceration rates, by imposing higher monetary fines instead of imprisoning violators for a draconian amount of time.

### 2. 911 Generally

The 911 telephone system was established as the primary emergency telephone number in California by Chapter 1005, Statutes of 1972, and is paid for by a statewide surcharge (statutorily capped at 0.75%) on each telephone bill.

### 3. Penalties for harassing calls

As noted in the author's statement, there have been a number of media reports on people calling 911 and making a false claim to harass a person, and a number of these incidents it appears by the language used that the harassment was in part because the person was a member of a protected class.

This bill would make it a misdemeanor to knowingly use the 911 system to harass another person because they have a perceived characteristic of a person who belongs to a protected class. If it is not clear that the harassment because of the victim's membership in a protected class, the penalty for the harassment would be a "wobblette" for a first violation, an infraction or a 6 month misdemeanor, and a misdemeanor for the second offense.

**4. Civil provisions**

This bill also amends a Civil Code section on privileged communications to make it clear that making a false report to law enforcement stating that another is committing an act that needs intervention is not a privileged communication.

It also amends the Ralph Civil Rights Act to make it clear that "intimidation by threat of violence" includes making or threatening to make a report to a law enforcement agency that falsely alleges that another person is engaged in unlawful activity.

This bill would ordinarily have been double-referred to the Senate Judiciary Committee, but because of COVID-19 we are the only Committee hearing the bill. The following is a comment the Senate Judiciary Committee is including in this analysis:

> Among other things, this bill provides a civil remedy for victims of deliberately false police reports, provisions that are in the Senate Judiciary Committee's jurisdiction. Under existing law, such victims may sue for defamation or intentional infliction of emotional distress. However, the defendant can raise the defense that the report is privileged under Civil Code section 47, which "gives all persons the right to report crimes to the police, the local prosecutor or an appropriate regulatory agency, even if the report is made in bad faith." (*Cabesuela v. Browning-Ferris Indus.* (1998) 68 Cal.App.4th 101, 112, citing cases describing the privilege as absolute.) To preclude this defense, the bill would specifically provide that deliberately false police reports are not privileged.

> The bill enables victims of false police reports to seek redress using an existing statutory framework, the Ralph Civil Rights Act of 1976 (Act), which "provide[s] a civil remedy for hate crimes." (*D.C. v. Harvard-Westlake School* (2009) 176 Cal.App.4th 836, 844.) The Act provides that all persons in this state have the right to be free from any violence, or intimidation by threat of violence, committed against their persons or property because of political affiliation, or on account of specified characteristics, including sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, sexual orientation, citizenship, primary language, or immigration status. (Civ. Code § 51.7(a).) Civil Code section 52(b) provides a civil cause of action for a denial of these rights, which may be brought by the victim or the Attorney General, district attorney, or city attorney.

> This bill provides that "intimidation by threat of violence" under the Act includes making or threatening to make a false report to police alleging that another person has engaged in unlawful activity that requires law enforcement intervention, knowing that the claim or report is false, or with reckless disregard for the truth or falsity of the claim or report. This bill thus establishes in civil law a deterrent against 911 calls predicated on discriminatory animus. This is an important step in addressing the problem of over-policing and excessive use of force in communities of color.

**5. Arguments in Support**

In support the California State Sheriffs' Association states:

> Existing law, Penal Code Section 653y, provides that it is an infraction for someone to knowingly use the 9-1-1 emergency system for any reason other than to report an emergency. An individual receives a written warning for their first violation of this provision and the maximum penalty is a $250 fine for a fourth or subsequent violation.
>
> It is important that every call made to 9-1-1 is for a valid purpose to avoid inappropriate dispatch of first responders. Further, ==addressing situations where emergency resources are diverted to harass others is a worthy public policy.== AB 1775 discourages individuals from calling 9-1-1 to harass another.

In support the National Association of Social Workers state:

> While existing law penalizes false reports made to law enforcement and emergency services, the 911 emergency system has long been used to harass people of color. This bill seeks to create a disincentive for this weaponization of our emergency system, by enhancing the penalty for placing a fraudulent 911 call against a person of a protected class.
>
> Unfortunately, we have seen increased reports of discriminatory 911 calls. Recently, a white woman called 911 to report an African American bird watcher who had told her that by law, she should have her dog on a leash. She responded by calling 911 and claiming that an African American man was threatening her. She called fully knowing she was using her white privilege, which made the report even more disturbing.
>
> Abusing the emergency system in this way is not only a waste of taxpayer resources, but also puts law enforcement and emergency personnel in danger by requiring them to arrive at a tense, racially-charged situation in which they would not otherwise intervene. This legislation facilitates stronger punitive measures for those who refuse to eradicate their own racial biases and reprehensibly utilize law enforcement to persecute others.
>
> These false reports have contributed to the criminalization of Black and Brown communities and have contributed to the stress already felt in these communities. Barbequing, walking down the street, driving through a community, and bird watching should not be the subject of 911 calls, but they have been.
>
> AB 1775 carefully balances the need to avoid suppressing bonafide emergency calls with the imperative to prevent individuals from using emergency services as their personal concierge to harass law abiding citizens. Additionally, by imposing higher monetary fines instead of imprisoning violators for a draconian amount of time, this bill avoids exacerbating our state's staggering incarceration rates.

-- END –