Jessica L. Blome (Cal. Bar No. 314898)
Lily A. Rivo (Cal. Bar No. 242688)
GREENFIRE LAW, PC
2748 Adeline Street, Suite A
Berkeley, CA 94703
Ph/Fx: (510) 900-9502
Email: jblome@greenfirelaw.com
         lrivo@greenfirelaw.com

*Attorneys for Plaintiff Deniz Bolbol*

JOSEPH P. CUVIELLO
205 De Anza Blvd., #125
San Mateo, CA 94402
Telephone: (650) 315-3776
Email: pcuvie@gmail.com

*Plaintiff in Pro Se*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH P. CUVIELLO and DENIZ BOLBOL, individually,<br><br>Plaintiffs<br><br>v.<br><br>ROWELL RANCH RODEO, INC., et al.,<br><br>Defendants | Case No. 3:23-cv-01652-VC<br><br>**PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO ROWELL RANCH RODEO's CROSS-MOTION FOR SUMMARY JUDGMENT AND REPLY TO OPPOSITION TO PLAINTIFFS' JOINT MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Date:        August 15, 2024<br>Time:        10:00 a.m.<br>Judge:       Hon. Vince Chhabria<br>Courtroom:   5, 17th Floor |

## Table of Contents

I.     Introduction ............................................................................................- 4 -

II.    Plaintiffs Response to Defendants' Evidence and Objections ............................- 4 -

       A.    Response to Section I(A) ...............................................................- 4 -

       B.    Response to Section II(B) .............................................................- 5 -

       C.    Response to Section II(C) ..............................................................- 9 -

III.   Argument ................................................................................................- 9 -

       A.    Defendants attempted or did interfere with Plaintiffs' rights in violation of the Bane Act, Civil Code, section 52.1. ............................................- 9 -

             1.    Defendant George Ferris intended to interfere with Plaintiff Bolbol's constitutionally protected free speech activity in violation of Section 52.1. - 10 -

             2.    Defendant Gary Houts intended to interfere with Plaintiff Cuviello's constitutionally protected free speech activity in violation of Section 52.1. - 14 -

       B.    Defendant Rowell Ranch Rodeo is liable for damages under the Ralph Act, Civil Code, section 51.7. ...............................................................- 16 -

             1.    Defendant Houts made a false report to law enforcement in reckless disregard for the truth in violation of Section 51.7. .....................................- 16 -

             2.    Defendant Houts used violence against Plaintiff Cuviello by ramming his electric utility vehicle into him in violation of Section 51.7......................- 19 -

       C.    Defendant Rowell Ranch Rodeo agents George Ferris and Gary Houts assaulted and battered Plaintiffs. .................................................................- 20 -

IV.    Conclusion .............................................................................................- 22 -

1

2

**Table of Authorities**

3

**Cases**

*Anderson v. Ford Motor Co.*, 74 Cal.App.5th 946 (2022).............................................- 11 -

*Ashcraft v. King,* 228 Cal.App.3d 604 (1991) .............................................................- 21 -

*Austin B. v. Escondido Union School Dist.*, 149 Cal.App.4th 860 (2007) ....................- 10 -

*Brodheim v. Cry*, 584 F.3d 1262 (9th Cir. 2009) .........................................................- 10 -

*Campbell v. Feld Entertainment, Inc.*, 75 F.Supp.3d 1193 (2014)...............................- 16 -

*In re MS*, 10 Cal.4th 698 (1995) ............................................................... - 15 -, - 16 -

*Kaplan v. Mamelak* 162 Cal.App.4th 637 (2008) ........................................................- 20 -

*Kiseskey v. Carpenters' Trust for Southern California*, 144 Cal.App.3d 222 (1983) ...................- 21 -

*Korea Supply Co. v. Lockheed Martin Corp*, 29 Cal.App.4th1134, 1156-1157 (2003) ...............- 11 -

*People v. Lashley*, 1 Cal.App.4th 938 (1991) ..............................................................- 11 -

*People v. Lindberg*, 45 Cal.4th 1 (2008)....................................................................- 15 -

*Plummer v. City of Richmond*, 2015 U.S.Dist.LEXIS 43268
    (N.D.Cal. Apr. 1, 2015, No. 14-cv-03962-VC) ......................................................- 13 -

*Rains v. Superior Court,* 150 Cal.App.3d 933 (1984) ..................................................- 21 -

*Reese v. County of Sacramento*, 888 F.3d 1030 (9th Cir. 2018)....................................- 11 -

*Rhodes v. Robinson*, 408 F. 3d 559 (9th Cir. 2005)....................................................- 10 -

*Richardson v. City of Antioch*, 722 F.Supp.2d 1133 (N.D. Cal. 2010).........................- 10 -

*Venegas v. County of Los Angeles*, 32 Cal.4th 820 (2004).............................................- 10 -

*Winarto v. Toshiba America Electronics Components, Inc.*, 274 F.3d 1276 (9th Cir. 2001)........- 10 -

**Statutes**

Civil Code, section 52.1 ..................................................................................*passim* -

Civil Code, section 57.1 ..................................................................................*passim* -

**Other Authorities**

"Violent," Merriam-Webster.com, available at https://www.merriam-
    webster.com/dictionary/violent (last visited July 29, 2024) .....................................- 20 -

CACI No. 1300 ...........................................................................................- 20 -

**Constitutional Provisions**

California Constitution, Article I, Section 2(a)...........................................................- 4 -

Plaintiffs' Opposition and Reply to Defendant Rowell Ranch Rodeo
(3:23-cv-01652-VC)

**Memorandum of Points and Authorities**

## I.     Introduction

As to Defendants Rowell Ranch Rodeo, Inc. and Doe Defendants 1 and 2 (now known to Plaintiffs to be Gary Houts and George Ferris, Dkt. 84-1 ¶¶15, 35), Plaintiffs Joseph P. Cuviello and Deniz Bolbol jointly seek summary judgment on their First Cause of Action (Assault); Second Cause of Action (Battery); Third Cause of Action (Violation of Civil Code, section 52.1(c)); Fourth Cause of Action (Violation of Civil Code, section 51.7); and their Fifth Cause of Action (Violation of Article I, Section 2(a) of the California Constitution and Civil Code, section 52.1). Defendants cross-move for summary judgment, but do not specify what relief they seek. Dkt. 116. Because the undisputed, uncontroverted, video-documented facts at issue require a finding for Plaintiffs as a matter of law on these five claims, this Court should enter judgment in Plaintiffs' favor on their First, Second, Third, Fourth, and Fifth Causes of Action.

## II.     Plaintiffs Response to Defendants' Evidence and Objections

### A.     Response to Section I(A)

Plaintiffs do not generally dispute the facts alleged in Defendants' "Undisputed Material Facts," Dkt. 116, § II (A), however, some of Defendants' "facts" misstate the evidence or present conclusions of law and argument as factual representations. Other facts are unsupported by citations to evidence of any sort. Plaintiffs, therefore, lodge the following formal objections:

- On page 7, line 5, Defendants characterize a conversation between Gary Houts and Plaintiffs as "antagonistic back-and-forth."

  This sentence is attributed to Plaintiffs' testimony and video evidence. Dkt. 116, p. 7:6-8. No speakers make these statements. Plaintiffs object for lack of foundation under FRE 602 and 901, because they are argumentative under FRE 403, and because the video evidence speaks for itself.

- On page 7, lines 21-22 and 26-27, Defendants claim, that Plaintiff Cuviello testified during his deposition that "he was not afraid of arrest on May 20, 2021, after having interacted with Deputy Mayfield and Hart." And "Plaintiff Cuviello was not afraid of arrest."

Plaintiff Cuviello did not testify as presented. Plaintiffs object to these statements for misstating the evidence under FRE 403, because they represent incomplete evidence under FRE 106, and because they are argumentative in violation of FRE 403.

- On page 8, lines 6-28 through page 9, lines 1-3, Defendants attempt to summarize Plaintiffs' video evidence but uses argument to characterize the documented interaction between George Ferris and Plaintiffs Cuviello and Bolbol.

Plaintiffs object to the argument contained in this paragraph for lack of foundation under FRE 602 and 901, because it misstates the evidence under FRE 403, and because the evidence speaks for itself.

- On page 9, Defendants transcribe Plaintiffs' video evidence, but insert additions to the transcription with bracketed information that is not attributed to any evidence or speaker.

Plaintiffs object to the bracketed information contained in these transcriptions as argumentative in violation of FRE 403, for lack of foundation under FRE 602 and 901, and because the evidence speaks for itself.

- On page 9, lines 19-22, Defendants state that Gary Houts made "imperceptible contact with Plaintiff Cuviello," and Plaintiff Cuviello's reaction "does not indicate any fear or intimidation."

Defendants attribute these statements and characterizations to Plaintiff Cuviello and his video evidence, but Plaintiff Cuviello did not make these statements. Plaintiffs object to these statements as argumentative in violation of FRE 403, for statement for lack of foundation under FRE 602 and 901, and because the evidence speaks for itself.

- On page 10, lines 2-5, Defendants include a paragraph of information without attribution to evidence of any sort.

Unattributed evidence may not be considered for lack of foundation under FRE 602 and 901.

### B.    Response to Section II(B)

As a preliminary matter, nothing in the Federal Rules of Evidence suggest that a deposed witness relinquishes their right to testify at trial, including through affidavits submitted in support of summary judgment briefing. FRE 32. Indeed, much to the contrary, an available witness's deposition testimony may only be used in limited circumstances. FRE 32, 804(b)(1). On page 10,

1   lines 10-11, Defendants state that Plaintiffs' declarations conflict with their deposition testimony,

2   but they point to no specific contradictions. Dkts. 89, 115.

3          Next, due to an inadvertent filing error, Plaintiffs did not file the Declarations of Robyn

4   Newkirk or Michael Sage when they filed their Motion for Summary Judgment, though they used

5   them for evidentiary support in their briefing. Dkt. 84. Upon learning of the error, Plaintiffs

6   immediately filed these declarations on June 28, 2024. Dkts. 113, 114. Because Defendants

7   obtained an extension from the court to file their summary judgment papers three days late on July

8   2, Defendants had time to review the declarations when preparing their opposition briefing.

9   Plaintiffs also incorporate the declarations filed at Docket Numbers 113 and 114 as though these

10  declarations are being filed in support of their Opposition to Defendants' Cross-Motion for

11  Summary Judgment.

12         Finally, Plaintiffs respond to Defendants list of objections and disputes of Plaintiffs'

13  Statement of Undisputed, Material Facts (pages 10:15-15:8) as follows:

14         1.   Plaintiffs Cuviello and Bolbol are not offering testimony as expert witnesses. These

15  statements are offered based on their personal knowledge and experience under FRE 602 and 701,

16  and are relevant under FRE 401, as Defendant HARD recognizes Plaintiffs are "extremely

17  experienced demonstrators." Dkt.115, p. 14:14.

18         2.   The Declaration of Jessica Blome includes a description of Exhibit 22 at paragraphs 1-2,

19  and Exhibit 22 is filed at Dkt. 84-27.

20         3.   The Declaration of Jessica Blome includes a description of Exhibit 22 at paragraphs 1-2,

21  and Exhibit 22 is filed at Dkt. 84-27.

22         4.   No dispute.

23         5.   Plaintiffs offer this evidence based on their personal knowledge and experience under

24  FRE 602 and 701. Their testimony is evidence, and Defendants present no evidence to contradict it.

25         6.   Plaintiffs Cuviello and Bolbol are not offering testimony as expert witnesses. These

26  statements are offered based on their personal knowledge and experience under FRE 602 and 701,

27

28
Plaintiffs' Opposition and Reply to Defendant Rowell Ranch Rodeo
(3:23-cv-01652-VC)

1   and are relevant under FRE 401, as Defendant HARD recognized Plaintiffs are "extremely

2   experienced demonstrators." Dkt.115, p. 14:14.

3       7.   Plaintiffs exhibits reference what is stated. At page 000173 (pdf p. 34), the transcript of

4   audio prepared by Defendant Alameda County Sherriff's Office (ACSO) and produced by Plaintiffs

5   as Exhibit 33B, Dkt. 84-39, Defendant Gary Houts states, "If you want to do this, we have an area

6   set up for you up there. The free speech area's up there not here." He also states, "You're not in the

7   area." Dkt. 84-39 at 000173 (pdf p. 26:19-27:6); Dkt. 84-3, ¶15, Exh. 1.

8       8.   Defendants' characterization of Plaintiff Cuviello's deposition testimony misstates the

9   evidence under FRE 403, represents incomplete evidence under FRE 106,[1] and is argumentative in

10  violation of FRE 403. Moreover, the statement "Rowell Ranch disputes this alleged fact because

11  Plaintiffs continued to protest for 2 more days which contradicts their claim of feeling intimidated,"

12  because it misstates the evidence under FRE 403, represents incomplete evidence under FRE 106,

13  and is argumentative in violation of FRE 403. This statement, moreover, is unattributed, so it lacks

14  foundation under FRE 602 and 901.

15      9.   Plaintiffs restate and incorporate their response to Defendants' objection to Paragraph 8

16  as their response to Defendants' objection to Paragraph 9 as though fully set forth herein.

17      10. Plaintiffs restate and incorporate their response to Defendants' objection to Paragraph 8

18  as their response to Defendants' objection to Paragraph 9 as though fully set forth herein.

19      11. The video evidence speaks for itself. Each of Defendant Houts's interactions with

20  Plaintiffs is relevant.

21      12. Plaintiffs Cuviello and Bolbol are not offering testimony as expert witnesses under 701.

22  These statements are offered based on their personal knowledge and experience under FRE 602.

23  Plaintiffs' video evidence speaks for itself and is relevant under FRE 402.

---

[1] Defendants' citation of Plaintiff Cuviello's deposition statement is a blatant misrepresentation. Exhibit 1 to Declaration of Osmaan Khan skips from deposition page 87 (Dkt. 116-1, p. 6) to page 92 (116-1, p. 7). Plaintiff's deposition statement that he did not believe he would be arrested was in the context of Mayfield having completed his call to his Sergeant On Duty and, thereafter, ceased to threaten Plaintiffs with arrest. Obviously, without a threat of arrest there would be no fear of arrest. Defendants' evidence is incomplete under FRE 106.

13. Plaintiffs restate and incorporate their response to Defendants' objection to Paragraph 12 as their response to Defendants' objection to Paragraph 13 as though fully set forth herein.

14. Plaintiffs restate and incorporate their response to Defendants' objection to Paragraph 12 as their response to Defendants' objection to Paragraph 14 as though fully set forth herein.

15. Defendants' dispute is based on unattributed, argumentative characterizations of video evidence, which speaks for itself. Plaintiffs object to Defendants' statements because they misstate the evidence under FRE 403, submit incomplete evidence under FRE 106, and are argumentative in violation of FRE 403. The statements, moreover, are unattributed, so they lack foundation under FRE 602 and 901.

16. Plaintiffs Cuviello and Bolbol are not offering testimony as expert witnesses. These statements are offered based on their personal knowledge and experience under FRE 602. Plaintiffs' video evidence speaks for itself.

17. Defendants' dispute is based on unattributed, argumentative characterizations of video evidence, which speaks for itself. Plaintiffs object to Defendants' statements because they misstate the evidence under FRE 403, submit incomplete evidence under FRE 106, and are argumentative in violation of FRE 403. The statements, moreover, are unattributed, so they lack foundation under FRE 602 and 901.

18. Plaintiffs Cuviello and Bolbol are not offering testimony as expert witnesses. These statements are offered based on their personal knowledge and experience. The declarations of fact witnesses are relevant to corroborate Plaintiffs' and their colleagues' feelings of intimidation and fear during the Rodeo Event. Plaintiffs note that Defendants took the depositions of Robyn Newkirk and Michael Sage because they presumably believed their witness accounts would be relevant.

19. Plaintiffs' concern for future protests and motivation to file this lawsuit go to the elements for an injunction and are relevant. Plaintiffs Cuviello and Bolbol are not offering testimony as expert witnesses. These statements are offered based on their personal knowledge and experience. Plaintiffs cannot ascertain from Defendants' objection which statement in Paragraph 19 reflects a statement of the law.

**C.      Response to Section II(C)**

Plaintiffs respond to Defendants list of objections and disputed facts (pages 15:11-16:6) as follows:

1.      Paragraph 1 contains argument regarding the content of Plaintiffs' video evidence in Exhibit 28 and ACSO transcriptions of Defendant Houts' call to ACSO Dispatch and the resulting internal law enforcement communications. Dkts. 84-38, 84-39. This paragraph does not contain any new facts supported by evidence, so to the extent it is offered as "additional fact," these statements lack foundation under FRE 602 and 901.

2.      Plaintiffs object to the first statement contained in Paragraph 2 because it misstates the evidence under FRE 403, represents incomplete evidence under FRE 106, and is argumentative in violation of FRE 403.

3.      Paragraph 3 contains argument regarding the content of Plaintiffs' video evidence in Exhibit 28. This paragraph does not contain any new facts supported by evidence, so to the extent it is offered as "additional facts," these statements lack foundation under FRE 602 and 901.

4.      Paragraph 4 lacks attribution to evidence of any sort. To the extent it is offered as "additional facts," these statements lack foundation under FRE 602 and 901.

5.      The first sentence of Paragraph 5 lacks attribution to evidence of any sort.

**III.      Argument**

**A.      Defendants attempted or did interfere with Plaintiffs' rights in violation of the Bane Act, Civil Code, section 52.1.**

Defendants Rowell Ranch Rodeo, Gary Houts, and George Ferris do not dispute that Rodeo Park is a public forum or that Plaintiffs were engaged in constitutionally protected free speech activities at the Rodeo Event on May 20 and 21, 2022. *See generally* Dkt. 116. Defendants HARD and Kevin Hart, moreover, in their Cross-Motion for Summary Judgment, admit that their Free Speech Area constitutes an unreasonable—and therefore illegal—time, place, and manner restriction on free speech under California and U.S. Constitutions. Dkt. 115, p. 1:24-26 ("HARD and Hart do not dispute Plaintiffs' argument that the "Free Speech Zone" as constituted on the date

1   of the event was an unreasonable time, place, and manner restriction of free speech."). Once a

2   constitutionally protected right has been established, Section 52.1 requires a showing that the

3   defendant, "by the specified improper means of threats, intimidation, or coercion, tried to or did

4   prevent the plaintiff from doing something he or she had the right to do under the law or to force the

5   plaintiff to do something that he or she was not required to do under the law." *Austin B. v.*

6   *Escondido Union School Dist.*, 149 Cal.App.4th 860, 883 (2007). The word "interferes" means

7   violates. *Id.* "[A] defendant is liable if they tried to or did interfere with a plaintiff's constitutional

8   rights." *Austin B.*, 1149 Cal.App.4th at 883 (citing *Venegas v. County of Los Angeles*, 32 Cal.4th

9   820, 841-843 (2004)). The court must evaluate alleged intimidation to determine "whether a

10  reasonable person, standing in the shoes of the plaintiff would have been intimidated by the actions

11  of the defendants and have perceived a threat." *Richardson v. City of Antioch*, 722 F.Supp.2d 1133,

12  1147 (N.D. Cal. 2010) (citing *Winarto v. Toshiba America Electronics Components, Inc.*, 274 F.3d

13  1276, 1289-1290 (9th Cir. 2001)). "To hold otherwise 'would be unjust' as it would 'allow a

14  defendant to escape liability for a First Amendment violation merely because an unusually

15  determined plaintiff persists in his protected activity.'" *Brodheim v. Cry*, 584 F.3d 1262, 1271 (9th

16  Cir. 2009)(citing *Rhodes v. Robinson*, 408 F. 3d 559, 569 (9th Cir. 2005)).

17          Therefore, the Court must decide whether Defendant Rowell Ranch Rodeo, through its

18  agents Defendants George Ferris and Gary Houts, used threats, intimidation, or coercion in an

19  attempt to interfere with Plaintiffs' constitutionally protected free speech activity in violation of the

20  Bane Act, Civil Code, section 52.1.

21                  **1.  Defendant George Ferris intended to interfere with Plaintiff Bolbol's**
                        **constitutionally protected free speech activity in violation of Section 52.1.**
22

23          The Bane Act requires that the challenged conduct be "intentional." *Simmons v. Superior*

24  *Court,* 7 Cal.App.5th 113, 1125 (2016). But in evaluating intentionality, it is irrelevant whether

25  Defendants "recognize[d] the [unlawfulness] of their acts" so long as they acted "in reckless

26  disregard" for Plaintiffs' constitutional rights. *Cornell v. City and County of San Francisco*, 17

27  Cal.App.5th 766, 803-804 (2017). Acting with "reckless disregard" means acting "willfully,"

28

1   *People v. Lashley*, 1 Cal.App.4th 938, 949 (1991), which simply means Defendants acted

2   "intentionally" to achieve the desired outcome, regardless of whether they understood the outcome

3   would in-fact violate Plaintiffs' rights. *Anderson v. Ford Motor Co*., 74 Cal.App.5th 946, 972, fn.

4   15 (2022); *see also Korea Supply Co. v. Lockheed Martin Corp*, 29 Cal.App.4th1134, 1156-1157

5   (2003) (Intention means that a person's intended action or omission results in an intended result).

6   With respect to Defendants argument that the Bane Act requires "specific intent," Dkt. 116, p.

7   18:12-13, the court in *Reese* found that "it is not necessary for the defendants to have been 'thinking

8   in constitutional *or legal terms* at the time of the incidents, because a reckless disregard for a

9   person's constitutional rights is evidence of a specific intent to deprive that person of those rights.'"

10  *Reese v. County of Sacramento*, 888 F. 3d 1030, 1045 (9th Cir. 2018)). The only evidence in the

11  record that the Court could use to establish Defendant Ferris's intent has been submitted by

12  Plaintiffs. Indeed, Defendants Rowell Ranch Rodeo and Defendant Ferris did not submit a

13  declaration on his behalf, in which he could have explained his abhorrent behavior. Accordingly,

14  Plaintiffs' video evidence is the only evidence, and it demonstrates that Defendant Ferris repeatedly

15  blocked Plaintiff Bolbol as she attempted to enter the black lot of the Rodeo Park while holding her

16  banners and leaflets to protest the rodeo. Dkts. 84-1, ¶35, 84-8, 84-17.

17      To be sure, Defendant Rowell Ranch admits that Defendant Ferris intentionally "blocked"

18  both Plaintiffs Cuviello and Bolbol, and "yelled" and "shouted" at Plaintiff Bolbol. Dkt. 116,

19  p.8:19-23. However, Defendant Rowell Rodeo argues that there is no evidence that Defendant

20  Ferris knew Plaintiffs or what they were doing. *Id*. p. 19:1-2. Again, this argument is unsupported

21  with citations to any evidence explaining Defendant Ferris's state of mind or discussing what he

22  knew when he knew it. The court must infer from Plaintiffs' interactions with Defendant Ferris,

23  including his words and conduct, to determine what Defendant Ferris knew on May 21, 2022. On

24  May 21, Plaintiffs had demonstrated at the front entrance before they headed to the back parking lot

25  to continue demonstrating. As Plaintiffs walked toward the back parking lot entrance, Plaintiff

26  Cuviello was carrying a large bag of signs slung over his shoulder, and Plaintiff Bolbol was wearing

27  a sign, about three feet high and two feet wide, that read "They Buck From Pain Caused By The

28

Plaintiffs' Opposition and Reply to Defendant Rowell Ranch Rodeo
(3:23-cv-01652-VC)

1    Bucking Strap" with a photo of a bull bucking. Dkt. 84-1, ¶35. She was also carrying a rolled-up

2    banner, about seven feet tall. Dkts. 84-8, 84-17. Plaintiffs were also with some colleagues who were

3    following Plaintiffs holding signs. *Id.* Plaintiffs were conspicuous in their intentions for entering the

4    back parking lot. Dkts. 84-8, 84-17. That Defendant Ferris did not understand Plaintiffs' intention is

5    not plausible.

6         Defendants further speculate that Defendant Ferris harassed and blocked Plaintiff Bolbol

7    from accessing the back entrance to "herd' Plaintiffs and at best admonish them for not having

8    tickets to the rodeo." Dkt 116, p. 18:24-27. The video evidence establishes that Defendant Ferris

9    had little concern for whether Plaintiffs, and their colleagues had tickets. Dkts. 84-8, 84-17. Plaintiff

10   Cuviello was leading the procession of demonstrators, and when Defendant Ferris saw Plaintiff

11   Cuviello, Defendant Ferris immediately stepped in front of him with his hand out to block his

12   entrance into the public forum and yelled at Plaintiff that he needed a ticket. *Id.* Plaintiff Bolbol told

13   Defendant Ferris not to touch Plaintiff Cuviello. *Id.* Defendant Ferris, no longer concerned with

14   whether Plaintiff Cuviello had a ticket or not, then turned his attention to Plaintiff Bolbol and

15   aggressively stepped in front of her, blocked her with his body, and began yelling "call the cops."

16   *Id.* As Plaintiff Bolbol tried to walk around Defendant Ferris, he continually stepped in front of her

17   and pushed his body into her to block her from entering the back entrance. *Id.* Defendant Ferris

18   began shouting in Bolbol's face "Out, Out." *Id.*; *see also* Dkt. 84-1, ¶35. Plaintiff Bolbol told

19   Defendant Ferris, "Don't touch me," and then Defendant Ferris began to say, "You're running into

20   me. You're touching me." *Id.* As Plaintiff Bolbol repeatedly tried to walk around Defendant Ferris,

21   she told him to, "Stop it." *Id.* But he did not stop and instead said, "Stop it, go out, you need tickets

22   to the rodeo." Dkts. 84-8, 84-17. Based on the uncontroverted video evidence, Defendant Ferris

23   never actually asked Plaintiffs or their colleagues if they had tickets and only demanded tickets

24   from Plaintiffs as an excuse to intentionally keep Plaintiffs from accessing a public forum. There

25   can be no doubt that Defendant Ferris would have treated people he assumed to be rodeo patrons

26   differently. Indeed, Plaintiffs have never been asked, nor observed rodeo representatives asking

27

28

Plaintiffs' Opposition and Reply to Defendant Rowell Ranch Rodeo
(3:23-cv-01652-VC)

1    anyone else, for copies of their tickets at the parking lot entrance. Suppl. Cuviello Decl. ¶12; Suppl.

2    Bolbol Decl. ¶12.

3         Defendant Rowell also argues that "at the time of this interaction, Plaintiff Bolbol was not

4    involved in any free speech activities" and "[m]erely making your way to the location you want to

5    pontificate at is not in and of itself free speech." Dkt. 116, p. 19:5-6.  This statement is counter to

6    the video evidence, which shows Plaintiff Bolbol was wearing and displaying her rodeo sign. Dkts.

7    84-8, 84-17. There is no question Plaintiffs were in the process of accessing a public forum to

8    exercise their free speech rights. By intentionally blocking Plaintiffs, Defendant Ferris was

9    interfering, and attempting to interfere, with the exercise of Plaintiffs' free speech rights by keeping

10   them for accessing a public forum. The video evidence establishes that Defendant Ferris used

11   threats, intimidation, and coercion to do so.

12        Defendants mistakenly argue that "the relevant inquiry under the Bane Act" requires a

13   reasonable person "perceived a threat of violence." Dkt. 116, p.18:4-6. The element of violence is

14   only necessary if the threat is "speech alone."  *See* Civil Code, sec. 52.1(k). However, conduct can

15   be coercive as well, and nothing in the statute says coercive conduct has to be violent. *Plummer v.*

16   *City of Richmond,* 2015 U.S.Dist.LEXIS 43268 (N.D.Cal. Apr. 1, 2015, No. 14-cv-03962-VC). The

17   video evidence establishes that Defendant Ferris interfered and attempted to interfere with Plaintiff

18   Bolbol's free speech rights through his conduct that was threatening, intimidating and coercive.

19        Defendant Rowell Ranch argues that Plaintiff Bolbol cannot prove she was harmed by

20   Defendant Ferris, because "there is no evidence [sic] physical injury nor any credible evidence of

21   emotional distress." Dkt. 116, p. 22:14-15. There is no requirement that a Section 52.1 victim needs

22   to prove physical or mental harm. The only harm Plaintiff Bolbol needs to establish is that

23   "defendant, by the specified improper means (i.e., 'threats, intimidation or coercion'), *tried to* or did

24   prevent the plaintiff from doing something he or she had the right to do under the law or to force the

25   plaintiff to do something that he or she was not required to do under the law." *Cornell*, 17

26   Cal.App.5th at 791-792 (citing *Simmons,* 7 Cal.App.5th at 1125 (2016). "Properly read, the

27   statutory phrase 'threat, intimidation or coercion' serves as an aggravator justifying the conclusion

28

that the underlying violation of rights is sufficiently egregious to warrant enhanced statutory remedies, beyond tort relief." *Cornell*, 17 Cal. App. 5th at 800.

Defendant Ferris violated Section 52.1 when he attempted to block and did block Plaintiff Bolbol from accessing the back entrance, through conduct that was threatening, intimidating and coercive, to prevent her from protesting the Rodeo Event. Plaintiff Bolbol is entitled to summary judgment on her Third and Fifth Causes of action against Defendant Ferris.

### 2. Defendant Gary Houts intended to interfere with Plaintiff Cuviello's constitutionally protected free speech activity in violation of Section 52.1.

The uncontroverted evidence shows that on May 21, 2022, Defendant Rowell Ranch Rodeo's Public Safety Coordinator and now-Defendant Gary Houts intentionally rammed his electric utility vehicle into Plaintiff Cuviello in violation of Section 52.1. Dkt. 116, p. 22-23; Dkt. 84-1, ¶¶36-37. Defendant Houts was aware that Plaintiff Cuviello was an animal rights demonstrator, as Plaintiff was holding an animal rights banner at the time and Defendant Houts had attempted to and failed the night before to have law enforcement relocate Plaintiffs Cuviello and Bolbol to the Free Speech Area. Dkt. 84-1, ¶¶14-17. The irony of Defendants' argument that Rowell Ranch *Public Safety Coordinator* Gary Houts was justified in intentionally driving his electric utility vehicle into Plaintiff Cuviello because Defendant Houts needed to assist a disabled person is not lost on Plaintiffs. Dkt. 116, p. 20:14-15. Defendants cite no caselaw or testimony in support of this defense, because there is none. This argument is meritless. As well, Defendants' argument that it was Plaintiff Cuviello's fault that Defendant Houts rammed his vehicle into him is just as meritless. Dkt. 116, p. 20:17-22.

The evidence is clear that Defendant Houts was aware from the night before that Plaintiff was an animal rights activist. Dkt. 84-1, ¶¶14-17. The video of the incident also makes clear Defendant Houts knew Plaintiff Cuviello was an animal rights activist, as Plaintiff was holding a banner behind Defendant Houts' vehicle, for which Defendant Houts had just prior told Plaintiff not to touch his vehicle with the banner, and Plaintiff silently complied. Dkt. 84-18. Then Defendant Houts told Plaintiff Cuviello to move because he had to move his vehicle, despite that Houts could

1   have easily driven his vehicle forward. *Id.* An unidentified woman then told Plaintiff Cuviello he

2   had to move, and while Plaintiff was explaining to her that Defendant Houts could drive forward,

3   Defendant Houts intentionally backed up and rammed his vehicle into Plaintiff. *Id.*

4          Although Defendant Houts's may have entered his vehicle to assist a disabled person, his

5   "substantial" motivation for intentionally driving his vehicle into Plaintiff Cuviello was clearly his

6   disdain for Plaintiffs' political activism and his desire to suppress it, carried over from the night

7   before. *People v. Lindberg*, 45 Cal.4th 1, 38 (2008) (*citing In re MS*, 10 Cal.4th 698, 719 (1995)).

8   There can be no doubt that Defendant Houts would have driven forward, without incident, to avoid

9   a rodeo patron. Because Defendant Houts could have easily driven forward, there was no other

10  reason for him to ram his vehicle into Plaintiff Cuviello other than to attempt to intimidate Plaintiff

11  with threats and coercion because of Plaintiff's political activism in violation of Section 52.1.

12  Defendant Houts acted with reckless disregard and "a reckless disregard for a person's constitutional

13  rights is evidence of a specific intent to deprive that person of those rights.'" *Reese*, 888 F.3d at

14  1045.

15         Defendants argue that Plaintiff Cuviello cannot prove he was harmed by Defendant Houts's

16  violation of his Section 52.1 rights, because "there was no doctor visit, no treatment, and most

17  notably no break in the Plaintiffs ongoing expression of free speech that day or the next when they

18  returned."  Dkt. 116, p. 23:3-5. Again, there is no requirement that a Section 52.1 victim needs to

19  prove physical or mental harm. The only harm Plaintiff Cuviello needs to establish is that

20  "defendant, by the specified improper means (i.e., 'threats, intimidation or coercion'), *tried to* or did

21  prevent the plaintiff from doing something he or she had the right to do under the law." *Cornell*, 17

22  Cal.App.5th at 791-792 (2017) (*citing Simmons*, 7 Cal.App.5th at 1125). "Properly read, the

23  statutory phrase 'threat, intimidation or coercion' serves as an aggravator justifying the conclusion

24  that the underlying violation of rights is sufficiently egregious to warrant enhanced statutory

25  remedies, beyond tort relief." *Cornell*, 17 Cal. App. 5th at 800.

26

27

28

Plaintiffs' Opposition and Reply to Defendant Rowell Ranch Rodeo
(3:23-cv-01652-VC)

Plaintiffs' uncontroverted evidence establishes Defendant Houts interfered and attempted to interfere with Plaintiff Cuviello's free speech rights through conduct that a reasonable person would find threatening, intimidating, and coercive. Dkt. 84-18.

**B.    Defendant Rowell Ranch Rodeo is liable for damages under the Ralph Act, Civil Code, section 51.7.**

To prevail on their Ralph Civil Rights Act claims, Plaintiffs must show that: "(1) Defendants committed or threatened violent acts against Plaintiffs; (2) Defendants were motivated by their perception of Plaintiffs' political affiliation; (3) Plaintiffs were harmed; and (4) Defendants' conduct was a substantial factor in causing Plaintiffs harm." *Campbell v. Feld Entertainment, Inc*., 75 F.Supp.3d 1193, 1205 (2014) (citations and quotations omitted); *see also Austin B.,* 149 Cal. App. 4th at 880-881. The term "because of" in Section 51.7 means the defendant's "bias motivation must be a cause in fact of the offense, whether or not other causes also exist." *In re MS*, 10 Cal. 4th at 719. The offense does not have to be "committed exclusively or even mainly because of the prohibited bias," but the bias cannot be "so infinitesimal or so theoretical that it cannot properly be regarded as a *substantial factor* in bringing about the particular result." *Id*. at 719-720.

Defendants do not dispute that animal rights is a qualifying political affiliation under Section 51.7. Dkt. 116. And they do not offer any evidence at all to contradict Plaintiffs' evidence that Defendants George Ferris and Gary Houts were motivated to suppress Plaintiffs' speech out of animus toward their animal rights activism. Dkt. 116, p. 18-20. Because Defendants did not produce these key defendants as witnesses, the only evidence of their motivation takes the form of Defendants Ferris's and Houts's demeanor, language, and speech, as depicted in Plaintiffs' video evidence.

**1.   Defendant Houts made a false report to law enforcement in reckless disregard for the truth in violation of Section 51.7.**

Under the Ralph Act, "Intimidation by threat of violence" includes, but is not limited to, "making or threatening to make a claim or report to a peace officer or law enforcement agency that falsely alleges that another person has engaged in unlawful activity or in an activity that requires

1    law enforcement intervention, knowing that the claim or report is false, or with reckless disregard

2    for the truth or falsity of the claim or report." *Id.* at Civ. Code, sec. 51.7 (b)(2)[2]. Defendants raise a

3    red herring argument in response to Plaintiffs' Section 51.7 claims, arguing that law enforcement

4    was "en route" to the Rodeo Event when Defendant Houts made his false report to law enforcement.

5    Dkt. 116, p. 21:26-27. Whether law enforcement was en route or not, the undisputed evidence

6    shows that Defendant Houts, while being filmed, called ACSO Dispatch and falsely "told the

7    dispatcher[3] that the Plaintiffs were blocking the parking lot entrance." Dkt. 116, p. 7:4-8. The video

8    evidence is clear that Plaintiffs never blocked the parking lot, the entrance, nor access to the Rodeo

9    Park on any of the days they were protesting.[4] Defendant ACSO, moreover, admits that the

10   Plaintiffs never blocked ingress or egress, otherwise Defendant Deputy Mayfield would have

11   arrested them. Dkt. 89-2, ¶3. Although Defendant Rowell contends "there is a question of fact

12   regarding the extent to which [Plaintiffs] were blocking ingress," they cite no evidence to support

13   this contention. Dkt. 116, p. 7:22-23. Thus, the uncontroverted evidence demonstrates that

14   Defendant Houts knowingly made a false report to law enforcement based on his animus for

15   Plaintiffs' political affiliation as animal rights activists, violating Plaintiffs' rights under Section

16   51.7.

17        Whether law enforcement was en route before Defendant Hout's false report is immaterial.

18   Indeed, Defendants point to no evidence that Defendant Houts was aware the police were en route

19   when he falsely reported Plaintiffs to law enforcement, and even if he were, Defendant Houts made

20   a knowingly made a false report to law enforcement even though he knew they were en route.

21

22

---

23   [2] Significantly, although Section 51.7 is intended to address and punish "violence, or intimidation by threat of violence"

24   against protected classes of people, subsection (b)(2) is the only portion of Section 51.7 that specifically defines an instance of "intimidation by threat of violence." Civ. Code, sec. 51.7(b)(2).

25   [3] On his phone call with law enforcement, Defendant Houts said, "[Plaintiffs] are protesting, and they're blocking the parking lot, they're blocking access." Dkt. 84-1, ¶17. The Dispatcher asked if they had signs, and Mr. Houts replied, "Yes they do, they're blocking the entrance." *Id.* Plaintiffs told Mr. Houts to stop lying. *Id.*

26   [4] Plaintiff Bolbol's continuous video evidence establishes Plaintiffs remained in the same spot of the parking lot from

27   the time they encountered Defendant Houts to the time they were approached by Defendants ACSO and Deputy Mayfield, at which time Defendant Mayfield told Plaintiffs they were "fine." Dkt. 84-4*; see also* Dkt. 84-46 (ACSO body cam footage depicting the area Plaintiffs were standing when the deputies approached them).

28

Plaintiffs' Opposition and Reply to Defendant Rowell Ranch Rodeo
(3:23-cv-01652-VC)

1    Defendants hope the court will find for Defendants on some loose causation theory

2    unsupported by the statute, claiming Defendants cannot be liable for any harm caused to Plaintiffs

3    by law enforcement because law enforcement was on site for the Rodeo Event. Dkt. 116, p. 22:3-9.

4    Defendants misunderstand the harm Plaintiffs need to prove to establish a violation of Section

5    51.7(b)(2). The California Legislature amended Section 51.7 in 2020 to specifically add subsection

6    (b)(2) "to discourage individuals from using 911 or other communications with law enforcement to

7    harass a person because that person belongs to a protected class." Suppl. Cuviello Decl. ¶15, Ex. 41.

8    Although the catalyst for the amendment was the increase in calls against people of color, the law is

9    much broader and applies to all calls made to harass people because of political affiliation or

10   protected class status. *Id.*; *see also* Civ. Code, sec. 51.7(b)(1). The Bill "addresse[d] the need to

11   deter discriminatory unlawful calls to law enforcement, and the imperative to prevent individuals

12   from using emergency services as their 'personal concierge' to harass others," and sought "to create

13   a disincentive for weaponizing our emergency system" in this way, which is "not only a waste of

14   taxpayer resources but also puts law enforcement in danger by requiring them to arrive at a tense . .

15   . situation in which they would not otherwise intervene." Suppl. Cuviello Decl. ¶15, Ex. 41. The

16   California State Sheriffs' Association supported the Bill in part because "addressing situations

17   where emergency resources are diverted to harass others is a worthy public policy." *Id.*

18   Defendant Rowell misunderstands the harm Plaintiffs need to prove to establish a violation

19   of Section 51.7(b)(2). Defendants mistakenly believe that if Plaintiffs suffered no "physical

20   injuries" and did not need "medical or mental healthcare," they did not suffer harm. Dkt. 116, p.

21   16:3-6. The only injury or harm Plaintiffs need to establish is that which is defined by Section 51.7,

22   which is "intimidation by threat of violence," which the code specifically defines in subsection

23   (b)(2), as a person, (in this case Defendant Houts), knowingly making a false report to a law

24   enforcement agency. *See* Civ. Code, sec. 51.7(b)(2). Section 51.7(b)(2) makes clear that if Plaintiffs

25   show that Defendants Houts knowingly made a false report to law enforcement alleging Plaintiffs

26   were engaged in unlawful activity; knowing the report is false is proof enough that Defendant Houts

27

28

engaged in "intimidation by threat of violence," against Plaintiffs, in violation of Section 51.7(b)(2). Defendants cite no evidence or caselaw to the contrary.

Defendant Houts used law enforcement as his "personal concierge" without any concern about diverting emergency resources simply to harass Plaintiffs because of their political affiliation and the content of their speech. Section 51.7 was amended specifically to address and punish the type of behavior rights under Section 51.7(b)(2) when they falsely reported Plaintiffs to law enforcement.

### 2. Defendant Houts used violence against Plaintiff Cuviello by ramming his electric utility vehicle into him in violation of Section 51.7.

Section 51.7 gives Plaintiff Cuviello the right to be free from violence committed against him because of his animal rights political affiliation. Civ. Code, sec. 51.7(b)(1). The parties appear to agree about the general sequence of events during this important interaction between Defendant Houts and Plaintiff Cuviello. On May 21, 2022, Defendant Houts rammed his electric utility vehicle into Plaintiff Cuviello, rather than driving forward and avoiding hitting Plaintiff Cuviello. Dkt. 116, p. 22-23; Dkt. 84-1, ¶¶36-37; Dkt. 84-18. The evidence shows Defendant Houts rammed into Plaintiff because of his political affiliation and that Defendant Houts's bias was a "substantial factor," if not the only factor, guiding his conduct. It is clear Defendant Houts was aware of Plaintiff's political affiliation as he had harassed Plaintiff the night before, based on Plaintiff's political position. Dkt 84-1, ¶¶15-17. Defendant Houts also lied to law enforcement to get law enforcement to force Plaintiff to demonstrate in the Free Speech Area. Dkt. 84-1, ¶17. When that attempt failed, Defendant Houts can be seen lamenting that failure in a group with Defendants Hart and Mayfield. Dkt. 84-1, ¶32, 84-48. Defendant Houts looked visibly disappointed when Defendant Mayfield stated that Plaintiffs need not demonstrate in the Free Speech Area, lamenting, "I'm not blaming you all." *Id.*

Additionally, just prior to running the vehicle into Plaintiff Cuviello, who was holding an animal rights banner, Defendant Houts had just told Plaintiff to not let that banner touch his vehicle. Dkt. 84-1, ¶36, 84-18. The entire incident is video documented. Absent evidence to the contrary—

including the missing testimony of Defendant Houts—there can be no genuine dispute that Defendant Houts hit Plaintiff solely based on his animus for Plaintiff's political position. Because Defendant Houts could have easily driven forward, there was simply no other reason to ram Plaintiff other than the animus Defendant Houts had openly expressed since his first encounter with Plaintiff the night before. As Defendant Houts could not restrict Plaintiff through legal means, he deployed illegal means.

Defendants cannot genuinely dispute that ramming into a person with an electric utility vehicle constitutes violence. Dkt. 116, p. 20:25-26. Violent is defined by Merriam-Webster online dictionary as "the use of usually harmful or destructive force." "Violent," Merriam-Webster.com, available at https://www.merriam-webster.com/dictionary/violent (last visited July 29, 2024). Any reasonable person would view Defendant Houts ramming his vehicle into Plaintiff as a violent act.

The plain language of Section 51.7 gives Plaintiff Cuviello the right to be free from violence committed against him because of his animal rights political affiliation. In an act of violence, Defendant Houts intentionally rammed his electric utility vehicle into Plaintiff because of his political activism, a clear violation of Section 51.7.

### C.   Defendant Rowell Ranch Rodeo agents George Ferris and Gary Houts assaulted and battered Plaintiffs.

Defendants do not dispute that Defendants Ferris and Houts assaulted and battered Plaintiffs Bolbol and Cuviello, respectively, as alleged in Plaintiffs' First and Second Causes of Action. Dkt. 116, pp. 23-24. Rather, Defendants allege that neither Plaintiffs were harmed by these violent torts. With respect to Plaintiff Bolbol's battery claim, she need only prove she was harmed *or offended* by Defendant Ferris's conduct. CACI No. 1300; *see Kaplan v. Mamelak* 162 Cal.App.4th 637, 645 (2008). Plaintiff Bolbol testified that she "felt scared due to [Defendant Ferris's] physical aggression and called out to Plaintiff Cuviello," to help her. Dkt. 84-1, ¶24. As Defendants admit, moreover, Defendant Ferris intended to block Plaintiff Bolbol with his body. Dkt. 116, p. 8:19-23. By repeatedly jumping in front of Plaintiff to block her with his body, Defendant Ferris expressed an intention to touch Plaintiff Bolbol in an offensive manner if she exercised her right to access the

1   back parking lot. Plaintiff Bolbol reasonably believed she was about to be touched in an offensive

2   manner and tried to walk around Defendant Ferris who used his body to block her. Plaintiff Bolbol

3   did not consent to Defendant Ferris's conduct, as she was offended by it. Defendant Ferris's

4   conduct was the substantial factor in the offense, all evidencing he battered Plaintiff Bolbol.

5           Absent any evidence to the contrary, Plaintiff Bolbol's testimony regarding her offense to

6   Defendant Ferris's actions satisfies the harm element of her battery claim.

7           Defendant Ferris also committed assault against Plaintiff Bolbol when he touched Plaintiff

8   Bolbol with his body with intent to offend Plaintiff. "The tort of assault is complete when

9   anticipation of harm occurs." *Kiseskey v. Carpenters' Trust for Southern California*, 144

10  Cal.App.3d 222, 232 (1983). Plaintiff Bolbol did not consent to Defendant Ferris touching her and

11  told him to, "Stop it!" repeatedly. Dkts. 84-3, 84-8. Plaintiff Bolbol was expressly offended by the

12  touching, as demonstrated by her shouting at him to stop while attempting to walk around him. Dkt.

13  84-1, ¶22. A reasonable person would have been offended by Defendant Ferris's touching because

14  it was unwelcome and prevented physical movement. *See Rains v. Superior Court,* 150 Cal. App.

15  3d 933, 938 (1984) (holding a battery is a violation of an individual's interest in freedom from

16  intentional, offensive unconsented contacts with a person). Accordingly, the Court should enter

17  summary judgment against Defendants Rowell Ranch Rodeo and for assault and battery against

18  Plaintiff Bolbol.

19          Likewise, Plaintiff Cuviello has established harm because of Defendant Houts's assault.

20  *Kiseskey*, 144 Cal.App.3d at 232. A harmful contact, intentionally done, is the essence of a battery.

21  *Ashcraft v. King,* 228 Cal. App. 3d 604, 612 (1991). Defendants admit that Defendant Houts "made

22  contact" with Plaintiff Cuviello. Dkt. 116, p. 9:19-20. Plaintiff Cuviello testified that Defendant

23  Houts's decision to ram his utility vehicle into him while smiling shook him. Dkt. 84-10, ¶36. For

24  the remainder of the protest, Plaintiff Cuviello "was concerned Mr. Houts or other rodeo

25  representatives might use violence" against him or his colleagues, so he "remained vigilant about

26  where he was in relation to the demonstrators." *Id.* at ¶37. He filed this lawsuit, in part, because he

27  feared that if Defendant Houts were not held accountable for his actions, Rowell Ranch Rodeo

28

1   agents "would feel emboldened to use violence against" him and his colleagues in the future. *Id.*

2   Defendants need not prove the extent of their injury to establish liability on summary judgment.

3   Summary judgement is appropriate here, where Plaintiff Cuviello has demonstrated that he was

4   battered and assaulted by Defendant Houts.

5   **IV.   Conclusion**

6   For the foregoing reasons Plaintiffs respectfully request that this Court grant Plaintiffs' Joint

7   Motion for Partial Summary Judgment on their first, second, third, fourth, and fifth causes of action.

8   Plaintiffs also request this Court deny Defendants' Cross-Motion for Summary Judgment.

9

10                                     Respectfully submitted,

11   DATED: July 29, 2024            */s/ Jessica L. Blome*

12                                   Jessica Blome

13                                   Lily R. Rivo
                                     GREENFIRE LAW, PC
                                     *Attorney for Plaintiff Deniz Bolbol*

14

15   DATED: July 29, 2024            *Joseph P. Cuviello*
                                     JOSEPH P. CUVIELLO
16                                   *Plaintiff In Pro Se*

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiffs' Opposition and Reply to Defendant Rowell Ranch Rodeo
(3:23-cv-01652-VC)

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on this 29th day of July 2024 the foregoing was served on all parties through the Court's electronic filing, CM/ECF system in accordance with Rule 5 of the Federal Rules of Civil Procedure.

GREENFIRE LAW, P.C.

By:  */s/ Jessica San Luis*
Jessica San Luis

Plaintiffs' Opposition and Reply to Defendant Rowell Ranch Rodeo
(3:23-cv-01652-VC)