William B. Rowell, Bar No. 178587
Thiele R. Dunaway, Bar No. 130953
Marc Brainich, Bar No. 191034
Michele C. Kirrane, Bar No. 215448
**FENNEMORE WENDEL**
1111 Broadway, 24th Floor
Oakland, CA  94607
Tel: (510) 834-6600 / Fax: (510) 834-1928
browell@fennemorelaw.com
rdunaway@fennemorelaw.com
mbrainich@fennemorelaw.com
mkirrane@fennemorelaw.com

Attorneys for Defendants
County of Alameda and Alameda County Deputy
Sheriff Joshua Mayfield

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH P. CUVIELLO and DENIZ BOLBOL, individually,<br><br>Plaintiffs,<br><br>v.<br><br>ROWELL RANCH RODEO, INC.; HAYWARD AREA RECREATION AND PARK DISTRICT; HAYWARD AREA RECREATION AND PARK DISTRICT PUBLIC SAFETY MANAGER/RANGER KEVIN HART; ALAMEDA COUNTY SHERIFF'S OFFICE; ALAMEDA COUNTY DEPUTY SHERIFF JOSHUA MAYFIELD; and DOES 1 and 2, in their individual and official capacities, jointly and severally,<br><br>Defendants. | Case No. 3:23-cv-01652-VC<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF CROSS-MOTION OF DEFENDANTS COUNTY OF ALAMEDA AND DEPUTY SHERIFF JOSHUA MAYFIELD FOR SUMMARY JUDGMENT, OR IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**<br><br>Judge: Hon. Vince Chhabria<br>Date: August 15, 2024<br>Time: 10:00 a.m.<br>Courtroom: 4 – 17th Floor<br><br>Action Filed: April 6, 2023<br>Trial Date: October 21, 2024 |

## I.  INTRODUCTION

The video evidence doesn't lie.  It gives the viewer an objective view of exactly what took place at the rodeo on May 20, 2022, the only day at issue in Plaintiffs' claims against Defendants County of Alameda ("County") and Sheriff's Deputy Joshua Mayfield ("Mayfield").  The videos prove that Deputy Mayfield never ordered Plaintiffs to go to the Free Speech Area, never requested that they move there, and never threatened them with arrest if they did not go there.  There was no effort or intent by Deputy Mayfield to threaten, intimidate, or coerce Plaintiffs and deny them their right to free speech.  In their Opposition (Dkt. 118), Plaintiffs repeatedly and improperly try to impose liability on Deputy Mayfield based on statements made by Defendant Kevin Hart ("Hart") of the Hayward Area Recreation and Park District ("HARD"), rather than based on statements and actions by Deputy Mayfield.  The reason for that effort is simple: Deputy Mayfield did nothing to interfere with Plaintiffs' rights.  There was no conspiracy or acting "in concert," nor have Plaintiffs offered any admissible evidence to support their contention that there was an agreement among the Defendants to deprive them of their First Amendment Rights.  Plaintiffs' arguments concerning the issue of the $25,000 civil penalty, punitive damages and attorney's fees are similarly without merit, and Defendants County and Deputy Mayfield are entitled to entry of summary judgment.

## II.  OBJECTIONS TO SAGE AND NEWKIRK DECLARATIONS

Even though Plaintiffs relied on them in their motion for summary judgment (filed June 3, 2024, Dkt. No. 84), they did not file the Declarations of Michael Sage ("Sage") and Robyn Newkirk ("Newkirk") until June 28, 2024 (Dkt. Nos. 113 and 114), which was one day *after* Defendants County and Deputy Mayfield were required to file their combined opposition to Plaintiffs' motion and Defendant's cross-motion—making it impossible for Defendants to consider and object to those declarations.  Disregarding for the moment the fundamental unfairness of Plaintiffs' late filing of evidence on which they rely for their motion, a review of those two declarations shows they are rife with speculation, unfounded personal opinion, irrelevant information, and misstatements or mischaracterizations of the events at the rodeo on May 20, 2022, rather than actual admissible evidence of what transpired that day.  The fact that

many of their assertions in those declarations are nearly identical further undermines their credibility and reliability.  Defendants believe the declarants' misstatements as to what Deputy Mayfield said and did are readily apparent and handily refuted by a review of the many videos of the May 20 events submitted with Plaintiffs' motion and Defendants' opposition and cross-motion, and Defendants invite the Court to view all of the video footage submitted by the parties, to see exactly what happened that day.

For example, Newkirk says: "I understood that one Sheriff Deputy and . . . Hart . . . were working together" (Dkt. 113, p. 3: 9-11); "Based on Deputy Mayfield's discussion with Pat *it appeared we would be arrested*" (*id.* at lines 18-19 (emphasis added)); "it indicated to me that the threat of arrest was real" (*id.* at line 20); "It was clear to me that . . . Mayfield and HARD's Hart were trying to intimidate us because law enforcement officers tend to think they are the law" (*id.* at lines 24-25); and "Mayfield seemed like he had a personal vendetta against us, the protestors" (*id.* at line 26-27).  These statements consist of impermissible opinion and conclusion; they lack foundation as there are no predicate facts stated showing a basis for the conclusions that the threat was "real," they were "trying to intimidate," "think they are the law," and "had a personal vendetta against us."  In addition, such speculative opinions, including the declarant's speculative "understanding," are irrelevant.  FRE 104, 401, 402, 601, 602, and 701-705.  Similarly, Sage asserts:  Mayfield and Hart "said a lot of things in an attempt to intimidate us," (Dkt. 114, p. 4:4); "we were in essence threatened with arrest if we did not move (*id.* at line 5); "seemed to be a police tactic" (*id.* at line 18); "I considered this to be a tactic of intimidation" (*id.* at line 19).

In addition, both Newkirk and Sage falsely state:  "I heard Deputy Mayfield tell Pat he did not have to tell him if he would be arrested and that Pat needed to move."  Newkirk Decl., (Dkt. 113), p. 3, lines 17-18; Sage Decl. (Dkt. 114), p. 4, lines 3-4.  The videos show that while Deputy Mayfield did say he did not have to tell Plaintiff Cuviello if he would be arrested, he never said "that Pat needed to move" during that conversation.  *See Scott v. Harris,* 550 U.S. 372, 380 (2007) (where declarant's testimony is contradicted by the objective record, court should disregard on summary judgment).

## III. LEGAL DISCUSSION

### A. Defendant Mayfield's Simply Stating That Something Could Possibly Happen In The Future If Plaintiff Broke The Law Is Not A Threat Of Arrest Within The Meaning Of California's Bane Act

Plaintiffs have admitted in their Opposition that their entire case against Deputy Mayfield (and the County) depends on one single conversation between Plaintiff Joseph Cuviello ("Cuviello"), during which, in response to Cuviello's insistent questions and demands that Deputy Mayfield answer, Deputy Mayfield said "you could be arrested for trespassing." Plaintiffs state that after that conversation, "Mayfield called his 'Sergeant On Duty;' and finally, (16) after Mayfield ended his call, there were no more threats of arrest for the rest of the evening." Opposition, p. 16:12-24. Plaintiffs acknowledge that Deputy Mayfield's statement was made in response to a question posed by Cuviello. However, simply stating truthfully that there could be legal consequences for plaintiff if plaintiff broke the law, without more, cannot amount to a threat sufficient to support a Bane Act claim.

For example in *Camfield v. Board of Trustees of Redondo Beach Unified School District*, 2016 WL 7046594 (C.D. Cal. December 2, 2016), plaintiffs alleged that defendants, a school principal and education director, violated the Bane Act by "threatening" plaintiffs that it was illegal to keep their daughter out of school and they would have to report plaintiffs to the authorities. *Id.* at *5-6. The District Court rejected that contention, concluding that the communications were not threats. "Defendants plainly and truthfully stated that there could be legal consequences if Plaintiffs did not bring their daughter to school. Accordingly, Defendants' conduct did not constitute threats or intimidation." *Id.* at *6.

Similarly, in *Constancia v. Los Angeles Unified School District*, 2018 WL 6137154 (C.D. Cal. September 17, 2018), a high school student was accused of harassing women and inappropriately touching at least one woman. The school authorities ask the student's parents to come to a meeting with school officials, including a school police officer. *Id.* at *3. During that meeting the vice principal told plaintiff and his mother about the allegations of sexual assault made by the female student, and explained the potential police consequences following the female student's complaint, including the possibility that the female student could file criminal

FENNEMORE WENDEL
ATTORNEYS AT LAW
OAKLAND

charges against plaintiff.  *Id.*  Following that meeting, plaintiff terminated his enrollment.  He later brought an action against the school and its employees, including a claim for civil rights violations, contending that he withdrew from school under duress, characterizing defendants' statements as threats they would criminally prosecute him if he did not withdraw.  *Id.* at *7.  The court granted defendants summary judgment on constitutional claims, finding that defendants' statements did "not amount to an affirmative 'threat' of criminal prosecution made against Plaintiff—Defendants simply told Plaintiff that *maybe* he would go to jail for sexual assault if the victim decided to press charges."  *Id.* at *8 (emphasis added by court).  The court concluded that "[i]nforming Plaintiff of the potential consequences of his actions does not amount to threats of criminal prosecution."  *Id.*

The same is true here.  When Cuviello turned to Deputy Mayfield and demanded to know whether he would arrest Plaintiff, Deputy Mayfield responded that he "could be arrested for trespassing."  Deputy Mayfield made no other statements, other than to deny that he had an obligation to tell Cuviello he was going to be arrested.  Simply responding to the question posed by Cuviello with a statement that he could be arrested if he broke the law, does not amount to a threat within the meaning of section 52.1.  There is no meaningful distinction between the words "maybe" and "could be."

Plaintiffs attempt to meld portions of statements actually made by Deputy Mayfield with Plaintiffs' *argument* that Deputy Mayfield threatened to arrest them if they did not move to the Free Speech Area.  When Plaintiffs purport to quote Deputy Mayfield in their Opposition, pay close attention to just where the quotation marks begin and end.  For example, Plaintiffs argue that Mayfield "explicitly told Plaintiffs they, 'could be arrested for trespassing' if they did not relocate to the Free Speech Area." Opposition, p. 14:21-23.  However, Mayfield never uttered the words "if they did not relocate to the Free Speech Area" or any statement like that.  Plaintiffs made selective use of their quotation marks several times throughout their brief to make it appear that Deputy Mayfield said something he did not.  There was no threat of arrest and no violation of the Bane Act by Deputy Mayfield.

Fennemore Wendel
Attorneys at Law
Oakland

- 5 -

COUNTY OF ALAMEDA'S REPLY BRIEF
49822989.1/059499.0021

3:23-CV-01652-VC

### B. Plaintiffs' Attempt To Impose Liability On The County And Deputy Mayfield Based On Plaintiffs' "Worked In Concert" Theory Fails

The videos do not support Plaintiffs' contention that Deputy Mayfield was working in concert with Kevin Hart of HARD to violate Plaintiffs' rights under the Bane Act (Civil Code section 52.1).  Plaintiffs present no evidence of a "common goal of relocating Plaintiffs to the Free Speech Area" that was agreed to by Deputy Mayfield and any of the other defendants.  To succeed on a conspiracy claim, Plaintiffs must establish facts concerning a specific agreement between the parties, the scope of the conspiracy, the role each played, and when and how the conspiracy operated.  *Steshenko v. Gayrard*, 44 F.Supp.3d 941, 957 (N.D. Cal. 2014).  The fact that Deputy Mayfield was simply discussing the circumstances of the situation with one of the adversarial parties (HARD or Rowell Ranch personnel) does not demonstrate that he was "working in concert" with them.  This is particularly true given the fact that Deputy Mayfield expressly told Kevin Hart, Gary Hout and the others, that Plaintiffs had the right to protest at the rodeo.

Furthermore, Deputy Mayfield's discussion of the situation was not limited to the other defendants.  The videos show that Deputy Mayfield also had discussions with the other adversarial party, Plaintiff Cuviello, regarding the situation, during which Deputy Mayfield expressly acknowledged that Plaintiffs' free speech rights included the right to attempt to convey their message to patrons attending the rodeo.

### C. Plaintiffs Cannot Recover A $25,000 Civil Penalty

It is especially telling that for all of Plaintiffs' arguments about how to define "damages" and "penalties," and their lengthy discussion of legislative history, Plaintiffs were unable to cite to even **one** case in which a private plaintiff bringing a claim for violation of rights under Civil Code section 52.1 was awarded the $25,000 penalty.  Furthermore, they are asking this Court to completely disregard what is "settled law" in this District.  *See Cuviello, et al. v. City of Oakland, et al.*, 2010 WL 3063199 at *6 (N.D. Cal. Aug. 3, 2010); *Bolbol v. City of Daly City*, 754 F.Supp.2d 1095, 1117 (N.D. Cal. 2010); *Weaver v. City of Santa Clara*, 2014 WL 6330402 (N.D. Cal. Nov. 14, 2014) ("it is settled in the Northern District that the reference to 'damages' (and not

- 6 -

COUNTY OF ALAMEDA'S REPLY BRIEF  
49822989.1/059499.0021

3:23-CV-01652-VC

FENNEMORE WENDEL  
ATTORNEYS AT LAW  
OAKLAND

'civil penalty') in § 52.1(b) . . . eliminates the possibility of a $25,000 penalty under §52(b)(2).").  And that settled law includes two cases in which Plaintiffs themselves were involved in where they were denied a civil penalty by the courts.   The law has not changed since those earlier rejections, and there is no reason to diverge from the precedent set by the courts in the Northern District.

In fact, the first case that Plaintiffs cite and rely on, *Davis v. City of San Jose*, 69 F.Supp.3d 1001 (N.D. Cal. 2014), expressly states that there are "no cases in which a court has awarded penalties under section 52(b) for Bane Act violations." *Id.* at 1010.  Although Plaintiffs try to rely on *Davis* as support for their contention that they may recover the $25,000 civil penalty in this case, *Davis* does not reach that conclusion at all, since the Court there was not presented with, and did not decide, the issue of whether the reference to "damages" in Civil Code section 52.1(c), includes a "civil penalty" under Civil Code section 52(b)(2).  In *Davis,* the defendants argued on their motion to dismiss the complaint, that the plaintiff was not entitled to recover "damages" under section 52(b).  All that the court decided in *Davis* was that since section 52.1 did not specify that "recovery for violations of the Bane Act should be limited to any subsection of section 52" the plaintiff could "pursue damages under section 52(b)." *Id.*  The court made no determination as to whether "damages" included a "civil penalty."

When construing a state statute, federal courts apply state laws of statutory construction. *Bass v. City of Butte,* 458 F.3d 978, 981 (9th Cir. 2006).  For interpretation of a statute, California law begins with the language of the statute itself, giving the words their usual, ordinary meaning. *Hunt v. Superior Court* (1999) 21 Cal.4th 984, 1000.  The courts also consider the maxim *expression unis est exclusion alterius*; that is, "[t]he express of some things in a statute necessarily means the exclusion of other things not expressed." *Gikas v. Zolin* (1993) 6 Cal.4th 841, 852.

California courts have long drawn a distinction between damages and civil penalties. "[A]n action to recover civil penalties 'is fundamentally a law enforcement action designed to protect the public and not to benefit private parties' (*People v. Pacific Land Research Co.* (1977) 30 Cal.3d 10, 17 . . . ." *Arias v. Superior* Court, 46 Cal.4th 969, 986 (2009).  One of the

authorities cited by Plaintiffs expressly recognizes the distinction between damages and civil penalties. "[D]amages and civil penalties have different purposes . . . . Damages are intended to be compensatory, to make one whole. (See Civ. Code, §3281.) . . . On the other hand, 'Civil penalties, like punitive damages, are intended to punish the wrongdoer and to deter future misconduct.'" *Raines v. Coastal Pacific Food Distributors, Inc.*, 23 Cal.App.5th 667, 681 (2018).

That distinction is reflected in the language of Civil Code section 52.1, where the California Legislature expressly referred to a "civil penalty" in subsection (b), the provision under which the California Attorney General and any district or city attorney may bring a civil action, but it did not include "civil penalty" in subsection (c) under which a private party such as Plaintiffs here may bring an action. Rather, subsection (c) refers only to damages, injunctive relief and other equitable relief. The inclusion of "civil penalty" in subsection (b) and its omission in subsection (c) supports the conclusion that the Legislature intended that private parties not be entitled to recover a civil penalty. This is sometimes expressed more colloquially as the Legislature knows how to use a term when it wants to. In the case of the remedies available for a private action brought pursuant to Civil Code section 52.1(c), the Legislature specified that a plaintiff could recover "damages," and certain other equitable relief. Unlike subsection (b), however, where a government attorney may seek civil penalties, a private party does not have that right under subsection (c). A review of the various iterations of Civil Code section 52.1 over time, confirms that the Legislature never conferred on a private party the right to seek civil penalties for a Bank Act violation. Construction of a statute is a judicial function, and a court is not bound by a legislative declaration as to the statute's meaning. *Del Costello v. State of California,* 135 Cal.App.3d 887, 893 (1982); *Tyler v. California,* 134 Cal.App.3d 973, 977 (1982).

### D. Plaintiffs Offer No Argument Or Legal Authority With Respect To Treble Damages And Have Therefore Waived The Point

Plaintiffs' Opposition does not discuss the issue of treble damages at all, and consequently, they have waived the point. *Williams v. REP Corp.*, 302 F.3d 660, 666 (7th Cir. 2002). Defendants are entitled to summary judgment as to any claim for treble damages.

### E. Plaintiffs Have No Facts To Support Their Punitive Damages Claim

Plaintiffs have tacitly conceded they cannot recover punitive damages against the County, since their argument on this point only discusses Deputy Mayfield. However, as to Deputy Mayfield, Plaintiffs have not offered any evidence (and merely conclusory argument) to support their contention that they are entitled to punitive damages. There is absolutely no evidence of malice, oppression or fraud, evil intent or motive, disregard of plaintiffs' safety, and/or reckless indifference to Plaintiffs' rights on the part of Deputy Mayfield; there was no physical harm to plaintiffs; and there was no misuse or abuse of power or authority. *See Cuviello, et al. v. City of Oakland, et al.*, Northern District of California Case No. C-06-5517 MHP (Dkt. No. 218) (July 20, 2009).

### F. Plaintiff Cuviello Has Waived Any Claim For Attorney's Fees

By way of a footnote in Plaintiffs' Opposition, Cuviello has admitted he is not seeking attorney's fees. Opposition, p. 6, n. 1. Having made this concession, Defendants are entitled to summary judgment on this issue against Plaintiff Cuviello. (Plaintiffs' Complaint includes a prayer for an award of attorney's fees, which is not limited to Plaintiff Bolbol.)

## IV. CONCLUSION

Defendants County and Deputy Mayfield respectfully request that this Court grant summary judgment to the County Defendants and deny Plaintiffs' motion for partial summary judgment as to the County Defendants.

Dated: August 1, 2024                                                FENNEMORE WENDEL

By: /s/ *Thiele R. Dunaway*
Thiele R. Dunaway
Attorneys for Defendants
County of Alameda and Alameda County
Deputy Sheriff Joshua Mayfield