UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DENIZ BOLBOL, et al.,

    Plaintiffs,

v.

ROWELL RANCH RODEO, INC., et al.,

    Defendants.

Case No. 23-cv-01652-VC

**ORDER GRANTING IN PART AND DENYING IN PART CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 84, 89, 115, 116

    There were four incidents over two days that the plaintiffs' claims are based on, and there is video evidence of all four. First, Rowell Ranch Rodeo volunteer Gary Houts told the plaintiffs —who were at the rodeo to protest animal cruelty—that they needed to go to the designated free speech area. The plaintiffs refused, which everyone now appears to agree was appropriate because the free speech area was too restrictive. Houts then proceeded to call the police and report that the plaintiffs were blocking the entrance and parking lot, even though he could see that they weren't. Later that day, Hayward Area Recreation and Park District Public Safety Manager Kevin Hart and Alameda County Sheriff's Deputy Joshua Mayfield approached the plaintiffs. Hart told the plaintiffs that they needed to go to the designated free speech area and that failure to do so "will not be good." Plaintiff Cuviello then asked Deputy Mayfield if he was going to arrest them, to which he replied, "You could be arrested for trespassing."

    On the second day of the event, Rowell Ranch Rodeo volunteer George Ferris stepped in front of Plaintiff Bolbol as she walked toward the back entrance of the rodeo and told her she needed a ticket. Ferris continued to block Bolbol's path for roughly 30 seconds, shuffling from side to side to stay in her way as she tried to get around him, before he ultimately let her pass.

The final incident again involved Houts. Cuviello was holding a banner right behind where an electric vehicle cart was parked when Houts was informed that a disabled rodeo patron needed a ride. He told Cuviello to move out of the way, but when Cuviello responded by telling Houts (accurately) that there was plenty of room to drive forward, Houts backed the vehicle into Cuviello.[1]

First Amendment and California Constitutional Claims

The defendants are entitled to summary judgment on both the First Amendment and California Constitutional claims. The plaintiffs seek only injunctive relief for these claims but they fail to provide evidence of an ongoing constitutional violation to support prospective relief. The alleged violations took place at the 2022 rodeo, but Cuviello testified that he didn't have any issues with the sheriff's deputies when he protested the same rodeo event in 2023. Nor is there any evidence of problems at the 2024 rodeo. As for the Park District, the plaintiffs argue that the ongoing constitutional violation stems from its policy requiring lessees to establish a free speech area. But a generic requirement that event hosts establish a free speech area is not the same as forcing protestors into a free speech area that is inadequate, or prohibiting people from exercising their speech rights outside of the free speech area. In other words, the policy is clearly designed to ensure that speech rights are protected, not to restrict speech rights. There is also no evidence to support the state constitutional claim against Rowell Ranch Rodeo because there is no evidence that Rowell Ranch has harassed the plaintiffs or tried to force them into a free speech area at the rodeos since 2022.

Bane Act Claims

None of the parties are entitled to summary judgment on the Bane Act claims. The Bane Act requires "threats, intimidation, or coercion" carried out with the intent to interfere with a constitutional right. *See* Cal. Civ. Code § 52.1. Courts apply an objective test, asking whether a

---

[1] At the hearing, both plaintiffs made clear that they are not pursuing any claims against Gary Houts or George Ferris individually, notwithstanding some language in the complaint suggesting otherwise. Rowell Ranch Rodeo does not dispute that it would be vicariously liable for the violations that the plaintiffs allege Houts and Ferris committed.

reasonable person in the plaintiff's position would have felt intimidated, threatened, or coerced by the actions of the defendant. *See Richardson v. City of Antioch*, 722 F. Supp. 2d 1133, 1147 (N.D. Cal. 2010).

Although there is video evidence of all the incidents, there is still a dispute of material fact as to whether the actions of the defendants constitute threats, coercion, or intimidation. Reasonable people could disagree, based on the context and on Deputy Mayfield's manner, about whether his telling the plaintiffs that they could be arrested for trespassing constitutes a threat of arrest. Likewise, reasonable people could differ on whether Hart saying that a failure to relocate to the free speech area will not be good rises to the level of a threat.

Hart argues that even if his statements to the plaintiffs could be seen as a threat of arrest, he is still entitled to summary judgment because he had no "apparent ability to carry out the threat." Cal. Civ. Code § 52.1. But his argument reads the word "apparent" out of the statute. Just because Hart did not, in fact, have the authority to arrest the plaintiffs does not mean that the plaintiffs could not, in the moment, reasonably perceive him as having such authority. Moreover, a reasonable jury could conclude that Hart was working in concert with Mayfield, who obviously did have authority to arrest the plaintiffs.

Similarly, whether a reasonable person would find Ferris's attempts to block Bolbol with his body and Houts backing his cart into Cuviello to be threatening, coercive, or intimidating is a question for the jury. Moreover, summary judgment would be inappropriate with respect to the incidents involving Ferris and Houts because there is a dispute of material fact as to intent. Rowell Ranch Rodeo argues that Ferris did not intend to prevent Bolbol from protesting, rather he was ensuring only people with tickets entered the parking lot. And with Houts, Rowell Ranch Rodeo argues that he also was not trying to stop Cuviello from exercising his free speech rights, he was only trying to assist a disabled rodeo patron. Although it is hard to imagine these being winning arguments, it cannot be said that as a matter of law, Ferris and Houts acted with the intent to deprive the plaintiffs of their free speech rights.

Ralph Act Claims

The plaintiffs assert two Ralph Act claims against Rowell Ranch Rodeo based on Houts's conduct—calling the police and hitting Cuviello with his cart. Neither side is entitled to summary judgment on these claims. The Ralph Act states that all people in California "have the right to be free from any violence, or intimidation by threat of violence, committed against their persons or property because of political affiliation." Cal. Civ. Code § 51.7. Included in the definition of "intimidation by threat of violence" is making or threatening to make a false police report.

Both of Houts's interactions with the plaintiffs seem to fall within conduct that the statute meant to cover. But Rowell Ranch Rodeo argues that it's entitled to summary judgment because neither incident resulted in any harm to the plaintiffs. The issue of what constitutes harm under the Ralph Act has not been clearly answered by the case law, and the Judicial Council of California jury instructions are confusing.

There are two separate jury instructions, one for acts of violence and one for threats of violence. In both sets of instructions there is an element for either an act of violence or threat of violence, and a separate element for the suffering of harm, seemingly implying that a person needs to experience some harm above and beyond merely being the victim of an act of violence or threat of violence. *See* Judicial Council of California Civil Jury Instruction 3064; *see also Campbell v. Feld Entertainment, Inc.*, 75 F. Supp. 3d 1193, 1205, 1210 (N.D. Cal. 2014). The drafters of these instructions did not explain why they included this element, and nothing in the actual language of the statute suggests such a requirement. Nor is the Court aware of any legislative history that would support it. *See Stamps v. Superior Court*, 136 Cal. App. 4th 1441, 1446-48 (2006) (explaining that the legislative history of the Ralph Act reveals broad intent to protect people from discriminatory violence or threats).

To the extent that the jury instruction regarding acts of violence suggests that there must be harm above and beyond simply experiencing the violence, that is obviously wrong. The law was intended to address the gap in civil rights protections for people who experience violence

4

due to their race, religion, or other protected characteristics. *See id.* at 1446. It would be antithetical to the law's purpose (and, again, contrary to the language) to require plaintiffs to demonstrate some harm over and above being on the receiving end of discrimination-based violence.

As for the instruction regarding threats of violence, the drafters were probably also wrong to include a separate element regarding "harm." The statute is probably best understood as having both an objective and subjective element: the plaintiff must show that a reasonable person would be intimidated by the threat of violence, and the plaintiff must also show that they were in fact intimidated by the threat. Perhaps that's what the drafters meant when they included an element requiring the plaintiff to show "harm." Perhaps this element simply means that plaintiffs must prove that they were actually intimidated (that is, harmed) by the threat. But if that's what the drafters meant, they used imprecise language to convey it—language that is difficult for courts (and more importantly juries) to understand. In any event, to the extent this instruction is meant to convey that a plaintiff who is reasonably intimidated by a threat of violence needs to show some other harm (beyond actually being intimidated) before prevailing on this claim, the Court declines to follow it—at least without some showing from the defendants that this was indeed the California Legislature's intent.

Aside from the issue of "harm," there remains a dispute of material fact as to whether Houts's act of violence (hitting Cuviello with the cart) and threat of violence (calling the police) were because of the plaintiffs' political affiliation.

Assault and Battery Claims

Neither side is entitled to summary judgment on the assault or battery claims asserted against Rowell Ranch Rodeo for the incident with Ferris. The video evidence shows that Ferris intentionally stepped in front of Bolbol, that she tried to walk around him, and that his actions in trying to block her resulted in bodily contact. The contact was clearly unwanted, as Bolbol repeatedly told Ferris to stop touching her. Based on the video evidence, nearly every element of assault and battery is satisfied. *See So v. Shin*, 212 Cal. App. 4th 652, 668-69 (2013). But a

harmful or offensive contact is determined by whether the contact would offend a reasonable person's sense of personal dignity. *See Barouh v. Haberman*, 26 Cal. App. 4th 40, 46 n.5 (1994). And here, reasonable jurors could differ on whether Houts's contact with Bolbol constitutes offensive contact. Again, it seems unlikely that Rowell Ranch will be able to prevail on this claim given the obnoxious nature of Ferris's conduct. But the claim must go to a jury.

With respect to the assault and battery claims stemming from the electric vehicle incident, Cuviello is entitled to summary judgment. The video evidence leaves no dispute that Houts's actions constitute both assault and battery and, unlike the incident with Ferris, no reasonable juror could conclude that hitting someone with an electric vehicle cart is not offensive contact.

Rowell Ranch Rodeo asserts that neither Ferris nor Houts intended to harm the plaintiffs and that the plaintiffs did not suffer any actual harm. But that misunderstands the law. Intent can be satisfied "if the evidence shows defendant acted with a 'willful disregard' of the plaintiff's rights." *Ashcraft v. King*, 228 Cal. App. 3d 604, 613 (1991). As for actual harm, "it has long been established, both in tort and criminal law, that the least touching may constitute battery. . . . it need not be violent or severe, it need not cause bodily harm or even pain, and it need not leave any mark." *People v. Mansfield*, 200 Cal. App. 3d 82, 88 (1988). And for assault, the tort is "complete when the anticipation of harm occurs." Here, it's clear Ferris intended to step in front of Bolbol to block her path and that in doing so he exhibited a willful disregard for Bolbol's rights. Likewise, Houts clearly intentionally reversed the cart knowing that Cuviello was standing directly behind it. No reasonable juror could conclude otherwise.

Remedies

The defendants are entitled to summary judgment on the plaintiffs' claims for punitive damages, treble damages, and a civil penalty under the Bane Act. The plaintiffs did not respond to the arguments about treble damages, so summary judgment is granted to the defendants on this issue. As for punitive damages, the plaintiffs have not shown by clear and convincing evidence that the defendants are "guilty of oppression, fraud, or malice," as required to recover punitive

damages. Cal. Civ. Code § 3294(a). The plaintiffs also cannot recover the $25,000 civil penalty based on their Bane Act claims—the plain language of the statute makes clear that only city attorneys, district attorneys, and the Attorney General may seek civil penalties. The plaintiffs may, however, seek civil penalties in connection with their Ralph Act claims. *See* Cal. Civ. Code § 52(b)(2).

**IT IS SO ORDERED.**

Dated: August 22, 2024

_____
VINCE CHHABRIA
United States District Judge